## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| ROSS INTELLIGENCE INC., | ) ) | **PUBLIC VERSION** |
| | ) | |
| Defendant/Counterclaimant. | ) | |

### ROSS INTELLIGENCE INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' COPYRIGHT CLAIMS

OF COUNSEL:

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Keith J. Harrison
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

Dated: October 1, 2024
11799659 / 20516.00001
Public Version Dated: October 9, 2024

# TABLE OF CONTENTS

Page

A. The Westlaw System—How It Works, Its Pieces, Raison d'etre ...................... 4

B. ROSS Intelligence's Natural Language Search Engine. ..................................... 6

C. The "Original Memo" Project - October 2015 to October 2017 ........................ 8

D. The "Bulk Memo Project" – October 2017 to December 2017 ......................... 8
    1. The Format of the Bulk Memos ....................................................................8
    2. LegalEase decided how to prepare the memos, including whether and how to use Westlaw ......................................................................................10
    3. LegalEase drafted questions often using the exact same language as the judicial opinion ........................................................................................11
    4. The bulk memos, including the metadata, do not contain any copyrighted content..............................................................................................13
    5. ROSS did not use the actual text of the memos to train its machine-learning model. .........................................................................................13

E. The Classifier Project – December 2017........................................................ 14
    1. ██████████████ ................................................................................14
    2. ████████████████████ . ....................................................................15

F. Plaintiffs' Alleged Copyrights and Infringement Allegations ......................... 15
    1. Direct Infringement Theories as to ROSS ................................................16
    2. Direct Infringement Theories as to LegalEase.........................................16
    3. Indirect Infringement Theories as to ROSS.............................................17

I. Analytical Framework for Direct Infringement ..................................................17

    A. Originality ..................................................................................................... 18

    B. Unauthorized Copying ................................................................................. 19

        1. Actual Copying ........................................................................................20
        2. Material Appropriation ............................................................................20

II. The Key Number System Was Not Infringed ....................................................23

    A. LegalEase and ROSS Do Not Infringe The Key Number System Compilation24

    B. LegalEase and ROSS Do Not Infringe The Judicial Topics ............................ 25

III.    As compilations, The headnotes are not infringed.............................................26

IV.    As derivative works, plaintiffs have not proven that headnotes are infringed.................27

    A.    Headnotes That Do Not Exist ............................................................... 29

    B.    Headnotes That Pre-Date 1927 Are Not Protected ........................................... 29

    C.    Verbatim Copies Of The Judicial Opinions ..................................................... 29

    D.    Lack Of Originality Or Material Appropriation................................................. 31

    E.    The Krein █ Do Not Show Infringement...................................... 32

V.    defendant's expert does not establish infringement........................................33

VI.    █ JUDICIAL OPINIONS WERE NOT INFRINGED BY ROSS ................................35

VII.    ROSS IS NOT CONTRIBUTORILY LIABLE ................................................35

    A.    LegalEase Did Not Directly Infringe. ............................................... 35

    B.    ROSS Did Not Know Of LegalEase's Claimed Infringement.......................... 36

    C.    ROSS Did Not Materially Contribute or Induce LegalEase's Alleged Infringement. ................................................................................. 36

VIII.    ROSS IS NOT VICARIOUSLY LIABLE.........................................................37

    A.    LegalEase Did Not Directly Infringe. ............................................... 38

    B.    ROSS Did Not Have the Right and Ability to Supervise.................................. 38

    C.    ROSS Did Not Have a Financial Interest as That Is Defined By Law.............. 40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1023 (9th Cir. 2001), .................................39

Affiliated Music Publishers, Inc. v. Ashley Publ'ns, Inc., 197 F. Supp. 17, 18
    (S.D.N.Y. 1961) ........................................................................................................24, 25

Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99, 104-05 (2d Cir. 1951) ......................27

Allegrini v. De Angelis, 59 F. Supp. 248 (E.D. Pa. 1944), aff'd, 149 F.2d 815 (3d
    Cir. 1945) ....................................................................................................................27

Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 36 (2d Cir.
    2021) aff'd  U.S. 508 (2023) ......................................................................................18

Atari, Inc. v. N. Am. Phillips Consumer Elecs. Corp., 672 F.2d 607, 616 (7th Cir.
    1982). ..............................................................................................................22, 26, 27

Bridgeport Music, Inc. v. WB Music Corp., 508 F.3d 394, 400-01 (6th Cir. 2007) ....................37

Bryant v. Media Right Prods., Inc., 603 F.3d 135, 140-41 (2d Cir. 2010) ..................................22

Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 131 (2d Cir.
    2008) ..........................................................................................................................35

Cas. Co. v. Hulbert T. E. Beardsley, 253 F.2d 702, 706 (2d Cir. 1958)................................26, 32

Conan Props. Int'l v. Sanchez, No. 17-CV-162 (FB), 2017 U.S. Dist. LEXIS
    231561, at *3 (E.D.N.Y. Dec. 5, 2017) ...................................................................28, 31

Cooper v. James, 213 F. 871, 873 (N.D. Ga. 1914)....................................................................30

CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 555 (4th Cir. 2004)........................................35

Cottrill v. Spears, 87 Fed. Appx. 803, 805 (3d Cir. 2004)...........................................................20

Dam Things From Denmark v. Russ Berrie and Co., Inc., 290 F.3d 548, 561 (3d
    Cir. 2002) ...............................................................................................................19, 20

Donald v. Uarco Bus. Forms, 478 F.2d 764, 766 (8th Cir. 1973) ...............................................30

Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197,
    206 (3d Cir. 2002) ......................................................................................................18

Educ. Testing Services v. Katzman, 793 F.2d 533, 539 (3d Cir. 1986)................................22, 25, 27

Ellison v. Robertson, 357 F.3d 1072, 1079 (9th Cir. 2004)....................................................40

Erickson Prods., Inc. v. Kast, 921 F.3d 822, 829 (9th Cir. 2019)...........................................40

ETS-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1082 (9th Cir. 2000). ...............................22

Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc., 893 F.3d 1176, 1186
    (9th Cir. 2018);..............................................................................................23, 25, 27

Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc., 499 U.S. 340, 349) ..........................24

Field v. Google Inc., 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006)........................................35

Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir. 1996)...........................38, 39

Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir. 1988) ...................................................20

Georgia v. Pub.Res.Org., Inc., 590 U.S. 255, 273 (2020) ...................................................29

Gerlach-Barklow Co. v. Morris & Bendien, Inc., 23 F.2d 159, 161 (2d Cir. 1927) ................18, 30

Golan v. Gonzales, 501 F.3d 1179, 1189 (10th Cir. 2007);...................................................29

Greer v. Moon, 83 F.4th 1283, 1295 (10th Cir. 2023)..........................................................37

Grondin v. Fanatics, Inc., No. 22-1946, 2023 U.S. Dist. LEXIS 4538, at *5 (E.D.
    Pa. Jan. 10, 2023) ......................................................................................................21

Harvey Cartoons v. Columbia Pictures Indus., Inc., 645 F. Supp. 1564, 1571
    (S.D.N.Y. 1986);.........................................................................................................29

In re Aimster Copyright Litig., 334 F.3d 643, 651 (7th Cir. 2003) ......................................37

Intervest Const., Inc. v. Canterbury Est. Homes, Inc., 554 F.3d 914, 921 n.3 (11th
    Cir. 2008). ...................................................................................................................1

Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 208 (3d Cir. 2005)................................27

Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc., 945 F.2d 509, 514 (2d
    Cir. 1991). ...................................................................................................................19

Kindergartners Count, Inc. v. Demoulin, 249 F. Supp. 2d 1214, 1232 (D. Kan.
    2003) .....................................................................................................................27, 28

Klinger v. Conan Doyle Estate, Ltd., 755 F.3d 496, 500 (7th Cir. 2014)................................29

L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 490 (2d Cir. 1976)....................................18, 29, 30

Live Face on Web, LLC v. Control Grp. Media Co.,Inc., 150 F. Supp. 3d 489, 499-500 (E.D. Pa. 2015) ...................................................................................37

Mattel, Inc. v. MGA Ent., 616 F.3d 904, 914 (9th Cir. 2010) ...........................................21, 32, 34

Matthew Bender & Co. v. W. Publ'g Co., 1997 WL 266972, at *2 (S.D.N.Y. May 19, 1997), aff'd, 158 F.3d 674 (2d Cir. 1998)...................................................24, 25

Matthew Bender & Co. v. West Publ'g Co., 158 F.3d 674, 682-83 (2d Cir. 1998)................19, 30

MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 937, 125 S. Ct. 2764, 2780 (2005) ......................................................................................................................37

Midway Mfg. Co. v. Bandai-America, Inc., 546 F. Supp. 125, 148 (D.N.J. 1982);...............32, 33

Muench Photography, Inc. v. Pearson Educ., Inc., No. 13-cv-03937, 2013 WL 6172953, at *5-6 (N.D. Cal. Nov. 25, 2013) ...........................................................37

MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 194 (2d Cir. 2004)..........................22

N. Coast Indus. v. Jason Maxwell, Inc., 972 F.2d 1031, 1033 (9th Cir. 1992) ......................18, 29

Off Lease Only, Inc. v. Lakeland Motors, LLC, 825 F. App'x 722, 726 (11th Cir. 2020) ......................................................................................................................24

Oracle Am., Inc. v. Google, Inc., 750 F.3d 1339, 1359 (Fed. Cir. 2014) .......................................22

Parker v. Google, Inc., 422 F. Supp. 2d 492, 498-99 (E.D. Penn. 2006). .....................................35

Parker v. Paypal, Inc., No. 16-4786, 2017 U.S. Dist. LEXIS 130800, *11 (E.D. Pa. Aug. 16, 2017) .........................................................................................................37

*Paul Morelli Design, Inc. v. Tiffany & Co.*, 200 F.Supp.2d 482 (E.D. Penn. 2002) ..............................................................................28

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1147 (9th Cir,2007) .................................39

Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960) .......................21

Religious Tech. Ctr v. Netcom On-Line Commc'n Servs., Inc., 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995) ...........................................................................................35

Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp., 463 F.3d 478, 483 (6th Cir. 2006) ......................................................................................................22, 23, 25

Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc., 672 F.2d 1095, 1103 (2d Cir. 1982) ........................................................................22

Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003). ...................................................................19

Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 730 (8th Cir. 2002). .......................................23, 25

See Hartmann v. Popcornflix.com LLC, 690 F. Supp. 3d 309, 319 (S.D.N.Y. 2023). ..................................................................................................................36

Sega Enters., Ltd. v. Accolade, Inc., 977 F.2d 1510, 1527 (9th Cir. 1992)...................................24

Shapiro, Bernstein & Co., Inc.  v. H. L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963) ..................................................................................................38, 39

Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 54 (2d Cir. 1936)...................................20

Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 85 (2d Cir. 2004) ....................................24, 25

Stern v. Sinatra, 99 Fed. Appx. 777, 778 (9th Cir. 2004) ............................................................29

Stromback v. New Line Cinema, 384 F.3d 283, 295 (6th Cir. 2004);....................................27, 28

Tanksley v. Daniels, 902 F.3d 165, 173 (3d Cir. 2018). ...................................................... z*passim*

Torah Soft Ltd. v. Drosnin, 136 F. Supp. 2d 276, 287 (S.D.N.Y. 2001)......................................30

TransWestern Pub. Co. LP v. Multimedia, 133 F.3d 773, 776-77 (10th Cir. 1998) ..............23, 25

VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 746 (9th Cir. 2019) ................................................38

Whelan Assocs. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1232 (3d Cir. 1986).....21, 28, 31, 33

Worth v. Selchow & Righter Co., 827 F.2d 569, 572-73 (9th Cir. 1987), ....................................32

YZ Prods., Inc. v. Redbubble, Inc., 545 F. Supp. 3d 756, 763 (N.D. Cal. 2021). ........................36

**Statutes**

17 U.S.C. § 102.............................................................................................................................1

17 U.S.C. § 103.............................................................................................................................1

17 USC § 101.........................................................................................................................18, 19

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' asserted works are compilations or, when headnotes are considered as individual works, derivative works. Plaintiffs have not and cannot prove copyright infringement.  Even if Plaintiffs can demonstrate some level of actual copying, it cannot demonstrate material appropriation because (1) for any compilations, Plaintiffs do not allege ROSS or LegalEase took enough to constitute material appropriation and (2) for any alleged individual works (the headnotes), Plaintiffs have proffered no evidence through side-by-side comparisons that ROSS or LegalEase took the protectable elements of the works.

***

The Copyright Act protects three types of works: creative, derivative, and compiled. See 17 U.S.C. § 102 (creative works); 17 U.S.C. § 103 (derivative and collective works). There is a "hierarchy" amongst these works.  A creative work is provided "the most protection, followed by a derivative work, and finally by a compilation." Intervest Const., Inc. v. Canterbury Est. Homes, Inc., 554 F.3d 914, 921 n.3 (11th Cir. 2008).  When analyzing a particular work, it must be analyzed according to its proper category to determine both (i) the scope of copyright protection, if any, and (ii) whether infringement has occurred based on the protection afforded.

By way of example, Michelangelo's David would have had copyright protection as an original work had the Copyright Act existed when created. David is now in the public domain and is free to be used by anyone. If an artist now took a slab of marble and created an exact copy of Michelangelo's David or even an exact replica of a portion of David, such as his head, there can be no copyright protection because the artist merely recreated what was in public domain. It does not matter how much artistic skill, effort or training it took to recreate the sculpture.

If that same artist sculpted just David's head and added a unique hat, that could

potentially be copyrightable as a derivative work. However, as a derivative work, any copyright would only protect the combination of the head and hat. If another artist copied only David's head and decided to add an earring (but not a hat), the first artist cannot sue for copyright infringement. The second artist only took what was in the public domain, not what the first artist contributed to it.

Finally, if an artist sculpted David's head and combined it with nine other heads from famous statues in the public domain (such as the Thinker) as part of an art series, there might be protection as a compilation of ten heads based on the selection or arrangement of the heads. But to infringe, another artist would have to copy substantially all that compilation. It would not be enough for another artist simply to look at the ten heads and only sculpt David's, as David's head exists in the public domain and anyone is free to copy it.

Plaintiffs have accused ROSS of infringing various aspects of Westlaw (and even, potentially, Westlaw as a whole): they key number system including judicial topics, ██████ headnotes, and ███ judicial opinions. Each must be analyzed as either a creative work, a derivative work, or a compilation because those are the only categories of protection.

The key number system, the judicial topics, and Westlaw can only be compilations, as they are a way of selecting and arranging judicial opinions in a way to allow legal researchers to identify relevant cases based on particular topics and subtopics. Plaintiffs only have a copyright in that specific selection and arrangement.

Unlike a compilation of statute heads which could be creative, the key number system, the judicial topics, and Westlaw are functional and factual, intended to be utilitarian for its users to find the law. This means any copyright is necessarily thin, and ROSS could only have infringed if it copied supersubstantial portions, meaning that it copied substantially all of the

key number system, judicial topics, or Westlaw and created a virtually identical copy. Because ROSS copied, at most 5.5% of the key number system and at most 22.8% of the judicial topics, and ███ judicial opinions out of ███████, as a matter of law, ROSS cannot infringe.

Plaintiffs' theory of infringement of the █████ headnotes is a shifting one, but the headnotes either must be analyzed as (i) individual, factual derivative works of the underlying public domain judicial opinions (because they are intended to convey what a judge wrote) or (ii) as a compilation that includes all headnotes. If the headnotes are copyrighted as a compilation based on the selection and arrangement, ROSS is not accused of taking enough to be infringement of the compilation, as █████ headnotes out of ████████ headnotes (or 0.076%) is not a supersubstantial portion and does not create a virtually identical copy.

If on the other hand, Plaintiffs are asserting that the headnotes are protectable as individual, derivate works, selection and arrangement is immaterial to the analysis, as selection and arrangement only applies to compilations, not individual works. Instead, as derivative works, ROSS cannot infringe because the headnotes either (i) are expired or not original and/or (ii) there was no actual copying of the headnotes or, regardless, ROSS only used the words of the underlying public-domain judicial opinions and/or underlying context to express the ideas contained in the judicial opinions.

As to the █████████ opinions, ROSS cannot be liable for direct infringement because it lacked the requisite volitional intent. LegalEase sent these judicial opinions without ROSS's knowledge or consent and ROSS cannot infringe.

Plaintiffs also assert that ROSS is vicariously and contributorily liable for the infringement of LegalEase. Indirect infringement requires a showing direct infringement by LegalEase, and for the same reasons as ROSS does not infringe, LegalEase does not.

3

Regardless, ROSS is not vicariously liable because it did not have the right and ability to control or supervise LegalEase and/or did financially benefit from the alleged infringements. Similarly, ROSS is not contributorily liable because it did not have knowledge of LegalEase's infringement, and it neither materially contributed nor induced LegalEase to infringe.

## NATURE AND STAGE OF PROCEEDINGS

On August 22, 2024, this Court continued trial. On August 29, 2024, the Court ordered opening summary judgment briefs not exceed 40 pages and be filed by no later than October 1, 2024. D.I. 667.

## STATEMENT OF FACTS

### A.    The Westlaw System—How It Works, Its Pieces, Raison d'etre

1.    Westlaw is an online legal research platform.  Decl. of Warrington Parker ("Parker Decl.")1 Parker Decl. Ex. 2, TR-0432528 at -531. Plaintiffs sell subscriptions to their Westlaw platform for customers to access federal and state judicial opinions, statutes, regulations, as well as other secondary sources. Id.; see also id. Ex. 3, Hoffman Dep. 41:17-42:7. For some judicial opinions, Plaintiffs affix headnotes, key numbers, key topics, and synopses, which Plaintiffs refer to as "Westlaw Content." Parker Decl. Ex. 1, Pls.' Third Suppl. Resp. at 7-9. Each page of a judicial opinion when printed states "Westlaw © [date] Thomson Reuters. No claim to original U.S. Government Works." Parker Decl. Ex. 43, TR-0812245 at -245–247. The judicial opinions and headnotes are organized within the West Key Number System ("WKNS"). Id. at 9. The WKNS indexes cases by alphanumeric numbers and legal topics. Parker Decl. Ex. 4, TR-0036398 at -407.

---

[1] The Parker Declaration is Exhibit A to this motion.

2.      The entirety of what Plaintiffs call "Westlaw Content" is registered as a single compilation. (D.I. 1-1 (Exhibit A to the Complaint); see e.g. id. at 2, 4, 6, 8. The registered work contains 11,205,374,706 data records. Parker Decl. Ex. 5, TR-0026188 at -190. It contains 28,799,500 headnotes, over 100,000 key number subtopics, and 14,005,960 judicial opinions. Parker Decl. Ex. 6, at 8; Parker Decl. Ex. 42, Pls.' Resps. to RFAs at 34; Parker Decl. Ex. 7, Oliver Dep. 188:17-189:5; Parker Decl. Ex. 9, at 25. As of 1998, there were 1,583,000 data records corresponding to judicial opinions. Parker Decl. Ex. 10, TR-0003138 at -140.

3.      From its inception in the 1880s, the purpose of key numbers, headnotes, and the other materials that are termed Westlaw Content has been to assist lawyers in finding judicial opinions. Parker Decl. Ex. 11, TR-0179843; Parker Decl. Ex. 12, TR-0179838; Richard Leiter Decl. ¶ 18. West determined that the best way to achieve this was to organize cases in what is now called the key number system using the language of the law. Id. West organized cases so that lawyers could "look for precedents relating to specific subjects under heads to which they have become accustomed" because "any philosophical analysis of the law would be inapplicable to a digest . . . ."   Leiter Decl. ¶ 18 (citing West Publishing Co., American Digest Main Heads and Subdivisions of Classification Scheme: A Logical Analysis of the Law for the Use of Indexers and Digest Makers at iii (4th ed. 1904).

