# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) |
| Plaintiffs/Counterdefendants, | ) C.A. No. 20-613-SB ) ) **JURY TRIAL DEMANDED** |
| v. | ) ) **PUBLIC VERSION** |
| ROSS INTELLIGENCE INC., | ) ) |
| Defendant/Counterclaimant. | ) ) |

### DECLARATION OF RICHARD LEITER IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S MOTION FOR SUMMARY JUDGMENT ON ITS AFFIRMATIVE DEFENSE OF FAIR USE AND ON PLAINTIFFS' CLAIMS FOR COPYRIGHT INFRINGEMENT

OF COUNSEL:

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Keith J. Harrison
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*

Dated: October 1, 2024
Public Version Dated: October 9, 2024

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, <br><br>  Plaintiffs/Counterdefendants, <br><br> v. <br><br> ROSS INTELLIGENCE INC., <br><br>  Defendant/Counterclaimant. | C.A. No. 20-613-SB <br><br> **PUBLIC VERSION** |

### DECLARATION OF RICHARD LEITER IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT ROSS INTELLIGENCE INC.'S MOTION FOR SUMMARY JUDGMENT ON ITS AFFIRMATIVE DEFENSE OF FAIR USE AND ON PLAINTIFFS' CLAIMS FOR COPYRIGHT INFRINGEMENT

I, Richard Leiter, declare as follows:

1. I submit this Declaration in Support of Defendant/Counterclaimant ROSS Intelligence Inc.'s ("ROSS") Motion for Summary Judgment on Its Affirmative Defense of Fair Use and Motion for Summary Judgment on Copyright Infringement. I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify competently to the below.

2. I have been retained by Defendant ROSS Intelligence, Inc. to explore and opine on the origin and development of the West Digest and Key Number System.

3. I am the Director of the Schmid Law Library and the Marvin & Virginia Schmid Foundation Professor of Law at the University of Nebraska College of Law. I have held this position since 2000. From 1986 to 1988, I worked as a Public Services Librarian also at University of Nebraska College of Law. Prior to these positions, I was the Associate Dean of Information Technology & Services and Professor of Law at Howard University School of Law. I also held the position of Library Director and Associate Professor at Regent University School of Law. I

received a Bachelor's of Arts Degree from the University of California, Santa Cruz. I received a J.D. from Southwestern University School of Law. I received a Masters in Library and Information Science from the University of Texas, Austin. My other experience and positions are reflected in my curriculum vitae, attached as **Exhibit A.**

4. My opinions and the facts and data that support my them are set forth fully in my Opening Expert Report, attached as **Exhibit B**, and my Rebuttal Report, attached as **Exhibit C.**

I. **Origination of the West Content**

5. The West Digest and Key Number system was developed by Benjamin Vaughan Abbott and Austin Abbott ("the Abbotts") in the early Nineteenth Century after extensive study of existing treatises, case reporters, and digests. The Abbotts intentionally avoided creating anything, but rather adopted one of a few different preexisting systems of organizing the law which system was, in their view, a practical, utilitarian method of indexing the law, as expressed at the time by the courts so that judicial opinions could be located. *See* **Ex. B**, Opening Report ¶¶ 9, 15-16, 24-26, Table 1.

6. The Abbotts' system was expressed in two digests published in the first half of the Nineteenth Century: the New York Digest and the American Digest. Both were well regarded and well established. Following the publication of the Abbott brother digests, the West Publishing Company began publishing its flagship publication, the National Reporter System, that endeavored to publish comprehensively cases from every jurisdiction in the United States. John B. West, founder of West Publishing Company, realized the need for an index to the volumes of cases his company was publishing, and in the 1889 acquired the American Digest System, and systematically indexed and digested every existing case that West published using the index system that the Abbotts adopted. *See* **Ex. B**, Opening Report ¶¶ 10, 14, 19.

7. In 1826, there were less than 1,000 volumes of the law published. *See* **Ex. B**, Opening Report ¶ 11. Judges themselves could decide which of their opinions were to be published and which should be withheld because they may set a precedent that the judge did not agree with, or for any numbers of reasons simply did not want made public. *See* **Ex. B**, Opening Report ¶ 11.

