**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | |
| Plaintiffs/Counterdefendants, | ) ) | C.A. No. 20-613-SB |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| ROSS INTELLIGENCE INC., | ) ) ) | **PUBLIC VERSION** |
| Defendant/Counterclaimant. | ) | |

**ROSS INTELLIGENCE INC.'S BRIEF IN RESPONSE TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON DIRECT COPYRIGHT INFRINGEMENT
AND RELATED DEFENSES**

OF COUNSEL:

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Keith J. Harrison
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

Dated: October 30, 2024
11852935 / 20516.00001
Public Version Dated: November 4, 2024

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

NATURE AND STAGE OF PROCEEDINGS ..................................................4

STATEMENT OF Material FACTS in dispute ..................................................4

I.      The "Westlaw Content" is Registered as a Single Compilation. .....................................4

II.     The Organization of Westlaw Aligns with the Language of the Law and Nothing About Its Purpose and Function Has Changed Since the 1880s. .......................4

III.    ROSS Was Founded to Develop a Natural Language Search Engine that Relied on the Language of Judicial Opinions. ..................................................5

IV.     The Memos Were Used to Teach and Train ROSS's Machine Learning Platform..................................................6

V.      ROSS did not dictate or control how LegalEase conducted its research. ........................7

VI.     LegalEase Drafted Legal Questions From the Judicial Opinion and Were Instructed that the Headnotes Should Not Be Copied. ..................................................8

VII.    ROSS Did Not Use the Actual Text of the Memos to Train Its Machine-Learning Model. It Used Numbers. ..................................................8

VIII.   ROSS Did Not Attempt to Access Westlaw to Obtain Copyrighted Content..................................................9

IX.     The 2017 Classifier Project Provided Materials Not Ultimately Used..........................10

X.      There Is No Evidence Of Copying or Other Elements of Infringement. .......................11

LEGAL STANDARD FOR DIRECT INFRINGEMENT ..................................................11

I.      Burden Of Production And Persuasion For Copyright Infringement ...........................12

II.     Originality ..................................................13

III.    Unauthorized Copying ..................................................14

        A.      Actual Copying ..................................................14

        B.      Material Appropriation ..................................................15

ARGUMENT ..................................................17

I.      Plaintiffs' Legal Analysis Is Fundamentally Flawed..................................................17

II.     Plaintiffs' Improperly Attempt To Shift The Burden Of Proof ....................................21

III.    As Individual Works, Plaintiffs Fail To Show A Copyright ........................................22

IV.     Any Compilation Copyright is Thin ..................................................25

        A.      There Is No Copyright For Effort Alone ..................................................26

        B.      All Asserted Compilations Are Only Protected As A Whole.............................26

V.      There Is A Genuine Issue Of Fact As To Actual Copying ...........................................28

VI.     There Is No Evidence Of Material Appropriation ..................................................31

        A.      No Compilation Was Infringed..................................................31

B.     As Individual Works, The Headnotes Are Not Materially Appropriated ..............................................................................34

VII.     "Connections" Are Not Copyrightable And Not Infringed ............................35

VIII.    The ▬ Judicial Opinions Were Not Volitionally Infringed .........................37

IX.     Summary Judgement On Innocent Infringement Is Improper. .....................37

X.     Factual Disputes Bar Summary Judgement On Misuse..................................39

CONCLUSION..............................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanta-STAR Auto. Rsch. Corp. of Am. v. DealerCMO, Inc.*,
  2022 WL 179466 (E.D. La. Jan. 20, 2022) ................................................................. 12, 25, 34

*Alfred Bell & Co. v. Catalda Fine Arts, Inc.*,
  191 F.2d 99 (2d Cir. 1951) ................................................................................................ 13, 22

*Allegrini v. De Angelis*,
  59 F. Supp. 248 (E.D. Pa. 1944), *aff'd*, 149 F.2d 815 (3d Cir. 1945) .................................... 22

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986) ................................................................................................................ 12

*Arnstein v. Porter*,
  154 F.2d 464 (2d Cir. 1946) .................................................................................................... 14

*Atari, Inc. v. N. Am. Phillips Consumer Elecs. Corp.*,
  672 F.2d 607 (7th Cir. 1982) ............................................................................................ 16, 32

*Bryant v. Media Right Prods., Inc.*,
  603 F.3d 135 (2d Cir. 2010) .................................................................................................... 17

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008) .................................................................................................... 37

*Conan Props. Int'l v. Sanchez*,
  No. 17-CV-162 (FB), 2017 U.S. Dist. LEXIS 231561 (E.D.N.Y. Dec. 5, 2017) ............. 28, 30

*Consol. Music Publishers, Inc. v. Ashley Publ'ns, Inc.*,
  197 F. Supp. 17 (S.D.N.Y. 1961) ........................................................................................... 28

*Cont'l Cas. Co. v. Hulbert T. E. Beardsley*,
  253 F.2d 702 (2d Cir. 1958) .............................................................................................. 32, 35

*CoStar Grp., Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) .................................................................................................. 37

*D.C. Comics Inc. v. Mini Gift Shop*,
  912 F.2d 29 (2d Cir. 1990) ...................................................................................................... 38

*Dam Things From Denmark v. Russ Berrie and Co., Inc.*,
  290 F.3d 548 (3d Cir. 2002) .............................................................................................. 14, 15

*Denenberg v. LED Techs. LLC,*
No. 11-CV-03155-RBJ, 2013 WL 2153290 (D. Colo. May 17, 2013) ...................................38

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,*
307 F.3d 197 (3d Cir. 2002) ...........................................................................................11

*Eckes v. Card Prices Update,*
736 F.2d 859 (2d Cir. 1984) ...........................................................17, 26, 27, 32

*Educ. Testing Services v. Katzman,*
793 F.2d 533 (3d Cir. 1986) ...........................................................16, 32, 35

*ETS-Hokin v. Skyy Spirits, Inc.,*
225 F.3d 1068 (9th Cir. 2000) .......................................................................16, 37

*Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.,*
893 F.3d 1176 (9th Cir. 2018) ......................................................................... *passim*

*Feist Publ'n, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340 (1991) .......................................................................................26, 28, 36

*Field v. Google Inc.,*
412 F. Supp. 2d 1106 (D. Nev. 2006) .......................................................................37

*FMC Corp. v. Control Sols., Inc.,*
369 F. Supp.2d 539 (E.D. Pa. 2005) .........................................................................39

*Friedman v. Live Nation Merch., Inc.,*
833 F.3d 1180 (9th Cir. 2016) ...........................................................12, 21, 22

*Frybarger v. Int'l Bus. Machs. Corp.,*
812 F.2d 525 (9th Cir. 1987) .....................................................................................34

*Gallup, Inc. v. Talentpoint, Inc.,*
2001 WL 1450592 (E.D. Pa. Nov. 13, 2001) ........................................................12

*Georgia v. Pub. Res. Org., Inc.,*
590 U.S. 255 (2020) ...................................................................................................24

*Gerlach-Barklow Co. v. Morris & Bendien, Inc.,*
23 F.2d 159 (2d Cir. 1927) .................................................................13, 23, 24

*Golan v. Gonzales,*
501 F.3d 1179 (10th Cir. 2007) ..............................................................................24

*Grondin v. Fanatics, Inc.,*
No. 22-1946, 2023 U.S. Dist. LEXIS 4538 (E.D. Pa. Jan. 10, 2023) ...............16, 35

iv

*Harper House, Inc. v. Thomas Nelson, Inc.*,
    889 F.2d 197 (9th Cir. 1989) ...................................................................25, 26

*Intervest Const., Inc. v. Canterbury Est. Homes, Inc.*,
    554 F.3d 914 (11th Cir. 2008) ........................................................................13

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
    No. 13 CV 816, 2016 WL 5092593 (S.D.N.Y. Sept. 19, 2016) ........................38, 39

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
    421 F.3d 199 (3d Cir. 2005)...........................................................................29

*Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*,
    945 F.2d 509 (2d Cir. 1991).......................................................................14, 33

*Kindergartners Count, Inc. v. Demoulin*,
    249 F. Supp. 2d 1214 (D. Kan. 2003) ..............................................................29

*Kregos v. AP*,
    937 F.2d 700 (2d Cir. 1991).......................................................................27, 32

*L. Batlin & Son, Inc. v. Snyder*,
    536 F.2d 486 (2d Cir. 1976)................................................................ *passim*

*Lasercomb Am., Inc. v. Reynolds*,
    911 F.2d 970 (4th Cir. 1990) .........................................................................39

*Mattel, Inc. v. MGA Entm't, Inc.*,
    616 F.3d 904 (9th Cir. 2010) .........................................................................15

*Matthew Bender & Co. v. W. Publ'g Co.*,
    1997 WL 266972 (S.D.N.Y. May 19, 1997) *aff'd*, 158 F.3d 674 (2d Cir. 1998)........25, 26, 28

*Matthew Bender & Co. v. West Publ'g Co.*,
    158 F.3d 674 (2d Cir. 1998)................................................................ *passim*

*Medical-Legal Consulting Institute, Inc. v. McHugh*,
    No. CIV. A. 95–7824, 1997 WL 756686 (E.D. Pa. Dec. 8, 1997) .........................12

*N. Coast Indus. v. Jason Maxwell, Inc.*,
    972 F.2d 1031 (9th Cir. 1992) .......................................................................13

*Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.*,
    413 F. Supp. 2d 485 (E.D. Pa. 2005) ..............................................................13

*Omega S.A. v. Costco Wholesale Corp.*,
    776 F.3d 692 (9th Cir. 2015) .........................................................................40

*Open Source Yoga Unity v. Choudhury*,
 No. C 03-3182 PJH, 2005 U.S. Dist. LEXIS 10440 (N.D. Cal. Apr. 1, 2005)................27, 32

*Paul Morelli Design, Inc. v. Tiffany & Co*.,
 200 F.Supp.2d 482 (E.D. Penn. 2002) ........................................................................22, 23, 31

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc*.,
 975 F. Supp. 2d 920 (N.D. Ill. 2013) ..............................................................................12, 25

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*,
 274 F.2d 487 (2d Cir. 1960) (J. Hand)....................................................................................15

*Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp*.,
 463 F.3d 478 (6th Cir. 2006) ...............................................................................16, 17, 32, 33

*Satava v. Lowry*,
 323 F.3d 805 (9th Cir. 2003) ...................................................................................14, 26, 28

*Schiffer Publishing, Ltd. v. Chronicle Books*,
 LLC, 350 F. Supp. 2d 613 (E.D. Pa. 2004)......................................................................12, 25

*Schoolhouse, Inc. v. Anderson*,
 275 F.3d 726 (8th Cir. 2002) ...............................................................................16, 17, 33

*Sega Enters., Ltd. v. Accolade, Inc.*,
 977 F.2d 1510 (9th Cir. 1992) ................................................................................................28

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*,
 689 F.3d 29 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1315, 185 L. Ed. 2d 195
 (2013) ......................................................................................................................................39

*Stromback v. New Line Cinema*,
 384 F.3d 283 (6th Cir. 2004) ...............................................................................29, 30, 31

*Tanksley v. Daniels*,
 902 F.3d 165 (3d Cir. 2018)........................................................................................ *passim*

