# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, <br><br> Plaintiffs/Counterdefendants, <br><br> v. <br><br> ROSS INTELLIGENCE INC., <br><br> Defendant/Counterclaimant. | C.A. No. 20-613-SB <br><br> **JURY TRIAL DEMANDED** <br><br> **PUBLIC VERSION** |

## DECLARATION OF JIMOH OVBIAGELE IN SUPPORT OF DEFENDANT ROSS INTELLIGENCE INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DIRECT COPYRIGHT INFRINGEMENT AND RELATED DEFENSES

OF COUNSEL:

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Keith J. Harrison
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*

Dated: October 30, 2024
11852674 / 20516.00001
Public Version Dated: November 4, 2024

I, Jimoh Ovbiagele, declare as follows:

1. I submit this Declaration in Support of Defendant/Counterclaimant ROSS Intelligence Inc.'s ("ROSS") Response to Plaintiffs' Motion for Partial Summary Judgment on Direct Copyright Infringement and Related Defenses. I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify competently to the below.

2. I was the Chief Technology Officer and co-founder of ROSS until December 2020, and currently am the Board Director of ROSS. I was responsible for the creation of the ROSS legal search engine. My current employment is as the founder and Chief Executive Officer of Bench IQ.

3. For purposes of this declaration, what is set forth below is based on my personal knowledge, my education, experience, training testing, and tenure at ROSS.

## I. The ROSS Platform

4. ROSS's legal search engine was trained on legal questions and judicial case-excerpt answers to these questions, and ratings of the relevance of the answers to the questions all contained in memorandum. ROSS's legal search engine was not trained on and could not make use of any pre-existing or external system for organizing or indexing cases or portions of cases.

5. ROSS's legal research platform does not capture or retain the actual expression of text from the questions and answers from its training data. ROSS's ranking algorithm (note: it is also sometimes referenced as the model or legal search engine) does not ingest or create any (1) categorization of cases by subject matter or legal practice area, (2) summarization of case law or judicial opinions, or (3) organizational scheme of cases. Rather, the ranking algorithm learned the relationship between queries and answers, irrespective of the particular legal content of individual queries and answers. ROSS's legal search engine took the language of judicial opinions and turned them into statistical measurements for the purpose of creating a legal search engine free of human

intermediated content. ROSS built the tool so that the search results were driven by a machine-based analysis of the text.

6. █████████████████████████████████
█████████████████████████████████
█████████████████████████████████
████████████████████.

7. █████████████████████████████████
█████████████████████████████████
█████████████████████████████████
█████████████████████████████████
█████████████████████████████████
█████████████████████████████████
█████████████████████████████████

8. █████████████████████████████████
█████████████████████████████████
█████████████████████████████████
█████████████████████████████████
████

9. █████████████████████████████████
█████████████████████████████████
█████████████████████████████████

10. The first part, the retrieval step, used technology to retrieve 100 paragraphs from judicial opinions. These judicial opinion-paragraphs came from ROSS's repository of cases. The second part, the ranking step, used machine-learning technology to rank the 100 candidate passages in order of relevance. The development of this machine-learning technology (or artificial intelligence / AI technology, as it is commonly referred to) is described in this declaration.

11. As a result of a user entering a query and ROSS's system operating, the output would be a list of paragraphs from judicial opinions. These paragraphs contained no copyrights from Plaintiffs, including without limitation no headnotes, key numbers, synopses, any information reflecting or representing the key number system, any information reflecting links of any kind between headnotes and case passages, or anything else that covers what Plaintiffs have called in this case the "Westlaw Content."

## II. Content Added to ROSS

12. The ROSS judicial documents were obtained from a company called Casemaker, created and maintained independently of the ranking process. ROSS had approximately ▮▮▮▮▮▮ cases from Casemaker. The judicial opinions from Casemaker included no copyrights from Plaintiffs, including without limitation no headnotes, key numbers, synopses, any information reflecting or representing the key number system, any information reflecting links of any kind between headnotes and case passages, or anything else that covers what Plaintiffs have called in this case the "Westlaw Content."

13. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

4



14.

15.

16.

17. ROSS

18. LegalEase was directed to include four to six question-answer pairs on each of the memos, and LegalEase in fact did this based on the many memos that I have reviewed. Even after some of the question-answer pairs were discarded, as a result of generating 27 features out of all of the remaining question-answer pairs, ROSS had hundreds of thousands of numerical features.

19. The memos that ROSS received from LegalEase were word documents. Most of the filenames for these word documents did not contain a legal topic. The few to the contrary contained only a generic legal topic that would be seen commonly in documents used in the practice of law.

20. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

21. The ROSS ranking algorithm required a training set containing questions and answers that were representative of the range of language and expressions that users of the ROSS system could be expected to pose to the system. The purpose of developing a large training set was to ensure that the ranking algorithm was trained on better and worst answers to a full range of representative question types. Questions in different areas of law are often expressed using different language, so this diversity of language and expressions can be achieved by developing questions for diverse cases, as was done by ROSS. It is unnecessary for these cases to be representative of the underlying substantive law since the ranking algorithm only made use of the linguistic relationship between questions and answers, not their legal content. The ordering of such questions and answers did not matter. This is particularly the case given that the ROSS system was designed to rely on natural language search and not to rely on any structured organization of judicial opinions or associated taxonomies.

