# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) |
| Plaintiffs/Counterdefendants, | ) C.A. No. 20-613-SB ) ) **JURY TRIAL DEMANDED** |
| v. | ) ) ) **PUBLIC VERSION** |
| ROSS INTELLIGENCE INC., | ) ) |
| Defendant/Counterclaimant. | ) |

## DECLARATION OF JACOB CANTER IN SUPPORT OF ROSS INTELLIGENCE INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DIRECT COPYRIGHT INFRINGEMENT AND RELATED DEFENSES

OF COUNSEL:

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Keith J. Harrison
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant/Counterclaimant ROSS Intelligence, Inc.*

Dated: October 30, 2024
11853031 / 20516.00001
Public Version Dated: November 4, 2024

I, Jacob Canter, declare as follows:

1. I am Counsel at Crowell & Moring, LLP, and on the legal team for ROSS Intelligence, Inc. I am an attorney, admitted to the bar of the states of California and District of Columbia and have been admitted *pro hac vice* to appear before this Court. I submit this Declaration in support of Defendant/Counterclaimant ROSS Intelligence Inc.'s ("ROSS") Response to Plaintiff's Motion for Partial Summary Judgment on Direct Copyright Infringement and Related Issues. I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify competently to the below.

### I. Analysis Completed in Support of ROSS's Response to Copyright Infringement Summary Judgment Brief – Analysis of Overlapping Headnotes

2. In support of this brief, I and a team of lawyers at my direction completed an analysis of the 21,876 headnotes that Dr. Jonathan Krein identified in his Appendix B to his Supplemental Expert Report, served on August 11, 2024. This analysis was to determine the overlap between the 5,367 (out of 21,876) headnotes that Plaintiffs assert ROSS did not address during filtration and the 2,830 Bulk Memo questions identified by Mrs. Frederickson-Cross. Op. Brief, D.I. 675 at 5.

3. As an initial step, the set of 2,830 headnotes that ROSS is accused of infringing were compared to 21,876 headnotes Plaintiffs specifically identified as ROSS infringing in their Third Supplemental Response to Interrog. No. 1 and in the Supplemental Expert Report of Dr. Jonathan Krein and found that the 1,623 headnotes were never asserted as being infringed. Plaintiffs still only accuse ROSS of infringing 21,876 headnotes. Op. Brief, D.I. 675 at 5. The Court previously found that these 1,623 were never asserted against ROSS. D.I. 547 at 11. Therefore, ROSS removed these 1,623 headnotes from the analysis, leaving 1,207 headnotes out of the 2,830 headnotes at issue.

4.      These 1,207 headnotes were then compared to the 5,367 headnotes to determine the overlap. This resulted is 5,695 headnotes at issue for summary judgment.

## II. Analysis Completed in Support of ROSS's Response to Copyright Infringement Summary Judgment Brief – The Non-Copyrightable Materials

5.      In support of this brief, I and a team of lawyers at my direction completed an analysis of the 5,695 headnotes. As part of this analysis, we relied in part on technology to assist in the review.

6.      As part of this analysis, I and the team of lawyers identified 86 headnotes listed in the appendix that do not exist in the judicial opinion where Dr. Krein says they are located. For each of these headnotes, I and the team used the case citation provided by Dr. Krein and confirmed there was no headnote in the judicial opinion cited. A spreadsheet that identifies those 86 headnotes is attached herein as **Exhibit A**.

7.      As part of this analysis, I and the team of lawyers identified at least 897 headnotes that were published as part of judicial opinions that pre-date 1927. As part of this review, I and the team of lawyers identified the judicial text most closely corresponding to the text of the headnotes in the cases cited by Dr. Krein for each headnote. A spreadsheet that identifies those 897 headnotes is attached herein as **Exhibit B**.

8.      Of the 5,367 headnotes not submitted for filtration, I and a team of lawyers identified a sample of 30 headnotes that were verbatim copies of the judicial text. I and the team of lawyers identified the judicial text most closely corresponding to the text of the headnotes in the cases cited by Dr. Krein for each headnote. The standard for 'verbatim' copies was that nothing new was added, removed, or rearranged in the headnote compared to the judicial text. Overlapping text between the headnote text and the judicial text are highlighted with red lettering. A spreadsheet containing this sample of 30 headnotes is attached herein as **Exhibit C**.