4.      What was true in the 19th Century remains true today. Parker Decl. Ex. 7, Oliver Dep. 203:12-18; Parker Decl. Ex. 13, Lindberg Dep. 116:14-119:6. Key numbers consist of legal topics arranged in a hierarchy starting with a topic—there are approximately ███████ numbers. Parker Decl. Ex. 27 TR-0523445 at -451. ████████████████████████ ███████ Parker Decl. Ex. 7, 202:7-203:10, 204:16-205:5. The topics are dictated by the language of the law. They include "Criminal Law," "Property," "Administrative Law and

Procedure." Parker Decl. Ex. 8, TR-0179847. ████████████████████

████████████████████████ Parker Decl. Ex. 7, Oliver Dep. 202:21-203:2, 204:19-22,

204:24-25 (████████████████████████████████████████

████ see also id. 202:7-203:10, 203:22-205:5. Their purpose is to lawyers to find cases. Parker

Decl. Ex. 7, Oliver Dep. 203:22-205:5 Therefore, the terms used in the key number system are

terms lawyers are familiar with. Id. 205:6-21. █████████████████████. Parker

Decl. Ex. 7, Oliver Dep. 206:13-25 (noting example); see also Ex. C, Leiter Decl. ⊩ 26.

5.      Headnotes have a similar purpose. ████████████████████████████

██████████████████████████ Parker Decl. Ex. 7, Oliver Dep. 32:21-25.[2]

When creating headnotes, ██████████████████████████████

██████████████████ Parker Decl. Ex. 14, TR-0002864 at -872. The number one rule of the

███████████████████████████████████████████████████

██████████████████ Parker Decl. Ex. 15, TR-0040273 at -280; see also Parker

Decl. Ex. 14, TR-0002864 at -872 ████████████████████████████████);

Parker Decl. Ex. 16, TRCC-00686613 at -627.

**B.      ROSS Intelligence's Natural Language Search Engine.**

6.      ROSS Intelligence Inc. is a startup founded in 2014 to develop a natural language

search engine that relied on machine learning and artificial intelligence. ROSS wanted to provide

legal research that was less expensive. Ex. B, Ovbiagele Decl. Ex. 1, ROSS-010129852 at -852.

ROSS also did not want human intermediated content to have any impact on how its tool

operated. Ovbiagele Decl. ¶ 5. Rather, ROSS built the tool so that the search results were driven

entirely by a machine-based analysis of the judicial text. See Ovbiagele Decl. ¶¶ 4-5, 12-20

---

[2] Synopses perform the same function. Parker Decl. Ex. 17, TRCC-00631392 at -395.

(describing how ROSS generated features, and used machine-learning tools to develop its ranking algorithm); Joseph Marks Decl. ¶¶ 8-10.

7.      To develop its natural language search engine, ROSS needed a large and diverse body of legal questions and answers that were verbatim quotes of judicial opinions.  Ovbiagele Decl. ¶ 21; Ex. E, Decl. of Joseph Marks ("Marks Decl.), at ¶ 10.  ROSS obtained its collection of legal question and answer pairs in the form of memoranda. See e.g., Ovbiagele Decl. Ex. 2, ROSS-000176800 (sample original memo); id., Ex. 3, ROSS-003299205 (sample bulk memo).

8.      On October 15, 2015, ROSS entered into a Master Service Agreement ("MSA") with LegalEase Solutions, LLC, a legal outsource company that provides legal research services to third-parties. Ovbiagele Decl. Ex. 4, ROSS-003411169 at -175; Parker Decl. Ex. 18, Hafeez 2018 Dep. 33:23- 34:21; see also Parker Decl. Ex. 19, Tario Dep. 80:19-81:19; Parker Decl. Ex. 3, Hoffman Dep. at 32:22-33:15; 34:12-23; Parker Decl. Ex. 20, TR-0908413; Parker Decl. Ex. 21, TR-0037754; Parker Decl. Ex. 13, Lindberg Dep. at 31:11-20; Parker Decl. Ex. 22, Martens Dep. 232:23-233:11 ███████████████████████████████████ The MSA defined ROSS and LegalEase's relationship, and LegalEase represented and warranted that "█ ███████████████████████████████████ Ovbiagele Decl. Ex. 4, ROSS-003411169 at -175. The projects by which ROSS obtained the memoranda were known as the "original memo project" and the "bulk memo project." See Parker Decl., Ex. 23, Dep. of Tomas van der Heijden 308:11-13, 311:2-5; Parker Decl., Ex. 24, Ovbiagele Dep. at 84:17-21; Ovbiagele Decl. Ex. 5, ROSS-000251670 (Statement of Work for Original memo Project); see

also Parker Decl. Ex. 23, van der Heijden Dep. 321:7-322:3; Ovbiagele Decl. Ex. 6, ROSS-003332368 (Statement of Work II – Bulk Memo Project).

C.    **The "Original Memo" Project - October 2015 to October 2017**

9.    ROSS contacted LegalEase in September 2015 about the creation of training data, or legal memos, stating that it wanted LegalEase ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆  See Ovbiagele Decl., Ex. 7, ROSS-010164290 (emphasis added). Beginning in October 2015, LegalEase prepared legal answers to questions ROSS provided to LegalEase. Parker Decl., Ex. 25, Whitehead Dep. 33:12-22; Parker Decl. Ex. 24, Ovbiagele Dep. 83:20-22.



▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Parker Decl. Ex. 25, Whitehead Dep. 60:10-19, 60:22-61:8. The format for the original memos contained one legal question, a short answer, and a long answer. Parker Decl. Ex. 26, Dep. of Tariq Hafeez 342:7-24.

D.    **The "Bulk Memo Project" – October 2017 to December 2017**

10.    In 2017, ROSS needed additional training data. On September 15, 2017, ROSS and LegalEase entered into a new Statement of Work ("SOW") with LegalEase to create additional memos (the "Bulk Memo Project"). Ovbiagele Decl. Ex. 6, ROSS-003332368; Parker Decl. Ex. 23, van der Heijden Dep. at 321:7-322:7. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Parker Decl. Ex. 26, Hafeez Dep. Tr. 88:13-18; Parker Decl. Ex. 28, Cahn Dep. at 25:2-21. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆. Id., Ex. 18, Hafeez 2018 Dep. 124:10-11.

11.    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆  Parker Decl. Ex. 28, Cahn Dep. at 75:12-20.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆  Parker Decl. Ex. 25, Whitehead Dep. 82:12-14.

1.    **The Format of the Bulk Memos**

12.     The SOW governed the scope of LegalEase's work. Ovbiagele Decl. Ex. 6, ROSS-003332368. It specified the format of the bulk memos. Each memo was to contain one legal question and four to six quotations from a judicial opinion that were answers to that question. See e.g., id. Other than providing the memo-format, the SOW does not include any other specifics regarding LegalEase's obligations or duties as it relates to drafting bulk memos except that it incorporated the IP provision of the MSA. Id.; see also Parker Decl. Ex. 26, Hafeez Dep. 48:11-17 (explaining ROSS's only requirement of LegalEase was for it to "provide [ROSS] with work that was in accordance with the scope of work.").

13.     As for the content of the memos, ███████████████████████████████ ████████  See e.g., Ovbiagele Decl. Ex. 3, ROSS-003299205; Ovbiagele Decl. Ex. 6, ROSS-003332368. The answers were quotes precisely as they appear in judicial opinions. Ovbiagele Decl. Ex. 3, ROSS-003299205 (listing verbatim paragraphs from judicial opinions under "Case" 1 to 5); Ovbiagele Decl. Ex. 6, ROSS-003332368 (section 5.2 states that "[e]ach Memo shall include . . . Quotes," and the definition of Quotes at section 1.4 is "an independent paragraph except from" a judicial opinion). ROSS needed the answers to be quotations from judicial opinions because the output of ROSS' legal search tool is quotations from judicial opinions. See Ovbiagele Decl. Ex. 8, ROSS-023179081 at -087.

14.     Each quote was given a relevancy rating—great, good, topical and irrelevant. Ovbiagele Decl. Ex. 3, ROSS-003299205; Ovbiagele Decl. Ex. 6, ROSS-003332368 at -368 to -369; Parker Decl. Ex. 24, Ovbiagele Dep. 50:1-51:12, 115:18-22, 123:17-124:13. A "great" quote was "one that contain[ed] an answer to all essential elements" of the legal research question. Ovbiagele Decl. Ex. 6, ROSS-003332368 at -368. (section 5.3); Parker Decl. Ex. 28, Cahn Dep. 168:7-19; Parker Decl. Ex. 29, TR-0178604.

2.   **LegalEase decided how to prepare the memos, including whether and how to use Westlaw**

15.   ███████████████████████████████████████, Parker Decl. Ex. 24, Ovbiagele Dep. 75:12-22; ██████████████████████████████████████████

████████ Parker Decl. Ex. 26, Hafeez Dep. 135:16-21; Parker Decl. Ex. 24, Ovbiagele Dep. 67:6-14 ██████████████████████████████████████████

███████████████████████████████████████████ Parker Decl. Ex. 24, Ovbiagele Dep. 142:19-24 ████████████████████████████████

16.   ████████████████████████████. Parker Decl. Ex. 25, Whitehead Dep., at 43:2-5; Parker Decl. Ex. 26, Hafeez Dep. 185:8-16, 53:24-54:4 ██████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████ id. at 135:5-15; Parker Decl. Ex. 30, Arruda Dep. 271:18-272:5; 286:8-13.3

████████████████████████████████████████████

██████████ Parker Decl. Ex. 25, Whitehead Dep. 60:10-19, 62:3-24 (████████████

████████████████████████████████), 91:22-92:10. ████████████

███████████████████████ Parker Decl. Ex. 26, Hafeez Dep. at 226:20-227:12 ████

████████████████████████████████████████████

██████; see also Parker Decl. Ex. 25, Whitehead Dep. 107:2-108:9, 129:24-130:6.

17.   ███████████████████████████████████████

████████████████████████████████████████████

---

3 ████████████████████████████████. Parker Decl. Ex. 26, Hafeez Dep. Tr. 321:3-19. ██████████████████████████████████ Parker Decl. Ex. 32, TR-002808 at -808 (section 1.a.(iii)); D.I. 16, 16-1, Ex. 1.

███████████████████████████████████████████████████. See Parker Decl. Ex. 25,

Whitehead Dep. 78:6-9; 92:16-93:25; 198:13-20.

18.   ████████████████████████████████████████████████████

████████████████████████████████████████████████. Parker

Decl. Ex. 26, Hafeez Dep. 99:9-102:1 (describing the tool), 266:6-13 (██████████████

██l); Parker Decl. Ex. 18, Hafeez 2018 Dep. 129:4-132:19 (██████████); id. 134:15-18;

135:12-16 (███████████████████. ████████████████████████

██████████████████████ Id. 139:3-140:13.