8. During the early history of the United States, the federal courts relied on various individuals, including some who were informally designated by local courts, to compile and publish their reports which resulted in an informal set known as the U.S. Circuit Court of Appeals Reports. *See* **Ex. B**, Opening Report ¶ 13. These cases were primarily published in annual compilations, the indexing was primitive and usually confined to single volumes or small runs produced by the named reporter. *See* **Ex. B**, Opening Report ¶ 13.

9. American Law Reports ("ALR") was the first commercial venture that capitalized on the small volume of opinions by producing a national reporter that published leading cases from all jurisdictions, including ones that had national importance. *See* **Ex. B**, Opening Report ¶ 13.

10. The Westlaw legal topic digesting system is the direct result of the work of Benjamin and Austin Abbott, both New York attorneys. *See* **Ex. B**, Opening Report ¶ 15. They "spent the leisure of two years in careful analysis of the best treatises on every branch of law, and drawing up a concise and sharply defined outline of what each title in the Digest should contain." *See* **Ex. B**, Opening Report ¶ 15. What resulted from the Abbotts' work was the *New York Digest* that classified and indexed cases by legal topic. *See* **Ex. B**, Opening Report ¶ 15.

11. The Abbotts did not create the indexing system represented in the *New York Digest*. *See* **Ex. B**, Opening Report ¶ 16.

12. The Abbotts created the *United States Digest* in 1867 (covering the period of organization of the government to 1867). *See* **Ex. B**, Opening Report ¶ 17. This was followed by

the *United States Digest* (the "New Series") (covering the period from the organization of the United States government to 1884). *See* **Ex. B**, Opening Report ¶ 17.

13. In 1889, West Publishing Company acquired the *United States Digest*, "including the Abbotts' scheme of classification and arrangement." *See* **Ex. B**, Opening Report ¶ 18.

14. West then produced two digests: *The Century Digest* (including cases from the "earliest times" to 1897) and *The Decennial Digest* (from 1897 to 1906). *See* **Ex. B**, Opening Report ¶ 19. *The Century Digest* and *Decennial Digest* constituted the *American Digest System*. *See* **Ex. B**, Opening Report ¶ 19.

15. West's original classicization system was as follows:

> Law is the effort of society to protect PERSONS, including CORPORATIONS, in their rights and relations, to guard them in their PROPERTY, enforce their CONVEYANCES and CONTRACTS, and redress or punish their WRONGS and CRIMES, by means of judicial REMEDIES, administered by the civil arm of GOVERNMENT

(West Publishing Co., *American Digest Classification Scheme: A Logical Analysis of the Law for the Use of Indexers and Digest Makers* at 1 (2nd ed. 1898)). *See* **Ex. B**, Opening Report ¶ 20.

16. This theorem of the ten capitalized concepts was further reduced to seven categories: PERSONS, PROPERTY, CONTRACTS, TORTS, CRIMES, REMEDIES and GOVERNMENT. *See* **Ex. B**, Opening Report ¶ 21. The seven categories were then split into 34 divisions, which were in turn divided into the 412 topics that constituted West's topic and key number system. (John A. Mallory, *The Theory of the American Digest Classification Scheme*, 1 AM. L. SCH. REV. 184, 188 (1904); *see also* John Doyle, *WESTLAW and the American Digest Classification Scheme*, 84 LAW. LIBR. J. 229-32 (1992)). *See* **Ex. B**, Opening Report ¶ 21.

4

17. Cases needed to be ordered using legal labels that a lawyer would employ, so that the judicial opinions could be found and utilized by lawyers, jurists, and legal scholars. *See* **Ex. B**, Opening Report ¶ 22.