*Tattoo Art, Inc. v. TAT Int'l, Ltd. Liab. Co*.,
 794 F. Supp. 2d 634 (E.D. Va. 2011) .....................................................................................17

*Torah Soft Ltd. v. Drosnin*,
 136 F. Supp. 2d 276 (S.D.N.Y. 2001)................................................................................24, 36

*TransWestern Pub. Co. LP v. Multimedia*,
 133 F.3d 773 (10th Cir. 1998) ...............................................................................17, 32, 33

*Vernor v. Autodesk, Inc.*,
 621 F.3d 1102 (9th Cir. 2010) ................................................................................................39

*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*,
   342 F.3d 191 (3d Cir. 2003), *as amended* (Sept. 19, 2003)....................................39

*Warner Bros. v. ABC*,
   720 F.2d 231 (2d Cir. 1983)....................................35

*Whelan Assocs. v. Jaslow Dental Lab., Inc.*,
   797 F.2d 1222 (3d Cir. 1986)....................................15, 22, 31

*Worth v. Selchow & Righter Co.*,
   827 F.2d 569 (9th Cir. 1987) .................................... *passim*

*Xoom, Inc. v. Imageline, Inc.*,
   323 F.3d 279 (4th Cir. 2003) ....................................17

**Statutes**

17 U.S.C.S. § 105....................................40

17 U.S.C. § 401(d)....................................37

17 U.S.C. § 504(c)(2)....................................38

17 USC § 101....................................13

**Rules**

Fed. R. Civ. P. 56(a)....................................12

**Other Authorities**

4 NIMMER ON COPYRIGHT § 13.03[A][4] (2024) ....................................17

H.R. Rep. No. 94-1476 (1976)....................................17

4 NIMMER ON COPYRIGHT § 13.09 (2024) ....................................40

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case is about Plaintiffs' attempts to dramatically expand the scope of its registered copyright to create a monopoly over the words and holdings of public-domain judicial opinions. If successful, Plaintiffs have in essence laid claim to the opinions of judges across the country who've authored these decisions for decades. These legal decisions belong, not to any company, but to the American people. What Plaintiffs are trying to do with judicial opinions is analogous to someone compiling key phrases in Shakespeare's plays and claiming a copyright over Shakespeare's best quotes, when the only copyright they might be entitled to is simply the selection and arrangement of those quotes. It is also akin to an author writing a book collecting trivia facts and then suing the maker of the Trivial Pursuit game for infringement because it changed those facts into questions. Neither of these scenarios constitute copyright infringement because there is no copying of the particular selection and arrangement of the compilations as a whole. Plaintiffs' copyright claim as to Westlaw's headnotes suffers the same fatal flaws as Plaintiffs cannot use a broad copyright in a compilation (which only protect the selection and arrangement of all the elements as a whole) to lay claim to elements that are not copyrightable.

This is Plaintiffs' second effort at partial summary judgment on infringement. This Court denied Plaintiffs' motion the first time around and should do so again here. While Plaintiffs' Opening Brief asserts that ROSS copied "Westlaw Content" generally, Plaintiffs only move for summary judgment on ███ headnotes.[1]  Here, Plaintiffs' sleight-of-hand strategy is to shift the burden of production of infringement evidence to ROSS by alleging that because ROSS did not

---

[1] While Plaintiffs did not even attempt to deduplicate overlapping headnotes between the two categories of headnotes asserted for infringement, removing duplicates between the two categories ███ headnotes and ███ headnotes) and removing unasserted headnotes (1,623 headnotes never asserted as being infringed), leaves ███ relevant headnotes at issue. *See* Declaration of Jacob Canter ("Canter Decl.") ¶¶ 1-3.

submit ██ headnotes as part of the filtration process, this somehow converts them *ipso facto* into admissions of copyright infringement. Nothing could be further from the truth. Plaintiffs are essentially arguing for unfounded adverse inferences. Those ██ headnotes are those where there is an open question of fact as to whether they are original or not, let alone infringed. There is no question as to those that were submitted for filtration, as they are not original as a matter of law. But ROSS is entitled to a trial on the ██ where Plaintiffs have shirked their burden of production on originality. The same is true for the 2,830 identified by Ms. Frederickson-Cross (1,207 of which have only been asserted), as Plaintiffs cannot use this to support originality and material appropriation. That is not the way the burden of proof works. The headnotes are independently not copyrighted, so there is no presumption of originality. The burden remains with the Plaintiffs and they have failed to meet the burden for summary judgment.

The big questions in determining whether summary judgment can be granted as to copyright infringement are whether (1) the Westlaw headnotes contain sufficient originality to be copyrightable, (2) whether there was actual copying and (3) whether ROSS copied that original content. As the Court correctly noted in its prior summary judgment decision, there is a genuine factual dispute about how original the headnotes are. D.I. 547 at 8.  Since then, nothing has changed. Plaintiffs offer no additional evidence that the headnotes are copyrightable compared to the judicial opinions, nor has it offered evidence as to either element of copying.

Indeed, even the copyrightability example used by Plaintiffs (D.I. 675 at 2) demonstrates that the memo question was derived from the judicial opinion and *not* the headnote:

| Headnote Text | Judicial Text | Memo Question |
|---|---|---|
| ████████████ | ████████████ | ████████████ |
| ███████████ | █████████████ | █████████████ |
| █████████████ | ██████████████ | ████████████ |
| ████████████ | ███████ | ███ ██████ |



To the extent there are words in the headnote that are original, ROSS did not copy those words. Instead, as shown by the blue words in the memo question, the words copied were derived from the judicial opinion. There cannot be material appropriation if ROSS did not actually make virtually identical copies of the original words of the headnotes, which clearly is not the case. For each headnote, Plaintiffs' were required to perform this side-by-side comparison to show no genuine dispute as to appropriation of the *protectable* elements. Plaintiffs have failed to do so.

Indeed, as demonstrated by the above example and contrary to Plaintiffs' claims, *the words matter*, as there cannot be infringement unless the words were actually copied and ROSS made a virtually identical copy to the protectable elements.  It is painstakingly clear that ROSS did not copy the original words of the headnote, nor, as discussed below, did it copy the selection or arrangement of the headnotes (or any "connections") *as a whole*. Because Plaintiffs do not show material appropriation, they cannot be entitled to summary judgment.

Plaintiffs have also not met the burden for summary judgement on innocent infringement and copyright misuse. As to innocent infringement, it is an undisputed material fact that ROSS was unaware of infringing content. As to copyright misuse, every Westlaw printed page carries a disclaimer stating "*Westlaw © [date] Plaintiffs. No claim to original U.S. Government Works*." Despite this disclaimer, Plaintiffs have made a blatant attempt to illegally extended their copyright to include headnotes containing verbatim copies of judicial opinions. Plaintiffs attempt to mask this effort under a purported copyright-protected "link" or "relationship" between the language in the judicial opinion and Plaintiffs' editorialized content—content that is essentially the precise language of the judicial opinions. But the result is the same. This is contrary to public interest, and exactly the type of conduct that is prohibited under copyright misuse.

## NATURE AND STAGE OF PROCEEDINGS

On August 22, 2024, this Court continued trial. On August 29, 2024, the Court ordered summary judgment briefs and responses not to exceed 40 pages and openings briefs to be filed by October 1, 2024 and response briefs to be filed by October 30, 2024. D.I. 667. The Court also ordered that the factual record for summary judgment purposes is closed.

The Court's previous summary judgment decision involved 2,830 headnotes on which the Court denied summary judgment on originality and substantial similarity. D.I. 547 at 12-13.

## STATEMENT OF MATERIAL FACTS IN DISPUTE

### I. The "Westlaw Content" is Registered as a Single Compilation.

The copyright for "Westlaw Content" is registered as a single compilation. D.I. 1-1; *see e.g. id.* at 2, 4, 6, 8. Each page of a judicial opinion when printed states "Westlaw © [date] Thomson Reuters. No claim to original U.S. Government Works." Declaration of Warrington Parker ("Parker Decl.") Ex. 1, TR-0812245 at -245–247. The single compilation contains 11,205,374,706 data records. *Id.* Ex. 2, TR-0026188 at -190. There are ██████ headnotes, over ██████ key number subtopics, and ██████ judicial opinions. *Id.* Ex. 3, at 8; *id.* Ex. 4, Pls.' Resps. to RFAs at 34; *id.* Ex. 5, Oliver Dep. 188:17-189:5; *id.* Ex. 6, at 25.

### II. The Organization of Westlaw Aligns with the Language of the Law and Nothing About Its Purpose and Function Has Changed Since the 1880s.

Since the 1880s, the materials that make up the "Westlaw Content" has served one purpose: to assist lawyers in finding judicial opinions. *Id.* Ex. 7, TR-0179843; *id.* Ex. 8, TR-0179838; Declaration of Richard Leiter, D.I. 687 ("Leiter Decl.") ¶¶ 12, 18.  This function is served through the organization of the "Westlaw Content" into the West Key Number System ("WKNS"). The judicial opinions and headnotes are organized within the WKNS, and the WKNS indexes cases by alphanumeric numbers and common legal topics.  Parker Decl. Ex. 9,

Pls.' Third Suppl. Resp. at 9; *id.* Ex. 10, TR-0036398 at -407. The organization of the WKNS aligns with the language of the law. *Id.* Cases are organized to enable lawyers to "look for precedents relating to specific subjects under heads to which they have become accustomed" because "any philosophical analysis of the law would be inapplicable to a digest . . . ."  D.I. 687, ¶ 18. Its purpose and function have not changed since the 1880s, which is helping lawyers find relevant law. Parker Decl. Ex. 5, Oliver Dep. 203:12-18; *id.* Ex. 11, Lindberg Dep. 116:14-119:6.

████████████████████████████████████████████████████████

█████████████████████. *Id.* Ex. 12, TR-0002864 at -872. ███████████████████████

█████████████████████████████████████████ *Id.* Ex. 13, TR-0040273 at -280; *see also id.* Ex. 12, TR-0002864 at -872 ████████████████████████████

██████); *id.* Ex. 14, TRCC-00686613 at -627.

### III.    ROSS Was Founded to Develop a Natural Language Search Engine that Relied on the Language of Judicial Opinions.

ROSS was a startup founded in 2014 to develop a natural language search engine that relied on machine learning and artificial intelligence. ROSS's purpose was to return judicial opinions based on the language in the judicial opinion rather than human intermediated content, such headnotes, key numbers or other "Westlaw Content." Declaration of Jimoh Ovbiagele ("Ovbiagele Decl.") ¶¶ 4-5, 12-20 (describing how ROSS generated features, and used machine-learning tools to develop its ranking algorithm); Declaration of Joseph Marks, D.I. 689 ("Marks Decl.") ¶¶ 8-10.  To do this, ROSS purchased judicial opinions from Casemaker. Parker Decl. Ex. 15, Arruda Dep. 83:9-13. ROSS purchased legal memoranda containing a variety of legal questions and answers that were verbatim quotes of judicial opinions from LegalEase Solutions, LLC.  Ovbiagele Decl. ¶ 21; D.I. 689 ¶ 10; Ovbiagele Decl. Ex. 1, ROSS-003411169 at -175.