22. West key numbers were not and could not be used in training ROSS's ranking model because every one of the features used by the ROSS ranking model is derived solely from the text of a question and a candidate answer. The key number system also could not be used in training ROSS's ranking model for the same reason.

6

23. 

24.     Neither the Bulk Memos nor the ROSS source code used for training the ROSS ranking model used any of the following elements as data for training the ranking model: West key numbers, topics, West headnotes themselves, case synopses, components or parts of the selection, organization, and arrangement of the West key number system, hyperlinks or relationships between headnotes and locations in judicial opinions, hyperlinks or relationships between West key numbers and headnotes, or the entirety of particular judicial opinions including any purported editorial enhancements contained in such opinions. Further, none of this information was used in pre-processing of data relating to search queries or in any other data processing or software component in ROSS's production platform or source code.

25.     I have no personal knowledge of how LegalEase created the memos. I believe to the extent LegalEase used Westlaw it was solely for the purpose of creating the memos that ROSS used.

26.     ███████████████████████████████████████████

### III.     The Classifier Project

27.     ROSS completed experiments with its technology to see whether and how it could improve. One type of technology that ROSS experimented on was technology that could be used

to classify cases into different categories, such as civil procedure or bankruptcy, before being search.

28. As part of ROSS's experimentation with its classifier technology, ROSS engaged LegalEase to review a body of cases provided by ROSS and to confirm the assignment of those cases to one of the 38 legal topics on ROSS's list of topics. The list of 38 legal topics were the following: (1) Administrative; (2) Admiralty & Maritime; (3) Antitrust; (4) Banking & Finance; (5) Bankruptcy; (6) Business & Corporate; (7) Civil Procedure; (8) Civil Rights; (9) Commercial; (10) Communications; (11) Constitutional; (12) Construction; (13) Criminal; (14) Employee Benefits & Executive Compensation; (15) Energy; (16) Entertainment & Sports; (17) Environment; (18) Estate Planning; (19) Family; (20) Government; (21) Health; (22) Immigration; (23) Insurance; (24) Intellectual Property; (25) International Trade; (26) Labor & Employment; (27) Medical; (28) Military; (29) Municipal; (30) Native American; (31) Pensions & Retirement Benefits; (32) Privacy & Data Security; (33) Product Liability; (34) Real Property; (35) Securities; (36) Tax; (37) Technology; (38) Transportation. ROSS chose to use this list of 38 legal topics because, as I understand, they represent how practice areas in the United States legal system are generally classified. Attached as Exhibits A and B are true and correct copies of two documents reflecting these topics. *See* Exhibit A (ROSS-003452875) at 7-8 ███████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████.

29. LegalEase provided this assistance in December 2017. During this time, LegalEase contract attorneys reviewed the cases and would indicate whether the case was labeled correctly. ████████████████████████████████████████████████████████████

30. ███████████████████████████████████████████

███████████████████████████████████████████████

████████████████ ███████████████████████████████.

31. The experiments that we ran at ROSS on regarding classification technology did not produce results that led to the deployment of any different or new technology. Because of this, ROSS did not pursue any classification projects for the tool and no classification technology made it into the ROSS search tool.

## IV. The Business of ROSS

32. ROSS licensed its legal research platform to users. I co-founded ROSS because I know that the market for legal services needed to improve, and I believe that making legal research cheaper, easier, and faster can be one way to accomplish this.

33. I knew that the market for legal services needed to improve through first-hand knowledge. My mother wanted to divorce my father when I was younger, but she was unable to pay a lawyer to do so.

34. ROSS used the memos to create its legal search tool so that it could license this tool to the public. We retained LegalEase to complete one step in this process. Our statement of work for LegalEase to complete this project, and all of our communications with LegalEase, are consistent that the goal of this project was to create the memos.

35. ROSS did not use the memos for any other purpose. ROSS did not sell or license the memos to any party for any purpose, and ROSS never attempted to do this either. ROSS also never sold or had the intent to sell AI training data.

## V. Documents

36. Attached hereto as **Exhibit 1** is a true and correct copy of the Master Services Agreement (October 15, 2015), ROSS-003411169.

37. Attached hereto as **Exhibit 2** is a true and correct copy of the Statement of Work II For ROSS Bulk Memos (September 15, 2017), ROSS-003332368.

38. Attached hereto as **Exhibit 3** is a true and correct copy of a copy of Memorandum #431, ROSS-003299205.

39. Attached hereto as **Exhibit 4** is a true and correct copy of ROSS presentation, ROSS-023179081.

40. Attached hereto as **Exhibit 5** is a true and correct copy of ROSS Memorandum #1, ROSS-000319308.

41. Attached hereto as **Exhibit 6** is a true and correct copy of an email From Teri Whitehead re Classifier Part II (December 22, 2017), ROSS-000197949.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in Toronto, Canada, on the 30th of October, 2024.

*/s/ Jimoh Ovbiagele*
Jimoh Ovbiagele