9. From these 5,367 headnotes, I and a team of lawyers also identified a sample of 40 headnotes that were near verbatim copies of the judicial text. I and the team of lawyers identified the judicial text most closely corresponding to the text of the headnotes in the cases cited by Dr. Krein for each headnote. The standard for 'near verbatim' copies was that there were modifications in the headnote compared to the judicial text that were very trivial. For example, merely changing punctuation from the judicial text to the headnote is a near verbatim copy. Simply removing articles such as "the" and "and" from the judicial text to the headnote is a near verbatim copy. Only removing the citation or prepositional phrases (such as "We hold that . . .") are near verbatim copies. Overlapping text between the headnote text and the judicial text are highlighted with red lettering. A spreadsheet containing this sample of 40 headnotes are attached herein as **Exhibit D**.

### III. Analysis Completed in Support of ROSS's Response to Copyright Infringement Summary Judgment Brief – Dr. Krein Admits No Copying

10. In support of this brief, I and a team of lawyers at my direction completed an analysis of the 300 headnotes that Dr. Krein stated that he manually reviewed to purportedly determine actual copying. Of the 300 headnotes, 100 are provided in Exhibit C to Dr. Krein's Reply Report and 200 are provided in Exhibit E to Dr. Krein's Reply Report. I and the team determined that four of these headnotes are not part of the 21,878 which Dr. Krein includes in Appendix B to his Supplemental Report. Of the 300 headnotes, 4 have not been asserted against ROSS. Out of the remaining headnotes, Dr. Krein determined ROSS did not copy an additional 26 headnotes. Out of the 26 headnotes that ROSS did not copy, 15 are part of the 5,695 headnotes at issue. These 30 headnotes are provided in **Exhibit E**.

### IV. Analysis Completed in Support of ROSS's Response to Copyright Infringement Summary Judgment Brief – Not Appropriated Materials

11. In support of this brief, I and a team of lawyers at my direction completed an additional analysis of certain of the 5,695 headnotes at issue. As part of this analysis, we relied in part on technology to assist in the review.

12. As part of this analysis, I and the team of lawyers performed a manual review and identified a sample of 40 memo questions that clearly were not derived from the headnotes because they have no or minimal overlapping language. A spreadsheet that identifies these 40 headnotes is attached herein as **Exhibit F**.

13. As part of this analysis, I and the team of lawyers identified a sample of 20 of the 5,695 headnotes that were not previously identified as (i) expired or (ii) not corresponding to the identified judicial opinion. I and the team of lawyers identified, where possible, the judicial text most closely corresponding to the text of the headnotes in the cases cited by Dr. Krein for each headnote. For these 20 headnotes, overlapping text between the headnote text and the judicial text are highlighted with red lettering. Additionally, overlapping text of the judicial opinion and the text of the memo question were indicated by yellow highlight lettering. In this category, the memo questions contained nearly identical words to the judicial opinions except modifications required to change the judicial text into questions. Because the memo questions converted judicial text to questions, changes in tense or other similar changes to the words were included in this analysis. A spreadsheet that identifies these 20 headnotes is attached herein as **Exhibit G**.

14. As part of this analysis, I and the team of lawyers identified an additional sample of 30 of the 5,695 headnotes that were not previously identified as (i) expired or (ii) not corresponding to the identified judicial opinion. I and the team of lawyers identified, where possible, the judicial text most closely corresponding to the text of the headnotes in the cases cited

by Dr. Krein for each headnote. For these 30 headnotes, overlapping text between the headnote text and the judicial text are highlighted with red lettering. Additionally, overlapping text of the judicial opinion and the text of the memo question were indicated by yellow highlight lettering. In this category, the memo questions contained nearly identical words to the judicial opinions except modifications required to change the judicial text into questions or words required to provide context, such as (i) changing a party's name to "plaintiff" or "defendant"; (ii) specifying a type of motion brought or area of law being discussed (e.g., specifying a "motion" is a "motion to dismiss"); or (iii) stating the full name of an entity or acronym (e.g., "Federal Arbitration Act" instead of "FAA"). Because the memo questions converted judicial text to questions, changes in tense or other similar changes to the words were included in this analysis. A spreadsheet that identifies those 30 headnotes is attached herein as **Exhibit H**.

### V. Analysis Completed in Support of ROSS's Response to Copyright Infringement Summary Judgment Brief – No Headnote Links

15. **Exhibit I** contains three judicial opinions taken from Westlaw and produced by Plaintiffs at TR-0540196, TR-0651301, and TR-0835702. These opinions correspond to headnotes 16115, 16886, and 21834, respectively. As shown in the opinions, each includes at least one headnote and for each, no headnote links or otherwise references any particular portion of the opinion. I and the team of attorneys also confirmed that when viewing these three opinions on the Westlaw platform, there is no link that connects these headnotes to any portion of the opinions.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in San Francisco, California, on this 30th day of October, 2024.

*/s/ Jacob Canter*
Jacob Canter