19.   LegalEase prepared the memos as word documents. Parker Decl. Ex. 23, van der

Heijden Dep. 133:7-19. The filenames for these word documents did not include key numbers or

any tangible representation of the key number system. Parker Decl. Ex. 31, Dep. of Barbara

Frederiksen-Cross 343:6-21;  Decl. of Barbara Frederiksen-Cross ("BFC Decl.")  ¶¶ 26-27.

████████████████████████████████████████████████████████

Ex. 25, Whitehead Dep. 101:2-10; 107:2-108:9; see also Parker Decl. Ex. 24, Ovbiagele Dep.

132:7-15 (████████████████████████████).

**3.   LegalEase drafted questions often using the exact same language as
the judicial opinion**

20.   ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Parker Decl. Ex. 33, TR-0045731

at -734 to -741; Parker Decl. Ex. 25, Whitehead Dep. 123:7-24. ████████████████

████████████████████████████████████████████████████

██████████ Parker Decl. Ex. 27, TR-0523445 at -451;  BFC Decl., ¶¶ 23-25. There was a wide

variance in the dispersal of topics, subtopics and key numbers traversed. There was no

systematic effort to create memos that met specific organizational criteria related to the key

number system. Parker Decl. Ex. 29, TR-0178604; BFC Decl. ¶¶ 22-25. Topics were used at

random with only a few memos created for some topics and a larger number of memos created

for others. Parker Decl. Ex. 34, TR-0178604; see also Ex. 28, Cahn Dep. 108:14-109:15; Ex. E,

Marks Decl., ¶¶ 31, 34.

21.     The contract attorney then drafted a question based on the judicial opinion just

discovered. Id. While the question drafting started with the headnote, the contract attorneys ███

██████████████████ Parker Decl. Ex. 28, Cahn Dep. 64:22-65:13. Also, the contract

attorneys were directed to not copy the headnotes. The "Best Practices Guide" that contract

attorneys followed for memo drafting warned that █████████████████████████████

██████████████████████" Parker Decl. Ex. 33, TR-0045731 at -734. ███

████████████████████████████████ See Parker Decl. Ex. 26,

Hafeez Dep. 63:6-25, 78:1-17, 84:20-85:9, 228:8-24; Ex. 35, R-LEGALEASE-00050673 at -

673; Parker Decl. Ex. 25, Whitehead Dep. 127:5-18; Parker Decl. Ex. 28, Cahn Dep. 62:21-

63:21, 64:22-65:13; Parker Decl. Ex. 36, TR-0047926 at -926 (LegalEase stating that ██████

███████████████████████████████████████████████

██████████████████████████

22.     ██████████████████████████████████

██████████████. ROSS-003332368 at -368 (section 5.2). █████████████████

█████████████████████████████. Id. at -368 to –369 (sections 5.3 to 5.6);

id. Ex. 28, Cahn. Dep. 132:23-133:7. █████████████████████████████

███████████████████████████████████████████████

███. Id. Ex. 33, TR-0045731 at -742-743.

23. ██████████████████████████████████████

████████████████. Parker Decl. Ex. 28 Cahn Dep. 69:8-15.███

████████████████████████████. Id. Ex. 28, 69:8-71:14.

**4.    The bulk memos, including the metadata, do not contain any copyrighted content.**

24.    The memos prepared as part of the Bulk Memo Project, including the metadata, did not include key numbers, case synopses, any tangible representation of the key number system, or any other "editorial enhancements" as Plaintiffs define the term. Ovbiagele Decl. Ex. 9, ROSS-000319308; Parker Decl. Ex. 28, Cahn Dep. 125:7-12 ████████████████

█████████"); BFC Decl. ¶ 27; Marks Decl., ¶ 34. This is apparent on the face of the memos. See, e.g., Ovbiagele Decl. Ex. 9, ROSS-000319308. ████████████████████

███████████████████████████████████. Ex. D, Ovbiagele Decl. ¶ 19; see also BFC Decl. ¶ 27. ███████

███████████████████████████████████████████

████████████████████████████████. Id.; Ovbiagele Decl. Ex. 10, ROSS-010128683. ███████████████████

█████████ Ovbiagele Decl. ¶ 7; Marks ¶¶ 12, 17.

**5.    ROSS did not use the actual text of the memos to train its machine-learning model.**

25. ████████████████████████████████

████████████████████████████████████

███████████████████████ Ovbiagele Decl. ¶¶ 13-17, 20; Marks Decl. ¶ 14-15, 20, 29. ███████████. Ovbiagele Decl.

¶ 17; Marks Decl.  ¶ 20. ███████████████████████████████

██████████████████. Ovbiagele Decl. ¶ 26; Marks Decl. ¶ 17.

26.    ROSS programmatically transformed each one of its remaining question-answer pairs into █ separate features. Ovbiagele Decl. ¶ 18; Marks Decl. ¶¶ 20-21.[4] Most of these features generated a number that reflected something about the relationship between the question and answer. Ovbiagele Decl. ¶ 17; Marks Decl. ¶¶ 21, 23. ROSS did not use the text of the question-answer pairs or the memos once the data was featurized. Ovbiagele Decl. ¶ 20.  They were discarded. Id.; Marks Decl. ¶ 33.[5]

### E.    The Classifier Project – December 2017

#### 1.    The █ Legal Topics

27.    ROSS ran experiments to determine whether it should "classify" cases, i.e., label cases under legal categories such as Criminal Law or Civil Procedure. ROSS thought it might improve the search process. Ovbiagele Decl., ¶¶ 27-28; Parker Decl. Ex. 23, van der Heijden Dep. 415:14-21. Labeling the cases did not speed up the process. ROSS abandoned the effort. See Ex. D, Ovbiagele Decl. ¶ 31; Parker Decl. Ex. 23, van der Heijden Dep. 415:22-416:10.

28.    In December 2017, LegalEase provided to ROSS a list of █ legal topics. These topics represented █ of the approximately 400 top line topics of the key number system. BFC Decl. ¶ 24; Parker Decl., Ex. 8, TR-0179847. ROSS then created its own list of 38 legal topics. Ovbiagele Decl.  ¶ 28. ROSS's list of 38 topics was premised on "how practice areas are

---

[4] ROSS used a different set of features to train its search tool than Plaintiffs used to train their search tools. Marks Decl. ¶ 26.
[5] There is no evidence that LegalEase maintained the memos—in fact they were directed to destroy them—or the results of any of the searches required to create the memos. ROSS-003332368 at -370 to -371(section 13).

generally defined within the US legal market," not on the list from LegalEase. Parker Decl. Ex. 37, van der Heijden Jan. 28, 2020 Dep. 76:15-19.6

29.     Because ROSS decided not to classify cases, the classification work was never publicly available. Parker Decl. Ex. 24, Ovbiagele Dep. 131:8-17 (█████████████████████ █████████████████████████████████); 133:5-6 ███████████████ █████████████████████████); Ex. D, Ovbiagele Decl. ¶ 31.

**2.     █████ Judicial Opinions.**

30.     In December 2017, LegalEase also sent ROSS approximately ████ judicial opinions containing headnotes, key numbers, and other claimed copyrighted content. Ex. D, Ovbiagele Decl. ¶ 29-30. ██████████████s. Ovbiagele Decl. Ex. 11, ROSS-000197949 at -949-950. ROSS was only interested in the judicial text and did not want, or need, headnotes, key numbers or other extraneous data and asked LegalEase to not provide it with judicial opinions that contained anything other than raw judicial text. Id. at -949 ("██████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████"). ████████████████████████ █████████████████████████████████████████████████████████ ██████████████████████████████████████." Parker Decl. Ex. 23, van der Heijden Dep. 135:23-136:23. ███████████████████████████████████████████████ ████████████. Ex. D, Ovbiagele Decl. ¶ 30 .

**F.     Plaintiffs' Alleged Copyrights and Infringement Allegations**

---

6 Exhibit 10 to the Declaration of Jimoh Ovbiagele date September 30, 2024 shows the ███ █████████ and the 38 topics that ROSS considered using for this classification work.

31.     On August 1, 2022, Plaintiffs identified the specific works infringed. D.I. 201, at 1; Parker Decl. Ex. 38, Dr. Jonathan Krein Expert Rep., Aug. 1, 2022; Parker Decl. Ex. 1, Pls.' Third Suppl. Resp. to Interrog. No. 1 at 69-71 (Aug. 22, 2022); see also Parker Decl. Ex. 39, Suppl. Expert Report of Dr. Jonathan Krein, dated August 11, 2024.

### 1.     Direct Infringement Theories as to ROSS

32.     Plaintiffs allege the following direct infringement theories as it relates to the bulk memos: ( ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████ Parker Decl. Ex. 1, Third Suppl. Resp. to Interrog. No. 1 at 70-71. Plaintiffs' expert, Dr. Krein, includes in his report a list of ██████ headnote-to-case-passage relationships, key numbers, and key topics that he claims were copied. Parker Decl. Ex. 39, Suppl. Expert Report of Dr. Jonathan Krein, dated August 11, 2024.

33.     As to the headnotes Dr. Krein admits that he only manually reviewed ███████████ ████████████████████████████. Parker Decl. Ex. 40, Krein Reply Report, n.170 & Appendices C and E. Dr. Krein admits that at ████████████████████ ███████████████████ headnotes were not copied. Id. ¶ 149.

34.     Plaintiffs also allege ROSS copied "████████████████████████████ judicial  opinions. Parker Decl. Ex. 1, Third Suppl. Resp. to Interrog. No. 1 at 43-44, 71.

### 2.     Direct Infringement Theories as to LegalEase

35.     Plaintiffs allege LegalEase ████████████████████████████ █████████████████████████████████████████████████ ████████████████████████████████. Id. at 52. Plaintiffs contend that after ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████" Id. at 52. However, except for the ████████████ and the ████████████ that Plaintiffs claim ROSS infringed, Plaintiffs did not identify the headnotes or key numbers at issue with regard to its direct infringement theory against LegalEase or quantify those numbers. Id.

### 3. Indirect Infringement Theories as to ROSS

36.    Plaintiffs state that ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████" Id., at 67-68. Plaintiffs state that with respect to creating the bulk memos for ROSS, "████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████ Id. at 70-71.