18. The utilitarianism of the West classification system was the purpose and the selling point for it to be adopted generally:

> The selection of titles for heads, and the distribution among them of the contents of the digest, are controlled chiefly by considerations of *practical convenience and usage*, arising from the nature and use of digests as books of reference, in which lawyers look for precedents relating to specific subjects under heads to which they have become accustomed. Scientific or technical accuracy in the use of terms as such titles, *and logical division and arrangement of the matter, are subordinated to these practical considerations*; and any philosophical analysis of the law would be inapplicable to a digest; the contents of which are mere fragments of the subject-matter, arranged under heads in alphabetical order

(West Publishing Co., *American Digest Main Heads and Subdivisions of Classification Scheme: A Logical Analysis of the Law for the Use of Indexers and Digest Makers* at iii (4th ed. 1904) (emphasis added)). *See* **Ex. B**, Opening Report ¶ 22.

19. Prior to its acquisition of the Abbott indexing system, West collected cases and sold in reporters a greater volume than any of its competitors, and therefore the index it acquired from the Abbotts naturally provided a means of application to a greater number of judicial opinions. *See* **Ex. B**, Opening Report ¶ 28. West also had a comparative advantage over other digest producers (such as those that only provided an index) as West already had collected a large body of cases for publication in the National Reporter System. *See* **Ex. B**, Opening Report ¶ 28.

20. West's stated goal was to obtain universal adoption of its classification system. *See* **Ex. B**, Opening Report ¶ 29. To that end, West marketed its Digest to the ABA in 1897. *See* **Ex. B**, Opening Report ¶ 29. The next year, at its next annual meeting, the ABA publicly endorsed the

system and encouraged all indexers and digesters to use this same system, emphasizing the utilitarianism of the system. (William W. Marvin, *West Publishing Company: Origins, Growth, Leadership* at 69 (1969)). *See* **Ex. B**, Opening Report ¶ 29.

21. In West's own words, "innumerable smaller indexes and digests" used West's classification system, explained it as "For the Use of Indexers and Digest Makers," and encourages others to take up its system. (William W. Marvin, *West Publishing Company: Origins, Growth, Leadership* at 69 (1969); West Publishing Co., *American Digest Main Heads and Subdivisions of Classification Scheme: A Logical Analysis of the Law for the Use of Indexers and Digest Makers* at iii (4th ed. 1904)). *See* **Ex. B**, Opening Report ¶ 30. For example, for *contracts*, the organization and concepts of Bancroft-Whitney's supplement are identical to *West's First Decennial Digest*. *See* **Ex. B**, Opening Report ¶ 31, Figure 1.

22. West competitors also adopted the West index system as did innumerable smaller digests and indexes, and various states such as New Jersey, Massachusetts, Missouri, Kentucky, Washington, California, Virginia and West Virginia, and Illinois. (West Publishing Co., *Decennial Edition of the American Digest: A Complete Digest of All Reported Cases from 1897 to 1906* (1908) ("First Decennial Digest")). *See* **Ex. B**, Opening Report ¶ 33, Table 2 at Exhibit 4. Thus, West freely allowed competitors to use the indexing system. *See* **Ex. B**, Opening Report ¶ 33.

23. Krein claims that   *See* Krein Opening Report ¶ 133; **Ex. C**, Rebuttal Report ¶ 6. Specifically, Krein claims ▓▓▓▓▓▓▓▓▓▓▓. *See* Krein Opening Report ¶ 133; **Ex. C**, Rebuttal Report ¶ 6. However, what the Krein

Report claims █████████████████████████████████████████████████████ *See* Krein Opening Report ¶ 133; **Ex. C**, Rebuttal Report ¶ 6. In fact, over 75% of the topics in the key number system today are the same as the topics in the American Digest. *See* **Ex. B**, Opening Report, ¶¶ 19, 34, Figure 2.

24. The chart below illustrates the common terms used in the digesting of case law from two independent digesting systems, Sir John Comyns, *A Digest of the Laws of England* (5th ed. 1822) ("Comyns' Digest") and John Mews, *Digest of English Case Law Contain the Reported Decision of the Superior Courts, and a Selection from Those of the Irish Courts* (1898) ("Mews' Digest"), that existed independently of the WKNS. *See* **Ex. C**, Rebuttal Report ¶ 13. As can be seen in this chart, a majority WKNS is identical to historical sources predating the WKNS. *See* **Ex. C**, Rebuttal Report ¶ 13. I know this because this WKNS is listed in TR-0179847-0179854, attached as **Ex. D**. The dates that evidence the year the topics were added to the WKNS is shown in **Ex. B**, Opening Report at Ex. 5.