On October 15, 2015, ROSS entered into a Master Service Agreement ("MSA") with

LegalEase, a legal outsource company that Plaintiffs' know provides legal research services to third-parties. Ovbiagele Decl. Ex. 1, ROSS-003411169 at -175; Parker Decl. Ex. 16, Hafeez 2018 Dep. 33:23- 34:21; *see also id*. Ex. 17, Tario Dep. 80:19-81:19; *id*. Ex. 18, Hoffman Dep. at 32:22-33:15; 34:12-23; *id*. Ex. 19, TR-0908413; *id*. Ex. 20, TR-0037754; *id*. Ex. 11, Lindberg Dep. at 31:11-20; *id*. Ex. 21, Martens Dep. 232:23-233:11.  LegalEase represented and warranted that "[a]ll Deliverables and any Developments are original works of authorship of the authors, and do not infringe the Intellectual Property Rights of any third party." Ovbiagele Decl. Ex. 1, ROSS-003411169 at -175.

## IV.    The Memos Were Used to Teach and Train ROSS's Machine Learning Platform.

In 2017, ROSS needed additional training data. On September 15, 2017, ROSS and LegalEase entered into a new Statement of Work ("SOW") with LegalEase to create additional memos (the "Bulk Memo Project"). Ovbiagele Decl. Ex. 2, ROSS-003332368; Parker Decl. Ex. 22, van der Heijden Dep. at 321:7-322:7. ███████████████████████████████

████████████████████ Parker Decl. Ex. 23, Hafeez Dep. Tr. 88:13-18; *id*. Ex. 24, Cahn Dep. at 25:2-21. ████████████████████████████████████████████

████ *Id.*, Ex. 16, Hafeez 2018 Dep. 124:10-11. LegalEase ████████████████████

████████████████ *Id*. Ex. 25, Whitehead Dep. 82:12-14.

The SOW governed the scope of LegalEase's work. Ovbiagele Decl. Ex. 2, ROSS-003332368. It specified the format of the bulk memos. Each memo was to contain one legal question and four to six quotations from a judicial opinion that were answers to that question. *See e.g.*, *id*. Other than providing the memo-format, the SOW does not include any other specifics regarding LegalEase's obligations or duties as it relates to drafting bulk memos except that it incorporated the IP provision of the MSA. *Id*.; *see also* Parker Decl. Ex. 23, Hafeez Dep. 48:11-17 (█████████████████████████████████████████████

██████████████████████████████████████████ .”).

As for the content of the memos, the questions were legal questions that a lawyer would ask. *See e.g.*, Ovbiagele Decl. Ex. 3, ROSS-003299205; Ovbiagele Decl. Ex. 2, ROSS-003332368. The answers were quotes precisely as they appear in judicial opinions. Ovbiagele Decl. Ex. 3, ROSS-003299205 (listing verbatim paragraphs from judicial opinions under "Case"); Ovbiagele Decl. Ex. 2, ROSS-003332368 (sections 5.2 and 1.4). ROSS needed the answers to be quotations from judicial opinions because the output of ROSS' legal search tool is quotations from judicial opinions. *See* Ovbiagele Decl. Ex. 4, ROSS-023179081 at -087.

## V.    **ROSS did not dictate or control how LegalEase conducted its research.**

ROSS did not dictate or control how LegalEase conducted its research. Parker Decl. Ex. 23, Hafeez Dep. 135:16-21; *id*. Ex. 26, Ovbiagele Dep. 67:6-14 ("████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████); *id*. at 142:19-24.

ROSS did not direct LegalEase to use Westlaw. Parker Decl. Ex. 25, Whitehead Dep. 43:2-5, 60:10-19, 62:3-24 (█████████████████████████████████████████████ █████████), 91:22-92:10; *id*. Ex. 23, Hafeez Dep. 185:8-16, 53:24-54:4 ("████████ ██ █████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████ .'"); *id*. at 135:5-15; *id.*, Ex. 15, Arruda Dep. 271:18-272:5; 286:8-13.

LegalEase never told ROSS how it was preparing memos; never explained to ROSS how LegalEase would conduct research, including getting caselaw; and LegalEase would not have disclosed how it was preparing memos had ROSS asked. *See id*., Ex. 25, Whitehead Dep. 78:6-9; 92:16-93:25; 198:13-20.

The memos were Word documents. Parker Decl. Ex. 22, van der Heijden Dep. 133:7-19.



. Parker Decl. Ex. 27, Dep. of Barbara Frederiksen-Cross 343:6-21; Declaration of Barbara Frederiksen-Cross, D.I. 688 ("BFC Decl.") D.I. 689, ¶ 34.

Parker Decl. Ex. 25, Whitehead Dep. 101:2-10; 107:2-108:9; *see also id*. Ex. 26, Ovbiagele Dep. 132:7-15 (

## VI.    LegalEase Drafted Legal Questions From the Judicial Opinion and Were Instructed that the Headnotes Should Not Be Copied.

." Parker Decl. Ex. 28, TR-0045731 at -734.                                                    .

*See id.* Ex. 23, Hafeez Dep. 63:6-25, 78:1-17, 84:20-85:9, 228:8-24; *id*. Ex. 29, R-LEGALEASE-00050673 at -673; *id*. Ex. 25, Whitehead Dep. 127:5-18; *id*. Ex. 24, Cahn Dep. 62:21-63:21, 64:22-65:13; *id*. Ex. 30, TR-0047926 at -926 (

"

.").

After drafting the question, the contract attorney looked for the four to six verbatim judicial quotes. Ovbiagele Decl. Ex. 2, ROSS-003332368 at -368 (section 5.2). Every quote needed to accurately represent one of the four relevance rankings. *Id*. at 368–369 (sections 5.3 to 5.6); Parker Decl. Ex. 24, Cahn. Dep. 132:23-133:7. The use of headnotes as described here was no substitute for locating the requisite quotes from the judicial opinions and finding "great" quotes required manual searches on the platform. *Id*. Ex. 24 Cahn Dep. 69:8-15, 69:8-71:14.

## VII.    ROSS Did Not Use the Actual Text of the Memos to Train Its Machine-Learning Model. It Used Numbers.

ROSS extracted only the question-answer pairs out of the memos. Ovbiagele Decl. ¶ 7; D.I. 689 ¶¶ 12, 17. ROSS's machine-learning model was trained on numbers (most often between 0.0 and 1.0) that represented grammatical and syntactical patterns and features within the questions and answers, or between the questions and answers. Ovbiagele Decl. ¶¶ 13-17, 20; D.I. 689 ¶ 14-15, 20, 29. This process is called *featurization*. Ovbiagele Decl. ¶ 17; D.I. 689 ¶ 20. ROSS's source code for its search tool contains the code to complete the featurization. Ovbiagele Decl. ¶ 26; D.I. 689 ¶ 17.

## VIII.    ROSS Did Not Attempt to Access Westlaw to Obtain Copyrighted Content.

In 2015, ROSS considered using Westlaw for the same reasons every subscriber uses Westlaw: to access a database of judicial opinions and conduct legal research.  *See* Parker Decl. Ex. 26, Ovbiagele Dep. 204:3-7 (█████████████████████████ █████); *id.* Ex. 22, van der Heijden Dep. 126:23-127-128:4 (███████████████████████ █████████████████); *id.* Ex. 15, Arruda Dep. 271:9-272:8 ███████████████ ████████████████████████████████ Plaintiffs' brief concedes this fact.  *See* D.I. 675 at 13. ROSS did not need access to, or to use, the WKNS to organize the law. *See* Parker Decl. Ex. 22, van der Heijden Dep. 61:8-16 (███████████████ ████████████████████████). ROSS did not need access to, or to use, West headnotes. *See* Parker Decl. Ex. 22, van der Heijden Dep. 135:23-136:23; *see also* Ovbiagele Decl. Ex. 6, ROSS-000197949 at -949-950. ROSS did not need *any* Westlaw Content. *See* Ovbiagele Decl. Ex. 6, ROSS-000197949 at -949-950; *see also* Parker Decl. Ex. 22, van der Heijden Dep. 135:23-136:23 (█████████████████████████████ ███████████████████████████).

Contrary to what Plaintiffs assert, in all other instances, ROSS's sole purpose for accessing Westlaw was for benchmarking or competitive purposes. *See* Parker Decl. Ex. 22, van

9

der Heijden Dep. 120:13-24; 146:4-23 (" ████████████████ ███ ████████████████

████████████████ ██████."); 153:7-22 (██████████████████████

"████████████"). No set of facts shows otherwise.

Plaintiffs footnote and conflate facts by suggesting that Charles von Simson's access to Westlaw is linked to the period of the alleged infringement. In reality, Charles von Simson joined ROSS in May 2018, after the LegalEase projects and any potential infringement, which was October 2017 to January 2018. *See* Parker Decl. Ex. 31, Charles von Simson Dep. 98:18-23. Any attempts von Simson made to gain access to Westlaw are unrelated to Plaintiffs' copyright claims. Even so, von Simson's access was solely for benchmarking ROSS's performance. *Id.* Ex. 31, von Simson Dep. 181:7-182:20; 119:6-19; 134:8-21; 144:25-145:7.

## IX.    The 2017 Classifier Project Provided Materials Not Ultimately Used.

In 2017, ROSS experimented to see whether it should "classify" cases for the search process (label cases under categories such as Civil Procedure). Ovbiagele Decl., ¶¶ 27-28; Parker Decl. Ex. 22, van der Heijden Dep. 415:14-21. ████████████████████████████████

████████████████████████████. *Id.*; D.I. 688 ¶ 24. ROSS

████████████████████. Ovbiagele Decl. ¶ 28. ████████████████████

████████████████. *See* Ovbiagele Decl. ¶ 31; Parker Decl. Ex. 22, van der Heijden Dep. 415:22-416:10. ████████████████████████████

████████████████████████. Ovbiagele Decl. ¶ 29-30; Ovbiagele Decl. Ex. 6, ROSS-000197949 at -949-950. ROSS was only interested in the judicial text and did not want, or need, headnotes or other extraneous data and asked LegalEase to not provide it with judicial opinions that contained anything other than raw judicial text. *Id.* at -949. ROSS did not want anything beyond "passages from case law" because that was "bad data" and "it became a resource-intensive exercise for our team to . . . then have to take out stuff that was irrelevant

10

from the data set." Parker Decl. Ex. 22, van der Heijden Dep. 135:23-136:23.

**X.    There Is No Evidence Of Copying or Other Elements of Infringement.**

After this Court's Order, in their Third Supplemental Response to Interrog. No. 1 and through their expert, Dr. Krein, Plaintiffs identified ▮▮▮ headnote-to-case-passage relationships that were allegedly copied. D.I. 201, at 1; Parker Decl. Ex. 9, Third Suppl. Resp. to Interrog. No. 1 at 70; Parker Decl. Ex. 32, Suppl. Expert Report of Dr. Jonathan Krein, dated August 11, 2024. [2] Notably, while Plaintiffs claim copying, they only move on ▮▮▮ headnotes and rightly so, because they do not even challenge ROSS's assertion that ▮▮▮ headnotes are plainly not copyrightable (including some of the 2,830 identified by Ms. Frederiksen-Cross). D.I. 637. Regardless, for the ▮▮▮ headnotes they do move on, Plaintiffs provide no side-by-side comparison to prove infringement, including no side-by-side comparison of every headnote for actual copying. Indeed, Dr. Krein admits that he only manually reviewed ▮▮▮▮▮▮ headnotes and of those, admits that many were not copied. None of Krien's analysis pertains to material appropriation. Parker Decl. Ex. 33, Krein Reply Report, n.170 & Appendices C and E; *Id.* ⁋ 149 Exemplars of side-by-side comparisons are provided herein to demonstrate Plaintiffs have not met their burden.