37.    Throughout this litigation, Plaintiffs have continued to pivot and change their copyright theories, more recently adding that ROSS infringed Westlaw. See, e.g., Parker Decl. Ex. 41, Pretrial Conf. Tr., Aug. 6, 2024, at 29:19-20 ("████████████████████████

████████████████████).

### ARGUMENT

## I.    Analytical Framework for Direct Infringement

To demonstrate copyright infringement, Plaintiffs must prove both: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002).

## A.   Originality

A work is original if "the author contributed something more than a 'merely trivial' variation, something 'recognizably his own.'" *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992). Creative works are afforded the highest protection because they represent the original creative expression of an author, and therefore originality is typically easy to demonstrate. *Intervest*, 554 F.3d at 921 n.3. None of Plaintiffs' works are creative works because they are derivative of the words in judicial opinions or the works are compilations. *See Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 36 (2d Cir. 2021) aff'd  U.S. 508 (2023) (discussing the distinction between an "original creative work" and a derivative work).

"A 'derivative work' is a work based upon one or more preexisting works." 17 USC § 101. "A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work'." *Id.* To demonstrate originality for a derivative work, a plaintiff must demonstrate that compared to the work from which it was derived an author "contributed something more than a merely trivial variation, something recognizably his own." *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976); *see also Gerlach-Barklow Co. v. Morris & Bendien, Inc.*, 23 F.2d 159, 161 (2d Cir. 1927) ("[W]hile a copy of something in the public domain will not, if it be merely a copy, support a copyright, a distinguishable variation will. . . .").

A compilation is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. The term "compilation"

includes collective works, which is "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." Id.  When evaluating the originality of a compilation, a court must determine whether the entire compilation, as a whole, is original based on the unique selection, arrangement, or coordination of the individual elements aggregated together. See Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc., 945 F.2d 509, 514 (2d Cir. 1991). That is, "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003). To constitute a compilation, there must be a combination of more than three elements. Matthew Bender & Co. v. West Publ'g Co., 158 F.3d 674, 682-83 (2d Cir. 1998) ("[S]election from among two or three options, or of options that have been selected countless times before and have become typical, is insufficient."). Thus, there can be no valid copyright as a compilation in a work when alleged selection or arrangement only includes a single unprotectable, public domain element.[7]

## B.    Unauthorized Copying

Unauthorized copying "comprises two (frequently conflated) components: actual copying and material appropriation of the copyrighted work." Tanksley v. Daniels, 902 F.3d 165, 173 (3d Cir. 2018). That is, infringement requires proof (1) "that the defendant had access to the allegedly infringed copyrighted work" and (2) that the allegedly infringing work is "substantially similar to the copyrighted work." D        am Things From Denmark v. Russ Berrie and Co., Inc., 290 F.3d

---

[7] This analysis is relevant to the ███████████████ because to the extent Plaintiffs contend they are protectable based on selection or arrangement, the originality must be the selection and arrangement of a work as a whole (i.e., the ███████████ as a compilation). No individual headnote is protectable based solely on selection or arrangement.

548, 561 (3d Cir. 2002). "The conceptual distinction between actual copying and material appropriation is foundational to copyright law because not all instances of actual copying give rise to liability, and, conversely, without proof of actual copying the amount of similarity between two works is immaterial." Tanksley, 902 F.3d at 173. Therefore, Plaintiffs must demonstrate both elements actual copying and material appropriation to prevail. Id. (concluding that there was no proof of material appropriation and deciding that there was no need to address actual copying).

### 1.      Actual Copying

"Actual copying focuses on whether the defendant did, in fact, use the copyrighted work in creating his own." Tanksley, 902 F.3d at 173. Copying can be proved either by "direct evidence that defendants gained access to plaintiffs' work" or indirect evidence that "there [was] a 'reasonable possibility of access.'" Cottrill v. Spears, 87 Fed. Appx. 803, 805 (3d Cir. 2004) (quoting Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir. 1988)). The "access must be meaningful," as "[p]laintiffs must show that defendants had an 'opportunity to view or to copy his work.'" Id. at 806 (quoting Moore, 972 F.2d at 942). "Access must be more than a bare possibility and may not be inferred through speculation or conjecture." Gaste, 863 F.2d at 1066.

### 2.      Material Appropriation

In demonstrating infringement, "[a]ctual copying alone is insufficient . . . because a copyright only protects the holder's particular creative expression, not his ideas." Tanksley, 902 F.3d at 174. Indeed, "[a]t a certain level, copying is perfectly permissible, even expected." Id.; see also Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 54 (2d Cir. 1936) (L. Hand, J.). Even if actual copying is demonstrated, the test is whether "a 'lay-observer' would believe that the copying was of protectible aspects of the copyrighted work." Dam Things, 290 F.3d at 562 (emphasis added); see also Tanksley, 902 F.3d at 175. Put another way, the test is whether "the ordinary observer, unless he set out to detect the disparities [in the two works], would be disposed

to overlook them, and regard their aesthetic appeal as the same." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960) (J. Hand). To determine this, "the trier of fact performs a side-by-side comparison of the works and, excluding any unprotectable elements, assesses whether the two works are substantially similar." Tanksley, 902 F.3d at 174.8 "Other filters, e.g., scènes à faire, total concept and feel, etc., while helpful, are merely tools to assist the trier of fact in reaching a proper conclusion." Id.

 Material appropriation in the context of a derivative work requires the factfinder to remove the unprotectable elements from the accused work—which includes any public domain materials in the derivative work—and filter out other elements based on merger and scènes à faire, then determine if the accused work incorporates the protected elements of the asserted work. Tanksley, 902 F.3d at 175; Grondin v. Fanatics, Inc., No. 22-1946, 2023 U.S. Dist. LEXIS 4538, at *5 (E.D. Pa. Jan. 10, 2023) (granting a motion to dismiss because material appropriation of a derivative could not be found after excluding unprotectable elements).

 When determining whether the ROSS materially misappropriated the protectable elements, expert testimony is impermissible, as "the fact-finder must decide without the aid of expert testimony, but with the perspective of the 'lay observer,' whether the copying was 'illicit,' or 'an unlawful appropriation' of the copyrighted work." Whelan Assocs. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1232 (3d Cir. 1986).

 The filtering analysis for material appropriation includes accounting for merger and scènes à faire. Tanksley, 902 F.3d at 174. Where there is only one or one of a few ways to express and

---

8 As is noted below, because the copyrights at issue here are thin, the test is virtual identity and not "substantial similarity." In either case, a side-by-side comparison is necessary. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010) (determining the expression for fashion dolls was "highly constrained" and asserted dolls must be compared for virtual identity to any accused dolls).

idea, the merger doctrine bars infringement to prevent a monopoly by the copyright owner over a particular idea. Educ. Testing Services v. Katzman, 793 F.2d 533, 539 (3d Cir. 1986) ("When the idea and the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying 'art.'"); Oracle Am., Inc. v. Google, Inc., 750 F.3d 1339, 1359 (Fed. Cir. 2014) ("[W]hen there are a limited number of ways to express an idea, the idea is said to 'merge' with its expression, and the expression becomes unprotected."). Similarly, scènes à faire are elements that are, "as a practical matter indispensable, or at least standard, in the treatment of a given topic." Atari, Inc. v. N. Am. Phillips Consumer Elecs. Corp., 672 F.2d 607, 616 (7th Cir. 1982). Scènes à faire "follow naturally from a work's theme rather than from an author's creativity." MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 194 (2d Cir. 2004). There can be no infringement if there is merger or the scènes à faire are required for the expression of an idea, because "there should be no monopoly on the underlying unprotectable idea." ETS-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1082 (9th Cir. 2000).[9]

Material appropriation is analyzed slightly differently in the context of a compilation, as compilations are only protected as compilation, so infringement can be found only if there is substantial similarity in selection, arrangement, or coordination of the accused work and the entire asserted compilation. See, e.g., Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc., 672 F.2d 1095, 1103 (2d Cir. 1982); Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp., 463 F.3d 478, 483 (6th Cir. 2006). The compilation must be analyzed as a whole for infringement, not based on any purported individual works that are included in the compilation. Bryant v. Media Right Prods., Inc., 603 F.3d 135, 140–41 (2d Cir. 2010) (noting that "[a]n album

---

[9] The Ninth Circuit notes that merger and scènes à faire are affirmative defenses to infringement. *ETS-Hokin*, 255 F.3d at 1082. However, as discussed in *Tanksley*, in the Third Circuit, they are considered as part of the filtering process.  902 F.3d at 174.

falls within the Act's expansive definition of compilation" and that "infringement of an album should result in only one statutory damage award. The fact that each song may have received a separate copyright is irrelevant to this analysis").

In assessing a compilation, "infringement cannot be based on a showing that only a part of the work has been copied . . . [instead] infringement should not be found in the absence of 'bodily appropriation of expression,' or 'unauthorized use of substantially the entire item.'" Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc., 893 F.3d 1176, 1186 (9th Cir. 2018); see also Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 730 (8th Cir. 2002). When the compilation is "thin," such as compilations compiling factual works, there must be "supersubstantial" copying, or almost the entire work. TransWestern Pub. Co. LP v. Multimedia, 133 F.3d 773, 776-77 (10th Cir. 1998); 4 Nimmer on Copyright § 13.03[A][4] (2004) (noting that supersubstantial similarity means virtual identity).

In assessing infringement of a compilation, courts have found that copying even up to 80% of the work is not infringement. Experian, 893 F.3d at 1186 (affirming grant of summary judgment of noninfringement of a compilation when defendant's database comprised at most 80 percent of plaintiff's copyrighted compilation); Ross, 463 F.3d at 483 (cases usually require substantial "verbatim copying" and finding 61% copying insufficient); Schoolhouse, 275 F.3d at 729-30 (74% copied of a compilation not sufficient).

## II.    The Key Number System Was Not Infringed

While the key number system may have a copyright based on the overall compilation that includes each of the key numbers and their overarching topics, Plaintiffs only identified ██████ ████████████████████████████████████. Parker Decl. Ex. 38, Krein Opening Rep. at ¶ 113; Parker Decl. Ex. 39, at Appendix B; see also Ex. C, BFC Decl. ¶¶ 23, 25.  As a matter of law, Plaintiffs cannot demonstrate that ROSS copied sufficient portions of the key numbers to

constitute infringement, Section II.A., and the alleged copying of the top line topics cannot be infringing conduct.  Section II.B.