| West Key Number System Digest Topic as shown in TR 0179847-TR-0179854 (WITH YEAR TOPICS WERE ADDED TO WEST KEY NUMBER SYSTEM) | Comyns' Digest (1822) | Mews' Digest (1898) |
|---|---|---|
| Abatement and Revival (1897) | Abatement | Abatement |
| Account (1897) | Account, stated | X |
| Action (1897) | Action | Action |
| Administrative Law and Procedure (1947) | X | X |
| Admiralty (1897) | Admiralty | Admiralty |
| Adulteration (1897) | X | Adulteration |
| Adverse Possession (1897) | X | Adverse Possession |
| Affidavits (1898) | Affidavit | Affidavits |
| Agriculture (1898) | X | X |
| Aliens, Immigration, and Citizenship (2006) (Aliens (1897); Citizens (1899)) | Alien | Alien |
| Alternative Dispute Resolution (2006) (Arbitration and Award (1898)) | X | X |
| Ambassadors and Consuls (1898) | Ambassador | Consul |

| | | |
|---|---|---|
| Amicus Curiae (1898) | X | X |
| Appeal and Error (1898) | Appeal | Appeal, Error |
| Armed Services (1957) | Army | Army and Navy |
| Arson (1898) | Arson | Arson and Burning |
| Assignments (1898) | Assignment | Assignments |
| Bailment (1899) | Bailment | Bailment |
| Banks and Banking (1899) | X | Banker and Banking Company |
| Bills and Notes (1899) | Bill | Bills and Notes |
| Bribery (1899) | Bribery | Bribery |
| Burglary (1899) | Burglary | Burglary |
| Charities (1899) | Charitable Use | Charity |
| Child Custody (2001) | X | Custody of Children |
| Clerks of Court (1899) | Clerk | Clerk of the Peace |
| Commodity Futures Trading Regulations (1987) | X | X |
| Consumer Credit (1982) | X | X |
| Convicts (1899) | X | X |
| Creditor Remedies (2017) | Creditor | Creditor Suits |
| Customs and Usage (1900) | Custom | Custom |
| Disorderly Conduct (1900) | X | Disorderly House |
| Domicile (1900) | Domicil | Domicil |
| Double Jeopardy (1992) | X | X |
| Education (2013) (Colleges and Universities (1899)) | X | Education |
| Electricity (1900) | X | Electric Lighting |
| Embezzlement (1900) | X | Embezzlement |
| Eminent Domain (1900) | X | X |
| Environmental Law (2002) | X | X |
| Estoppel (1900) | Estoppel | Estoppel |
| Exchange of Property (1900) | Exchange | Exchange of Estates |

| | | |
|---|---|---|
| Extortion (1901) | Extortion | Extortion |
| Fines (1901) | Fines | Fines |
| Forgery (1901) | Forgery | Forgery |
| Franchises (1901) | Franchises | Franchise |
| Good Will (1901) | X | Goodwill |
| Guaranty (1901) | Garranty | Guarantee and Indemnity |
| Highways (1901) | High-way | Highway |
| Homicide (1901) | Homicide | Homicide |
| Incest (1901) | X | X |
| Indians (1901) | X | X |

| | | |
|---|---|---|
| Injunction (1901) | Injunction | Injunction |
| Inspection (1901) | Inspection | Inspection |
| Insurance (1901) | Insurance | Insurance |
| International Law (1901) | X | International Law |
| Kidnapping (1902) | X | X |
| Labor and Employment (2005) (Labor Relations (1957)) | Master-Servant | Work and Labour |
| Landlord and Tenant (1902) | Landlord Tenant | Landlord and Tenant |
| Libel and Slander (1902) | Libel | Libel, Slander |
| Life Estate (1902) | Life, Tenant for | Life, Estate for |
| Malicious Prosecution (1902) | X | Malicious Procedure and False Imprisonment, Malicious Inquiry |
| Marriage and Cohabitation (2017) (Marriage (1902)) | Marriage | Marriage |
| Mines and Minerals (1902) | Mines | Mines and Minerals |
| Monopolies (1902) | Monopoly | Monopoly |
| Negligence (1902) | Negligence | Negligence |
| Neutrality Laws (1902) | X | Neutrality |
| Notice (1902) | Notice | Notice |
| Novation (1902) | X | X |
| Pardon and Parole (1987) | Pardon | Pardon |
| Partnership (1903) | Partnership | Partnership |