### LEGAL STANDARD FOR DIRECT INFRINGEMENT

To demonstrate copyright infringement, Plaintiffs must prove both: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). Unauthorized copying consists of actual copying and material misappropriation, sometimes

---

[2] Dr. Krein also identifies the key numbers copied. Parker Decl. Ex. 32. ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 688 ¶¶ 23-25.

described as substantial similarity. *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018).

## I.    Burden Of Production And Persuasion For Copyright Infringement

To grant summary judgment, a plaintiff must demonstrate there is no genuine dispute of any material fact. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The plaintiff has the burden of proof in a copyright infringement case. *Tanksley*, 902 F.3d at 171. This includes both the burden of production of evidence and the burden of persuasion for each element of copyright infringement. *See Friedman*, 833 F.3d at 1188. In moving for summary judgment and at trial, both burdens remain at all times with the plaintiff. *Id.*

Moreover, while Westlaw is a registered compilation, a *prima facie* presumption does not extend to individual works within the compilation, which have never been analyzed for copyrightability. *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 926 (N.D. Ill. 2013) (noting that the *prima facie* presumption of validity for a registered compilation did not extend to individual works or sentences within the compilation). Therefore, there is no rebuttal presumption or shifting of the burden of proof for individual headnotes. *Id.* As a result, for *each* of the asserted copyrighted works, this infringement analysis requires proof burdens of production and persuasion by a side-by-side analysis. *Tanksley*, 902 F.3d at 173-74. Summary judgment cannot be granted if a plaintiff fails to meet both burdens. *See Schiffer Publishing, Ltd. v. Chronicle Books*, LLC, 350 F. Supp. 2d 613, 617-18 (E.D. Pa. 2004) (denying summary judgment because there was a genuine dispute as to copyrightability); *Gallup, Inc. v. Talentpoint, Inc.*, 2001 WL 1450592, at *8 (E.D. Pa. Nov. 13, 2001) (same); *Medical-Legal Consulting Institute, Inc. v. McHugh*, 1997 WL 756686, at *2-5 (E.D. Pa. Dec. 8, 1997) (denying summary judgment because there was a genuine dispute as to substantial similarity); *Advanta-STAR Auto. Rsch. Corp. of Am. v. DealerCMO, Inc.*, 2022 WL 179466, at *6-9 (E.D. La. Jan. 20, 2022) ("plaintiff has failed to provide any evidence that defendants copied original elements of

its database, as opposed to information that, like judicial opinions, are unprotected.")) *Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 413 F. Supp. 2d 485, 488 (E.D. Pa. 2005) (denying summary judgment even with a side-by-side comparison because the court could not "determine as a matter of law that an observer would find the questions impermissibly similar or whether any such similarity can be attributed to both parties' reliance on the same public material").

## II.    Originality

A work is original if "the author contributed something more than a 'merely trivial' variation, something 'recognizably his own.'" *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992). Creative works are afforded the highest protection because they represent the original creative expression of an author, but none of Plaintiffs' works are creative works because they are derivative of the words in judicial opinions or are compilations. *Intervest Const., Inc. v. Canterbury Est. Homes, Inc.*, 554 F.3d 914, 921 n.3 (11th Cir. 2008).

 "A 'derivative work' is a work based upon one or more preexisting works . . . consisting of editorial revisions, annotations, elaborations, or other modifications[.]" 17 USC § 101. A plaintiff must demonstrate that compared to the work from which it was derived an author "contributed something more than a merely trivial variation, something recognizably his own." *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976) (quoting *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 103 (2d Cir. 1951); *see also Gerlach-Barklow Co. v. Morris & Bendien, Inc.*, 23 F.2d 159, 161 (2d Cir. 1927). Plaintiffs have never claimed that Westlaw is a derivative work, but if the headnotes are individual works, they are derivative works.

A compilation is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. For it to be original, a court

13

must determine whether the entire compilation, as a whole, is original based on the unique selection, arrangement, or coordination of the individual elements together. *See Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 512 (2d Cir. 1991); *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). To constitute a compilation, there must be a combination of more than three elements; a single element cannot be protected as a compilation as there can be no selection or arrangement of one. *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 682-83 (2d Cir. 1998) ("[S]election from among two or three options, or of options that have been selected countless times before and have become typical, is insufficient.").

## III.    Unauthorized Copying

Unauthorized copying "comprises two (frequently conflated) components: actual copying and material appropriation of the copyrighted work." *Tanksley*, 902 F.3d at 173. "The conceptual distinction between actual copying and material appropriation is foundational to copyright law because not all instances of actual copying give rise to liability, and, conversely, without proof of actual copying the amount of similarity between two works is immaterial." *Id*. Plaintiffs must demonstrate both elements to prevail. *Id*. (dismissing after finding no material appropriation).

### A.    Actual Copying

"Actual copying focuses on whether the defendant did, in fact, use the copyrighted work in creating his own." *Tanksley*, 902 F.3d at 173. "The test for actual copying can be established by direct evidence or inferred by evidence of access and similarites [sic] that are probative of copying between the works, and expert testimony." *Dam Things From Denmark v. Russ Berrie and Co., Inc.*, 290 F.3d 548, 562 (3d Cir. 2002) (cleaned up). Direct evidence is "defendant's admission that he copied" each of the asserted works. *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946). "In the great majority of cases, a plaintiff will lack direct evidence of copying, which may instead be shown through circumstantial evidence of access and similarity." *Tanksley*, 902

14

F.3d at 173. There is a "distinction between 'substantial similarity' with respect to copying and 'substantial similarity' with respect to material appropriation." *Id.* That is, "[t]wo works can be 'substantially similar' so as to support an inference of copying, yet not 'substantially similar' in the sense that the later work materially appropriates the copyrighted work." *Id.*

### B.    Material Appropriation

For infringement, "[a]ctual copying alone is insufficient . . . because a copyright only protects the holder's particular creative expression, not his ideas." *Id.* at 174. Indeed, "[a]t a certain level, copying is perfectly permissible, even expected." *Id.* Even if actual copying is demonstrated, the test is whether "a 'lay-observer' would believe that the copying was of *protectible* aspects of the copyrighted work." *Dam Things*, 290 F.3d at 562 (emphasis added); *see also Tanksley*, 902 F.3d at 175; *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (J. Hand). To determine this, "the trier of fact performs a side-by-side comparison of the works and, excluding any unprotectable elements, assesses whether the two works are substantially similar." *Tanksley*, 902 F.3d at 174. However, if the copyright is thin, the two works are compared for virtual identity rather than substantial similarity. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 915 (9th Cir. 2010) (noting the expression for fashion dolls was "highly constrained" and dolls must be compared side-by-side for virtual identity). Filters such as "scènes à faire" and "total concept and feel" are "tools to assist the trier of fact in reaching a proper conclusion." *Tanksley*, 902 F.3d at 175. Expert testimony is impermissible, as "the fact-finder must decide without the aid of expert testimony, but with the perspective of the 'lay observer,' whether the copying was 'illicit,' or 'an unlawful appropriation' of the copyrighted work." *Whelan Assocs. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1232 (3d Cir. 1986).

The filtering analysis includes merger and scènes à faire. *Tanksley*, 902 F.3d at 174. Where there is only one or one of a few ways to express and idea, merger bars infringement to prevent a

monopoly by the copyright owner over a particular idea. *Educ. Testing Services v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986) ("When the idea and the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying 'art.'"). Similarly, scènes à faire are elements that are, "indispensable, or at least standard, in the treatment of a given topic." *Atari, Inc. v. N. Am. Phillips Consumer Elecs. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982). There is no infringement if there is merger or the scènes à faire are required for the expression of an idea, because "there should be no monopoly on the underlying unprotectable idea." *ETS-Hokin v. Skyy Spirits, Inc*., 225 F.3d 1068, 1082 (9th Cir. 2000).

Material appropriation in the context of a derivative work requires the factfinder to remove the unprotectable elements from the accused work—which includes any public domain materials— and filter out other elements, then determine if the accused work incorporates the protected elements of the asserted work. *Tanksley*, 902 F.3d at 175; *Grondin v. Fanatics, Inc.*, No. 22-1946, 2023 U.S. Dist. LEXIS 4538, at *5 (E.D. Pa. Jan. 10, 2023) (granting a motion to dismiss because material appropriation of a derivative could not be found after excluding unprotectable elements).

Material appropriation is analyzed slightly differently in the context of a compilation, as compilations are only protected as compilation, so infringement can be found only if there is substantial similarity in selection, arrangement, or coordination of the accused work and *the entire asserted compilation*. *See, e.g*., *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp*., 463 F.3d 478, 482-83 (6th Cir. 2006). In assessing a compilation, "infringement cannot be based on a showing that only a part of the work has been copied . . . [instead] infringement should not be found in the absence of 'bodily appropriation of expression,' or 'unauthorized use of substantially the entire item.'" *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc*., 893 F.3d 1176, 1186 (9th Cir. 2018); *see also Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 730 (8th Cir. 2002). When the

compilation is "thin," such as compilations compiling factual works, there must be "supersubstantial" copying, or almost the entire work. *TransWestern Pub. Co. LP v. Multimedia*, 133 F.3d 773, 777 (10th Cir. 1998); 4 NIMMER ON COPYRIGHT § 13.03[A][4] (2024); *see also Experian*, 893 F.3d at 1186 (affirming summary judgment of noninfringement of a compilation when defendant's database comprised at most 80 percent of plaintiff's compilation); *Ross*, 463 F.3d at 483 (cases usually require substantial "verbatim copying" and finding 61% copying insufficient); *Schoolhouse*, 275 F.3d at 729-30 (74% copied of a compilation not sufficient).

## ARGUMENT

### I.    Plaintiffs' Legal Analysis Is Fundamentally Flawed

Plaintiffs impermissibly mix two distinct concepts in copyright law—individual works versus compilations—by conflating an infringement analysis with a statutory damages analysis. Works must be separately analyzed for purposes of infringement, but works can be combined for purposes of statutory awards if part of a compilation. *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 285 (4th Cir. 2003) ("Although parts of a compilation or derivative work may be 'regarded as independent works for other purposes[,]' for purposes of statutory damages, they constitute one work." (quoting H.R. Rep. No. 94-1476, at 162 (1976)). If an album is registered as a compilation and an individual infringes two songs on the album, the copyright owner is only entitled to damages for the compilation album. *Bryant v. Media Right Prods., Inc.,* 603 F.3d 135, 140–41 (2d Cir. 2010). But as a threshold step, the copyright owner must first prove *either* infringement of individual songs as individual works *or* that the alleged infringer copied the selection and arrangement of the album as a whole. *Compare Tattoo Art, Inc. v. TAT Int'l, Ltd. Liab. Co.*, 794 F. Supp. 2d 634, 651 (E.D. Va. 2011) (finding that 212 tattoos were infringed as individual works, but as part of 24 separate compilations, the copyright owner was only entitled to 24 damages awards) *with Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir. 1984)

(finding that copying of the selection of 5,000 premium baseball cards such that "both works [were] acknowledged to be substantially the same" was infringement of the entire compilation).