A.      **LegalEase and ROSS Do Not Infringe The Key Number System Compilation**

As this Court previously found, the key number system is copyrightable only as a compilation. D.I. 547 at 4; Matthew Bender & Co. v. W. Publ'g Co., 1997 WL 266972, at *2 (S.D.N.Y. May 19, 1997), aff'd, 158 F.3d 674 (2d Cir. 1998) (noting that "West's compilation copyright protects its arrangement of cases, its indices, its headnotes and its selection of cases for publication"); see also Affiliated Music Publishers, Inc. v. Ashley Publ'ns, Inc., 197 F. Supp. 17, 18 (S.D.N.Y. 1961) (a book containing the sheet music for 142 musical selections in the public domain was a compilation); Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 85 (2d Cir. 2004) (same regarding collection of poems).

As a compilation, the copyright in the key number system is "thin," protecting only the specific selection or arrangement. Matthew Bender, 158 F.3d 693 at 707 ("West has a thin copyright in its compilations."); see also Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc., 499 U.S. 340, 349); Off Lease Only, Inc. v. Lakeland Motors, LLC, 825 F. App'x 722, 726 (11th Cir. 2020). The copyright protection afforded the Westlaw system is thin for the additional reason that it is intentionally and purposely constrained by the words of the law and judicial opinions to serve a functional and utilitarian purpose: to allow the location of judicial opinions. Sega Enters., Ltd. v. Accolade, Inc., 977 F.2d 1510, 1527 (9th Cir. 1992) ("[I]f a work is largely functional, it receives only weak protection.").

Plaintiffs have not accused ROSS or LegalEase of taking a supersubstantial (or even substantial) portion of the key number system.  It has not alleged that ROSS or LegalEase made a virtually identical copy. There is no dispute that Plaintiffs assert that LegalEase gave ROSS and ROSS copied, ███████████████████████████████████ that make up the

key number system. See Statement of Facts ("SOF") at ¶ 20. This is only, at most, 5.4% of the entire key number system.10 As a matter of law, taking ███████████ topics and subtopics covering varying areas of law cannot be "bodily appropriation of expression" or "unauthorized use of substantially the entire" key number system that includes over ███████████ and subtopics. Experian, 893 F.3d at 1186-88. Nor can it be supersubstantial copying of the entire compilation or considered a virtually identical copy. See TransWestern, 133 F.3d at 776-77; Experian, 893 F.3d at 1186; Ross, Brovins & Oehmke, 463 F.3d at 483; Schoolhouse, 275 F.3d at 729-30.

### B.  LegalEase and ROSS Do Not Infringe The Judicial Topics

To the extent that Plaintiffs contend LegalEase and ROSS specifically infringed the ███████ level judicial topics that are part of the key number compilation, LegalEase and ROSS did not take enough to infringe.

Like the key number system as a whole, the judicial topics are only protected as a compilation based on the selection and arrangement of the topics because they are merely common legal words which, on their own, are not protectable, but may be protectable in the aggregate. See Matthew Bender, 1997 WL 266972, at *2; Affiliated Music, 197 F. Supp. at 18; Silverstein, 368 F.3d at 85.

There were approximately ███████████ at the time ROSS and LegalEase allegedly copied 91. SOF at ¶ 26.  ROSS did not copy a sufficient number of topics to infringe.  See Section II.A. (citing cases).

Also, the judicial topics are subject to merger—there is no way to express areas of law without using terms such as Civil Procedure.  See Educ. Testing Servs., 793 F.2d at 539; Cont'l

---

10 As noted, Plaintiffs did not identify the specific headnotes or key numbers at issue with regard to its claims of direct infringement by LegalEase.  SOF at ¶ 33.

Cas. Co. v. Hulbert T. E. Beardsley, 253 F.2d 702, 706 (2d Cir. 1958) (finding no infringement because a "specific language in forms and documents may be so essential to accomplish a desired result and so integrated with the use of a legal or commercial conception").

As a compilation of judicial topics as a whole, they are also scènes à faire, because the judicial topics are, "as a practical matter indispensable, or at least standard, in the treatment of a given topic." Atari, 672 F.2d at 616. Plaintiffs do not and cannot own the idea of organizing cases or case passages by judicial topics, anyone wishing to organize specific case topics underneath a broad judicial topic would need to use this language. ETS-Hokin, 255 F.3d at 1082.

### III.    As compilations, The headnotes are not infringed

With respect to the ███████████ that Plaintiffs assert that ROSS and LegalEase infringe, Plaintiffs have proffered no evidence of actual copying.11

If this is not a case about matching language, then headnotes can only be protected as a compilation.  As noted above, the number allegedly copied—███████████ headnotes (or 0.076%)—is insufficient to show infringement. See Section II.A (citing cases).

Moreover, to the extent Plaintiffs contend that ROSS copied the "relationship" or "link" between the headnotes and the judicial opinions, to the extent there is any protection in the functional "link" between the two (SOF ¶ 30), it would be part of the ███████████ compilation which ROSS does not infringe because it did not take a supersubstantial portion if

---

11 Plaintiffs stated during the Pretrial Conference on August 6, 2024 that "[t]his isn't a case about matching language." Parker Decl. Ex. 41, Pretrial Conf. Tr., Aug. 6, 2024. at 34:10-11. This admission means that the headnotes are not to be considered individual works eligible for copyright protection as derivative works based on their contents, but rather the headnotes should be considered solely as part of a compilation because infringing a derivative works *requires* comparing the language between the accused work, the asserted work, and any works in the public domain. *Tanksley*, 902 F.3d at 174. As such, an individual analysis of each headnote should not be required and ROSS should be entitled to summary judgment that it does not infringe the headnotes as individual works.

only copying ███ "links." Experian, 893 F.3d at 1186. However, this theory suffers additional flaws. The link between a judicial opinion and a headnote is an idea that connects a researcher between the actual text of the judicial opinion and an excerpt of the judicial opinion. This means that the expression, the "link," is subject to merger and scènes à faire, as anyone wishing to express the idea of the connection between a passage and the judicial text would need to use the same expression. Educ. Testing Servs., 793 F.2d at 539; Atari, 672 F.2d at 616.

## IV.      As derivative works, plaintiffs have not proven that headnotes are infringed

If this case is about matching the language of headnotes, then headnotes are derivative works of judicial opinions that are already in the public domain. See Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99, 104-05 (2d Cir. 1951) (mezzotint reproductions of public domain paintings were derivative works); Allegrini v. De Angelis, 59 F. Supp. 248 (E.D. Pa. 1944), aff'd, 149 F.2d 815 (3d Cir. 1945) (art objects depicting public domain religious shrines were derivative works); 1 Nimmer on Copyright § 3.03 (2024).

For actual copying, Plaintiffs only present the expert report of Dr. Krein. This is not valid evidence both because Dr. Krein's views on this are not admissible.  Also Dr. Krein only looked at ███████.

Expert opinions may be permissible to demonstrate actual copying (not material appropriation), but only to the extent it "help[s] reveal the similarities that a lay person might not ordinarily perceive." Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 208 (3d Cir. 2005). However, expert testimony is not permitted for comparing two short ███ because it is for the factfinder to compare the works. Stromback v. New Line Cinema, 384 F.3d 283, 295 (6th Cir. 2004); Kindergartners Count, Inc. v. Demoulin, 249 F. Supp. 2d 1214, 1232 (D. Kan. 2003).[12]

---

[12] Dr. Krein's assertion that the headnotes are creative can also be ignored. First, an expert is not

Dr. Krein's improper opinion is the only evidence of actual copying offered by Plaintiffs.

Additionally, Dr. Krein, only compared—matched the language of— ███████████

███████ comparing the words of the headnotes to ROSS's questions. SOF at ¶ 31. Because he

is only offering a comparison of words, not a technical analysis that could not be performed by a

factfinder, Dr. Krein's opinions should be excluded (Stromback, 384 F.3d at 295;

Kindergartners, 249 F. Supp. 2d at 1232) and because this is Plaintiffs' only evidence of actual

copying, Plaintiffs cannot prove actual copying.13 Moreover, even removing the ███████████,

this leaves ███████████ that Plaintiffs have proffered no evidence of actual copying.  Conan

Props. Int'l v. Sanchez, No. 17-CV-162 (FB), 2017 U.S. Dist. LEXIS 231561, at *3 (E.D.N.Y.

Dec. 5, 2017) (ordering a plaintiff to offer side-by-side comparisons for actual copying for "each

and every copyrighted work"). It cannot demonstrate actual copying for these headnotes.

Plaintiffs have also failed to proffer evidence of originality and material appropriation.

There are instances in which the identified headnote does not correspond to the judicial opinion

or the headnote does not match the headnote asserted by Plaintiffs. Ex. A.  There are instances

where headnotes are older than 1927 and they receive no copyright protection.  Ex. B.  There are

instances where headnotes identified by Plaintiffs are verbatim copies of the words of judicial

opinions (Ex. C) and near verbatim copies with only trivial modifications such as removing

articles or changing punctuation or functional variations, making them not copyrightable or

raising a dispute of material fact as to copyrightability. Ex. D. Finally, for headnotes not in these

_____

permitted to testify as to the ultimate issues of creativity or originality, as that is the duty of the
factfinder to determine. *See Paul Morelli Design, Inc. v. Tiffany & Co*., 200 F.Supp.2d 482, 486-
87 (E.D. Penn. 2002). Second, this assertion runs counter to the law where, for example, he
claims headnotes that are verbatim copies of judicial text are creative.
13 Dr. Krein's analysis pertains *only* to actual copying, not material appropriation, because he
cannot opine on material appropriation. *Whelan*, 797 F.2d at 1232. As discussed in Section
IV.C., even assuming actual copying for these 300 headnotes, they are either (i) not
copyrightable or (ii) not materially appropriated.

categories, they were either not copyrightable or not materially appropriated.

### A.     Headnotes That Do Not Exist

The ███████ in Ex. A do not exist in the judicial opinions. See Canter Decl. ROSS cannot infringe headnotes that do not match the case from which they were supposedly taken and cannot show a valid copyright. Tanksley, 902 F.3d at 173 (plaintiff must own "a valid copyright").