10

| | | |
|---|---|---|
| Pension (1903) | Pensions | Pension and Pay |
| Pleading (1903) | Plea | Pleading |
| Pretrial Procedure (1977) | X | X |
| Principal and Agent (1903) | Principal and Agent | Principal and Agent |
| Privileged Communications and Confidentiality (2009) | Privilege | Privileged Communications |
| Products Liability (1977) | X | X |
| Property (1903) | Property | X |
| Public Utilities (1987) | X | X |
| Secured Transaction (1967) | X | Secured Creditor |
| Sex Offenses (2016) | Rape | X |
| Subrogation (1903) | X | X |
| Suicide (1904) | X | Suicide |
| Taxation (1904) | Taxes | Taxation of Costs Taxes |
| Threats (1904) | X | Threats and Threatening Letters |
| Treason (1904) | Treason | Treason |
| Trespass (1904) | Trespass | Trespass |
| Vagrancy (1904) | Vagabonds or Vagrants | Vagrant |
| Venue (1904) | Venue | Venue |
| Weights and Measures (1904) | Weights and Measures | Weights and Measures |
| Woods and Forests (1904) | Woods | Woods and Forests Commissioners |
| Workers' Compensation (1982) (Workmen's Compensation (1937)) | X | X |
| Zoning and Planning (1982) | X | X |

25. In the introductory section of the book West Publishing Co., *American Digest Main Heads and Subdivisions of Classification Scheme; A Logical Analysis of the Law for the Use of Indexers and Digest Makers* (4th ed. 1904), titled "Prospectus," West lays out a detailed explanation for the need for a standard, uniform system for digesting case law, and details the efforts that West made to the American Bar Association in 1899: (*See* **Ex. C,** Rebuttal Report ¶ 19).

> The general adoption, by other editors and publishers, of the "American Digest classification scheme" has been a very interesting and significant development of the last two or three years. The lack of uniformity in digesting has long been recognized as an evil, entailing the unnecessary work and perplexity on the bar. The American Bar Association, for several years, had special reports prepared, pointing out the serious nature of this accepted inconvenience, and in its report for 1900 it offered the practical suggestion that the classification worked out so carefully for the American and Century Digests, and already familiar to the bar and approved by use, should be taken as the basis of law digesting throughout the country.
>
> Although the elaboration of this analysis had cost us at least $20,000, we felt that the importance to the bar of establishing a standard and uniform classification was so great that we should not be justified in withholding our assistance from any consideration merely of our proprietary rights. We therefore met the suggestion made by the American Bar Association by placing the scope-note pamphlet giving the outlines of our classification scheme in the hands of any editor who might desire to make use of it. We have had over a hundred requests for it, and it has been formally adopted by Lawyers' Co-operative Publishing Co. and by the Bancroft-Whitney Co. for use in the digests to be hereafter published by them. It has been followed, with credit duly given, in a number of late State Digests, and has been taken as a basis for the indexes of the current State Reports in a number of states. This wide-spread use will tend rapidly to establish this system as the standard in this country,-- a position which its intrinsic excellence well deserves.

26.  Dan Dabney, Plaintiff's chief taxonomist, observed that: "we have to constantly be making alterations to the key number system to make sure that it reflects … a current view of the law." I heard this on *Video: Dan Dabney on Reclassifying Headnotes in the Key Number System, THOMSON REUTERS \ LEGAL CURRENT,* https://www.legalcurrent.com/dan-dabneyon-reclassifying-headnotes-in-the-key-number-system/ (last visited Dec. 20, 2022). *See* **Ex. B**, Opening Report ¶ 39.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in _____ on _____ .

_____

Richard Leiter

13