For *each* of the asserted copyrighted works, this infringement analysis requires proof of ownership of a valid copyright, actual copying, and a side-by-side analysis to determine if there was material appropriation. *Tanksley*, 902 F.3d at 173-74. Thus, Plaintiffs must either prove (i) they own a valid copyright in the headnotes as derivative works and ROSS infringes because it copied the words of individual headnotes and took the protectable elements not found in the public domain and/or (ii) they own a valid copyright in the selection and arrangement of the compilation headnotes and ROSS actually copied the selection and arrangement of the headnotes as whole. Plaintiffs fail under either theory.

As to individual headnotes as individual works,  . *See* D.I. 675 at 5-6, FN 3 ( ). Indeed, Plaintiffs do not even attempt to address the headnotes as individual works, providing no analysis comparing them to memo questions and judicial opinions. Nevertheless, ROSS briefly addresses the headnotes as individual works to show this theory fails.

Alternatively, as a part of a compilation, the headnotes (along with other aspects of Westlaw, including the WKNS) can only be infringed if Plaintiffs demonstrate that ROSS took sufficient enough of the protectable elements of the selection and arrangement of the compilations *as a whole* to constitute infringement. In addition to failing to demonstrate actual copying of these alleged compilations, Plaintiffs simply do not accuse ROSS of taking enough to constitute material appropriation, and thus infringement.

Following the principles expressed in the Legal Standard section, for example,

Shakespeare's plays were creative works. But because they are hundreds of years old, they exist in the public domain. His plays, and any parts of them, are free to be used by anyone. If a Scholar spends hours researching and determines that "To be, or not to be, that is the question" is the most important line in *Hamlet* and publishes just that line by itself, he does not get a copyright, because all he did was take something from the public domain and republish it without variation. No one gets a copyright monopoly on a quote from Shakespeare and the right to exclude others merely by publishing it. Anyone is free to copy either the line from directly from *Hamlet* or from the Scholar, because they both exist in the public domain.

If the Scholar attempts to create a derivative work by instead publishing "The most important line in *Hamlet* is 'To be, or not to be, that is the question,'" the Scholar may have a copyright on the entire phrase, but it would be thin, because the Scholar is not creating something new, but rather identifying a fact. Anyone is still free to copy the quote from *Hamlet* from the author's work because he does not own the public domain quote. Moreover, due to the principles of merger and scènes à faire, any copyright might not protect against even verbatim copying by a third party, because the statement "The most important line in *Hamlet* is" is an idea with limited expression. The Scholar cannot own the idea that it is the most important line because others may believe that idea as well and other scholars in the field would need to use this type of language to express that idea. Because no one can have a monopoly on an idea, there can be no infringement even if there is actual copying because the copier only took what was in the public domain and expression necessary to convey the idea of how important the line is.

Further, if the scholar selects 10 quotes from *Hamlet*, 10 from *Macbeth*, and 10 from *King Lear* as part of a collection of quotes expressing ennui in Shakespeare and publishes them, the Scholar again might have a copyright in the compilation based on the selection or

19

arrangement of *all* of the quotes. However, the Scholar cannot stop another from copying a single quote from *Hamlet*, *Macbeth*, and *King Lear*, even if the other person copied it from the Scholar's compilation because copyright law *only* protects the compilation as a whole—the specific selection or arrangement of the quotes as a set that express ennui. To infringe, a copier must materially appropriate the creative expression, which in the case of a compilation, means copying substantially all of the selection and arrangement of the compilation.

Another analogy, nearly factually identical to the infringement issues here, can be found in *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 572-73 (9th Cir. 1987), which held that facts from a copyrighted trivia encyclopedia had not been infringed where the facts in the book had been converted verbatim into questions for the game Trivial Pursuit. In *Worth*, the author of a collection of trivial facts alleged that the makers of the game Trivial Pursuit, copied the facts from his book and merely transmuted them into questions. *Id.* at 570. Unlike here, in *Worth*, actual copying was conceded, but the Court ruled that, "[t]he verbatim repetition of certain words in order to use the nonprotectible facts is also noninfringing; the game cards' repetition of words used by Worth to describe places, persons, and events constitutes 'mere indispensable expression' of particular facts or ideas." *Id.* at 573. The same analysis holds true here.

The foregoing examples demonstrate the clear flaws in Plaintiffs' legal theory and failure of proof for copyright infringement. Plaintiffs have never claimed that the headnotes are derivative works. But if they had, they would be viewed as derivative individual work of the public-domain judicial opinions. Plaintiffs have offered no evidence that the headnotes are copyrightable by, for example, demonstrating on a side-by-side basis how its headnotes differ from the public-domain judicial opinions. Similarly, to prove infringement of a compilation (Westlaw, the headnotes, or the key numbers), Plaintiffs have offered no evidence that ROSS

20

copied the selection or arrangement such that it made a virtually identical copy to the *overall* arrangement. Plaintiffs have failed to meet their burden of production and burden of proof.

## II.     Plaintiffs' Improperly Attempt To Shift The Burden Of Proof

Plaintiffs bear the burden of proof, including the burden of production, on their copyright infringement claim. Plaintiffs' Opening Brief only specifically moves for infringement on ███ headnotes, but fails to address the required elements of originality, actual copying, and material appropriation, as required under *Tanksley.* 902 F.3d at 173-74. Plaintiffs' argue that the omission of the ███ of the headnotes from the ROSS filtration filing is an admission of originality. But omitting these ███ headnotes was not an admission that these headnotes are copyrightable, but rather, the opposite, that there was a genuine issue of fact as to their copyrightability.

With respect to the ███ headnotes ROSS did not include for filtration, the submitted spreadsheet only addressed whether Plaintiffs' headnotes were clearly not copyrightable as a matter of law. D.I. 612, 637. The evidence is clear that each of these example headnotes submitted for filtration purposes are not original and certainly not "creative." More importantly, the filtration hearing and the spreadsheet were not intended address actual copying or material appropriation (i.e., a side-by-side comparison to determine whether ROSS materially appropriated the *protectable elements* of the headnotes). Thus, the omitted ███ were headnotes where there was at a genuine fact dispute as to originality. This is exactly the opposite inference that Plaintiffs suggest.

However, Plaintiffs' attempt to use the headnotes that were not submitted as affirmative evidence would require an adverse inference in an effort to meet their burden of production. That would be improper for the Court to do because it would shift the burden of production and of proof. *See Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016). To hold otherwise would impermissibly shift the burden of production and persuasion to ROSS to

disprove a copyright, when the ████ headnotes, as individual works, can only be copyrightable if Plaintiffs demonstrate ownership in a valid copyright. *Tanksley*, 902 F.3d at 173.

As to the 2,830 bulk memos identified by Ms. Frederiksen-Cross, for the reasons stated below, her analysis too does not meet Plaintiffs' burden of proof on actual copying. More importantly, her analysis is *irrelevant* to two other critical elements of copyright infringement, (1) copyrightability of the headnotes and (2) material appropriation, because these are questions of fact and an expert cannot be used. *See Whelan*, 797 F.2d at 1232 (expert testimony impermissible for unlawful appropriation); *Paul Morelli Design, Inc. v. Tiffany & Co.*, 200 F.Supp.2d 482, 486-87 (E.D. Penn. 2002) (expert testimony impermissible for copyrightability). Indeed, this Court noted, "[Ms. Frederiksen-Cross] did not—and could not—take a position on whether the headnotes and questions were 'substantially similar' under the ordinary-observer test." D.I. 547 at 11. Plaintiffs fail to demonstrate there is no genuine dispute for the 2,830 bulk memos and have failed to meet their burden at this stage. *Tanksley*, 902 F.3d at 173; *Friedman*, 833 F.3d at 1188.

## III.     As Individual Works, Plaintiffs Fail To Show A Copyright

The reason that Plaintiffs seek to shift the burden of production is because they have failed to meet their burden of proof as to copyrightability. To the extent Plaintiffs assert the headnotes are individual works, they are derivative works of public domain materials. *See Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 104-05 (2d Cir. 1951) (mezzotint reproductions of public domain paintings were derivative works); *Allegrini v. De Angelis*, 59 F. Supp. 248, 250-51 (E.D. Pa. 1944), *aff'd*, 149 F.2d 815 (3d Cir. 1945) (art objects depicting public domain religious shrines were derivative works).[3] Thus, to be entitled to summary

---

[3] .

judgment on originality, Plaintiffs have the burden to prove there is no genuine dispute that they offered something "recognizably its own" to each of the headnotes such that they are original. *L. Batlin*, 536 F.2d at 490; *see also Gerlach-Barklow*, 23 F.2d at 161.[4] This, they have not done.

With respect to the 2,830 bulk memos questions that were identified by Ms. Frederiksen-Cross, as an initial matter, this Court found previously (D.I. 547 at 11) that 1,623 of the headnotes *have never been asserted* against ROSS. Plaintiffs were ordered by the Court to specifically identify headnotes that were allegedly infringed. D.I. 201, at 1. In response, Plaintiffs, in their Third Supplemental Response to ROSS's First Interrogatory, identified ██████ headnotes that ROSS allegedly copied (SOF at 11), which did not include the 1,623 headnotes. D.I. 547 at 11. Plaintiffs still recognize that the universe of accused headnotes is only ██████ headnotes. D.I. 675 at 5. Removing these 1,623 headnotes leaves only ████ headnotes at issue.

For these remaining ████ headnotes, there is still a factual dispute as to the originality of these headnotes, as an expert cannot opine on (or even address) originality, as this Court previously ruled. D.I. 547 at 12; *see also Paul Morelli*, 200 F. Supp. 2d at 486-87. Plaintiffs do nothing to demonstrate that there is no genuine dispute as to the originality of these ████ headnotes and a reasonable factfinder could find they are not copyrightable. Indeed, ROSS submitted some of them for filtration as not original, which Plaintiffs do not address. D.I. at 637.

Similarly, in their Opening Brief, Plaintiffs offer nothing to demonstrate that they own a valid copyright in the asserted ████ headnotes. Instead, Plaintiffs try to both shift the burden and prove an affirmative fact by arguing in the negative. For ████ of the headnotes, Plaintiffs rely on the belief that that were purportedly "omitted" from ROSS's list of "unprotectable"

---

[4] Like the Shakespeare example, the Scholar cannot have a copyright merely by identifying a single quote from Shakespeare; instead, he must add something of his own and then demonstrate what that something is. *Worth* also recognized the trivia facts themselves are not copyrightable. 827 F.2d at 570.

headnotes to somehow conclude a concession of copyrightability, which it was not. Those ▓ headnotes are those where there is an open question of material fact as to whether they are original or not. ROSS is entitled to a trial on the ▓ as Plaintiffs have shirked its burden of production and there remains an open issue of material fact as to their originality.