### B.     Headnotes That Pre-Date 1927 Are Not Protected

To the extent there ever was a copyright, ████ of the headnotes have expired. Canter Decl. Ex. B.  There can be no valid copyright in headnotes that have expired. D.I. 547, at 10 (noting that "[c]opyrighted works created before 1927 are in the public domain and are not protected"); see also Golan v. Gonzales, 501 F.3d 1179, 1189 (10th Cir. 2007); Harvey Cartoons v. Columbia Pictures Indus., Inc., 645 F. Supp. 1564, 1571 (S.D.N.Y. 1986); Stern v. Sinatra, 99 Fed. Appx. 777, 778 (9th Cir. 2004); Klinger v. Conan Doyle Estate, Ltd., 755 F.3d 496, 500 (7th Cir. 2014).

### C.     Verbatim Copies Of The Judicial Opinions

As shown in Exhibit C, at least ████ headnotes are verbatim copies of the judicial text. See Canter Decl  There is nothing new added, removed, or rearranged; they simply regurgitate what is already present in the judicial opinions.  These judicial texts exist in the public domain and are free to be used by anyone for any purpose. Georgia v. Pub.Res.Org., Inc., 590 U.S. 255, 273 (2020) (materials authored by a judge or a legislative body acting in an official capacity are not copyrightable). Plaintiffs cannot obtain a copyright in the headnotes by copying all or a portion of the public-domain judicial opinions.  L. Batlin, 536 F.2d at 490; N. Coast Indus., 972

F.2d at 1033; Gerlach-Barklow Co., 23 F.2d at 161.14

###### D.      Near Verbatim Copies of the Judicial Opinions

For each of the ████ headnotes identified in Exhibit D, the headnotes are not identical to

the judicial text.  See Canter Decl. However, the modifications are so trivial as to not constitute

an original work. For example, headnotes ████████████████████████████. Id. Other

changes include simply removing articles such as "the" and "a" from the judicial opinions to

craft the headnotes (see, e.g., ████████) or removing a case citation. See, e.g., ████████).

Changes to punctuation, spelling, removing internal citations, removing prepositional

phrases ("It is true that . . . "), or adding linking words (and, but, however), are not more than

"trivial" variations. See Matthew Bender, 158 F.3d at 681 n.4 (noting that corrections to the text,

including punctuation or spelling, may be trivial); Torah Soft Ltd. v. Drosnin, 136 F. Supp. 2d

276, 287 (S.D.N.Y. 2001) (holding that "functional, as opposed to creative, alteration[s]" are not

protectible); L. Batlin, 536 F.2d  at 489-92 (change in medium  and scale or size of a work not

sufficiently original); Donald v. Uarco Bus. Forms, 478 F.2d 764, 766 (8th Cir. 1973) (a service

contract that used language previously used in public domain); Cooper v. James, 213 F. 871, 873

(N.D. Ga. 1914) (adding an alto part not sufficiently original). Moreover, these changes are

functional, intended to convey the underlying idea of the judicial text as opposed to conveying

creative expression by Plaintiffs. Torah Soft, 136 F. Supp. 2d at 287.

In addressing the originality of the above headnotes, ROSS does not concede the

remaining headnotes are copyrightable and, indeed, most are not original and copyrightable.

However, as demonstrated below, Plaintiffs have failed to provide evidence of material

---

[14] To the extent Plaintiffs believe the copyright for the individual headnotes exists due to the
"selection and arrangement," as discussed in Section I, the "selection and arrangement" only
applies to a compilation of the headnotes as a whole, not as individual works.

appropriation, which is another required element of infringement.

### E.      Lack Of Originality Or Material Appropriation

In addition, as noted the question is whether ROSS infringed on the protectible elements of the headnotes, as opposed to just the words of the judicial opinions or contextual modifications used convey the court's underlying ideas.  This critical because, as reflected in Exhibit E, which is a sampling of ███████████████████ and their corresponding judicial text and identified memo questions, the portions blue highlighted in the memo questions are exact or near exact matches words of the judicial opinion, with modifications only to change the judicial text to question form. See Canter Decl. Therefore, because the memo questions simply use the words of the judicial opinions, there cannot be infringement.  Material appropriation cannot be shown simply by comparing the headnotes to the memo questions (as Dr. Krein did); rather, Plaintiffs were required to offer, without the aid of an expert, some evidence that ROSS took its protectable expression from the headnotes and not the public domain judicial opinions or the underlying ideas. Tanksley, 902 F.3d at 174; Conan Props. Int'l v. Sanchez, 2017 U.S. Dist. LEXIS 231561, at *3. 15

Nor can be infringement if the question, like the headnote, simply provides contextual modifications, such as (i) changing a party's name to "plaintiff" or "defendant"; (ii) specifying a type of motion brought or area of law being discussed (such as specifying a "motion" is a "motion to dismiss"); or (iii) stating the full name of an entity or acronym (such as "Federal Arbitration Act" instead of "FAA").  Exhibit F shows a number of examples. See Canter Decl. Not only is less than trivial, it runs into a merger issue because there is no way to otherwise

---

[15] Both Dr. Krein and Ms. Frederiksen-Cross's analyses are entirely *irrelevant* to material appropriation. *Whelan*, 797 F.2d at 1232. Plaintiffs must offer evidence apart from both to support material appropriation. It does not.

provide context or convey the underlying idea of what a judge was trying to express without using these words (this is to say nothing of scenes a faire).  Cont'l Cas., 253 F.2d at 706.

In short, it is not enough to point to some small number of headnotes, claim that they are creative, and then passed on some small fraction prove infringement.  To satisfy the lay-observer test to prove material appropriation, Plaintiffs must demonstrate, without the aid of an expert, that after filtering out the non-protectable elements—specifically, the words of the judicial opinions—and instances where the idea and expression have merged, a factfinder would find ROSS's questions to be virtually identical to Plaintiffs' headnotes. Tanksley, 902 F.3d at 174; Midway Mfg. Co. v. Bandai-America, Inc., 546 F. Supp. 125, 148 (D.N.J. 1982); Mattel, Inc. v. MGA Ent., 616 F.3d 904, 914 (9th Cir. 2010). 16

Indeed, in Worth v. Selchow & Righter Co., 827 F.2d 569, 572-73 (9th Cir. 1987), the Court held that the facts from a copyrighted trivia encyclopedia had not been infringed where the declarative facts in the book had been converted verbatim into questions for the game Trivial Pursuit. Unlike here, in Worth, actual copying was conceded, but the Court ruled that, "[t]he verbatim repetition of certain words in order to use the nonprotectible facts is also noninfringing; the game cards' repetition of words used by Worth to describe places, persons, and events constitutes 'mere indispensable expression' of particular facts or ideas." Id., at 573 (emphasis in original). Plaintiffs have proffered no evidence to support material appropriation as it offers no evidence that ROSS took protectable expression. 17

F.     The Krein ██ Do Not Show Infringement

---

[16] For all of these reasons, Plaintiffs also cannot prove that LegalEase infringed headnotes merely by saying that LegalEase downloaded cases.

[17] Alternatively, to the extent the Court believes that for some of these headnotes, there could be some creative elements present in the questions that are not present in the headnotes, that remains for the factfinder to find at trial. Tanksley, 902 F.3d at 173.

With respect to the ███ headnotes identified by Dr. Krein, as shown in Exhibit G, at least at least ██████████████████████████████ asserted by ROSS and an additional ███ ██████ Dr. Krein determined were not copied. See Canter Decl. As to the remaining ███ ██████, in addition to no actual copying, as shown by the red comparison or the blue highlighting, the headnotes were not copyrightable (because the headnote matches the judicial text) and/or not materially appropriated (because (i) the ROSS question matches neither the headnote or the judicial opinion or (ii) the ROSS question matches the text of the judicial opinion and/or contextual language found elsewhere in the opinion or its citations. The contextual elements are subject to merger and scènes à faire, as anyone wishing to convey these underlying ideas would need to use these expressions.

Therefore, ROSS is entitled to summary judgment on copyrightability and no material appropriation.

## V.    DEFENDANT'S EXPERT DOES NOT ESTABLISH INFRINGEMENT

Plaintiffs cannot prove material appropriation solely based on expert testimony, even if they show actual copying; therefore, Plaintiffs' reliance on Barbara Frederiksen-Cross' report for infringement is misplaced and improper.  See Whelan, 797 F.2d at 1232 (explaining that expert testimony may be received to aid the trier of act in determining similarity between two works but stating expert testimony is inappropriate for determining unlawful appropriation). Relying on Ms. Frederiksen-Cross' algorithmic analysis circumvents the requirement that material appropriation requires a lay-observer test—a standard Ms. Frederiksen-Cross does not engage because she was not opining on misappropriation. See Tanksley, 902 F.3d at 174. It also permits Plaintiffs to bypass their burden of showing the questions contained in the bulk memos are "virtually identical" to the headnotes—an analysis Ms. Frederiksen-Cross did not do because it falls outside the purview of experts. See Whelan, 797 F.2d at 1232; see also Midway, 546 F.

Supp. at 148-49 (applying virtually identical standard); accord Mattel, 616 F.3d at 914. There are other reasons relying on Ms. Frederiksen-Cross' algorithmic analysis for infringement is improper.

First, Ms. Frederiksen-Cross' analysis is neither an admission of copying nor infringement. Instead, her opening report represents a broad algorithmic analysis of the textual relationship of all headnotes and judicial opinions Plaintiffs produced in discovery to the legal questions contained in the bulk memos.  BFC Decl. ⁋⁋ 7-8.  At the time of Ms. Frederiksen-Cross' opening report in August 2022 (more than two years after the commencement of this case), Plaintiffs had not disclosed the content allegedly infringed so Ms. Frederiksen-Cross examined what was available to her—████████████████████████████████ Id. ⁋⁋ 8-9. After this Court compelled Plaintiffs to disclose what was infringed, Ms. Frederiksen-Cross' narrowed her analysis to focus on the specific content that was at issue, which Plaintiffs identified through its expert.  Id. ⁋ 19.