Of the ▓ headnotes at issue, Plaintiffs have not demonstrated copyright ownership in 86 of them because the headnotes do not exist in the judicial opinions Plaintiffs identified. Canter Decl. Ex. A. ROSS cannot infringe headnotes that do not match the case from which they were supposedly taken, and Plaintiffs cannot show a valid copyright. *Tanksley*, 902 F.3d at 173 (plaintiff must own "a valid copyright"). Additionally, as shown in Canter Ex. B, for 897 of the headnotes, to the extent there ever was a copyright, it has expired, and ROSS cannot infringe. D.I. 547, at 10 (noting that "[c]opyrighted works created before 1927 are in the public domain and are not protected"); *see also Golan v. Gonzales*, 501 F.3d 1179, 1189 (10th Cir. 2007).

As to the ▓ headnotes not submitted for filtration, many are verbatim or near verbatim copies of the judicial text and thus no individual copyright can exist because they merely copy public domain materials or only make trivial variations. *Georgia v. Pub. Res. Org., Inc.*, 590 U.S. 255, 273 (2020) (materials authored by a judge are not copyrightable); *L. Batlin, 536 F.2d at 490*; *Gerlach-Barklow Co.*, 23 F.2d at 161. Canter Ex. C provides an example of 30 headnotes that are not copyrightable because they are identical to the text of the judicial opinion. *L. Batlin, 536 F.2d at 490*. Similarly, Canter Ex. D, provides examples of 40 headnotes containing obvious trivial variations of the judicial text, such as changing punctuation, spelling, or removing case citations. *See Matthew Bender*, 158 F.3d at 681 n.4 (corrections to the text, including punctuation or spelling, may be trivial); *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 287 (S.D.N.Y. 2001) (holding that "functional, as opposed to creative, alteration[s]" are not

protectible). Plaintiffs do not demonstrate how such headnotes are copyrightable. Equally important, Plaintiffs do not meet their burden and demonstrate there is no genuine dispute as to the copyrightability of any of the ▮▮▮ headnotes, which a factfinder could determine are either verbatim copies of judicial opinions or have some trivial variations. *See L. Batlin*, 536 F.2d at 489-92 (change in medium and scale or size of a work not sufficiently original). Because the copyright registration does not extend to individual works within the compilation, it is Plaintiffs' burden to demonstrate that each headnote is copyrightable and they have failed to provide that analysis. *Pers. Keepsakes*, 975 F. Supp. 2d at 926. Regardless, ROSS has demonstrated that there is a genuine dispute as to copyrightability of each headnote. *Schiffer Publishing, Ltd. v. Chronicle Books, LLC*, 350 F. Supp. 2d 613, 617-18 (E.D. Pa. 2004) (defendant rebutted presumption of validity and summary judgment could not be granted).[5]

## IV.    Any Compilation Copyright is Thin

Plaintiffs only have a copyright to Westlaw in general as a compilation, but that registration does not extend to its constituent parts as a matter of law. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 203 (9th Cir. 1989) ("[A] copyrightable compilation [can] consist entirely of matter which is not itself copyrightable."); *Pers. Keepsakes*, 975 F. Supp. 2d at 926; *Matthew Bender & Co. v. W. Publ'g Co.*, 1997 WL 266972, at *2 (S.D.N.Y. May 19, 1997) *aff'd*, 158 F.3d 674 (2d Cir. 1998) (noting "West's compilation copyright protects its arrangement of cases, its indices, its headnotes and its selection of cases for publication[.]" Plaintiffs argue that the choices made in selecting headnotes and assigning key numbers are

---

[5] Moreover, for material appropriation, the burden is on Plaintiffs to demonstrate that ROSS took the *protectable* elements of its copyright, which necessarily requires Plaintiffs perform a side-by-side between the judicial opinions and the headnotes to demonstrate the protectable elements. *Advanta-STAR*, 2022 WL 179466, at *6 ("[D]efendants largely took unprotected factual information from plaintiff's comparisons")

creative. Assuming this is true, the selections are driven by a utilitarian purpose to allow attorneys to find cases. Whatever creativity exists is constrained by this fact. This is not tabula rasa. A Court has already concluded that the copyright is thin. *Id.,* at 707 ("West has a thin copyright in its compilations.").

Plaintiffs do not argue that ROSS copied all or a substantial portion of all of Westlaw such that it created a virtually identical copy to *all* of Westlaw. *Experian*, 893 F.3d at 1186. Instead, ROSS is only accused of infringing, at most, key numbers, judicial topics, and headnotes. The copyright registration does not extend to these individual works and Plaintiffs must prove they are original. *Harper House*, 889 F.2d at 203.

### A.    There Is No Copyright For Effort Alone

Plaintiffs' repeated references to the skill, training, and effort Plaintiffs' attorneys purportedly put into identifying headnotes cannot factor into the analysis for copyrightability. It is fundamental in copyright law that the amount of time, effort, or skill it takes to make a work is irrelevant when assessing whether it is protectable. *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 354 (1991) ("Without a doubt, the 'sweat of the brow' doctrine flouted basic copyright principles."). Copyright law does not award a monopoly based on effort, it only awards a monopoly for creativity. *Id.* at 354, 359.[6]

### B.    All Asserted Compilations Are Only Protected As A Whole

A compilation only protects the specific selection and arrangement of the entire body of work. *Satava*, 323 F.3d at 811; *see Eckes*, 736 F.2d at 863 (2d Cir. 1984) (the selection of 5,000

---

[6] A skilled sculptor who takes a slab of marble and creates an exact replica of Michelangelo's *David* does not get a copyright in the sculpture, because he merely reproduced something in the public domain. *See L. Batlin*, 536 F.2d at 489-92 (change in medium and scale or size of a work not sufficiently original). The same is true of a Scholar that merely pulls a quote from Shakespeare and republishes it. It does not matter how much time or skill were spent to find and publish the quote; if he adds nothing to it, he does not obtain a copyright.

premium baseball cards out of 18,000 baseball cards was found to be a valid copyright because of how they were selected to be "premium"); *Open Source Yoga Unity v. Choudhury*, No. C 03-3182 PJH, 2005 U.S. Dist. LEXIS 10440, at *11-13 (N.D. Cal. Apr. 1, 2005); (the arrangement of 26 yoga asanas into a sequence could be afforded thin protection of the arrangements specifically described "if the trier of fact determines that a sufficient number of the individual yoga asanas are arranged in a sufficiently creative manner, copyright protection for the yoga sequence would be available"); *Kregos v. AP*, 937 F.2d 700, 705 (2d Cir. 1991) (the selection of nine baseball pitching statistics for a form was also found to be protectable, in part, "because the record discloses no prior pitching form with more than three of the pitching performance statistics[.]").

However, the protection only extends to that specific selection and arrangement of the entire work. *See Eckes*, 736 F.2d at 863 (infringement found because there was evidence of actual copying and "list of 5,000 premium cards in both works is acknowledged to be substantially the same"); *Open Source*, 2005 U.S. Dist. LEXIS 10440, at *13 (noting infringement could only be found if the copying was "exact or near-exact duplications of his yoga sequence, if the routines taught by plaintiffs are 'substantially similar' to [the plaintiff's]"); *Kregos*, 937 F.2d at 705 (stating that the owner of the copyright in the nine statistics can "prevail only against other forms that can be said to copy his selection," and expressing doubt a form that contained only six of the nine statistics and included four others would infringe).[7]

Here, as compilations, the headnotes and any other "Westlaw Content" (i.e., key numbers and judicial topics) can only be original as a compilation in their selection and arrangement of

---

[7] The same is true of the Scholar's compilation that selects 30 Shakespeare quotes as part of a collection of quotes expressing ennui in Shakespeare. It only protects that specific selection and arrangement, and to infringe, a copier must materially appropriate the creative expression by copying substantially all of the selection and arrangement of the compilation. Similarly, in *Worth*, the court found that the compilation protection only protected the overall selection and arrangement of facts, but not the underlying facts. *Worth*, 827 F.2d at 572.

information *as a whole*. There can also be copyrights protecting headnotes, key numbers, and judicial topics, but they are confined to that overall selection and arrangement. *Satava*, 323 F.3d at 811; *see also Matthew Bender*, 1997 WL 266972, at *2; *Consol. Music Publishers, Inc. v. Ashley Publ'ns, Inc.*, 197 F. Supp. 17, 17-18 (S.D.N.Y. 1961) (a book containing the sheet music for 142 musical selections in the public domain was a compilation). Within the WKNS, there are ███0 judicial topics and subtopics and thus, any copyright specific to the WKNS protects the specific selection and arrangement of ████ judicial topics and subtopics as a whole. Similarly, there are ███ judicial topics and ██████ headnotes, each of which can only be protected based on their respective selection and arrangement to make the whole.

Any compilation copyright in the Westlaw or its subparts is "thin," protecting only the specific selection or arrangement. *Matthew Bender*, 158 F.3d 693 at 707 ("West has a thin copyright in its compilations."); *see also Feist*, 499 U.S. at 349. It is also thin because it serves functional purpose: to allow the location of judicial opinions. *Sega Enters., Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1527 (9th Cir. 1992) (functional works "receive[] only weak protection.").

## V.    There Is A Genuine Issue Of Fact As To Actual Copying

Plaintiffs only move for summary judgment on ████ headnotes. Thus, to prove infringement of these ████ headnotes, Plaintiffs must prove actual copying of the headnotes. *Tanksley*, 902 F.3d at 173-74. Generalized copying it not enough; it must be tied to the item accused of infringement. *Id.*; *see also Conan Props. Int'l v. Sanchez*, No. 17-CV-162 (FB), 2017 U.S. Dist. LEXIS 231561, at *3 (E.D.N.Y. Dec. 5, 2017) (ordering a plaintiff to offer side-by-side comparisons for actual copying for "each and every copyrighted work"). Yet, for direct evidence, they argue that the Court previously found "LegalEase admitted to copying at least portions of the headnotes directly." D.I. 675 at 18. However, LegalEase did not admit to copying even one of the ████ headnotes at issue here. Moreover, this factual finding by the Court is not

direct evidence of actual copying because for each of the ███ headnotes at issue, it must prove that ROSS actually copied *each*. *Tanksley*, 902 F.3d at 173. There is simply no direct evidence in the summary judgment record that LegalEase admitted to copying every one or any one of the ███ headnotes. Plaintiffs must therefore rely on indirect evidence.

For indirect evidence, Plaintiffs also argue that ROSS, through LegalEase, had access to Westlaw, which included the headnotes, and notes the Court's finding that "no reasonable jury could say that the similarities [between Plaintiffs' and ROSS's work] are not at least probative of some copying." D.I. 675 at 18.  But again, Plaintiffs cannot prove actual copying unless they show substantial similarities between each of the ███ headnotes they assert and the memo questions. *Tanksley*, 902 F.3d at 173. A generalized standard is insufficient— Plaintiffs must prove that each item they assert ROSS infringes was individually copied. *Id.* at 173-74.