Also, there are many reasonable explanations that jurors can give for why the remaining ████████████████████ were prepared based on the judicial text instead of the headnotes. D.I. 547 at 12. ████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

Finally, ████████████████████ are not substantially similar and/or could have been prepared based on a review of the judicial text on Lexis. See Parker Decl. Ex. 25, Whitehead Dep. 60:10-19. Nothing in Ms. Frederiksen-Cross's spreadsheet forecloses that possibility. To demonstrate this, the Declaration of Jacob A. Canter, who is an attorney,

demonstrates that each of ███████████████ are not substantially similar to the headnotes. As a result, wholesale relying on Ms. Frederiksen-Cross' presents, at least, two issues as shown above: (1) it overlooks non-infringement and (2) it ignores the lay observer test

## VI. ████████ ████████ WERE NOT INFRINGED BY ROSS

The ███████████ cannot be infringed because ROSS did not volitionally intend to receive copyrighted materials, which is required for direct infringement. "A plaintiff must also show volitional conduct on the part of the defendant in order to support a finding of direct copyright infringement." Field v. Google Inc., 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006); see also Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 131 (2d Cir. 2008); Religious Tech. Ctr v. Netcom On-Line Commc'n Servs., Inc., 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995); CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 555 (4th Cir. 2004).

Here, there can be no dispute that ROSS did not intend to receive ████████████ that included Westlaw content from LegalEase. SOF at 28. ROSS cannot be held liable for receiving and never using these ████████ opinions when it did not ask for this content and made clear that it was not wanted. Cartoon Network, 536 F.3d at 131.

## VII. ROSS IS NOT CONTRIBUTORILY LIABLE

Plaintiffs must show that (1) LegalEase directly infringed their copyrights; (2) ROSS knew that LegalEase was directly infringing; and (3) ROSS materially contributed to or induced the infringement. See Leonard, 834 F.3d at 38; Parker v. Google, Inc., 422 F. Supp. 2d 492, 498-99 (E.D. Penn. 2006). Plaintiffs can prove none of these elements based on the current record.

### A. LegalEase Did Not Directly Infringe.

For the reasons set forth above, Plaintiffs cannot prove that LegalEase directly infringed.

**B.      ROSS Did Not Know Of LegalEase's Claimed Infringement.**

The knowledge element of contributory infringement considers whether ROSS knew or had reason to know of LegalEase's infringement. See Tanksley, 259 F. Supp. 3d at 295. Knowledge of "specific acts of infringement" are required.  See YZ Prods., Inc. v. Redbubble, Inc., 545 F. Supp. 3d 756, 763 (N.D. Cal. 2021).  Evidence of actual and constructive knowledge generally includes cease-and-desist letters, officer and employee statements, promotional materials, and industry experience.  See Hartmann v. Popcornflix.com LLC, 690 F. Supp. 3d 309, 319 (S.D.N.Y. 2023).

There is no evidence that ROSS knew or had a reason to know LegalEase was infringing. LegalEase agreed that any work it did would not infringe on any copyright.  See SOF ¶¶ at 7-8, 12.  LegalEase never told ROSS how it was preparing memos for ROSS to even suspect that LegalEase was doing something other than conducting legal research; and had ROSS asked LegalEase how it was preparing memos, LegalEase would not have disclosed that. SOF ¶ 17.

Also, the typical facts that reflect knowledge are absent. See Hartmann, 690 F. Supp. 3d at 319 (evidence of knowledge generally includes cease-and-desist letters, officer and employee statements, promotional materials, and industry experience).  There is no evidence of a cease-and-desist letters, ROSS statements, or ROSS promoting infringement.  In fact, when ROSS received judicial opinions with Westlaw Content, it asked that it not be provided.  SOF ¶ 28. Finally, there is no evidence that based on any industry experience that ROSS knew or had reason to know that LegalEase was infringing.

**C.      ROSS Did Not Materially Contribute or Induce LegalEase's Alleged Infringement.**

To show that ROSS materially contributed to, or induced, LegalEase's infringement, Plaintiff must show that ROSS "authorized or assisted" LegalEase in a manner that "bear[s]

some direct relationship to the infringing acts, and the person rendering such assistance or giving such authorization must be acting in concert with the infringer." See Parker v. Paypal, Inc., No. 16-4786, 2017 U.S. Dist. LEXIS 130800, *11 (E.D. Pa. Aug. 16, 2017). Inducement focuses on "purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise." MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 937, 125 S. Ct. 2764, 2780 (2005). Examples of such conduct and expression include, advertising or promoting infringing uses, see e.g., MGM, 545 U.S. at 919; tutorials, or instructions, on how to infringe, see, e.g., id. at 936; In re Aimster Copyright Litig., 334 F.3d 643, 651 (7th Cir. 2003); and refusing to comply with takedown notices, see, e.g., Greer v. Moon, 83 F.4th 1283, 1295 (10th Cir. 2023). Courts look for evidence reflecting "active steps . . . taken to encourage direct infringement," which shows "an affirmative intent . . . to infringe." MGM, 545 U.S. at 936.

Here, there is no evidence like that described in Aimster, MGM, and Greer. There is no evidence of ROSS instructing, advertising, or promoting infringement. Instead, the SOW and the parties' communications are clear on what LegalEase was required, and expected, to do. This included an agreement that LegalEase would not violate any IP rights. See SOF ⁋⁋ 7-9.

Summary judgment is appropriate. See Bridgeport Music, Inc. v. WB Music Corp., 508 F.3d 394, 400-01 (6th Cir. 2007) (no encouragement); Tanksley, 259 F. Supp. 3d at 295; Live Face on Web, LLC v. Control Grp. Media Co.,Inc., 150 F. Supp. 3d 489, 499-500 (E.D. Pa. 2015) (same); Muench Photography, Inc. v. Pearson Educ., Inc., No. 13-cv-03937, 2013 WL 6172953, at *5-6 (N.D. Cal. Nov. 25, 2013) (no encouragement or promotion).

## VIII.   ROSS IS NOT VICARIOUSLY LIABLE

Similar to contributory infringement, vicarious liability does not extend to ROSS unless LegalEase directly infringed. See Leonard, 834 F.3d at 386. Plaintiffs must also show ROSS had

(1) the practical right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities. See Leonard, 834 F.3d at 388; id. at 389 (the defendant must have the "practical ability" to control the third party); VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 746 (9th Cir. 2019) (noting defendant's "failure to change its operations to avoid assisting [users] to distribute . . . infringing content . . . is not the same as declining to exercise a right and ability to make [third parties] stop their direct infringement."). There is no evidence that ROSS had the right and ability to supervise or control LegalEase's activity and, regardless, there is no evidence that ROSS received a direct financial interest from the accused activities.

### A.     LegalEase Did Not Directly Infringe.

For the reasons set forth above, Plaintiffs cannot prove that LegalEase directly infringed.

### B.     ROSS Did Not Have the Right and Ability to Supervise.

The "practical ability" and right to control arises when a "defendant's pervasive participation in the formation and direction of the direct infringer['s] activity supports a finding that defendants were in a position to police the direct infringers." Leonard., 834 F.3d at 388 (internal quotations omitted). It has been acknowledged that no clear line has been drawn to distinguish cases involving traditional agency, independent contractor, license/licensee, and lease/lease relationships. See Shapiro, Bernstein & Co., Inc.  v. H. L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963).  However, the Second Circuit has articulated the types of cases where a defendant is considered to have had the right or ability to control an infringer.  One example are cases involving dance or music halls, where the landlord hires a person who brings in customers and profits while performing copyrighted music.  See id.  Another example is where the contract literally allows the ability to "patrol" and "control" the premises where the infringing conduct took place.  Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir. 1996).

The analysis in Shapiro is instructive because it involved a written agreement between

the defendant, a department store operator, and the third-party, a concessionaire who sold phonographs records that he infringed.  Shapiro, 316 F.2d at 306. In Shapiro, the court found that the defendant had the right and ability to exercise control over the third-party because the license agreement provided that the third-party and its employees would "'abide by, observe and obey all rules and regulations promulgated from time to time by H. L. Green Company, Inc.;'" defendant had "unreviewable discretion" and authority to discharge any employees it believed to not be conducting himself property; and defendant received a percent of gross receipts for the sale of records. Id.

In Perfect 10, Inc. v. Amazon.com, Inc., the court explained that Google did not have the practical ability to police infringing conduct because its software was unable to analyze every image on the Internet.  508 F.3d 1146, 1174 (9th Cir. 2007). In reaching this conclusion, the court distinguished other cases where defendants had the practical ability to control infringing conduct, such as A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1023 (9th Cir. 2001), where the defendant had the ability to identify infringing conduct by indexing song titles, Fonovisa, 76 F.3d at 262, and where the defendant had the ability to control by patrolling its premises looking for infringing materials. Perfect 10' 508 F.3d at 1174. Even if ROSS did have some supervisory control over LegalEase, it was limited because there was no way for ROSS to police LegalEase's activities. First, ROSS did not host or provide any platform or service that would permit LegalEase to infringe. Second, there was nothing on the face of the memos to alert ROSS that LegalEase was engaging in any infringing activity. See SOF ¶ 22. There were no key numbers, headnote numbers, headnotes, or any other material that would suggest to ROSS that LegalEase was doing anything infringing and beyond simple legal research. Id. at

Because there is no evidence ROSS had the right and ability to control LegalEase, ROSS

is entitled to judgment as a matter of law.

### C.      ROSS Did Not Have a Financial Interest as That Is Defined By Law

"Financial benefit exists where the availability of infringing material acts as a draw for customers.'"" Leonard, 834 F.3d at 389 (quoting Ellison v. Robertson, 357 F.3d 1072, 1079 (9th Cir. 2004)); see also Erickson Prods., Inc. v. Kast, 921 F.3d 822, 829 (9th Cir. 2019) (same); 3 Nimmer on Copyright § 12.04 (2024).  The analysis turns on whether customers were drawn to ROSS.  See id.

There is no evidence that the availability of infringing material allowed ROSS to obtain or retain customers.  Nor would there be.  There was no infringing material offered by ROSS to "draw" customers to it.  SOF ¶¶ 23-24 (█████████████████████████████)

Plaintiffs, therefore, cannot prove the direct financial interest element of vicarious liability, and ROSS is entitled to summary judgment as a matter of law. Ellison, 357 F.3d at 1079 (finding evidence lacking that AOL attracted or retained subscriptions because of infringement, or lost subscriptions when the infringement ceased).

### CONCLUSION

For the foregoing reasons, ROSS is entitled to summary judgment.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ David E. Moore*

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Keith J. Harrison
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

Dated:  October 1, 2024
11799659 / 20516.00001

Public Version Dated: October 9, 2024

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*