Indeed, Plaintiffs' do not even reference the only purported evidence of substantial similarity to support actual copying it offers to meet its burden in this case, the expert report of Dr. Krein, likely because his report demonstrates a strong likelihood that actual copying did not occur. Dr. Krein performed a manual comparison of ███████ compared to ROSS questions. Importantly, such opinions are impermissible in this case, as while expert opinions may be permissible to demonstrate actual copying (not material appropriation), it is only to the extent it "help[s] reveal the similarities that a lay person might not ordinarily perceive." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 208 (3d Cir. 2005). However, expert testimony is not permitted for comparing two short works, like headnotes, because it is for the factfinder to compare the works. *Stromback v. New Line Cinema*, 384 F.3d 283, 295 (6th Cir. 2004); *Kindergartners Count, Inc. v. Demoulin*, 249 F. Supp. 2d 1214, 1231-32 (D. Kan. 2003).

Dr. Krein only matched the language of ███ of the ███████, comparing the

words of the headnotes to ROSS's questions. SOF at 11. Because he was not offering technical analysis that could not be performed by a factfinder, Dr. Krein's opinions should be excluded (*Stromback*, 384 F.3d at 295) and because this is Plaintiffs' only evidence of actual copying of the headnotes, Plaintiffs cannot prove actual copying. Moreover, even removing the ██ headnotes, this leaves ███ headnotes that Plaintiffs have proffered no evidence of actual copying—including the ███ at issue. *Conan Props.*, 2017 U.S. Dist. LEXIS 231561, at *3.

Regardless, Dr. Krein's analysis demonstrates that there is a dispute of material fact as to actual copying, because as shown in Canter Decl. Ex. E, at least at least 4 of the ██ headnotes are not part of the ███ asserted and an additional ██ of the headnotes Dr. Krein determined were not copied. Given that Dr. Krein determined at least ██ out of ██ asserted headnotes were not actually copied by ROSS, this raises a genuine dispute as to whether any of the remaining ███ headnotes, including the ███ headnotes at issue, were copied. Indeed, at least ██ of the ██ headnotes are part of the ███ headnotes at issue and were not actually copied.

Plaintiffs attempt to rely on the opinions of Ms. Frederiksen-Cross to support actual copying. Opening Br., D.I. 675 at 16. However, Thomson Reuters' reliance on Ms. Frederiksen-Cross is misplaced. Importantly, just like Dr. Krein's opinions, expert testimony should not be permitted for actual copying of short works; instead, it should be left to the factfinder. *Stromback*, 384 F.3d at 295. Additionally, Ms. Frederiksen-Cross' analysis is neither an admission of actual copying nor infringement generally. Instead, her opening report represents a broad algorithmic analysis of the textual relationship of all headnotes and judicial opinions Plaintiffs produced in discovery to the legal questions contained in the bulk memos. D.I. 688 ¶¶ 7-8. At the time of her opening report in August 2022 Plaintiffs had not disclosed the content allegedly infringed so she examined what was available—███████████████

█████—and not the actual asserted headnotes. *Id.* ¶¶ 8-9.[8]

More importantly, even if the Court views Dr. Frederiksen-Cross' analysis as relevant to actual copying, it cannot be used to find either copyrightability or material appropriation by ROSS, both of which remain unassessed by Plaintiffs and cannot be determined by expert testimony. *See Whelan*, 797 F.2d at 1232; *Paul* Morelli, 200 F.Supp.2d at 486-87.[9]

## VI.    There Is No Evidence Of Material Appropriation

Plaintiffs do nothing to address material appropriation in its briefing and Plaintiffs failed to perform the required step of performing a side-by-side comparison for each asserted work and removing the unprotectable element and filtering. *Tanksley*, 902 F.3d at 174. On this basis alone, Plaintiffs cannot be entitled to summary judgment. However, as demonstrated below there is at least a genuine dispute of fact as to whether there was material appropriation by ROSS.

### A.    No Compilation Was Infringed

While Plaintiffs reference "Westlaw Content" generally, only three elements are specifically enumerated as allegedly infringed by ROSS: the WKNS, judicial topics, and headnotes. To the extent there is a valid copyright, Plaintiffs can only have a copyright in the selection or arrangement of key numbers, judicial topics, headnotes, or "Westlaw" as a whole. That is, it is protectable as a compilation because of the selection or arrangement of all the elements.

---

[8] As to the 188 headnotes discussed in the Court's prior Order (D.I. 188), Plaintiffs have not met their burden (and cannot now meet their burden), as they have proffered no side-by-side comparison for any element of infringement to demonstrate no genuine dispute, nor that these 188 headnotes are original.

[9] In discussion of alleged actual copying by ROSS (Opening Br. at 16), the only other purported evidence of actual copying pertains to issues not in dispute, such as alleged █████████████ (Exs. 16, D.I. 678-16 and 41-43, D.I. 678-41-678-43) or ███████████████ (Exs. 58, D.I. 678-58 and 62, D.I. 678-62).[9] Any alleged copying of these elements is irrelevant. Thomson Reuters also cites ███████████████████████████████████████████████████████████████████████████████████████████.

*Eckes*, 736 F.2d at 863; *Kregos*, 937 F.2d at 705. Similarly, ROSS can infringe only if it copies a substantial portion of that selection or arrangement of the headnotes as a whole, making a virtually identical copy. *See, e.g., Experian*, 893 F.3d at 1186; *Eckes*, 736 F.2d at 863; *Open Source*, 2005 U.S. Dist. LEXIS 10440, at *11. Plaintiffs cannot, as a matter of law, demonstrate a substantial portion of the headnote arrangement was taken based on elements ROSS is accused of infringing.

While Plaintiffs do not specifically move on the WKNS or topics, there is no dispute that Plaintiffs assert that LegalEase gave ROSS and ROSS received, at most, ██████ of the over ██████ judicial topics and subtopics that make up the WKNS. *See* SOF at 11. This is only, at most, ████ of the entire WKNS. Similarly, Plaintiffs contend, at most, ROSS specifically infringed ████ top level of approximately ████ judicial topics that are part of the key number compilation. See SOF at  10. As a matter of law, receiving ████ disparate topics and subtopics covering varying areas of law or ███ top level judicial topics cannot be "bodily appropriation of expression" or "unauthorized use of substantially the entire" selection and arrangement WKNS that includes over ██████ topics and subtopics or the ████ judicial topics. *Experian*, 893 F.3d at 1186-88. Nor can it be supersubstantial copying of the entire compilation or considered a virtually identical copy. *See TransWestern*, 133 F.3d at 776-77; *Ross*, 463 F.3d at 483.[10]

With respect to headnotes as a compilation, Plaintiffs only seek summary judgment on ████ headnotes of approximately ██████ total headnotes in Westlaw. Because the compilation only protects the selection and arrangement of all ██████ headnotes, for ROSS to infringe, it needed to have copied a substantial portion of all of the headnotes in order to

---

[10] The judicial topics are also subject to merger—there is no way to express areas of law without using terms such as Civil Procedure.  *See Educ. Testing Servs.*, 793 F.2d at 539; *Cont'l Cas. Co. v. Hulbert T. E. Beardsley*, 253 F.2d 702, 706 (2d Cir. 1958) (finding no infringement because the language of the forms was essential to express the legal concepts).  They are also scènes à faire, because the judicial topics are "indispensable" and Plaintiffs cannot own the idea of organizing cases by judicial topics and bar others from using it. *Atari*, 672 F.2d at 616.

infringe. *See TransWestern*, 133 F.3d at 776-77; *Experian*, 893 F.3d at 1186; *Ross*, 463 F.3d at 483; *Schoolhouse*, 275 F.3d at 729-30. Here, Plaintiffs only seeks summary judgment on ███ headnotes ███), which cannot be enough copying to constitute material appropriation.

Moreover, there are memo questions that clearly do not correspond to the headnote Plaintiffs asserts is infringed and were taken from different portions of a case or different cases. Thus, ROSS clearly did not copy the headnotes. Canter Decl. Ex. F includes 40 examples of memo questions that clearly do not reflect the language of the headnotes. In finding no substantial similarity in *Key Publ'ns*, the court found that the accused directory not only "does not contain 7500 of the 9000 listings" and "[n]o substantial categories and their listings have been taken wholesale," but "[m]ore than 500 listings . . . are not" in the asserted work. 945 F.2d at 516. Based in the difference, ROSS clearly did not copy the headnotes such that "any consumer faced with the two [works] would instantly realize that they are quite different." *Id.*[11]

As to infringing Westlaw generally, out of the entirety of the Westlaw compilation, ROSS is accused of, at most, taking ██████████████ judicial opinions, out of a copyrighted compilation of over █████████ judicial opinions. SOF at 4, 10-11. This miniscule percentage is insufficient to show "bodily appropriation of expression," or "unauthorized use of substantially the entire item." *Experian.*, 893 F.3d at 1186. This is not, as Plaintiffs frames it, a *de minimis* argument. This relates to the required element of material appropriation, which requires that, for a copyrighted compilation like Westlaw, Plaintiffs must prove ROSS took substantially all of the protectable elements of its Westlaw compilation. *Id.* It is not enough to select some small fraction of a huge compilation to prove infringement.

---

[11] In *Worth*, the court found compilation of trivia facts was not infringed because only facts, not the selection and arrangement, were copied. 827 F.2d at 572-73. Similarly, if a person takes three Shakespeare quotes from the Scholar's compilation of 30 quotes, he does not infringe because he did not copy the selection and arrangement, but rather the public domain quotes.

### B.    As Individual Works, The Headnotes Are Not Materially Appropriated

Plaintiffs failed to meet their burden of proof the headnotes as an individual work. For every headnote at issue, it has failed to prove material appropriation of its purported copyrights.

To demonstrate material appropriation, Plaintiffs must demonstrate, through a *side-by-side comparison*, that *after removing the nonprotectable elements* and accounting for concepts such as merger and scènes à faire, that ROSS took the *protectable elements* of Plaintiffs' alleged copyright such that it made a virtually identical copy. *Tanksley*, 902 F.3d at 174; *Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525, 528 (9th Cir. 1987) ("[P]laintiff fail[ed] to make a sufficient showing that . . . expressive elements of the works are substantially similar."). *Advanta-STAR*, 2022 WL 179466, at *9. Plaintiffs' Opening Brief is entirely devoid of this analysis (particularly the required side-by-side comparison identifying the claimed protectable elements). The words of the memos matter because copying alone is insufficient to prove infringement; Plaintiffs must also show ROSS took its original words or content and not public domain materials. *Id.* at 173-74. This is a failure of proof, because there can be no infringement without material appropriation. *Id.*[12]

Regardless, in an effort to demonstrate the clear flaws in Plaintiffs' infringement case, Canter Decl. Ex. G and H include samples of the text of the memo questions in the column titled "memo question" purportedly corresponding to certain of the ▮▮▮▮ headnotes. All the text of the memo questions that matches the text of the judicial opinion are identified in blue. Because the memo questions are in the form of questions, this analysis accounts for modifications such as

---

[12] This is critical, because like the Shakespeare example, to infringe the Scholar's, the accused infringer must not merely use the words of Shakespeare or elements free to use under merger and scènes à faire. Or, like in *Worth*, where actual copying was conceded, the court ruled that, "[t]he verbatim repetition of certain words in order to use the nonprotectible facts is also noninfringing; the game cards' repetition of words used by Worth to describe places, persons, and events constitutes 'mere indispensable expression' of particular facts or ideas." 827 F.2d at 573.

verb tense changes to account for necessary changes to formulate a question.

As shown by sample of 40 memo question and judicial opinion pairs in Canter Decl. Ex. G, ROSS does not infringe because the memo questions are nearly identical to the judicial opinions, which are not copyrightable. *Grondin*, 2023 U.S. Dist. LEXIS 4538, at *5. As shown by the sample of 40 pairs in Canter Decl. Ex. H, nor can there be infringement if the question, like the headnote, simply provides contextual modifications of the judicial opinions, such as (i) changing a party's name to "plaintiff" or "defendant"; (ii) specifying a type of motion brought or area of law being discussed (such as specifying a "motion" is a "motion to dismiss"); or (iii) stating the full name of an entity or acronym (such as "Federal Arbitration Act" instead of "FAA"). *Educ. Testing Services*, 793 F.2d at 539. The differences between the words of headnote and the judicial opinions are trivial at best. *L. Batlin*, 536 F.2d at 490. But, the analysis also runs into merger and scènes à faire issues, because to provide context or convey the idea the judge was trying to express, these words must be used. *See Cont'l Cas*., 253 F.2d at 706. Moreover, in evaluating each headnote as an individual work, a factfinder must determine whether any protectable elements ROSS took, if any, were *de minimis* in the context of the overall headnotes. *Warner Bros. v. ABC*, 720 F.2d 231, 242 (2d Cir. 1983) ("[A] de minimis rule has been applied, allowing the literal copying of a small and usually insignificant portion of the plaintiff's work."). Plaintiffs do not address *de minimis* copying of individual headnotes.

Finally, as shown by the examples in Canter Decl. Ex. F, there are a number of memo questions that clearly are not similar to the headnotes and thus not materially appropriated. Thus, Thompson Reuters has made no attempt to prove material appropriation through side-by-side comparison and cannot be entitled to summary judgment. *Tanksley*, 902 F.3d at 174

## VII.    "Connections" Are Not Copyrightable And Not Infringed

As a matter of law, Plaintiffs does not own a copyright in the "connection" or "link," as it

is a functional tool intended to lead a researcher to a particular portion of a case. *Torah Soft*, 136 F. Supp. 2d at 287. Indeed, West Publishing Company attempted to make a similar argument for the Westlaw star page system, which the Second Circuit rejected, stating "[i]t is true that star pagination enables users to locate (as closely as is useful) a piece of text within the West volume. . . . [b]ut this location does not result in any proximate way from West's original arrangement of cases (or any other exercise of original creation) and may be lawfully copied." *Matthew Bender*, 158 F.3d at 708. There is no creativity in creating these "connection" and the amount of time or effort it purportedly took to create them is irrelevant. *Feist*, 499 U.S. at 354, 359.[13]

Additionally, Plaintiffs have not demonstrated that for each case asserted, there is a purported "connection" or link between the headnote and the text of the judicial opinion. As shown in Canter Decl. Ex. I, in rows 16115, 16886, and 21834, there is no link from the headnote to the text of the case and ROSS could not have copied anything. Plaintiffs were required, and have failed, to show that such a connection exists for each case and that ROSS actually copied it or materially appropriated it, which requires a side-by-side comparison between the purported connections and the accused works. *Tanksley*, 902 F.3d at 174. Indeed, the memos simply contained the words of the judicial opinions, not links.

To the extent that Plaintiffs argue that ROSS copied the overall selection and arrangement of the "connections" as a compilation, it only protects the selection and arrangement of all the links as a whole. Thus, to copy the "connections," ROSS would have had to copy

---

[13] If the Scholar published the compilation and created a link to the 30 quotations in versions of *Hamlet*, *Macbeth*, and *King Lear*, there is no copyright in the link. He added nothing creative, merely performed the rote task of identifying where the lines can be found for functional purposes. *Matthew Bender*, 158 F.3d at 708. But even if there was a copyright in this link (Plaintiffs point to no cases supporting this theory), it could only be infringed if someone copied the actual physical link. If someone used the link for one of the quotes from Hamlet to find the passage of *Hamlet* and then copied the passage from *Hamlet*, there is infringement because the alleged infringer only took what was in the public domain.

substantially all of the ▮▮▮▮-headnote link compilation, and ▮▮▮ connections is insufficient. *Experian*, 893 F.3d at 1186. Moreover, the link between a judicial opinion and a headnote is an idea that connects a researcher between the actual text of the judicial opinion and an excerpt of the judicial opinion. This means that the expression, the "link," is subject to merger and scènes à faire, as anyone wishing to express the idea of the connection between a passage and the judicial text would need to use the same expression. *ETS-Hokin*, 225 F.3d at 1082.

## VIII.    The ▮▮ Judicial Opinions Were Not Volitionally Infringed

"A plaintiff must also show volitional conduct on the part of the defendant in order to support a finding of direct copyright infringement." *Field v. Google Inc*., 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006); *see also Cartoon Network LP, LLLP v. CSC Holdings, Inc*., 536 F.3d 121, 131 (2d Cir. 2008); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004). The only allegations related to copying of cases by ROSS pertain to ▮▮ judicial opinions, which were not infringed because the undisputed evidence is that ROSS did not volitionally intend to receive copyrighted materials in the ▮▮ judicial opinions and, in fact, and immediately rejected them. SOF, at 10. ROSS cannot be held liable for direct infringement for receiving and never using these ▮▮ judicial opinions when it did not ask for this content and made clear that it was not wanted. *Cartoon Network*, 536 F.3d at 131.

## IX.    Summary Judgement On Innocent Infringement Is Improper.

Plaintiffs' three grounds for summary judgement on innocent infringement fall short, factually and legally. *First*, contrary to Plaintiffs' assertion (D.I. 675 at 27), ROSS relies on the innocent infringement defense only to limit statutory damages. *Second*, Plaintiffs' reading of 17 U.S.C. § 401(d) is wrong. Section 401(d) does preclude the innocent infringer defense when the work bears a copyright notice, but here, the copyright notice pertains to the compilation, not the headnotes, which are the subject of the summary judgment motion. And the analysis does not

stop there. It turns on "access," which Plaintiffs ignore. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13 CV 816, 2016 WL 5092593, at \*5 (S.D.N.Y. Sept. 19, 2016) (declining to strike innocent infringement because the defendant lacked "access" to the "published work"). In *John Wiley*, the court distinguished between those with contemporaneous access and knowledge of copyright warnings and those who received copyrighted material without warnings from a third party. *John Wiley*, 2016 WL 5092593, at \*5. The court noted that a recipient might not suspect infringement if they believed the material was non-infringing. *Id.*; *see also Denenberg v. LED Techs.*, LLC, No. 11-CV-03155-RBJ, 2013 WL 2153290 (D. Colo. May 17, 2013) (similar conclusion as the plaintiff ignored how the defendant obtained the copyrighted material, independent of the plaintiff's website). The facts here warrant the same conclusion.  There is no evidence that ROSS directly accessed Westlaw to either prepare memos or copy any Westlaw Content.

Plaintiffs arguments are unsupported by the record. Plaintiffs cite a series of documents and communications from June 2018 to support their claim that ROSS was aware of Plaintiffs' copyright notices. However, all the documents Plaintiffs cite are later than the relevant time period they allege infringement occurred: October 2017 through January 2018.  *See* SOF, at 4-10, 11-12.  For example, Exhibits 49, 65, and 66 are all documents from ███████████████████ ████████████████████████████████████████████████. None of the documents show a headnote or any other editorial enhancements that could constitute "Westlaw Content." D.I. Nos. 678-49, 678-65, and 678-66, Ex. 49, 65, and 66.

*Third*, innocent infringement requires knowledge that the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2); *see also D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990). The

testimony and documents Plaintiffs rely on to support summary judgement misses the mark. None of the evidence Plaintiffs' cite support their claim that ROSS wanted to access Westlaw to obtained editorialized content. *See, e.g.* D.I. 675 at 28 (citing Ex. 7) ( ██████████████████ ██████████████ ); and D.I. 678-67 ███████████████████████ ██████████████████████████████ ). Notably, Plaintiffs fail to cite to any documents discussing LegalEase's conduct during October 2017-January 2018, including whether ROSS had knowledge of LegalEase's alleged infringement and use of Westlaw, and solely because the evidence does not exist. Such factual leaps, misleading facts, and baseless assumptions are not enough for summary judgement. *See John Wiley*, 2016 WL 5092593, at *5.

## X.    Factual Disputes Bar Summary Judgement On Misuse

There remain material issues of fact regarding copyright misuse. The Third and other circuits have recognized copyright misuse as an affirmative defense to infringement. *See Video Pipeline, Inc. v. Buena Vista Home Ent., Inc*., 342 F.3d 191, 204 (3d Cir. 2003), *as amended* (Sept. 19, 2003); *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp.2d 539, 580 (E.D. Pa. 2005); *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1115 (9th Cir. 2010).

Copyright misuse is appropriate when "plaintiff is using [their copyright] contrary to the public interest." *See Video Pipeline, Inc.* 342 F.3d at 204; *see also Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990) ("The question is not whether the copyright is being used in a manner violative of antitrust law, . . . but whether the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright."); *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 65 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1315, 185 L. Ed. 2d 195 (2013) (accord). Here, Plaintiffs attempted to extend and did assert

an improper copyright. It violated public policy underlying the copyright law and federal law[14] by extending their copyright to cover the language in every judicial opinion found on Westlaw.

Plaintiffs argue that ROSS cannot establish they sought to expand the scope of their copyrights. Plaintiffs are mistaken. In fact, that is what this case is all about. There is substantial evidence of misuse. First, Thomson Reuters has a history of trying to improperly assert its copyrights to thwart competition. *See, e.g.*, *Matthew Bender*, 158 F.3d at 687-88. Misuse has been found where Plaintiffs extended their copyright over things that are not copyrightable, using their copyright contrary to the public interest. *See Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 700 (9th Cir. 2015) (affirming the district court's finding of copyright misuse where the plaintiff attempted to assert copyright over items that are neither copyrightable nor copyrighted.) (cleaned up); 4 Nimmer at § 13.09). Here, Plaintiffs have taken actions to imply ownership and control over judicial opinions and generic legal topics. For example, Plaintiffs include judicial opinions that do not contain any Westlaw Content in Appendix B of Krein's supplement report, which lays out the copyrighted material. *See, e.g*, D.I. 687 ¶¶ 16, 24. Plaintiffs even claim copyrights in the language of the judicial opinions where their headnotes are verbatim copies of those opinions. *See* Canter Decl., Ex. C. Plaintiffs admit that their first rule is that headnotes are drafted to closely align with the text of the judicial opinions, yet claim infringement over that very same language derived from the same source. SOF, at 2. By failing to draw any line between what is original and what is public domain, Plaintiffs improperly overreach, attempting to claim it all. This is evidence of copyright misuse.

## CONCLUSION

For these reasons, ROSS respectfully requests that the Court deny summary judgment.

---

[14] Federal law forbids assertion of copyright in federal documents, 17 U.S.C.S. § 105.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ David E. Moore*
    David E. Moore (#3983)

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Keith J. Harrison
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

Dated: October 30, 2024
11852935 / 20516.00001

Public Version Dated: November 4, 2024

    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

41