# EXHIBIT 1

LEXITAS™

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

______________________________

THOMSON REUTERS ENTERPRISE )
CENTRE GMBH and WEST )
PUBLISHING CORPORATION, )
Plaintiffs and ) C.A. No. 20-613
Counterdefendants ) (LPS)
v. )
ROSS INTELLIGENCE, INC., ) HIGHLY CONFIDENTIAL
Defendant and )
Counterclaimant. )
______________________________)

--- This is the transcript of the videotaped Deposition of, JIMOH OVBIAGELE, taken at the offices of Regus - Toronto Airport Corporate Centre, Mississauga, Ontario, Canada, on the 12th day of April, 2022.

------------

REPORTED BY: Helen Martineau, CSR

VIDEOGRAPHER: Bruno Silva

A P P E A R A N C E S:

FOR THE PLAINTIFF:

KIRKLAND & ELLIS LLP
PER: Joshua L. Simmons, Esq.
& Eric Loverro, Esq.
601 Lexington Avenue
New York, New York
Tel. (212) 446-4989
Email: joshua.simmons@kirkland.com
eric.loverro@kirkland.com

FOR THE DEFENDANT:

CROWELL & MORING LLP
PER: Warrington Parker, Esq.
& Jacob Canter, Esq.
3 Embarcadero Center, 26th Floor
San Francisco, California
94111
Tel. (415) 365-7234
Email: wparker@crowell.com
jcanter@crowell.com

INDEX OF EXHIBITS


| NO./ | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Plaintiff's 30(b)(6) Notice to ROSS. | 11 |
| 2 | Document entitled "Statement of Work II of ROSS bulk memos"; Bates numbered TR-0000568 to 581. | 115 |
| 3 | Slack conversation, dated June 15th, 2017; Bates numbered ROSS-009637399 to 7400. | 147 |
| 4 | Email exchange, top email from Thomas Van Der Heijden to Andrew Arruda, and others, dated September 15th, 2017; Bates numbered ROSS-009558474 to 8475. | 150 |
| 5 | Email exchange, top email from Jimoh Ovbiagele to Andrew Arruda, and others, dated August 4, 2017; Bates numbered ROSS-003537612 to 7613. | 175 |

INDEX OF EXHIBITS


| NO./ | DESCRIPTION | PAGE |
|---|---|---|
| 6 | Email exchange, to email from Andrew Arruda to Thomas Hamilton, and others, dated July 29th, 2015; Bates numbered ROSS-003334354. | 196 |
| 7 | Email exchange, top email from Thomas Hamilton to Shazina Razeen, dated September 20, 2015; Bates numbered ROSS-003610162 to 0165. | 199 |
| 8 | Slack Notifications from the ROSS Inc. team for February 16, 2015; Bates numbered ROSS-003391075. | 203 |
| 9 | Email from Asana to Jimoh Ovbiagele, dated June 6, 2015, re: Updated tasks; Bates numbered ROSS-009585472. | 207 |
| 10 | Email exchange, top email from Thomas Hamilton to Andre Arruda, and others, dated September 25th, 2015; Bates numbered ROSS-003389728 to 9730. | 213 |

INDEX OF EXHIBITS


| NO./ | DESCRIPTION | PAGE |
|---|---|---|
| 11 | Email exchange, top email from Thomas Hamilton to Andrew Arruda, dated September 29, 2015; Bates numbered ROSS-010164415 to 4417. | 215 |
| 12 | Slack conversation dated May 17, 2019; Bates numbered ROSS-003718400 to 8406. | 228 |

PRODUCTION REQUESTS

PRODUCTION REQUESTS are denoted by P/R and are found on the following Page/Line:

94/12;
100/23;
109/14;
232/17.

-- Upon commencing at 9:20 a.m.

THE VIDEOGRAPHER: Good morning. We are going on the record at 9:20 a.m. on April 12th, 2022. This is media unit number one of the video deposition of Jimoh Ovbiagele in the matter of Thomson Reuters Enterprise Centre GmbH et al. versus ROSS Intelligence Inc., case number CA-20-613(LPS), filed in the United States District Court of Delaware.

This deposition is being held at Regus, Toronto Airport Corporate Centre, 2425 Matheson, 8th Floor, Mississauga, Ontario, L4W 5K4.

My name is Bruno Silva, CLVS, on behalf of Philadelphia, and I am a videographer. The court reporter is Helen Martineau on behalf of Philadelphia.

Will counsel please introduce yourselves followed by the court reporter swearing in the witness.

MR. SIMMONS: Joshua Simmons from Kirkland & Ellis, and with me is Eric Loverro. We represent the plaintiffs in this matter.

MR. PARKER: And I'm Warrington Parker and with me is Jacob Canter and we represent the

defendant.

THE VIDEOGRAPHER: Would the court reporter please swear in the witness.

JIMOH OVBIAGELE: AFFIRMED.

CROSS-EXAMINATION BY MR. SIMMONS:

Q. Good morning, from Ovbiagele.
Would you please state your address for the record?

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

REPORTER'S CERTIFICATE

I, HELEN MARTINEAU, CSR, Certified Shorthand Reporter, certify;

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That the foregoing is a true and accurate transcript of my shorthand notes so taken. Dated this 19th day of April, 2022.



PER: HELEN MARTINEAU

CERTIFIED SHORTHAND REPORTER

**Signature and Errata Sheet**
**April 12, 2022 Deposition of Jimoh Ovbiagele**
***Thomson Reuters Enterprise Centre GMBH and West Publishing Corporation v. ROSS Intelligence Inc.***

I, Jimoh Ovbiagele, have reviewed the attached transcript of my April 12, 2022 deposition testimony, and certify, pursuant to 28 U.S.C. § 1746 that the attached transcript is my true and correct testimony during that deposition, subject to the corrections shown below.

| Page/Line | Now Reads | Correction | Reason |
|---|---|---|---|
| 15:14 | did | didn't | Transcription error |
| 15:22 | Ross | ROSS | Correct spelling |
| 21:02 | "sic" | Delete "sic" | Transcription error |
| 21:24 | "about" | "about what" | Transcription error |
| 23:18 | and | of | Transcription error |
| 26:08 | "your" | Delete "your" | Clarification |
| 28:05 | Ross | ROSS | Correct spelling |
| 32:01 | Hayden | Heijden | Correct spelling |
| 32:05 | Hayden | Heijden | Correct spelling |
| 32:08 | Hayden | Heijden | Correct spelling |
| 32:11 | Hayden | Heijden | Correct spelling |
| 32:16 | Ross | ROSS | Correct spelling |
| 32:23 | Ross | ROSS | Correct spelling |
| 35:19 | Ross | ROSS | Correct spelling |
| 52:25 | That | where | Clarification |
| 55:09 | Ross | ROSS | Correct spelling |
| 56:02 | Ross | ROSS | Correct spelling |
| 61:24 | starts | start | Transcription error |

| | | | |
|---|---|---|---|
| 81:09 | Ross | ROSS | Correct spelling |
| 109:14-17 | *Bolded text* | *Text should not be bold* | Bold text indicates deponent speaking but that is not the case |
| 157:03 | Thomas | Tomas | Correct spelling |
| 215:10 | if | is | Transcription error |

Executed on May 25, 2022, at 579 Transversal 1a 501, Bogotá, Bogotá 110231, Colombia.

____________________

# EXHIBIT 2

LEXITAS™

VOLUME 1
PAGES: 1-311
EXHIBITS: See Index

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,

Plaintiffs and Counterdefendants,

v.

ROSS INTELLIGENCE, INC.,

Defendant and Counterclaimant.

C.A. No. 20-613 (LPS)

HIGHLY CONFIDENTIAL

VIDEOTAPED DEPOSITION of ANDREW ARRUDA

- CONDUCTED BY VIDEOCONFERENCE -

Wednesday, March 30, 2022

9:06 a.m. Pacific Daylight Time

Michelle Keegan, RMR, CRR

Lexitas

508-478-9795 ~ 508-478.0595 (Fax)

www.LexitasLegal.com

A P P E A R A N C E S:

KIRKLAND & ELLIS LLP
By: Dale Cendali, Esq.
By: Eric Loverro, Esq.
601 Lexington Avenue
New York, New York 10022
Phone: (212) 226-4800
Email: dale.cendali@kirkland.com
Email: eric.loverro@kirkland.com
Counsel for Plaintiffs Thomson Reuters and West Publishing

CROWELL & MORING LLP
By: Warrington Parker, Esq.
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
Email: wparker@crowell.com
Counsel for Defendant ROSS Intelligence, Inc.

CROWELL & MORING LLP
By: Crinesha B. Berry, Esq.
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Phone: (202) 624-2500
Email: cberry@crowell.com
Counsel for Defendant ROSS Intelligence, Inc.

Also Present:
Adrian Beltran, Videographer

# I N D E X


| Videotaped Deposition of: | Page |
|---|---|
| ANDREW ARRUDA | |
| By Ms. Cendali | 9 |


# E X H I B I T S


| No. | | Page |
|---|---|---|
| Exhibit 1 | [Proposed] Stipulated Protective Order, in USDC, District of Delaware, 20-613 (LPS), 27 pages without Bates numbering | 17 |
| Exhibit 2 | Andrew Arruda LinkedIn profile pages | 26 |
| Exhibit 3 | December 2018 and January 2019 e-mail chain, Bates-numbered ROSS-003487472 through -7474 | 71 |
| Exhibit 4 | Document titled "Powered by IBM Watson Application Executive Summary," Bates-numbered ROSS-003705907 through -5908 | 102 |
| Exhibit 5 | Declaration of Andrew Arruda, in USDC, District of Minnesota, 18-cv-01445, three pages without Bates numbering | 113 |
| Exhibit 6 | Facebook pages, Bates-numbered TR-0001119 through -1122 | 115 |
| Exhibit 7 | Andrew Arruda tweet, Bates-numbered TR-0001735 | 122 |
| Exhibit 8 | Document titled "The Death of Westlaw Contracts and Pricing," Bates-numbered TR-0000695 through -696 | 126 |

EXHIBITS (continued)


| | | |
|---|---|---|
| Exhibit 9 | ROSS tweet, Bates-numbered TR-0001253 | 128 |
| Exhibit 10 | Andrew Arruda tweet, Bates-numbered TR-0001733 | 129 |
| Exhibit 11 | Andrew Arruda tweet, Bates-numbered TR-0001734 | 131 |
| Exhibit 12 | ROSS Intelligence, Inc. Detailed Capitalization Table, 13 pages, each Bates-numbered ROSS-010106819 | 133 |
| Exhibit 13 | 1/7/20 e-mail, Bates-numbered ROSS-009584733 through -4735 | 135 |
| Exhibit 14 | Reprint of PowerPoint slides titled "ROSS Board Meeting, January 14, 2020," Bates-numbered ROSS-003715393 through -5406 | 150 |
| Exhibit 15 | April 2020 e-mail chain, Bates-numbered FASTCASE_084268 through -84270 | 184 |
| Exhibit 16 | ROSS document, "Announcement By The Founders," Bates-numbered TR-0037677 through -37680 | 217 |
| Exhibit 17 | "[Slack] Notifications from the Ross Inc team for Feb 16th, 2015," Bates-numbered ROSS-003391075 | 225 |
| Exhibit 18 | 6/6/15 e-mail, Bates-numbered ROSS-009585472 | 226 |
| Exhibit 19 | October 2015 e-mail chain, Bates-numbered ROSS-003390881 through -0884 | 231 |

EXHIBITS (continued)


| | | |
|---|---|---|
| Exhibit 21 | "Terms of Service, ROSS Intelligence Inc, Last Modified: April 28, 2020," Bates-numbered TR-0001142 through -1153 | 235 |
| Exhibit 22 | "Terms of Service, ROSS Intelligence Inc, Last Modified: June 15, 2020," Bates-numbered TR-0001154 through -1165 | 241 |
| Exhibit 24 | August 2015 e-mail chain, Bates-numbered ROSS-009559997 through -9998 | 246 |
| Exhibit 25 | September 2015 e-mail chain, Bates-numbered ROSS-003389728 through -9730 | 251 |
| Exhibit 26 | September 2015 e-mail chain, Bates-numbered ROSS-010164415 through -4417 | 256 |
| Exhibit 27 | October 2015 e-mail chain, Bates-numbered ROSS-000203449 through -3467 | 269 |
| Exhibit 29 | Document with heading "mpdm-thomas--findingjimoh--maxisakov--tomasvdh-1: 2016-12-26," Bates-numbered ROSS-009637509 | 304 |
| Exhibit 31 | September 2015 e-mail chain, Bates-numbered ROSS-003610162 through -0165 | 298 |
| Exhibit 32 | 10/11/15 e-mail, Bates-numbered ROSS-003610547 | 301 |
| Exhibit 34 | "Westlaw is Suing Us. Our Response:" Bates-numbered TR-0000587 through -590 | 274 |
| Exhibit 39 | September 2015 e-mail chain, Bates-numbered ROSS-009547818 through -7823 | 260 |

EXHIBITS (continued)


| | | |
|---|---|---|
| Exhibit 41 | September 2015 e-mail chain, Bates-numbered ROSS-023018635 | 265 |
| Exhibit 48 | 8/14/20 e-mail, Bates-numbered ROSS-010186032 through -033 | 188 |
| Exhibit 49 | Reprint of PowerPoint slides, titled "ROSS Q3 Board Meeting," Bates-numbered ROSS-010106832 through -6840 | 198 |
| Exhibit 50 | Undated redlined "Letter of Intent for the Acquisition of ROSS Intelligence, Inc.," Bates-numbered ROSS-010272041 through -046 | 209 |


REQUESTS FOR INFORMATION FROM WITNESS


| Page | Line |
|---|---|
| 195 | 21 |


REQUESTS FOR PRODUCTION


| Page | Line |
|---|---|
| 13 | 23 |
| 17 | 4 |
| 21 | 5 |
| 24 | 25 |
| 29 | 2 |
| 48 | 8 |
| 71 | 9 |
| 80 | 13 |
| 92 | 8 |
| 110 | 24 |
| 125 | 2 |
| 125 | 22 |
| 127 | 15 |
| 134 | 22 |
| 160 | 5 |

REQUESTS FOR PRODUCTION (continued)



| Page | Line |
| --- | --- |
| 169 | 11 |
| 195 | 22 |
| 203 | 25 |
| 208 | 17 |
| 211 | 12 |
| 217 | 5 |
| 231 | 23 |
| 245 | 14 |

P R O C E E D I N G S

THE VIDEOGRAPHER: Good morning, everyone. We are on the record on March 30, 2022, at approximately 9:06 a.m. Pacific Time, for the remote video deposition of Andrew Arruda in the matter of Thomson Reuters Enterprise Centre, GmbH, et al., versus ROSS Intelligence, Inc.

My name is Adrian Beltran, and I am the videographer for today.

Will counsel please introduce themselves for the record, beginning with the party noticing this proceeding.

MS. CENDALI: I'm Dale Cendali of Kirkland & Ellis. And with me is my colleague, Eric Loverro, also from Kirkland & Ellis. We are counsel for Thomson Reuters and West Publishing.

MR. PARKER: This is Warrington Parker appearing on behalf of ROSS Intelligence.

THE VIDEOGRAPHER: Thank you, counsel. If that is all -- I forgot to mention also I will be the document technician for today's deposition.

Now will the court reporter please swear in the witness.

MS. CENDALI: Just to be clear, is there anyone else present on the line or video?

MR. PARKER: Crinesha Berry from Crowell & Moring is on the line. She is not going to say anything at all. She is just watching the deposition.

THE VIDEOGRAPHER: Okay. Thank you. Now will the court reporter swear in the witness, please. Thank you all.

ANDREW ARRUDA,

having been satisfactorily identified and duly sworn by the Notary Public, was examined and testified as follows:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**Signature and Errata Sheet**
**March 30, 2022 Deposition of Andrew Arruda**
***Thomson Reuters Enterprise Centre GMBH and West Publishing Corporation v. ROSS Intelligence Inc.***

I, Andrew Arruda, have reviewed the attached transcript of my March 30, 2022 deposition testimony and certify, pursuant 28 U.S.C. § 1746 that the attached transcript is my true and correct testimony during that deposition, subject to the corrections shown below.

| Page/Line | Now Reads | Correction | Reason |
|---|---|---|---|
| 23:17 | any | anything | Transcription error |
| 50:15 | co. | company | Transcription error |
| 51:15 | "how." | "how?" | Transcription error |
| 53:21 | ROSS | results | Transcription error |
| 81:2 | hard | all | Transcription error |
| 164:4 | would it look if | would it look like if | Clarification |
| 171:24 | "$MB ARR to +1M." | "SMB ARR to +1M." | Transcription error |
| 210:12 | MR. PARKER | MS. CENDALI | Transcription error |
| | | | |

Executed on May 10, 2022, at San Francisco, CA.

/s/

STATE OF CALIFORNIA

I, Michelle Keegan, Registered Merit Reporter and Certified Shorthand Reporter for the State of California, do hereby certify that ANDREW ARRUDA, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record, to the best of my ability, of the testimony given by the witness.

I further certify that I am neither related to or employed by any of the parties in or counsel to this action, nor am I financially interested in the outcome of this action.

In witness whereof, I have hereunto set my hand and seal this 11th day of April, 2022.

Michelle Keegan, CSR No. 13632

# EXHIBIT 3

STATEMENT OF WORK II
FOR ROSS BULK MEMOS

This Statement of Work II incorporates and is made pursuant to the October 15, 2015 Master Services Agreement ("MSA") by and between ROSS Intelligence, Inc. ("ROSS"), a Delaware corporation and LegalEase Solutions, LLC ("Contractor") a Michigan limited liability company.

1. Definitions: Terms and expressions not expressly defined in this Statement of Work, shall have the following meanings:

   1.1. "Case Law" means judicial decisions originating from a judicial or administrative body in the United States of America, or as otherwise prescribed in writing by ROSS and sent to Contractor.
   1.2. "Legal Research Question" means a question grounded in legal principles.
   1.3. "Memorandum or Memo" means a memorandum of law that answers a Legal Research Question.
   1.4. "Quote" means an independent paragraph excerpt from Case Law.
   1.5. "Reference List" means the list of Case Law included in the Memo.
   1.6. "Deficiency" means a reference quote that does not directly answer the ROSS question.

2. Additional Terms and Expressions: Additional capitalized terms and expressions have the meanings ascribed to them in the MSA.

3. Currency: Unless stated otherwise, all dollar figures in this Statement of Work are in United States dollars.

4. Term: Subject to the termination provisions of this Agreement, the term of this Statement of Work shall be for a period of three months commencing on September 19, 2017 and expiring on December 19, 2017 ("Initial Term"). Upon the expiration of the Initial Term, this Statement of Work shall renew with the prior written mutual consent of ROSS for successive three month periods ("Renewal Terms"), unless terminated pursuant to the terms of the Agreement. The terms Initial and Renewal Terms shall be collectively referred to as the "Term".

5. Description of Service:

5.1. Contractor agrees to provide ROSS with bulk Memos. Contractor agrees to meet the expectations for performance as set forth in this Statement of Work. Contractor's attorneys will research topics and Legal Research Questions from any Federal or State jurisdiction in the United States, without regard to any legal decisions, draft Memos, and compile the Memos in the format approved by ROSS.

5.2. Each Memo shall include a Legal Research Question and a Reference list with a target of at least four (4) and no more than six (6) Quotes.

5.3. Two (2) to four (4) Quotes in each Memo shall contain either a "great" or "good" independent answer to the Legal Research Question. A "great" Quote is one that contains an answer to all essential elements of the Legal Research Question while a "good" Quote is one that contains an answer to most essential elements of the Legal Research Question. The Contractor shall strive for four (4) "good" or "great" Quotes per question. However, if

Contractor is only able to find 2 or 3 "good" or "great" Quotes, they shall only provide 2 or 3 "good" or "great" Quotes. Contractor shall strive to have more "great" than "good" Quotes.

5.4. One (1) Quote in each Memo shall contain a "topical" independent response to the Legal Research Question. A "topical" response is a response that answers and/or references limited components of a Legal Research Question but does not answer the essential elements of such Legal Research Question.

5.5. One (1) Quote in each Memo shall contain an "irrelevant" independent response to the Legal Research Question. An "irrelevant" response is a response that contains one or more keywords from the Legal Research Question but does answer and/or reference any elements of the Legal Research Question, either limited or essential.

5.6. Contractor shall label whether a Quote contains a response that is "great", "good", "topical" or "irrelevant" and double bracket and bold the specific component(s) of each such Quote that is "great", "good", "topical" or "irrelevant." Contractor shall also label which legal practice area each Quote falls under.

6. Changes: ROSS reserves the right to request changes, deletions, or additions as deemed necessary by ROSS and Contractor. ROSS' proposed changes shall become effective only by written agreement of Contractor.

7. Production/Delivery Schedule: Contractor agrees to draft ROSS questions and Memos pursuant to the Production Run schedule below. In the First Production Run of Memos, Contractor shall commence providing deliverables on October 19, 2017 and conclude on December 19, 2017, as outlined below. For the Subsequent Production Runs of Memos, Contractor shall provide 20,000 Memos in subsequent months to ROSS.

First Production Run

| Delivery Date | Amount of Memos |
|---|---|
| October 19, 2017 | 5,000 |
| November 19, 2017 | 10,000 |
| December 19, 2017 | 10,000 |

Subsequent Production Run

| Delivery Date | Amount of Memos |
|---|---|
| Month 1 | 20,000 |
| Month 2 | 20,000 |
| Month 3 | 20,000 |
| Month 4 | 15,000 |

8. Fee: ROSS shall pay Contractor pursuant to the schedule below:

| Reference Quotes | Price per Memo |
|---|---|

| | |
|---|---|
| 4 Quotes + 1 topical and 1 irrelevant Quote | $26.17 |
| 3 Quotes + 1 topical and 1 irrelevant Quote | $24.55 |
| 2 Quotes + 1 topical and 1 irrelevant Quote | $21.00 |

Contractor shall provide a 5% volume discount to ROSS for any Memo purchase over 25,000 and a 15% volume discount for a total order of 100,000 Memos.

9. Payment: ROSS shall pay Contractor in advance at the beginning of each month for the following 30 days of expected output at a minimum $21.00 price per Memo (each, an "Advance Payment"). For clarity, the Advance Payment for the (i) first 5,000 Memos of the First Production Run due October 19, 2017 shall be $105,000 and shall be made on September 19, 2017; (ii) subsequent 10,000 Memos of the First Production Run due November 19, 2017 shall be $210,000 and shall be made on October 19, 2017 and (iii) final 10,000 Memos of the First Production Run due December 19, 2017 shall be $210,000 and shall be made on November 20, 2017. For any Subsequent Production Run, the Advance Payment shall be $420,000. If there is a difference between an Advance Payment amount and aggregate Memo cost during a Production Run pursuant to the Section 8 Fee schedule (the "Cost Difference"), Contractor shall provide ROSS a detailed accounting of such Cost Difference in a timely manner and ROSS shall pay such Cost Difference within seven (7) days receipt of such detailed accounting.

10. Delivery: Contractor shall deliver batched Memos via e-mail or FTP to ross@rossintelligence.com and via the ROSS Memo upload portal (the "Portal"). The Portal shall meet necessary specifications of speed and capacity to process daily batched Memo uploads.

11. Quality Assurance: Contractor shall ensure the Memos submitted follow the (i) quality control processes detailed in the LegalEase Solutions Quality Control Guide ("QCG") provided in Schedule A to this Statement of Work and the (ii) Quality Control Checklist provided in Schedule B to this Statement of Work. Contractor shall follow a staged quality control process. There will be 100% quality control for the first 2000 Memos, 75% for the next 10,000 Memos and 25% for the remaining Memos. If any of the Memos submitted do not meet the parameters prescribed in the QCG, ROSS shall inform Contractor of such Deficiencies within 14 days of receipt of the applicable Memos. If no such notice is received within the prescribed 14 days, the applicable Memos shall be deemed fully accepted by ROSS. A 15% penalty shall be charged to any Memo and/or batch of Memos that fail to meet the QCG requirements.

12. Reporting: Contractor shall email daily reports to ROSS which include the production totals, QCG results, and other requested information from ROSS.

13. Destruction of Memos: Contractor acknowledges that the Memos constitute Confidential Information and shall remove and destroy all Memos and copies of Memos in its

possession within sixty (60) days of each Production Run and shall concurrently confirm to ROSS that such removal and destruction has occurred.

14. Existing Agreements: This Statement of Work is ancillary to existing agreements, including, but not limited to the MSA and prior Statements of Work.

Date: September 15, 2017

ROSS INTELLIGENCE, INC.

By: ______________________

Name: Andrew Arruda
Title: Chief Executive Officer

LEGALEASE LLC

By: ______________________

Name: Tariq Hafeez
Title: President

Schedule A

# Quality Control Guide for ROSS Intelligence

Drafting Questions, Preparing Responsive Memorandum, and Quality Control Procedures

LegalEase Solutions LLC

LEGALEASE SOLUTIONS LLC

TABLE OF CONTENTS


Overview .......... 2
Introduction .......... 2
Audience .......... 2
Objectives .......... 2
Legal Disclaimer .......... 3
The LegalEase Ross Team and Process .......... 4
Attorneys .......... 4
Quality Control Attorneys .......... 4
Staged Quality Control Process .......... 4
Production Expeditors .......... 5
India and US Project Managers .......... 5
ROSS Operations .......... 5
The LegalEase ROSS Process Flowchart .......... 6

LEGALEASE SOLUTIONS LLC

## Overview

### Introduction

The LegalEase Solutions Quality Control Guide ("QCG") is the primary quality assurance resource and playbook for our attorneys. This QCG provides all the tools and resources needed for the drafting and delivery of ROSS Intelligence memos.

### Audience

The intended audience for this guide is our attorneys who prepare Ross memos. Additionally, this guide may be utilized by ROSS to review our internal process.

### Objectives

This guide:

- Identifies clear guidelines for attorneys to follow when designing, developing, and researching, drafting, and delivering ROSS memos.
- Describes quality control standards for ROSS memos.
- Describes quality control procedures and processes set in place for ROSS memo production.

LEGALEASE SOLUTIONS LLC

**Legal Disclaimer**

This Quality Control Guide includes proprietary, confidential, and/or trade secret information. LegalEase considers this information to be a trade secret not subject to disclosure.

LEGALEASE SOLUTIONS LLC

**The LegalEase ROSS Team and Process**

We have organized a comprehensive team for this project. Leading the team for ROSS operations are Teri Whitehead, VP of Global Strategy and Gayathri Rajeev, Director of Operations in India. Teri and Gayathri will oversee operations and are available anytime to address and resolve any potential concerns.

**Attorneys.** Our team of attorneys will research topics and questions, draft the memos, and compile the memos in the ROSS approved format. We will ensure that our attorneys follow this QCG for drafting memos and utilize our internal associate work product checklists. The steps include:

i. Using our LegalEase's creative process, to produce ROSS questions.
ii. Research answers to questions.
iii. Draft ROSS memorandum.

**Quality Control Attorneys.** We have allocated a minimum of 5 separate QC attorneys to independently review memos, ensuring that ROSS standards are met. These attorneys have a minimum of 3 years' experience in these positions. The QC team will be expanded as needed per the scope and requirements of this project. The QC team will follow the QC checklist setting out the steps to be followed in completing the process. These steps include:

i. Review and confirm the grammar, question format, and citations.
ii. Confirm and review short answer and legal analysis.
iii. Review reference quotes for relevancy.
iv. Confirm case law.
v. Advise associates of errors and design action plan to avoid future errors.

**Staged Quality Control Process.** Our QC attorneys will follow LegalEase's staged quality control process. We have used this process with success on other large accounts with over 50,000 documents.

First Stage:
100% QC of 2000 Memos. Our QC attorneys will QC 100% of the first 2000 memos.

Second Stage:
75% for the next 10,000 memos. Our QC attorneys will QC 75% of the next 10,000 memos.

Third Stage:
25% for the remaining memos. Our QC attorneys will QC 25% or more of the remaining memos.

LEGALEASE SOLUTIONS LLC

**Production Expeditors.** Our dedicated ROSS production expeditors will comply and follow ROSS' process on delivery, including the portal upload, data tracking, and logistics. These steps include:

i. Validate question originality.
ii. Upload memorandum to ROSS dedicated portal.
iii. Update internal LE production tracking sheet.
iv. Email production totals of attorneys and QC attorneys to Project Managers.
v. Update internal exception error tracking sheet.
vi. Update ROSS' completion tracking sheet.

**India and US Project Managers.** We have assigned to ROSS, three project managers. Our project managers will guarantee and ensure ROSS quality and processes. Having project managers in different time zones will provide round the clock attention and access.

The role of the PM's include:

i. Review production of attorneys, QC attorneys, production expeditors.
ii. Daily review protocol and process for efficiencies following LE model theory of constraints.
iii. Address any concerns.
iv. Email daily reports to LegalEase Operations detailing production, legal topics addressed, upload process production, improved efficiencies, and QC results.

**Ross Operations.** Teri Whitehead and Gayathri Rajeev will oversee all aspects of this project. Teri and Gayathri's role includes the following:

i. Address any concerns.
ii. Email daily reports to the ROSS team providing production totals, QC results, and other requested information.
iii. Host daily conference status calls with the ROSS Production team.

LEGALEASE SOLUTIONS LLC

**The LegalEase ROSS Process Flowchart**

**Attorneys - Research, Review, Compile**
50+ attorneys

↓

**Quality Control Attorneys**
5

↓

**Production Expeditors**
3

↓

**India Project Manager**
Merin Sony

↓

**US Project Managers**
Chris Schmidt and Moon Thompson

↓

**ROSS Operations**
Gayathri Rajeev and Teri Whitehead

Schedule B

Document ID : ROSS Bulk QCC
Date of Issue : 07.08.2017
Periodic Review : 09.15.2017
Revision No :

# Quality Control Checklist for ROSS Intelligence

LegalEase Solutions LLC

## QUALITY CONTROL CHECKLIST FOR ROSS BULK MEMOS

### Attorney - ROSS Intelligence Checklist

| Description | Completed |
|---|---|
| 1. Draft ROSS questions following LegalEase Creative Process. | |
| 2. Research questions using online resources and accounts. | |
| 3. Label cases as great, good, topical, and irrelevant. | |
| 4. Confirm that great, and good quotes answer the question directly. | |
| 5. Add topical and irrelevant cases. | |
| 6. Confirm that the topical and irrelevant cases meet the criteria. | |
| 7. Confirm grammar correct throughout memo. | |
| 8. Confirm the font and space of the memo. | |
| 9. Follow file name convention. | |

### Review Attorney - ROSS Intelligence Checklist

| | Description | QC 1 | QC 2 |
|---|---|---|---|
| | Question should not be state specific. | | |
| | Grammar check of question. | | |
| | Quotes to be labeled correctly.<br><br>GREAT – must contain **all** essential elements of the question.<br><br>GOOD – contains **most** of the essential elements of the question. | | |

| | | | |
|---|---|---|---|
| | TOPICAL – foundation quote, background information.<br><br>IRRELEVANT – has no reference or relevance. | | |
| | Should label as Great Case 1, Great Case 2, and not Great Quote. | | |
| | Bracketed language **must** answer question.<br><br>Bracketed language may be up to a paragraph.<br><br>If necessary, you can double bracket separate sentences.<br><br>Bracketed language must be a sentence. Not just two words. | | |
| | Double Brackets, and Content in Bold. | | |
| | No red squiggly line. | | |
| | Confirm reference quote. Ensure Topical quote and Irrelevant quotes are added. | | |
| | Smartsheet updates. | | |
| | Double check the Form - Double Brackets for Quotes. No highlights. | | |
| | Memo number. | | |
| | Memo saved in correct format – naming convention. | | |

# EXHIBIT 4

LEXITAS™

HIGHLY CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE MATTER OF: | ) | |
| | ) | |
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) | C.A. No. 20-613(LPS) |
| Plaintiffs and Counterdefendants, | ) | |
| VS. | ) | |
| ROSS INTELLIGENCE, INC., | ) | |
| Defendant and Counterclaimant. | ) | |

ORAL AND VIDEOTAPED DEPOSITION
OF
TARIQ HAFEEZ
MAY 26, 2022

ORAL AND VIDEOTAPED DEPOSITION OF TARIQ HAFEEZ, produced as a witness at the instance of the Plaintiff and Counterdefendants and duly sworn, was taken in the above-styled and numbered cause on May 26, 2022, from 9:07 a.m. to 4:11 p.m., before KATERI A. FLOT-DAVIS, CSR, CCR, in and for the State of Texas, reported by machine shorthand, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record herein.

A P P E A R A N C E S

FOR THE PLAINTIFF:

JOSHUA SIMMONS, ESQ
ERIC LOVERRO, ESQ.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10077
joshua.simmons@kirkland.com
eric.loverro@kirkland.com

FOR THE DEFENDANT:

WARRINGTON PARKER, ESQ.
CRINISHA BERRY, ESQ.
GABRIEL RAMSEY, ESQ.
Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, California 94111
wparker@crowell.com
cberry@crowell.com
gramsey@crowell.com

FOR THE WITNESS TARIQ HAFEEZ:

TARIK D. TURFE, ESQ.
Hammoud Dakhlallah & Associates
6050 Greenfield
Ste. 201
Dearborn, Michigan 48126
tt@hdalawgroup.com

Also Present:
Kimberly Villalobos, Videographer

INDEX

PAGE

Appearances........................ 3

TARIQ HAFEEZ

Examination by Mr. Simmons.......... 20
Examination by Mr. Parker........... 181
Examination by Mr. Simmons.......... 322
Examination by Mr. Parker........... 353
Examination by Mr. Simmons.......... 357

Signature and Changes................... 359
Reporter's Certificate.................. 361

EXHIBITS


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Subpoena to Testify at Deposition in a Civil Action for LegalEase Solutions, LLC c/o Tariq Hafeez............ | 22 |
| Exhibit 2 | Settlement Agreement, Bates Stamped TR-0035897.............. | 35 |
| Exhibit 3 | Best Practices Guide for ROSS Intelligence, last revised on September 18, 2017 Bates Stamped LEGALEASE-00078065....... | 57 |
| Exhibit 4 | Email from Adityka Lokanandi to Teri Whitehead, et al., dated July 20, 2017, Subject: Ross Bulk Memo Production Metrics - Update - July 19, Bates Stamped R-LEGALEASE-00050718...... | 73 |

| | | |
|---|---|---|
| Exhibit 5 | Email from Teri Whitehead to Saloni Agari Dwarakanath, dated 10/24/2017, Subject: Good/Great Quotes Bates Stamped TR-0073545................. | 82 |
| Exhibit 6 | Morae Global Project Rose Project Protocol, updated November 19, 2017, Bates Stamped TR-0178604................ | 91 |
| Exhibit 7 | Email from Merin Sony to Tario Cameron, dated August 21, 2017, Subject: WL Registration Keys, Bates Stamped LEGALLEASE-00067320....... | 94 |
| Exhibit 8 | Consent Judgment and Stipulated Permanent Injunction................ | 116 |
| Exhibit 9 | Letter to Tariq Akbar from Andrew Arruda, Re: Notice of Indemnifiable Claim and Demand for Indemity from LegalEase Solutions LLC, Bates Stamped LEGALEASE-00171823........ | 123 |

| | | |
|---|---|---|
| Exhibit 10 | Email from Tariq Hafeez to KD; MN, dated June 9, 2021, Subject: LegalEase Position on Indemnification Request, Bates Stamped LEGALEASE-00171828....... | 126 |
| Exhibit 11 | Email from Akash Venkat to Thomas, dated September 21, 2015, Subject: Legal Research Inquiry, Bates Stamped ROSS-003277880........... | 140 |
| Exhibit 12 | Email from Tariq Hafeez to Teri Whitehead, dated January 17, 2018, Subject: Westlaw Termination, Bates Stamped R-LEGALEASE-00101636..... | 145 |
| Exhibit 13 | Email from Tomas Van der Heijden to Teri Whitehead, dated September 12, 2017, Subject: Sample Memos + SOW, Bates Stamped ROSS-000176146............ | 164 |
| Exhibit 14 | Email from Tomas van der Heijden to Teri Whitehead, dated November 13, 2017, Subject: Lengthy Paragraphs-ROSS Bulk Memos, Bates Stamped ROSS-000204366............. | 169 |

| | | |
|---|---|---|
| Exhibit 15 | Email from Teri Whitehead to Tomas van der Heijden, Dated December 22, 2017, Subject: Classifier Part II, Bates Stamped ROSS-000197949............ | 174 |
| Exhibit 16 | Email from Thomas Hamilton to Tariq Hafeez, dated July 15, 2015, Subject: Outsourcing Legal Research, Bates Stamped ROSS-02301823............. | 180 |
| Exhibit 17 | Master Service Agreement, dated October 15, 2015, Bates Stamped TR-0038909................ | 185 |
| Exhibit 18 | Statement of Work, dated October 15, 2015, Bates Stamped TR-0038921................ | 187 |
| Exhibit 19 | Email from Thomas Hamilton to Andrew Arruda, dated January 4, 2016, Subject: Questions for January, Bates Stamped ROSS-010157007............ | 189 |

| | | |
|---|---|---|
| Exhibit 20 | Email from Andrew Arruda to Tariq Hafeez, dated April 21, 2016, Subject: ROSS/LegalEase, Bates Stamped ROSS-000201544........... | 190 |
| Exhibit 21 | Email from Teri Whitehead to Tomas van der Heijden, dated July 24, 2016, Subject: Revised Memos 977, 1032, 1091, 1208, 1336, 1391, 1422, 1471, 1486, 1492, 1234, Bates Stamped ROSS-000176798........... | 194 |
| Exhibit 22 | Memorandum #1234, Bates Stamped ROSS-000176800........... | 194 |
| Exhibit 23 | Email from Andrew Arruda to Teri Whitehead, dated September 14, 2016, Subject: Ross, Bates Stamped ROSS-000197791........... | 196 |
| Exhibit 24 | Email from Andrew Arruda to Teri Whitehead, dated February 10, 2017, Subject: LegalEase Solutions and ROSS-Q1 2017 Meeting, Bates Stamped ROSS-000201630............. | 199 |

Exhibit 25 Email from Teri Whitehead to Tomas van der Heijden, dated June 13, 2017, Subject: ROSS Scale-Up Query, Bates Stamped ROSS-000197671.............. 204

Exhibit 26 Email from Teri Whitehead to Tomas van der Heijden, dated June 23, 2017, Subject: LegalEase ROSS RFP, Bates Stamped ROSS-000304847.............. 209

Exhibit 27 Email from Teri Whitehead to Tomas van der Heijden, dated June 27, 2017, Subject: Revised Proposal, Bates Stamped ROSS-000176758.............. 211

Exhibit 28 Response to Ross Request for Proposal, LegalEase Solutions June 27, 2017, ROSS-000176759.............. 211

Exhibit 29 Email from Teri Whitehead to Andrew Arruda, et al., dated July 7, 2017, Subject: LegalEase Quality Control Guide for ROSS Bulk Memos, Bates Stamped ROSS-000176768.............. 213

| | | |
|---|---|---|
| Exhibit 30 | Quality Control Guide for ROSS Intelligence, Bates Stamped ROSS-000176770............. | 213 |
| Exhibit 31 | Email from Aditya Lokanandi to Teri Whitehead dated July 20, 2017, Subject: Ross Bulk Memo Production Metrics-Update July 19, Bates Stamped TR-0039879................. | 220 |
| Exhibit 32 | Excel spreadsheet Bates Stamped R-LEGALEASE-00140064....... | 221 |
| Exhibit 33 | Email from Merin Sony to Rejitha R, dated July 20, 2017, Subject: ROSS Bulk Memo-July 21, 2017, Bates Stamped R-LEGALEASE-00050673....... | 225 |
| Exhibit 34 | Email from Aditya Lokanandi to Tariq Akbar, dated July 26, 2017, Subject: MOM-Discussion on ROSS Activity Automation, Bates Stamped R-LEGALEASE-00067492....... | 229 |

| | | |
|---|---|---|
| Exhibit 35 | Email from Merin Sony to Muhammed Ansad, dated July 31, 2017, Subject: ROSS Process Automation Meeting with Ansad, Bates Stamped R-LEGALEASE-00067463....... | 231 |
| Exhibit 36 | Strategic Alliance Agreement Between LegalEase and Morae Global Corporation, dated August 31, 2017, Bates Stamped TR-0039933................. | 236 |
| Exhibit 37 | Email from Aditya Lokanandi to Muhammed Ansad, dated September 6, 2017, Subject: Activity Automation Tool Updated, Bates Stamped R-LEGALEASE-00067493....... | 239 |
| Exhibit 38 | Email from Tomas van der Heijden to Teri Whitehead, dated September 15, 2017, Subject: Final SOW, Bates Stamped ROSS-000304769.............. | 242 |

| | | |
|---|---|---|
| Exhibit 39 | Email from Tomas van der Heijden to Teri Whitehead, dated September 22, 2017, Subject: Questions Variation Task, Bates Stamped ROSS-000198151............ | 243 |
| Exhibit 40 | Email from Keerthi Ravindran to Ansad, dated September 24, 2017, Subject: ROSS Bulk Tool/Zoho, Bates Stamped R-LEGALEASE-00049399..... | 245 |
| Exhibit 41 | Best Practices Guide for ROSS Intelligence, last Revised on September 18, 2017, Bates Stamped TR-0039860................ | 247 |
| Exhibit 42 | Email from Muhammed Ansad to Aditya Lokanandi, et al., dated September 26, 2017, Subject: Technical Understanding of the Tool, Bates Stamped TR-0039885................ | 248 |
| Exhibit 43 | LegalEase Login webpage, Bates Stamped R-LEGALEASE-00154874...... | 249 |

| | | |
|---|---|---|
| Exhibit 44 | Email from Rohit Baben to Merin Sony, dated November 9, 2017, Subject: Framing Questions using Lexis headnotes, Bates Stamped R-LEGALEASE-00067565..... | 268 |
| Exhibit 45 | Email from Teri Whitehead to Christopher Cahn, dated 10/3/2017, Subject: Clutch Topics, Bates Stamped TR-0048605............... | 270 |
| Exhibit 46 | Email from Teri Whitehead to Christopher Cahn, dated 10/3/2017, Subject: Bulk Project-Macro Enabled Templates, Bates Stamped TR-0048620............... | 273 |
| Exhibit 47 | Email from Moon Saleh to Christopher Cahn, dated 10/4/2017, Subject: Best Practices Guide-Minimum Topics, Bates Stamped TR-0048725............... | 274 |
| Exhibit 48 | Westlaw webpage, Bates Stamped TR-0048727............... | 274 |

| | | |
|---|---|---|
| Exhibit 49 | Statement of Work II for Bulk Memos Project, Bates Stamped R-LEGALEASE-00048772...... | 283 |
| Exhibit 50 | Kelly Services, Inc., Frame Agreement, dated October 11, 2017, Bates Stamped R-LEGALEASE-00048728...... | 284 |
| Exhibit 51 | LegalEase Solutions Appropriate Use of Westlaw Accounts/User Agreement, dated October 4, 2017, Bates Stamped TR-0049195................ | 285 |
| Exhibit 52 | Email from Leo Kuriakose to Tariq Akbar, dated October 26, 2017, Subject: Ross-Tool-Update 10.07.2017, Bates Stamped R-LEGALEASE-00028693...... | 287 |
| Exhibit 53 | Email from Leo Kuriakose to Tariq Akbar, dated October 16, 2017, Subject: Drafting Tool Update:10.14.2017, Bates Stamped R-LEGALEASE-00029691....... | 288 |

Exhibit 54 Email from Rejitha R to Gayathri Rajeev, dated October 20, 2017, Bates Stamped R-LEGALEASE-00048928..... 290

Exhibit 55 Email from Leo Kuriakose to Ansad, dated October 26, 2017, Subject: Minutes of the Meeting Held on 10.26.2017 Regarding ROSS Tool, Bates Stamped R-LEGALEASE-00067404...... 290

Exhibit 56 Email from Rejitha R to Leo Kuriakose, dated November 1, 2017, Subject: Concerns Regarding Ross Tool, Bates Stamped R-LEGALEASE-00048929..... 291

Exhibit 57 Email from Leo Kuriakose to Anjusha Puthanpurayil, Dated November 8, 2017, Subject: Framing Questions Using Lexis headnotes, Bates Stamped R-LEGALEASE-00049260..... 292

Exhibit 58 Best Practices Guide for ROSS Intelligence, Bates Stamped R-LEGALEASE-00049652..... 292

| | | |
|---|---|---|
| Exhibit 59 | Email from Jyothi to Chad Fennell, dated 11/11/2017, Subject: Additional topics, Bates Stamped TR-0091408................ | 297 |
| Exhibit 60 | Email from Merin Sony to SHaris Forward, dated 11/15/2017, Subject: ROSS Tool Update 11.14.2017, Bates Stamped TR-0098206................ | 300 |
| Exhibit 61 | Statement of Work for ROSS Classifier, dated October 15, 2015, Bates Stamped LEGALEASE-00108391........ | 303 |
| Exhibit 62 | Email from Teri Whitehead to Joy Saphla, dated 12/7/2017, Subject: ROSS Report, Bates Stamped TR-0135110................ | 305 |
| Exhibit 63 | LegalEase Solutions LLC Phase I Legal ArReas Covered document, Bates Stamped TR-0135113................ | 305 |

| | | |
|---|---|---|
| Exhibit 64 | Email from Tomas van der Heijden to Teri Whitehead, dated December 14, 2017, Subject: ROSS Classifier Update, Bates Stamped ROSS-000235965........... | 310 |
| Exhibit 65 | Email from Tomas van der Heijden to Teri Whitehead, dated April 10, 2018, Subject: SOW, Bates Stamped ROSS-000247118............ | 311 |
| Exhibit 66 | LegalEase Solutions LLC, Statement of Work, dated October 15, 2015, Bates Stamped ROSS-000247119............. | 312 |
| Exhibit 67 | LegalEase Statement LLC Statement of Work, dated October 15, 2015, Bates Stamped ROSS-000241438............. | 314 |
| Exhibit 68 | Memorandum #1234, Bates Stamped ROSS-000176800............. | 335 |

P R O C E E D I N G S

THE VIDEOGRAPHER: We are on the record on May 26th, 2022, at 9:07 a.m., Eastern Time, for the remote video deposition of Mr. Tariq Hafeez, in the matter of Thomson Reuters Enterprise Centre GMBH, et al., versus ROSS Intelligence, Incorporated.

My name is Kimberly Villalobos and I am the videographer and document tech.

All present will be noted on the stenographic record.

Will the court reporter please swear in the witness.

(Witness sworn.)

MR. SIMMONS: So let's start by getting appearances on the record.

I'm Joshua Simmons from Kirkland & Ellis. I represent the plaintiffs.

And along with me is Eric Loverro from our offices, as well.

MR. PARKER: Warrington Parker, representing ROSS Intelligence.

With me is Crinisha Berry.

MR. TURFE: And Tarik Turfe representing the witness, Mr. Tariq Hafeez.

TARIQ HAFEEZ,

having been first duly sworn, testified as follows:

EXAMINATION

BY MR. SIMMONS:

Q. Mr. Hafeez, could you state your full name for the record.

A. Sure. My name is Tariq, middle name is Saadain, S-a-a-d-a-i-n, last name is Hafeez.

Q. And what is your address?

A. My home address or business address?

Q. We can start with your business address.

A. Sure. Business address is 2723 South State Street, Suite 150, Ann Arbor, Michigan 48014.

Q. And do you live in Ann Arbor Michigan?

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE MATTER OF: | ) |
| | ) |
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) C.A. No. 20-613(LPS) |
| Plaintiffs and Counterdefendants, | ) |
| VS. | ) |
| ROSS INTELLIGENCE, INC., | ) |
| Defendant and Counterclaimant. | ) |

REPORTER'S CERTIFICATION
DEPOSITION
OF
TARIQ HAFEEZ
MAY 24, 2022

I, Kateri A. Flot-Davis, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, TARIQ HAFEEZ, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

There was a request for examination and signature of the witness to the deposition transcript. The original transcript was sent for review on ____________________ to the witness or to the attorney for the witness for examination, signature and return to me by ____________________;

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified to by me this ___ of __________ ,_____.

_________________________________
Kateri A. Flot-Davis
Texas CSR No. 8462
Expiration Date: 12-31-22

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | § | |
| | § | C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | § | |
| vs. | § | |
| ROSS INTELLIGENCE, INC., | § | |
| Defendant/Counterclaimant, | § | |

HIGHLY CONFIDENTIAL

PURSUANT TO PROTECTIVE ORDER

VIDEO-RECORDED ORAL DEPOSITION OF

CHRISTOPHER CAHN

AS CORPORATE REPRESENTATIVE OF

MORAE GLOBAL CORPORATION

Houston, Texas

Thursday, May 12, 2022

(REPORTED REMOTELY)

REPORTED BY:

Linda Russell, CSR

JOB NO: 210749

CAHN - MORAE GLOBAL

May 12, 2022

9:06 a.m.

DEPOSITION OF CHRISTOPHER CAHN, conducted via Zoom, taken before Linda Russell, Certified Court Reporter No. 2965, pursuant to the Federal Rules of Civil Procedure for the United States District Court pertaining to the taking of depositions, in the City of Houston, Texas, commencing at 9:06 a.m. Central Time, on May 12, 2022.

CAHN - MORAE GLOBAL

A P P E A R A N C E S

(All parties appearing remotely)

ON BEHALF OF PLAINTIFFS/COUNTERDEFENDANTS:
ERIC LOVERRO, ESQ.
MIRANDA MEANS, ESQ.
Kirkland & Ellis
601 Lexington Avenue
New York, New York 10022

ON BEHALF OF DEFENDANT/COUNTERCLAIMANT:
WARRINGTON PARKER, ESQ.
JACOB CANTER, ESQ.
GABRIEL RAMSEY, ESQ.
Crowell & Moring
3 Embarcadero Center
San Francisco, California 94111

ON BEHALF OF THE WITNESS:
MONIKA DZIEMIANCZUK, ESQ.
Locke Lord
2800 JPMorgan Chase Tower
600 Travis
Houston, Texas 77002

ALSO PRESENT:
Darryl Russell, Videographer
Bill Thomas, Exhibit Operator

# I N D E X


| | Page |
|---|---|
| CHRISTOPHER CAHN | |
| BY MR. PARKER | 10 |
| BY MR. LOVERRO | 127 |
| BY MR. PARKER | 219 |
| BY MR. LOVERRO | 229 |
| CERTIFICATE | 232 |
| ERRATA SHEET | 234 |


## EXHIBITS MARKED


| No. | Description | Page |
|---|---|---|
| Exhibit 1 | Defendant ROSS Intelligence, Inc.'s Notice of Deposition Subpoena to Morae Global Corporation | 12 |
| Exhibit 2 | Statement of Work II for Bulk Memos Project - MORAE_00012755 | 24 |
| Exhibit 3 | Email - MORAE_00003043 | 33 |
| Exhibit 4 | Email - MORAE_00032863 | 36 |
| Exhibit 5 | Email - MORAE_00025712 | 40 |
| Exhibit 6 | Email - MORAE_00025351 | 43 |
| Exhibit 7 | ROSS Bulk Instructions & Checklist - Bulk Memos - 6 quotes. MORAE_00025374 | 44 |
| Exhibit 8 | Quality Control Guide for ROSS Intelligence, Quality Control Procedures in Drafting Questions, and Preparing Responsive Memorandum - MORAE_0045723 | 52 |
| Exhibit 9 | Best Practices Guide for ROSS Intelligence, Drafting Questions, Preparing Responsive Memorandum, and Quality Control Procedures - MORAE_00025353 | 59 |

| | | |
|---|---|---|
| Exhibit 10 | Email - MORAE_00025100 | 71 |
| Exhibit 11 | Email - MORAE_00011538 | 74 |
| Exhibit 12 | Email - MORAE_00025035 | 76 |
| Exhibit 13 | Email - MORAE_00001938 | 80 |
| Exhibit 14 | Email - MORAE _00027590 | 82 |
| Exhibit 15 | Email - MORAE_00024969 | 83 |
| Exhibit 16 | Email - MORAE_00033849 | 84 |
| Exhibit 17 | Email - MORAE_00012097 | 90 |
| Exhibit 18 | Email - MORAE_00012630 | 92 |
| Exhibit 19 | Email - MORAE_00001622 | 94 |
| Exhibit 20 | Appropriate Use of Westlaw Accounts/User Agreement - MORAE_00001625 | 94 |
| Exhibit 21 | Exhibit A-User Agreement - MORAE_00032612 | 96 |
| Exhibit 22 | Email - MORAE_00030511 | 97 |
| Exhibit 23 | Excel spreadsheet that was attached to Exhibit 22 | 97 |
| Exhibit 24 | Email - MORAE _00027350 | 102 |
| Exhibit 25 | Excel spreadsheet that was attached to Exhibit 24 | 102 |
| Exhibit 26 | Email - MORAE_00024599 | 103 |
| Exhibit 27 | Email - MORAE_00030402 | 104 |
| Exhibit 28 | Email - MORAE_00000845 | 105 |
| Exhibit 29 | Excel spreadsheet | 106 |
| Exhibit 30 | Email - MORAE _00002170 | 108 |
| Exhibit 31 | Excel spreadsheet, Project Rose | 108 |

| | | |
|---|---|---|
| Exhibit 32 | Email - MORAE _00015346 | 110 |
| Exhibit 33 | Excel Spreadsheet | 111 |
| Exhibit 34 | Email - MORAE_00014065 | 112 |
| Exhibit 35 | Excel spreadsheet | 112 |
| Exhibit 36 | Excel spreadsheet | 113 |
| Exhibit 37 | Email - MORAE _00014058 | 113 |
| Exhibit 38 | Email - MORAE-0038838 | 115 |
| Exhibit 39 | Email - MORAE_00002677 | 116 |
| Exhibit 40 | Email - MORAE_00000606 | 117 |
| Exhibit 41 | Document beginning with Phase I Legal Areas covered - MORAE_00000609 | 118 |
| Exhibit 42 | Email - MORAE _00000404 | 119 |
| Exhibit 43 | Excel spreadsheet that's attached to Exhibit 42 | 121 |
| Exhibit 44 | MP4 file | 122 |
| Exhibit 45 | Email - MORAE_00000855 | 123 |
| Exhibit 46 | -Document with Title "International Law" - MORAE_00000863 | 124 |
| Exhibit 47 | Email - MORAE_00030575 | 125 |
| Exhibit 48 | Memorandum #2 - MORAE_00030600 | 126 |
| Exhibit 49 | Email - MORAE_00024996 | 147 |
| Exhibit 50 | Statement of Work II for Bulk Memos Project - MORAE_00024891 | 154 |
| Exhibit 51 | Email - LEGALEASE-00093075 | 167 |
| Exhibit 52 | Project Rose -- Project Protocol - LEGALEASE-00093076 | 168 |

| | | |
|---|---|---|
| Exhibit 53 | Email - MORAE_00003413 | 178 |
| Exhibit 54 | Memorandum #537 - ROSS-003300843 | 182 |
| Exhibit 55 | Republic of Philippines v. Marcos, 818 F.2d 1473 (1987) - TR-0549927 | 185 |
| Exhibit 56 | Email - LEGALEASE-00098288 | 202 |
| Exhibit 57 | Letter re: LegalEase Solutions, LLC Bulk Memo Status Report - MORAE_00002664 | 205 |
| Exhibit 58 | Email - MORAE_00002662 | 206 |
| Exhibit 59 | Excel spreadsheet | 210 |
| Exhibit 60 | Excel spreadsheet | 211 |
| Exhibit 61 | Excel spreadsheet | 213 |
| Exhibit 62 | Excel spreadsheet | 213 |

CAHN - MORAE GLOBAL

P-R-O-C-E-E-D-I-N-G-S

THE VIDEOGRAPHER: My name is Darryl Russell, I am the legal videographer in association with TSG Reporting, Incorporated.

Due to the severity of COVID-19, and following the practice of social distancing, I will not be in the same room with the witness, instead I will record this videotaped deposition remotely. The reporter, Linda Russell, also will not be in the same room and will swear the witness remotely.

Do all parties stipulate to the validity of this video-recording and remote swearing and that it will be admissible in the courtroom as if it had been taken following Rule 30 of the Federal Rules of Civil Procedures and in the State's rules where this case is pending?

Counsel, please state your name for the record, whom you represent, and that you agree.

MR. PARKER: Warrington Parker on behalf of ROSS Intelligence. So stipulated.

MR. LOVERRO: Eric Loverro on behalf

of Plaintiffs. So stipulated.

THE VIDEOGRAPHER: Thank you.

This is the start of media labeled Number 1 of the video-recorded 30(b)(6) deposition of Christopher Cahn in the matter of Thomson Reuters Enterprise Centre GmbH, et al. versus ROSS Intelligence, Incorporated, in the United States District Court, District of Delaware, Number 20-613.

This deposition is being held remotely on May 12th, 2022. The time is approximately 9:06 a.m. My name is Darryl Russell, I am the legal video specialist with TSG Reporting, Incorporated, New York. The court reporter is Linda Russell, in association with TSG Reporting. The exhibit operator is Bill Thomas, also with TSG Reporting.

Will the court reporter please swear in the witness.

CHRISTOPHER CAHN,

having sworn or affirmed to tell the truth, the whole truth and nothing but the truth was examined and testified as follows:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

CERTIFICATE

STATE OF TEXAS )
)
COUNTY OF HARRIS )

I, LINDA RUSSELL, a Certified Court Reporter within and for the State of Texas, do hereby certify:

That CHRISTOPHER CAHN, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

I certify that review of the transcript by the deponent was not requested.

I certify that the amount of time used by each party at the deposition is as follows:

MR. PARKER - 02:53:47

MR. LOVERRO - 01:44:53

I further certify that I am not related to any of the parties to this action by blood or marriage; and that I am in no way interested in the outcome of this matter.

(Signature on following page)

IN WITNESS WHEREOF, I have hereunto set my hand this 24th day of May, 2022.

LINDA RUSSELL, Texas CSR #2965
Expiration Date: 4/30/2023

TSG Reporting, Inc.
Firm Registration No. 615
228 E. 45th Street, Suite 810
New York, New York 10017
(212) 702-9580

# EXHIBIT 6

Exhibit 5

STATEMENT OF WORK II
FOR BULK MEMOS PROJECT

This Statement of Work is made pursuant to the Strategic Partnership Agreement by and between LegalEase Solutions, LLC, a Michigan limited liability company ("LEGALEASE") and Morae Global Corporation, a Delaware corporation ("Subcontractor").

**RECITALS**

WHEREAS, LEGALEASE and Subcontractor are parties to a Strategic Partnership Agreement dated in August 2017 which governs the relationship between the parties;

WHEREAS, LEGALEASE has been engaged by Client ("Client") to provide certain memo drafting services as outlined below ("Client Engagement");

WHEREAS, LEGALEASE desires to subcontract some of the Client Engagement work to SUBCONTRACTOR;

WHEREAS, SUBCONTRACTOR agrees to accept the Client Engagement work under the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual promises contained and set out in this Agreement, the parties agree as follows:

1. Definitions: Terms and expressions not expressly defined in this Statement of Work, shall have the following meanings:
   - 1.1. "Case Law" means judicial decisions originating from a judicial or administrative body in the United States of America, or as otherwise prescribed in writing by LEGALEASE and sent to SUBCONTRACTOR.
   - 1.2. "Legal Research Question" means a question grounded in legal principles.
   - 1.3. "Memorandum or Memo" means a memorandum of law that answers a Legal Research Question.
   - 1.4. "Quote" means an independent paragraph excerpt from Case Law.
   - 1.5. "Reference List" means the list of Case Law included in the Memo.
   - 1.6. "Deficiency" means a reference quote that does not directly answer the LEGALEASE question.

2. Currency: Unless stated otherwise, all dollar figures in this Statement of Work are in United States dollars.

3. Description of Service:

3.1. SUBCONTRACTOR agrees to provide LEGALEASE with Memos for Client, as topically assigned by LEGALEASE. SUBCONTRACTOR agrees to meet the expectations for performance as set forth in this Statement of Work. SUBCONTRACTOR will research topics and Legal Research Questions from any Federal or State jurisdiction in the United States, without regard to any legal decisions, draft Memos, and compile the Memos in the format approved by LEGALEASE. Unpublished cases are acceptable.

3.2. LEGALEASE and SUBCONTRACTOR agree that SUBCONTRACTOR will not be expected or required to engage in the practice of law during the provision of any of the services under this Statement of Work. To the extent SUBCONTRACTOR is providing services to LEGALEASE under this Statement of Work that are related to legal matters, LEGALEASE on behalf of itself and its responsible attorney, agrees and acknowledges that such services shall be solely in support of LEGALEASE's responsible attorney and that

EXHIBIT 5 Gossai 10-17-19

SUBCONTRACTOR is not providing legal advice or opinions to LEGALEASE's, responsible attorney, or any other third party regarding any project.

3.3. LEGALEASE will provide SUBCONTRACTOR with Best Practices Guide for SUBCONTRACTOR to determine minimum number of memos to be delivered for each topic assigned. SUBCONTRACTOR will confirm with LEGALEASE the number of memos per topic assigned within 24 business hours of assignment.

3.4. Each Memo shall include a Legal Research Question and a Reference list with a target of at least five (5) and no more than six (6) Quotes.

3.5. Three (3) to four (4) Quotes in each Memo shall contain either a "great" or "good" independent answer to the Legal Research Question. A "great" Quote is one that contains an answer to all essential elements of the Legal Research Question while a "good" Quote is one that contains an answer to most essential elements of the Legal Research Question. SUBCONTRACTOR shall strive for four (4) "good" or "great" Quotes per question, of any quantity. SUBCONTRACTOR shall strive to have more "great" than "good" Quotes.

3.6. SUBCONTRACTOR shall rank the "great" and "good" Quotes in order of relevance, with the first-ranked Quote in a Memo being the best answer to the Memo question.

3.7. One (1) Quote in each Memo shall contain a "topical" independent response to the Legal Research Question. A "topical" response is a response that answers and/or references limited components of a Legal Research Question but does not answer the essential elements of such Legal Research Question.

3.8. One (1) Quote in each Memo shall contain an "irrelevant" independent response to the Legal Research Question. An "irrelevant" response is a response that contains one or more keywords from the Legal Research Question but does answer and/or reference any elements of the Legal Research Question, either limited or essential.

3.9. SUBCONTRACTOR shall label whether a Quote contains a response that is "great", "good", "topical" or "irrelevant" and double bracket and bold the specific component of each such Quote that is "great", "good", "topical" or "irrelevant." SUBCONTRACTOR shall also label which legal practice area each Quote falls under.

4. Changes: LEGALEASE reserves the right to request changes, deletions, or additions as deemed necessary by LEGALEASE. LEGALEASE' proposed changes shall become effective only by written agreement of SUBCONTRACTOR.

5. Production/Delivery Schedule: SUBCONTRACTOR agrees to draft LEGALEASE questions and Memos pursuant to the schedule below. In the Production Run of Memos, SUBCONTRACTOR shall commence providing deliverables on October 6, 2017 and as outlined below. There shall be no duplicate questions and memos submitted. SUBCONTRACTOR may produce more questions and memos in the Production.

Production:
First stage: Minimum of 2000 Memos completed by October 20, 2017 and will make all effort to deliver by October 18, 2017.
Daily deliverables shall be a minimum of 200 memos per day starting October 16, 2017.

Second stage: Minimum of 8000 Memos completed by November 15, 2017
Daily deliverables shall be a minimum of 400 memos per day.

6. Option for additional Memos: It is anticipated that LEGALEASE will contract for additional memos from SUBCONTRACTOR. LEGALEASE will notify SUBCONTRACTOR no later than 5 days prior for the commencement date for additional Memos. In the event that LEGALEASE contracts with SUBCONTRACTOR for subsequent production runs, the production schedule will be mutually agreed upon prior to commencing such future production runs. LEGALEASE is in no way obligated to SUBCONTRACTOR for these Anticipated Production, absent agreement.

Anticipated Production:
Third stage: Minimum of 11,000 memos completed by December 30, 2017
CONTRACTORs commitment on delivery of number of memos and due date for the third stage is dependent on receiving assignment from LEGALEASE by no later than October 23, 2017.

Fourth stage: Minimum of 7,000 memos completed by January 13, 2017
CONTRACTORs commitment on delivery of number of memos and due date for the fourth stage is dependent on receiving assignment from LEGALEASE by no later than November 27, 2017.

7. General Terms: This Agreement is subject to and conditioned upon the underlying engagement between Client and LEGALEASE. Should client terminate or revise its engagement with LEGALEASE, LEGALEASE will notify SUBCONTRACTOR immediately. In the event that client terminates the agreement, LEGALEASE shall be responsible for payment of only for those memos which have been accepted by the client.

8. Fee: LEGALEASE shall pay SUBCONTRACTOR pursuant to the schedule below:

| Reference Quotes | Price per Memo, Westlaw provided LEGALEASE |
|---|---|
| 4 Quotes + 1 topical and 1 irrelevant Quote | $11.34 |
| 3 Quotes + 1 topical and 1 irrelevant Quote | $10.34 |

9. Volume Discount: SUBCONTRACTOR will provide a 5% discount for any Memo purchase over 15,000 and a 10% volume discount for any total order over 30,000 Memos.

10. Payment: SUBCONTRACTOR shall invoice LEGALEASE at the end of the month for the total number of Memos completed during that month. LEGALEASE shall pay within 30 days of receipt of invoice. Payments made by LEGALEASE to SUBCONTRACTOR are subject to the provisions of Quality Assurance Section 12 of this Agreement.

11. Delivery: SUBCONTRACTOR shall deliver daily batched Memos on the box site as provided by LEGALEASE or in any other manner by LEGALEASE in equal increments per production.

12. Quality Assurance: SUBCONTRACTOR shall ensure the Memos submitted follow the Quality Control Checklist ("QCC") provided in Schedule A to this Statement of Work. If any of the Memos, in any batch submitted does not meet the parameters prescribed in the QCC, SUBCONTRACTOR shall not bill for that Memo, nor resubmit that Memo or Memo question. LEGALEASE will provide the rejection reason in compliance with the QCC. SUBCONTRACTOR shall achieve the minimum memos per assigned topic area.

13. Any inquiries and question from LEGALEASE AND SUBCONTRACTOR shall be immediately addressed within 24 hours. LEGALEASE will allow SUBCONTRACTOR for the first 50 memos an opportunity, upon rejection, the opportunity to resubmit those memos.

14. Reporting: SUBCONTRACTOR shall email daily reports to LEGALEASE which include the production totals, QCC results, and other requested information from LEGALEASE. SUBCONTRACTOR shall also provide daily updates on tracking google docs sheet or other mechanism as provided by LEGALEASE.

15. Destruction of Memos: SUBCONTRACTOR acknowledges that the Memos constitute Confidential Information and are the property of LegalEase and shall remove and destroy all Memos and copies of Memos in its possession within sixty (60) days of each Production Run and LEGALEASE shall seek confirmation that such removal and destruction has occurred.

16. License Grant: LEGALEASE hereby grants to SUBCONTRACTOR and SUBCONTRACTOR'S affiliates and subsidiaries license to use of the Westlaw, pursuant to the terms of Westlaw's agreement, in all ways necessary to perform the services described in this Statement of Work for the term of this Statement of Work.

17. LegalEase Representations and Warranties; Indemnification: LEGALEASE represents and warrants that: (i) it has obtained any and all necessary authority, permissions and licenses from the relevant third-party software vendor to grant a license in the same terms as set out in Section 16 above; and (ii) it has reviewed the Westlaw Privacy Policy and confirmed that the Privacy Policy is sufficient to protect the intellectual property rights in the deliverables created under this Statement of Work.

LEGALEASE shall indemnify SUBCONTRACTOR (including its affiliates and subsidiaries) for any losses, liability, costs and expenses incurred by SUBCONTRACTOR or SUBCONTRACTOR'S affiliates or subsidiaries in the event of a third-party claim against SUBCONTRACTOR or a SUBCONTRACTOR affiliate or subsidiary arising out of, or resulting from: (i) LEGALEASE'S breach of the representations and warranties in this Section 17. For clarity, the indemnification obligation set forth in this Section 17 will not be subject to the disclaimer of damages or limitation of liability in Section VII of the Strategic Partnership Agreement.

Date: October 5, 2017

LEGALEASE SOLUTIONS LLC

By: ______________________

Name: Tariq Hafeez
Title: President

MORAE GLOBAL CORPORATION

By:

Name: Joy Saphla
Title: President, eLEXir

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,

Plaintiffs/Counterdefendants,

vs. C.A. No. 20-613-LPS

ROSS INTELLIGENCE, INC.,

Defendant/Counterclaimant.

_______________________________________

HIGHLY CONFIDENTIAL

PURSUANT TO PROTECTIVE ORDER

VIDEOTAPED AND VIDEOCONFERENCE

DEPOSITION OF TERI WHITEHEAD

Monday, April 18, 2022

Reported by:

Denise M. Kizy, RPR, CRR, CSR-2466

JOB NO. 208941

April 18, 2022

9:04 a.m.

Deposition of TERI WHITEHEAD, held via videoconference, before Denise M. Kizy, RPR, CRR, CSR-2466, a Notary Public of the State of Michigan.

APPEARANCES:

Kirkland & Ellis LLP
Attorneys for Plaintiffs/Counterdefendants
601 Lexington Avenue
New York, New York 10022
BY: JOSHUA SIMMONS, ESQ.
JENNIFER GIBBINS, ESQ.

Crowell & Moring LLP
Attorneys for Defendant/Counterclaimant
3 Embarcadero Center
San Francisco, California 94111
BY: WARRINGTON PARKER, ESQ.
CRINESHA BERRY, ESQ.

ALSO PRESENT:
Brandon Vosburgh - Video Technician
Alexandra Teves - Exhibit Operator

TABLE OF CONTENTS


| WITNESS | | PAGE |
|---|---|---|
| TERI WHITEHEAD | | |
| EXAMINATION | | |
| BY MR. PARKER | | 11 |
| EXAMINATION | | |
| BY MR. SIMMONS | | 179 |


EXHIBITS


| EXHIBIT | | PAGE |
|---|---|---|
| EXHIBIT 1 | Defendant and Counterclaimant ROSS Intelligence Inc.'s Amended Notice of Deposition Subpoena to Teri Whitehead | 12 |
| EXHIBIT 2 | Master Services Agreement | 30 |
| EXHIBIT 3 | Statement of Work | 32 |
| EXHIBIT 4 | First Amendment to Statement of Work | 35 |
| EXHIBIT 5 | [Proposed] Stipulated Protective Order | 35 |
| EXHIBIT 6 | E-mail chain | 39 |
| EXHIBIT 7 | E-mail chain | 43 |
| EXHIBIT 8 | E-mail chain | 45 |
| EXHIBIT 9 | E-mail | 47 |

| | | |
|---|---|---|
| EXHIBIT 10 | Memorandum #570 | 49 |
| EXHIBIT 11 | Document which begins: "Issue: Can res judicata bar a fraudulent transfer claim under section of 548 of the bankruptcy code where the debt has been satisfied pursuant to a stay relief order?" | 53 |
| EXHIBIT 12 | E-mail chain | 54 |
| EXHIBIT 13 | E-mail | 56 |
| EXHIBIT 14 | E-mail | 56 |
| EXHIBIT 15 | E-mail chain | 63 |
| EXHIBIT 16 | E-mail chain | 67 |
| EXHIBIT 17 | E-mail chain | 69 |
| EXHIBIT 18 | E-mail chain | 71 |
| EXHIBIT 19 | E-mail chain | 74 |
| EXHIBIT 20 | E-mail | 79 |
| EXHIBIT 21 | Response to ROSS Request For Proposal, LegalEase Solutions, June 23, 2017 | 80 |
| EXHIBIT 22 | E-mail | 84 |
| EXHIBIT 23 | Response to ROSS Request For Proposal, LegalEase Solutions, June 27, 2017 | 84 |
| EXHIBIT 24 | E-mail | 86 |

| | | |
|---|---|---|
| EXHIBIT 25 | Quality Control Guide For ROSS Intelligence | 86 |
| EXHIBIT 26 | E-mail chain | 95 |
| EXHIBIT 27 | E-mail | 102 |
| EXHIBIT 28 | Memorandum #364 | 105 |
| EXHIBIT 29 | E-mail chain | 106 |
| EXHIBIT 30 | Statement of Work II For ROSS Bulk Memos | 109 |
| EXHIBIT 31 | E-mail | 114 |
| EXHIBIT 32 | Memorandum # | 117 |
| EXHIBIT 33 | Memorandum # | 117 |
| EXHIBIT 34 | ROSS Bulk Instructions & Checklist | 118 |
| EXHIBIT 35 | Quality Control Guide for ROSS Intelligence | 119 |
| EXHIBIT 36 | Best Practices Guide For ROSS Intelligence | 123 |
| EXHIBIT 37 | E-mail chain | 134 |
| EXHIBIT 38 | E-mail chain | 138 |
| EXHIBIT 39 | Reciprocal Non-Disclosure, Non-Circumvention Agreement | 139 |
| EXHIBIT 40 | E-mail chain | 144 |
| EXHIBIT 41 | ROSS Bulk Daily Report, dated 9/20/17 | 146 |
| EXHIBIT 42 | E-mail | 148 |

| | | |
|---|---|---|
| EXHIBIT 43 | Best Practices Guide For ROSS Intelligence | 150 |
| EXHIBIT 44 | E-mail | 151 |
| EXHIBIT 45 | ROSS Bulk Instructions & Checklist | 152 |
| EXHIBIT 46 | Statement of Work II For Bulk Memos Project | 154 |
| EXHIBIT 47 | Kelly Services, Inc. Frame Agreement | 155 |
| EXHIBIT 48 | E-mail chain | 156 |
| EXHIBIT 49 | Document which begins "International Law" | 157 |
| EXHIBIT 50 | Document which begins "Education" | 159 |
| EXHIBIT 51 | Document which begins "Pretrial Procedure" | 160 |
| EXHIBIT 52 | Statement of Work For ROSS Variation | 160 |
| EXHIBIT 53 | E-mail | 161 |
| EXHIBIT 54 | Interpretive Degrees Project | 161 |
| EXHIBIT 55 | E-mail chain | 163 |
| EXHIBIT 56 | Statement of Work For ROSS Classifier | 165 |
| EXHIBIT 57 | E-mail chain | 166 |
| EXHIBIT 58 | E-mail chain | 168 |

| | | | |
|---|---|---|---|
| EXHIBIT 59 | E-mail chain | 169 |
| EXHIBIT 60 | Document which begins "Phase I Legal Areas Covered" | 169 |
| EXHIBIT 61 | E-mail | 171 |
| EXHIBIT 62 | Letter to Tomas van der Heijden from Teri Whitehead, dated December 7, 2017, Re: LegalEase Solutions, LLC Bulk Memo Status Report" | 171 |
| EXHIBIT 63 | Document with Bates stamp R-LEGALEASE-00154874 | 173 |
| EXHIBIT 64 | E-mail | 174 |
| EXHIBIT 65 | Statement of Work - ROSS Review | 175 |
| EXHIBIT 66 | Statement of Work - ROSS Nuance | 176 |
| EXHIBIT 67 | E-mail | 177 |
| EXHIBIT 68 | Metadata for Exhibit 28 | 206 |

TERI WHITEHEAD

VIDEO TECHNICIAN: Good morning. My name is Brandon Vosburgh. I'm the legal videographer in association with TSG Reporting, Incorporated.

Due to the severity of COVID-19 and following the practice of social distancing, I will not be in the same room with the witness; instead, I will record this deposition remotely.

Our certified court stenographer, Denise Kizy, will also be in a separate room and will swear in the witness remotely.

Do all the parties stipulate to the validity of this video recording and remote swearing, and that it will be admissible in the courtroom as if it had been taken following Rule 30 of the Federal Rules of Civil Procedures and the state's rules where this case is pending?

Your answers, please.

MR. PARKER: Yes.

MR. SIMMONS: It's okay from the plaintiff's perspective as well.

TERI WHITEHEAD

VIDEO TECHNICIAN: Thank you for your answers.

Today is Monday, April 18, 2022, and the time is 9:05 a.m. Eastern Standard Time.

This is media unit number one of the video-recorded deposition of Teri Whitehead in the matter of Thomson Reuters Enterprise Centre GmbH, et al. versus ROSS Intelligence, Incorporated.

Will counsel please identify yourselves for the record and then we'll have our court stenographer swear in the witness.

THE COURT REPORTER: Counsel, please identify yourselves.

MR. PARKER: This is Warrington Parker appearing on behalf of ROSS Intelligence, defendants in the case. With me is Crinesha Berry.

MR. SIMMONS: My name is Joshua Simmons. With me is Jennifer Gibbins. We're from Kirkland & Ellis representing the plaintiffs.

TERI WHITEHEAD

MR. PARKER: Good morning, Ms. Whitehead. How are you?

THE COURT REPORTER: Excuse me, excuse me.

Ms. Whitehead, would you raise your right hand, please.

TERI WHITEHEAD

was thereupon called as a witness herein, and after having been first duly sworn to testify to the truth, the whole truth and nothing but the truth, was examined and testified as follows:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

TERI WHITEHEAD

CERTIFICATE

STATE OF MICHIGAN)
) ss.
COUNTY OF OAKLAND)

I, Denise M. Kizy, a Notary Public within and for the State of Michigan, do hereby certify:

That TERI WHITEHEAD, the deponent whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage; and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand April 28, 2022.

Denise M. Kizy

___________________________________

Denise M. Kizy, RPR, CRR, CSR-2466

# EXHIBIT 8

# Best Practices Guide for ROSS Intelligence

Drafting Questions, Preparing Responsive Memorandum, and Quality Control Procedures

Last revised on September 18, 2017.

Document ID : ROSS Bulk
Date of Issue : 08.07.17
Periodic Review : 09.18.2017
Revision No : 5

# Contents

**Part I** ..... **3**
Overview ..... 3
Introduction ..... 3
Audience ..... 3
Objectives ..... 3
Legal Disclaimer ..... 4
**Part II** ..... **4**
Framing Questions ..... 4
1. West Law ..... 4
2. Lexis: ..... 9
**Part III** ..... 13
I. Standards & Best Practices for ROSS Memos Drafting ..... 13
Attorney - ROSS Intelligence Checklist ..... 15
Sample Memo ..... 16
II. Standards & Best Practices for ROSS Memos Review ..... 18
Review Attorney - ROSS Intelligence Checklist ..... 18
III. Standards & Best Practices for ROSS Portal Upload ..... **Error! Bookmark not defined.**
Portal Upload - ROSS Intelligence Checklist ..... **Error! Bookmark not defined.**

## Part I

### Overview

The LegalEase Solutions Best Practices Guide aims to set out the quality assurance process followed by the LegalEase team to ensure delivery of memos that meet the standards and requirements of ROSS Intelligence.

### Introduction

The LegalEase Solutions Best Practices Guide is the primary quality assurance resource and playbook for our attorneys. This Practice Guide provides all the tools and resources needed for the drafting and delivery of ROSS Intelligence memos.

### Audience

The intended audience for this guide is our full- time, part-time, and subcontracted attorneys who prepare Ross memos. Additionally, this guide may be utilized by ROSS to review our internal process.

### Objectives

This guide:

- Identifies clear guidelines for attorneys to follow when designing, developing, researching, drafting, and delivering ROSS memos.
- Promotes uniformity of the process to be followed by the team.
- Lay out checklists to ensure quality assurance of the memos at different stages.
- Describes best practices and standards for ROSS memos.

**Legal Disclaimer**

This Best Practices Guide includes proprietary, confidential, and/or trade secret information. LegalEase considers this information to be a trade secret not subject to disclosure.

## Part II

### Framing Questions

You may be assigned a West Law (WL)/Lexis topic to frame questions. An easy way of framing questions is to rely on the head notes. However, note that the head notes are proprietary and you should not copy paste them in the question.
Given below are screenshots to frame questions using WL and Lexis:

1. **West Law**

1) Headnote Search - Click on the Key Numbers. You will be assigned a number which is available under the Key Numbers.




Here, the Key Number assigned is 1 and the topic is Abandoned and Lost Property.



2) Click on a key number topic. The best practice is to begin from the top (sub topic number 1) and follow the pattern.




3) Clicked on #4 Evidence and questions for jury.




4) Got this…


4 Evidence and questions for jury (78) Add to Favorites

**Jurisdiction:** All Federal Change

1 - 78 Sort by: Topic then Date

Select all items | No items selected

1 ABANDONED AND LOST PROPERTY 415
1I Abandonment 290
1 4 Evidence and questions for jury 78

1. **Cheffins v. Stewart**
United States Court of Appeals, Ninth Circuit. | June 8, 2016 | 825 F.3d 588

**Headnote:** Under Nevada law, abandonment of property may be inferred from acts done.

**Document Preview:** COPYRIGHTS - Art and Architecture. Mobile replica of 16th-century Spanish galleon was not protected b

2. **Recovery Ltd. Partnership v. Wrecked and Abandoned Vessel, S.S. CENTRAL AMERICA**
United States District Court, E.D. Virginia, Norfolk Division. | August 11, 2015 | 120 F.Supp.3d 500

**Headnote:** In order for the law of finds to be applied to property lost at sea, the treasure-hunter must establish abandonment of t bar to proving such abandonment is high.

**Document Preview:** MARITIME LAW - Salvage. Law of salvage applied to artifacts recovered from historic shipwreck.

5) Clicked on Cheffins case.




6) Which pulls up the exact headnote on point. As well as ton of others…




7) From that headnote, make the statement a question.

So – headnote 12 - "Under Nevada law, abandonment of property may be inferred from acts done."
Convert to a question, "May abandonment of property under Nevada Law be inferred from acts done?"

**2. Lexis:**

1) Log on to your account and go to the main screen.




2) Select Search By Topic or Headnote.


Lexis®
My Lexis™
Search
Get a Document
Shepard's®
More
All
By Topic or Headnote
Minnesota
Legal
Add/Edit Subtabs
All Topics
Look for a Legal Topic
Help
Option 1: Find a Legal Topic
Find
Find in: Administrative Law
All Topics
Rectangular Snip
Option 2: Explore Legal Topics
Administrative Law
General Overview
Agency Adjudication
General Overview
Alternative Dispute Resolution (Related Topics...)
Decisions
Hearings
Impartiality
Prehearing Activity
Presiding Officers
Review of Initial Decisions
Agency Investigations
Agency Rulemaking
Governmental Information
Informal Agency Actions
Judicial Review (Related Topics...)
Separation of Powers
Sovereign Immunity

3) Select Option 2 – Search by Headnote.




4) Select the Jurisdiction and date from the drop-down. Try searching for "Previous 10 years" in the drop down.



5) When the cases are displayed, select "Show Headnotes Only" option.




6) We may be able to find more cases by clicking "More Like This HeadNote"



## Part III

### I. Standards & Best Practices for ROSS Memos Drafting

1. The whole memo is drafted in Times New Roman, with font size 12 and single spaced.

2. File name convention: "Topic No. – sub topic no. - Memo # – [associate initials] - [date].

3. Building and formatting the memo.

a. Opening the ROSS template, use the save as option and rename the template following the naming convention mentioned above.

b. Begin by researching the question from head notes.

c. There should be no jurisdictional filtering for the questions. This means the questions should not be state specific.

d. Enter the questions framed from the assigned topic in the Smartsheet (SS).

e. Each Memo shall include a Question and a Reference list (RL) with a target of at least 2 and no more than 6 cases.

f. The most relevant paragraph of the case would be entered in the memo as Quote 1. Do not add more than 1 quote from a case.

g. Copy paste the entire paragraph of the case that answers the question.

h. When using WL Next to "Copy with reference" BE SURE the format it copies with is "Standard." That should automatically give you a good cite when you paste it.

i. The first 2- 4 cases of the memo must provide an independent answer to the legal research question.

j. These quotes shall be labelled "Great" or "Good" depending on the relevancy of the quote to the question.

k. When the excerpts hit on all essential elements of the question, they will be labelled "great." If they hit on most essential elements of the question they will be labelled "good."

l.

m. Associate shall strive for 4 great/good quotes per question. However, if the Associate is only able to find 1, 2 or 3 cases, they shall only provide 1, 2 or 3 cases.

n. Associate shall aim for more number of great quotes (maximum 4) for each memo.

o. In addition to the 2-4 cases/quotes to each research question, we will draft one 'topical' quote and one 'irrelevant' quote.

p. A topical quote is a case with a quote that hits on aspect of the question, but does not answer any part of the question. For example: Question: 'Are oil and gas leases executory contracts?'

Answer: 'There are no published opinions construing this language. However, by its terms, the paragraph deals with interests of the debtor in 'gaseous hydrocarbons' and not contract rights like the ones involved here. (The legislative history of § 541(b)(4) indicates that it was enacted to address questions related to the transfer of rights in **[[oil and gas leases]]**.'

q. An irrelevant quote has some keywords in it from the question but completely missed the mark. For example, if the question is '[a]re oil and gas leases executory contracts?' a bad answer may contain key words like 'olive oil" or "residential leases' but nothing else relevant about the question.

r. Associate shall rank the cases in order of relevance, with the first-ranked case in a Memo being the best answer to the Memo question and the last-ranked case being the worst answer to the Memo question.

s. Associate shall also bold the relevant parts of each Quote that answer the relevant Memo question and put them in double brackets. The topical and irrelevant quotes must also have the required portion in bold and double brackets.

t. A bracketed excerpt can be up to the length of one paragraph, provided there isn't too much unnecessary filler. If need be, you can double bracket separate sentences/sections of the same paragraph/quote if that leads to a fuller answer to the question.

u. Associate shall label the quotes as great, good, topical, and irrelevant.

v. Note that pinpoint citation is not used in ROSS memo. For e.g. *In re Story*, 536 B.R. 279, 283 (Bankr. E.D. Mo. 2015) will be entered as In re Story, 536 B.R. 279.

w. In the RL section, while the quotes are copy-pasted, make sure the page numbers and footnotes in the judgment are deleted.

x. Check over the entire memo to make sure that there are no stray lines or odd spaces.

y. Complete all Smartsheet fields. This include entering the associate initials, question drafted, date, number of quotes, date of QC, initials of QC associate, Notes, and saved file name.

**Attorney - ROSS Intelligence Checklist**

| Description | Completed |
|---|---|
| 1. Draft ROSS questions following LegalEase Creative Process. | |
| 2. Research questions using online resources and accounts. | |
| 3. Label the quotes as great, good, topical, and irrelevant. | |
| 4. Confirm that great, and good quotes answer the question directly. | |
| 5. Add topical and irrelevant quotes. | |
| 6. Confirm that the topical and irrelevant cases meet the criteria. | |
| 7. Confirm grammar correct throughout memo. | |
| 8. Confirm the font and space of the memo. | |
| 9. Follow file name convention. | |

**Sample Memo**

**MEMORANDUM #**

**1. Question**

What is implied actual notice?

**2. Reference List**
**Issue: What is implied actual notice?**

Case 1: Symons Corp. v. Tartan-Lavers Delray Beach, Inc., 456 So. 2d 1254.
Great Quote 1: Notice is of two kinds, actual and constructive. Sapp v. Warner, 105 Fla. 245, 141 So. 124, aff'd, 143 So. 648 (1932). Actual notice is itself comprised of two types: (1) express, based on direct information; and (2) implied, which includes notice inferred from the fact that a person had the means of knowledge, which it was his duty to use. Id. **[[Implied actual notice is an inference of fact. Id.; see also, Reinhart v. Phelps, 150 Fla. 382, 7 So.2d 783 (1942). Implied actual notice, being an inference of fact, may be drawn by the court as a matter of law when warranted by the circumstances of the particular case calling for its application in order to grant equitable relief.]]** Sapp v. Warner, supra. United Contractors, Inc. v. United Constr. Corp., 187 So.2d 695 (Fla. 2d DCA 1966).

Case 2: Sapp v. Warner, 105 Fla. 245.
Great Quote 1: Notice is of two kinds, actual and constructive. 'Constructive notice' has been defined as notice imputed to a person not having actual notice; for example, such as would be imputed under the recording statutes to persons dealing with property subject to those statutes. [[**'Actual notice' is also said to be of two kinds: (1) Express, which includes what might be called direct information; and (2) implied, which is said to include notice inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not use, or, as it is sometimes called, 'implied actual notice.']]** Cooper v. Flesner, 24 Okl. 47, 103 P. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 S. Ct. 239, 35 L. Ed. 1063; Hoy v. Bramhall, 19 N. J. Eq. 563, 97 Am. Dec. 687; Acer v. Westcott, 46 N. Y. 384, 7 Am. Rep. 355**. [[Constructive notice is a legal inference, while implied actual notice is an inference of fact]],** but the same facts may sometimes be such as to prove both constructive and implied actual notice. Knapp v. Bailey, 79 Me. 195, 9 A. 122, 1 Am. St. Rep. 295.

Case 3: Rinehart v. Phelps, 150 Fla. 382.
Good Quote 1: **[[Constructive notice is a legal inference, while implied actual notice is an inference of fact, but the same facts may sometimes be such as to prove both constructive and implied actual notice]].** Knapp v. Bailey, 79 Me. 195, 9 A. 122, 1 Am.St. Rep. 295; 105 Fla. 245, 141 So. page 127.

Case 4: Knapp v. Bailey, 79 Me. 195.

Good Quote 1: There is a conflict in the cases and among writers as to what is actual notice. Much of the difference is said to be verbal only,— more apparent than real. Certain propositions, however, are quite well agreed upon by a majority of the authorities. Notice does not mean knowledge; actual knowledge is not required. Mr. Wade describes the modes of proving actual notice as of two kinds. One he denominates express notice, and the other implied. **[["*Implied,* which imputes knowledge to the party because he is shown to be anxious of having the means of knowledge, though he does not use them; in other words, where he chooses to remain voluntarily ignorant of the fact, or is grossly negligent in not following up the inquiry which the known facts suggest." Wade, Notice, (2d Ed.) § 5. Some writers use the word "implied" as meaning constructive, and would regard what is here described to be implied actual notice as constructive notice merely]].** As applicable to actual notice, such as is required by the sections of the statute under consideration, we think the classification of the author whom we quote is satisfactory. The author further explains the distinction by adding that "notice by implication differs from constructive notice, with which it is frequently confounded, and which it greatly resembles, with respect to the character of the inference upon which it rests; constructive notice being the creature of positive law, or resting upon strictly legal inference, while **[[implied notice arises from inference of fact." It amounts substantially to this: that actual notice may be proved by direct evidence, or it may be inferred or implied (that is, proved) as a fact from indirect evidence,—by circumstantial evidence]].** A man may have notice or its legal equivalent. He may be so situated as to be estopped to deny that he had actual notice. We are speaking of the statutory notice required under the conveyances act. A higher grade of evidence may be necessary to prove actual notice appertaining to commercial paper. Kellogg v. Curtis*,* 69 Me. 212. The same facts may sometimes be such as to prove both constructive and actual notice; that is, a court might infer constructive notice, and a jury infer actual notice, from the facts. There may be cases where the facts show actual, when they do not warrant the inference of constructive, notice; as where a deed is not regularly recorded, and not giving constructive notice, but a second purchaser sees it on the records, thereby receiving actual notice. Hastings v. Cutler*,* 24 N. H. 481.

Case 5: Hagan v. Sabal Palms, Inc., 186 So. 2d 302.
Topical Quote 1: **[[The principle applied in cases of alleged implied actual notice is that a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice]]**; that it will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand. (cases cited).' (Emphasis supplied).

Case 6: Hopkins v. McCarthy, 121 Me. 27.
Irrelevant Quote 1: Inquiry was not necessary, because the plaintiff saw the defendant in possession. **[[Possession alone is not implied notice.]]** *Hanly v. Morse*, 32 Me. 287. But inquiry became highly important when he had found out that the man was in possession under a contract of lease. Then a prudent man would have inquired, and, inquiring, would have learned. Then, to excerpt from *Birdsall v. Russell*, 29 N. Y. 220, there was "such a connection between the fact discovered and the further facts to be discovered as to furnish a clue–a reasonable and natural clue–to the latter." Notice of a lease will be notice of its contents (Story's Eq. Jur. § 400), which is but another way of saying that notice may become the equivalent of knowledge, and that he who is put upon inquiry must exercise good faith, proper diligence, and reasonable care in following up the inquiry. The underlying and ruling principle is that of common prudence, or, better still, that of

common honesty. "Whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding," is a commendable syllabus condensed into small space. Lodge v. Simonton, 2 Pen. & W (Pa.) 439, 23 Am. Dec. 36. Mr. Justice Strong says:
"Wherever inquiry is a duty, the party bound to make it is affected with knowledge of all that which he would have discovered had he performed the duty." Cordova v. Hood, 17 Wall. 1, 21 L. Ed. 587.

## II. Standards & Best Practices for ROSS Memos Review

a. Check the question for grammatical errors using https://www.grammarly.com/i?breadcrumbs=true&page=install or https://www.grammarly.com/office-addin/windows

b. Validate the cites quoted in the case.

c. Validate if the highlighted portions answer the question correctly.

d. Make sure that the Memo has 4 independent quotes. If it lacks 4 quotes, note the concern in the SS.

e. Validate the formatting, and alignment.

f. If the memo requires substantial rework return to the associate.

g. Once finalized, save the final eliminating associate's initials and date.

h. Tab time for review of each memo.

### Review Attorney - ROSS Intelligence Checklist

| | Description | QC 1 | QC 2 |
|---|---|---|---|
| | Question should not be state specific. | | |
| | Grammar check of question. | | |
| | Quotes to be labeled correctly.<br><br>GREAT – must contain **all** essential elements of the question.<br><br>GOOD – contains **most** of the essential elements of the question.<br><br>TOPICAL – foundation quote, background information. | | |

| | | | |
|---|---|---|---|
| | IRRELEVANT– has no reference or relevance. | | |
| | Should label as Great Quote 1, Great Quote 2, Topical Quote 1, and Irrelevant Quote 1. | | |
| | Bracketed language **must** answer question.<br><br>Bracketed language may be up to a paragraph.<br><br>If necessary, you can double bracket separate sentences.<br><br>Bracketed language must be a sentence. Not just two words. | | |
| | Double Brackets, and Content in Bold. | | |
| | No red squiggly line. | | |
| | Confirm reference quote. Ensure Topical quote and Irrelevant quotes are added. | | |
| | Smartsheet updates. | | |
| | Double check the Form - Double Brackets for Quotes. No highlights. | | |
| | Memo number. | | |
| | Memo saved in correct format – naming convention. | | |

# EXHIBIT 9

LEXITAS™

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,

Plaintiffs and Counterdefendants,

vs.

C.A. No. 20-613 (LPS)

ROSS INTELLIGENCE, INC.,

Defendant and Counterplaintiff.

**HIGHLY CONFIDENTIAL**

VIDEOTAPED 30(b)(6) DEPOSITION OF DEFENDANT,

by and through its corporate designee

TOMAS VAN DER HEIJDEN,

(also in his individual capacity)

London, England, United Kingdom

Thursday, March 17, 2022

Pages: Pages 1 - 443

Reported stenographically by:
LEAH M. WILLERSDORF, RPR-CRR-FBIVR-ACR-QRR2-CLR

Thursday, March 17, 2022

09:29 a.m.
(Greenwich Mean Time)

Videotaped 30(b)(6) deposition of Defendant, by and through its corporate representative Tomas van der Heijden, as well as in his individual capacity, held at the offices of Kirkland & Ellis International LLP, 30 St. Mary Axe, London EC3A 8AF, England, United Kingdom, before Leah Willersdorf, Registered Professional Reporter and Certified Realtime Reporter with the US National Court Reporters Association, and Accredited Court Reporter, Qualified Realtime Reporter (Level 2) and Fellow of the British Institute of Verbatim Reporters, and Certified LiveNote Reporter.

A P P E A R A N C E S

On behalf of Plaintiffs and Counterdefendants:

KIRKLAND & ELLIS, LLP

601 Lexington Avenue
New York, New York 10022
(212) 446 4800

BY: JOSHUA L. SIMMONS, ESQ.
JENNIFER GIBBINS, ESQ.
joshua.simmons@kirkland.com
jennifer.gibbins@kirkland.com

On behalf of Defendant and Counterplaintiff:

CROWELL & MORING, LLP

3 Embarcadero Center
26th Floor
San Francisco, CA 94111
(415) 986 2800

BY: KAYVAN M. GHAFFARI, ESQ.
kghaffari@crowell.com

ALSO PRESENT:

Linda Fleet - Videographer

WITNESS INDEX


| Witness: | Page |
|---|---|
| TOMAS VAN DER HEIJDEN | |
| Examination by Mr. Simmons | 15 |
| Examination by Mr. Ghaffari | 387 |
| Further Examination by Mr. Simmons | 420 |


REQUEST FOR PRODUCTION


| | Line | Page |
|---|---|---|
| Document request | 19 | 104 |

EXHIBITS INDEX



| van der Heijden Exhibit No. | Description | Page |
|---|---|---|
| Exhibit 1 | Plaintiffs and Counterdefendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation's Notice of 30(b)(6) Deposition of Defendant Ross Intelligence Inc. (13 pages, no Bates) | 18 |
| Exhibit 2 | Email string, with the most recent being from Kayvan Ghaffari to Miranda Means, et al., dated March 11, 2022 (1 page, no Bates) | 18 |
| Exhibit 3 | Document entitled "Powered by IBM Watson Application - Executive Summary," with metadata attached (ROSS-003705907 - 908) [Highly Confidential - Attorneys' Eyes Only] | 71 |
| Exhibit 4 | ROSS Intelligence Terms of Service, with a Last Modified date of April 28, 2020 (TR-0001142 - 153) | 87 |
| Exhibit 5 | Email string, with the most recent being from Andre Garber to Andrew Arruda, dated October 19, 2015 (ROSS-003390881 - 884) [Highly Confidential] | 100 |
| Exhibit 6 | Thomson Reuters General Terms and Conditions, as of July 2015 (WPC-0001475 - 476) [Highly Confidential] | 103 |

EXHIBITS INDEX


| van der Heijden Exhibit No. | Description | Page |
|---|---|---|
| Exhibit 7 | Email from Akash Venkat to Jimoh Ovbiagele, dated February 26, 2015 (ROSS-003390586 - 587) [Highly Confidential] | 141 |
| Exhibit 8 | Slack communication between Jimoh Ovbiagele and Andrew Arruda, dated February 17, 2015, headed "[Slack] Notifications from the Ross Inc team for Feb 16th, 2015" [Highly Confidential] | 145 |
| Exhibit 9 | Email string, with the most recent being from Thomas Hamilton to Andrew Arruda, dated May 11, 2015 (ROSS-003390869 - 871) [Highly Confidential] | 149 |
| Exhibit 10 | Email string, with the most recent being from Andrew Arruda to Thomas Hamilton, et al., dated August 6, 2015 (ROSS-003389778 - 779) [Highly Confidential] | 152 |
| Exhibit 11 | Email string, with the most recent being from Thomas Hamilton to Andrew Arruda, et al., dated September 25, 2015 (ROSS-003389728 - 730) [Confidential] | 155 |
| Exhibit 12 | Email string, with the most recent being from Will Webb to Mahesh Krishnan, et al., dated November 23, 2016 (ROSS-003390101 - 105) [Highly Confidential] | 158 |

EXHIBITS INDEX


| van der Heijden Exhibit No. | Description | Page |
|---|---|---|
| Exhibit 13 | Email from Thomas Hamilton to John Fernandez, dated August 2015 (ROSS-003390233) [Highly Confidential] | 163 |
| Exhibit 14 | Email string, with the most recent being from David Houlihan to Tomas van der Heijden, et al., dated December 14, 2016 (ROSS-003390050 - 052) [Highly Confidential] | 165 |
| Exhibit 15 | Slack conversation between Tomas van der Heijden and Thomas Hamilton, headed "D1NFRAAUS: 2016-12-05" (ROSS-010241185 - 191) [Confidential] | 169 |
| Exhibit 16 | Slack conversation between Tomas van der Heijden and Sean Semmler, headed "D5A76KC75: 2017-06-29" (ROSS-010361787 - 789) [Highly Confidential - Attorneys' Eyes Only] | 171 |
| Exhibit 17 | Email string, with the most recent being from Tomas van der Heijden to Rohit Jayawardhan, dated October 23, 2017 (ROSS-003389945 - 946) [Highly Confidential] | 175 |
| Exhibit 18 | Email string, with the most recent being from Tomas van der Heijden to Rohit Jayawardhan, dated October 27, 2017 (ROSS-003389960 - 61) [Highly Confidential] | 179 |

EXHIBITS INDEX


| van der Heijden Exhibit No. | Description | Page |
|---|---|---|
| Exhibit 19 | Screenshot of the Practice Areas section of the Thomson Reuters Westlaw website, and is attachment to an email in Exhibit 18 (ROSS-009706035) [Confidential] | 179 |
| Exhibit 20 | Email string, with the most recent being from Tomas van der Heijden to Ashley Stenning, dated November 21, 2017 (ROSS-003390062 - 065) [Highly Confidential] | 184 |
| Exhibit 21 | Email exchange between Charles Von Simson and Tomas van der Heijden, dated May 24, 2018 (ROSS-009601555) [Highly Confidential - Attorneys' Eyes Only] | 189 |
| Exhibit 22 | Email string, with the most recent being from Sean Shafik to Tomas van der Heijden, dated May 25, 2018 (ROSS-003390073 - 075) [Highly Confidential] | 194 |
| Exhibit 23 | Email string, with the most recent being from Tomas van der Heijden to Charles von Simson, dated May 28, 2018 (ROSS-003390071 - 072) [Highly Confidential] | 204 |

EXHIBITS INDEX

| van der Heijden Exhibit No. | Description | Page |
|---|---|---|
| Exhibit 24 | Thomson Reuters NACI (New Account/Credit Increase) Form, with the subscriber being Charles von Simson, dated May 30, 2018 (ROSS-003390024 - 025) [Highly Confidential] | 206 |
| Exhibit 25 | Email from Charles von Simson to Tomas van der Heijden, et al., dated June 5, 2018 (ROSS-003389931) [Highly Confidential] | 208 |
| Exhibit 26 | Document entitled "List of 20 items from Charles von Simson All History," which is the attachment to Exhibit 25, with metadata attached (ROSS-003389932 - 935) [Highly Confidential] | 208 |
| Exhibit 27 | Email from Charles von Simson to Thomas Hamilton, et al., dated November 15, 2018 (ROSS-003389911) [Highly Confidential] | 210 |
| Exhibit 28 | Thomson Reuters order form for Westlaw Edge, with the account address of Charles von Simson (ROSS-003389928 - 930) [Highly Confidential] | 215 |

EXHIBITS INDEX


| van der Heijden Exhibit No. | Description | Page |
|---|---|---|
| Exhibit 29 | Slack conversation between various people, dated December 5, 2018, headed "Product Feedback: 2018-12-05" (ROSS-009731365 - 369) [Highly Confidential - Attorneys' Eyes Only] | 217 |
| Exhibit 30 | Slack conversation between Tomas van der Heijden and Andrew Arruda, dated May 31, 2019, headed "mpdm-tomasvdh-findingjimoh-andrewarruda-sean.s-1: 2019-05-31" (ROSS-023018772) [Confidential] | 220 |
| Exhibit 31 | Slide deck entitled "Mini-Project 1: Legal Research Software Market," with metadata attached (ROSS-003386670 - 683) [Confidential] | 231 |
| Exhibit 32 | Email string, with the most recent being from Akash Venkat to Jimoh Ovbiagele, et al., dated October 27, 2015 (ROSS-023018166 - 167) [Confidential] | 234 |
| Exhibit 33 | Email string, with the most recent being from Sean Shafik to Andrew Arruda, et al., dated September 17, 2018 (ROSS-010151565 - 570) [Confidential] | 243 |

EXHIBIT INDEX

| van der Heijden Exhibit No. | Description | Page |
|---|---|---|
| Exhibit 34 | Email string, with the most recent being from Scott Sperling to Thomas Hamilton, dated June 22, 2018 (ROSS-003390234 - 236) [Highly Confidential] | 256 |
| Exhibit 35 | Document entitled "ROSS v. Westlaw - Results Compared," with metadata attached (ROSS-003419039 - 041) [Highly Confidential - Attorneys' Eyes Only] | 259 |
| Exhibit 36 | Email from Tomas van der Heijden to maxim@ rossintelligence.com, dated January 15, 2019 (ROSS-003268059) [Confidential] | 266 |
| Exhibit 37 | Slide deck entitled "Judicial Interpretations of Statutes and Regulations (JI)," with metadata attached (ROSS-023018710 - 736) [Confidential] | 276 |
| Exhibit 38 | Email string, with the most recent being from Thomas Hamilton to Tariq Hafeez, et al., dated October 14, 2015 (ROSS-000271277 - 302) [Confidential] | 291 |
| Exhibit 39 | Slide deck entitled "Memoranda workflow - ROSS," produced in native format, with metadata attached (ROSS-000061913 - 61913.16) | 299 |

EXHIBITS INDEX

| van der Heijden Exhibit No. | Description | Page |
|---|---|---|
| Exhibit 40 | Email from Sean Shafik to Tomas van der Heijden, dated April 5, 2019 (ROSS-009603341) [Highly Confidential - Attorneys' Eyes Only] | 304 |
| Exhibit 41 | Statement of Work pursuant to the Master Services Agreement, dated October 15, 2015 (ROSS-000251670 - 671) [Confidential] | 308 |
| Exhibit 42 | Email string, with the most recent being from Jimoh Ovbiagele to Tomas van der Heijden, dated December 22, 2017 (ROSS-003276744 - 745) [Confidential] | 312 |
| Exhibit 43 | Email string, with the most recent being from Thomas Hamilton to David McElhoe, dated October 30, 2015 (ROSS-003343202 - 207) [Attorneys' Eyes Only] | 313 |
| Exhibit 44 | Document headed "Memorandum #5" (LEGALEASE-00069484 - 487) | 333 |
| Exhibit 45 | Email string, with the most recent being from Tomas van der Heijden to Teri Whitehead, et al., dated November 13, 2017 (ROSS-000204366 - 367) [Confidential] | 340 |

EXHIBITS INDEX

| van der Heijden Exhibit No. | Description | Page |
|---|---|---|
| Exhibit 46 | Email string, with the most recent being from Teri Whitehead to Tomas van der Heijden, et al., dated December 22, 2017 (ROSS-000204216 - 218) [Confidential] | 347 |
| Exhibit 47 | License Agreement between Lawriter LLD and ROSS Intelligence, Inc., effective as of October 1, 2016 (ROSS-023018180 - 183) [Confidential] | 353 |
| Exhibit 48 | Document re Fastcase potentially acquiring ROSS, headed "Audience," with metadata attached (ROSS-003695819 - 824) [Confidential] | 358 |
| Exhibit 49 | Third-party ROSS Intelligence, Inc.'s Opposition to Plaintiff's Motion to Compel Production of Documents in Response to Subpoena in the West Publishing Corporation vs. LegalEase case (ROSS-001782470 - 489) | 368 |
| Exhibit 50 | Email string, with the most recent being from Graham Toppin to Tomas van der Heijden, et al., dated February 5, 2018 (ROSS-023018279 - 281) [Confidential] | 374 |

(On the record at 9:29 a.m.)

THE VIDEOGRAPHER: We are now on the record. My name is Linda Fleet. I am a videographer retained by Philadelphia.

This is a video deposition for the United States District Court for the District of Delaware.

Today's date is March 17, 2022, and the video time is 9:30 a.m.

This deposition is being held at Kirkland & Ellis, 30 St. Mary Axe, London EC3A 8AF, United Kingdom, in the matter of Thomson Reuters Enterprise Centre GmbH, versus ROSS Intelligence, Inc.

The deponent is Tomas van der Heijden.

Would all counsel please voice-identify themselves.

MR. SIMMONS: This is Joshua Simmons from Kirkland & Ellis. With me is Jennifer Gibbins who is also from Kirkland & Ellis. We are here on behalf of the plaintiffs.

MR. GHAFFARI: My name is Kayvan Ghaffari of Crowell & Moring, LLP, here on behalf of the witness and defendant/counterplaintiff ROSS Intelligence, Inc.

THE VIDEOGRAPHER: The court reporter is Leah Willersdorf and will now swear in the witness.

TOMAS VAN DER HEIJDEN,

having been duly sworn,

was examined and testified as follows:

EXAMINATION ON BEHALF OF

PLAINTIFFS/COUNTERDEFENDANTS

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

REPORTER CERTIFICATE

I, LEAH M. WILLERSDORF, Registered Professional Reporter, Certified Realtime Reporter, Fellow of the British Institute of Verbatim Reporters, Qualified Realtime Reporter Level 2, and Certified LiveNote Reporter, do hereby certify that:

TOMAS VAN DER HEIJDEN appeared before me on Thursday, March 17, 2022, was sworn by me, and was thereupon examined by counsel; that the testimony of said witness was taken and reduced to stenotype writing before me; that the foregoing is a true and accurate record to the best of my knowledge, skill and ability; that I am neither a relative nor employee of any party to the action in which this deposition was taken; nor am I a relative nor employee of any attorney or counsel employed by any party thereto; and, further, I am not financially or otherwise interested in the outcome of the action.

IN WITNESS WHEREOF I have hereunto set my hand this 28th of March 2022.

LEAH M. WILLERSDORF
RPR-CRR-FBIVR-ACR-QRR2-CLR

# EXHIBIT 10

**From:** Merin Sony <merin.sony@legaleasesolutions.com>
**Sent:** Thursday, July 20, 2017 11:36 PM EDT
**To:** Rejitha R <rejitha@legaleasesolutions.com>; Reshma Mathew <reshma.mathew@legaleasesolutions.com>; Anjusha Puthanpurayil <anjusha.puthanpurayil@legaleasesolutions.com>; Aparna Remesh <aparna.remesh@legaleasesolutions.com>; Sandesh Soman <sandesh.soman@legaleasesolutions.com>; Priyada R Menon <priyada.menon@legaleasesolutions.com>
**CC:** Gayathri Rajeev <gayathri.rajeev@legaleasesolutions.com>; Anitha NG <anitha.ng@legaleasesolutions.com>; Savitha Shenoy <savitha.shenoy@legaleasesolutions.com>
**Subject:** ROSS bulk memo - July 21, 2017

[redacted]

# EXHIBIT 11

Message

| | |
|---|---|
| **To**: | Steven Babb [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=130c1dae44c146418234024addc5cbd9-steven.babb]; Suryad Pai [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=ba832f782d6142928d718f0936e1b211-suryad.pai]; Eric Schramm [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c5cb8b9660ab44eda37462185ec2572f-Eric.Schram] |
| **CC**: | Jyothi Prasad Bislehalli [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b084de6a39b54c4889a7fb1bce0df289-prasad.bisl]; Priti Parekh [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6e699571f00c454e968d7f9619e9af7b-Priti.Parek]; Joy Saphla [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e7e4f5e01dab4995ab831eba5d9fde6c-joy.saphla] |
| **Subject**: | WestLaw logins |

+Joy

Hi All,

Please find below a summary of our conversation:

We don't believe that there will be any legal issues with the Ross project for the following reasons:
1. We've spoken to LegalEase and they will be providing Westlaw accounts to all of our team members under their own names.
2. Also, there will be no copy/paste of WestLaw proprietary information. We will be copy/pasting directly from court cases that are available to the public only.

Joy, Priti, Jyothi, and I have a call at 7am CST to discuss what approach we would like to take in regards to the WestLaw logins. They've asked whether we'd prefer to procure logins on our own or if they should. The catch with Westlaw is that they are looking for a minimum one year subscription.

Joy, could you please send across a copy of the SOW to this group today? Eric is going on leave shortly and should see it to provide his thoughts.

Regards,

Chad
Bangalore, India

---

**From:** Steven Babb
**Sent:** Thursday, September 28, 2017 2:29 PM
**To:** Suryad Pai <suryad.pai@clutchgroup.com>; Chad Fennell <chad.fennell@clutchgroup.com>; Eric Schramm <Eric.Schramm@clutchgroup.com>
**Cc:** Jyothi Prasad Bislehalli <prasad.bislehalli@clutchgroup.com>; Priti Parekh <Priti.Parekh@clutchgroup.com>
**Subject:** RE: FW: Sales Pitch

+ Eric

I'll get to this later today and will then ask Eric to cast his eye over it from a legal perspective.

So just to be clear, we are confident that we are not in breach of the Westlaw conditions of service? Whilst LegalEase are providing us with user id's in our own names, we are still a separate legal entity. Eric, I'd appreciate your perspective on this point also.

Regards, Steven

**Steven Babb** / Global Director of Information Security
steven.babb@clutchgroup.com / O: +44 203 744 7560 / C: +44 7977 995321
ClutchGroup
A MORAE GLOBAL BUSINESS
www.clutchgroup.com | www.moraeglobal.com

CLUTCH GROUP AND MORAE LEGAL MERGE TO FORM
MORAE GLOBAL
Read press release

---

**From:** Suryad Pai
**Sent:** 28 September 2017 07:29
**To:** Chad Fennell <chad.fennell@clutchgroup.com>
**Cc:** Jyothi Prasad Bislehalli <prasad.bislehalli@clutchgroup.com>; Priti Parekh <Priti.Parekh@clutchgroup.com>; Steven Babb <steven.babb@clutchgroup.com>
**Subject:** RE: FW: Sales Pitch

+ Steven

Apologies, forgot to loop Steven in my earlier response. I think Steven is best placed to respond to this, since it seems like there has been a further development in terms agreed with LeagalEase.

Steven, I can also drop a line to Eric to confirm this.

Regards,

**Suryad Pai** / Manager – InfoSec & QMS
suryad.pai@clutchgroup.com
O: +91 (80) 3040 4425 / C: +91 7760 72 72 62
ClutchGroup
A MORAE GLOBAL BUSINESS
www.clutchgroup.com | www.moraeglobal.com

CLUTCH GROUP AND MORAE LEGAL MERGE TO FORM
MORAE GLOBAL
Read press release

---

**From:** Chad Fennell
**Sent:** Thursday, September 28, 2017 10:48 AM
**To:** Suryad Pai <suryad.pai@clutchgroup.com>
**Cc:** Jyothi Prasad Bislehalli <prasad.bislehalli@clutchgroup.com>; Priti Parekh <Priti.Parekh@clutchgroup.com>
**Subject:** RE: FW: Sales Pitch

+Looping in Priti

Hi Suryad,

There shouldn't be any pending legal issues.

We've spoken to LegalEase and they will be providing Westlaw accounts to all of our team members under their own names.

Also, there will be no copy/paste of WestLaw proprietary information. We will be copy/pasting directly from court cases that are available to the public only.

Regards,

Chad
Bangalore, India

# EXHIBIT 12

**Project Rose**

**Project Protocol**

DRAFT

| | |
|---|---|
| **Updated** | 19 November 2017 |
| **Version** | 1.1 Working |
| **Document Classification** | RESTRICTED |
| **Status** | Draft/Working |
| **Author** | Christopher Cahn |

All rights reserved. No part of this document may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Morae Global.

## Table of Contents

**1. INTRODUCTION ..... 3**

1.1 BACKGROUND ..... 3
1.2 ORDER OF REVIEW ..... 3
1.3 QUESTION FORMATION ..... 3
1.4 QUESTION RESPONSES ..... 3
1.5 FORMATTING ..... 5

**2. EXAMPLE MEMO ..... 8~~7~~**

# 1. Introduction

## 1.1 Background

Our client is assisting an artificial intelligence company train its system to identify and distinguish quality legal cases without the need significant intervention from human end users.

We will formulate questions based upon Westlaw headnotes and provide sample responses in a pre-determined format. The questions and responses will subsequently be "processed" by a computer so proper formatting is of critical importance.

## 1.2 Order of Review

Topics will be assigned based upon the Westlaw key system. At the top level will be the Westlaw key topic e.g. 298 Perpetuities. Within each key will be individual keys and within each key will be a list of cases that each have headnotes. We will prepare a memo for every **unique** headnote that appears under a given Westlaw Key.

For example, for topic 298 Perpetuities, Key 2- "What law Governs" there are 42 cases with headnotes so we would prepare 42 memos.

**Never select a resource that is labelled as "Out of Plan".**

## 1.3 Question Formation

Initially questions are formulated based upon the Westlaw headnote. For example, the below headnote:

> **Headnote**: The common law rule against perpetuities is in force in Oregon.

Might lead to the question, "Is the common law rule against perpetuities in force?"

Once memo drafting beings, it is permissible to change the question to better suit the cases found but, **each question must be unique**.

Additional requirements for questions:

- Questions must not start with the word, "may"
- Questions must not be state specific (but answers can be state specific)
- Questions should be based upon headnotes but framed to be concise. If the question runs more than 2 lines it is probably too long.

## 1.4 Question Responses

For each question, we will provide quotes that respond to the question. Memos are being used to train a computer system rather than for actual legal research. Negative treatment of a case - whether distinguished or overturned - is not relevant. Overturned cases can still be quoted and the fact that it is overturned need not be mentioned. Please also note that question responses are judged by whether they contain the same keywords as the question. Synonyms for the keywords and responses that answer substantive issue but do not contain the same keywords are not consider acceptable substitutes for the actual keywords.

Quotes are classified in four ways, great, good, topical and irrelevant.

- Each memo will contain at least one "great" quote.
- Memos will also contain exactly one topical and one irrelevant quote
- Memos must contain 4- 6 quotes in total.
  - Never less than 4 and never more than 6.
  - 5-6 quotes is optimal.
- The entire paragraph should be copied into the memo but the actual quote should not be overly wordy. Try to be surgical; i**f your quote is more than two lines it is probably too long**
- Paragraphs should not be overly lengthy. If a paragraph runs more than 10 lines, it is too long and an alternate quote should be found.
- Great, Good and Topical quotes should be substantive rather than factual

**Comment [MS1]:** The rule of entire para had been revised by the client, and intimated to Clutch on Nov. 14, 2017.

**"Great" quote – Answers every aspect of the question using the same keywords.**
Question: "Are oil and gas leases executory contracts?"

Answer: "Any party to an 'executory contract,' such as a long-term supply contract or an oil and gas operating agreement, may similarly obtain from the debtor full performance plus additional ' assurance' as the quid pro quo for continued dealings." ) King v. Baer, 482 F.2d 552 (10th Cir.1973) (emphasis mine). **[[Other courts have considered an oil and gas lease a transfer of an interest in real property and therefore not an executory contract]]**."

**"Good" quote -** Should answer the most essential element of the question and contain all but one keyword

Question: "Does a person commit forgery by opening an account and signing checks in an assumed name?"

Answer: One cannot conclude that the defendant in this case committed forgery as defined in Susalla. There may have been a litany of offenses committed, but not forgery. The check given by defendant did not purport to be anything other than a personal check drawn by the person who presented it on an account that that person had opened. **[[The misrepresentation of identity to the bank in opening the account did not make the creation of a draft on that account a forgery when presented to pay for the television.]]** *See, Rapp v. State*, 274 So.2d 18 (Fla.App., 1973), *Smith v. State,* 379 S.W.2d 326 (Tex.Cr.App., 1964).

**"Topical" and "Irrelevant" quote.**

In addition to the 2-4 great or good answers (quotes) to each research question, we will need one "topical" quote and one "irrelevant" quote.

**"Topical" quote**
A topical quote is a quote that hits on limited aspects of the question, but does not answer any essential part of the question. Examples of good topical quotes are a definition of one of the key words or background of the law.

For example:

Question: 'Are oil and gas leases executory contracts?'

Answer: 'There are no published opinions construing this language. However, by its terms, the paragraph deals with interests of the debtor in 'gaseous hydrocarbons' and not contract rights like the ones involved here. **[[The legislative history of § 541(b)(4) indicates that it was enacted to address questions related to the transfer of rights in oil and gas leases.']]**

The easiest way to find topical cases is to look for cases within the case cited...as they are citing law. This will provide a foundation. And, by clicking on a case within one of your cited cases, you will save time.

- Touches on the elements of the question
- Does not answer the question
- May contain a limited component of the question
- Not necessary to have a key word of the question

**"Irrelevant" quote:**
An irrelevant quote has some keywords in it from the question but completely missed the mark. An easy way to find irrelevant quotes is to search a keyword, pick any case, and use a quote from the facts or body with the key word. This quote is not at all on topic and will likely only contain one essential word. The easiest way to locate a good irrelevant quote is to pick a key word from the question, search only that word in WestLaw/Lexis, find a case with that word in the facts with little to no other words from the question, bracket and bold the sentence with the word.

For example, if the question is **"[a]re oil and gas leases executory contracts?"** an answer may contain key words like **"olive oil"** or **"residential leases"** but nothing else relevant regarding the question.

The easiest way to locate a good irrelevant quote is to pick a key word from the question, search only that word in WestLaw, find a case with that word in the facts with little to no other words from the question, bracket and bold the sentence with the word.

An Irrelevant quote:
- One or two matching words with the question, but completely unrelated.
- Has key word but not within realm of the issue presented (example question on oil and gas lease, irrelevant quote about olive oil).

### 1.5 FORMATTING

Memos will be machine read which means that formatting is of critical importance. At the most basic level the memos must conform to the below:

- Single Spaced
- Left Justified
- Times New Roman, Font 12
- No italics
- Eliminate Special characters and other formatting issues (eliminate *,¶ , unusual spaces, footnotes, unwanted squiggly lines).
- No underlining

- Cases Sequentially Numbers (i.e. Case 1, Case 2, Case 3, etc)
- Check if Great, Good, Topical and Irrelevant are in order and properly titled.
- Check if the memo number in the file name is unique and that it matches the number in the body of the memo.

More broadly, the memos will conform to the following:

| Issue | **Description** |
|---|---|
| 1 | Draft questions following Creative Process.<br>• Questions must not start with the word, "may"<br>• Questions must not be state specific<br>• Questions should be based upon headnotes but framed to be concise. If the question runs more than 2 lines it is probably too long.<br>• Is the question grammatically correct? |
| 2 | Research questions using online resources and accounts.<br>**Only a basic case cite should be provided – No pin point or alternate cites**<br>Kirquel Dev., Ltd. v. Planning Bd. of Town of Cortlandt, 96 A.D.3d 754. |
| 3 | Memo title and number centered and bold.<br>**MEMORANDUM # 23** |
| 4 | Left justify the balance of the memo |
| 5 | Confirm the font and spacing of the memo is appropriate. Nothing should be italicized or underlined. |
| 7 | Does the memo number at the top of the memo match the number in the file name? |
| 8 | The Issue and the quotes must be in bold. No other text should be in bold. |
| 9 | Quotes are to be in double brackets, all punctuation inside of the brackets, and bold font. No highlighting. The end of the quote must include punctuation and cites should not be included in the quote UNLESS it is required in order to have the quote end with punctuation.<br>**[[This result would present due process concerns and is clearly not what the Legislature intended.]]** |
| 10 | All quotes must be identical to the one found in the case unless otherwise noted here, no stray words, missing punctuation, or carriage returns.<br>***Westlaw internal page numbers must be eliminated**. |
| 11 | Ensure bracket spacing is correct, before and after brackets, and bold font is limited to the bracketed quote. No highlighting. |
| 12 | Quotes should not all be from the same ruling or case. |
| 13 | Bracketed language must be a full sentence. Not just two words. |
| 14 | Label quotes as great (1-4), good (2-3), topical (1), and irrelevant (1) for a total of 4-6 quotes.<br>Case 4: Winston v. Freshwater Wetlands Appeals Bd., 254 A.D.2d 363.<br>Good Quote 1: text text text |
| 15 | GREAT –The bracketed language must answer question and must contain **all** the essential keywords of the question. Note: Synonyms are not considered the same key word |
| 16 | GOOD – The bracketed language must answer question and must contain **most** of the the essential keywords of the question. |
| 17 | TOPICAL – **foundation** quote, **background** information. |
| 18 | IRRELEVANT– has **no** reference or relevance but includes one key word from the |

**Comment [MS2]:** Identical in the way it appears in WL; do not use identical quotes (where all the quotes of the memo are identical).

| | |
|---|---|
| | question. |
| 19 | Memo saved in correct format – naming convention (Topic – Memo # - C (for clutch) - associate initials). When saving after review include your initials.<br>Venue – Memo # 23 – C - AA |
| 20 | Tracker Updated |
| 21 | Watch out for<br>1: Grammar – question, missing period<br>2: Format – bold, spacing, pagination<br>3: Great/Good – quote mislabelled<br>4: Topical – quote should not answer the question but should provide background knowledge<br>5: Irrelevant – quote is irrelevant |

## 2. EXAMPLE MEMO

**MEMORANDUM # 57**

**1. Question**
Is equitable relief a cause of action?

**2. Reference List**
**Issue: Is equitable relief a cause of action?**

Case 1: Hendrix v. Napolitano, 77 F. Supp. 3d 188.
Great Quote 1: Mr. Hendrix asserts a claim for equitable relief in Count V. **[[Equitable relief, however, is a form of relief and not a cause of action.]]** Since the Court grants the motion for summary judgment as to Count IV, there is no cause of action in this matter upon which it could grant any equitable relief. The Court, therefore, dismisses Count V for failure to state a claim upon which relief can be granted.

Case 2: Eisenberg v. City of Miami Beach, 1 F. Supp. 3d 1327.
Great Quote 1: **[[The equitable relief Plaintiffs seek is a remedy, not a separate cause of action.]]** See Perret v. Wyndham Vacation Resorts, Inc., 889 F.Supp.2d 1333, 1346 (S.D.Fla.2012) (dismissing count pleading injunctive and declaratory relief for failure to state a separate cause of action); Tara Prods., Inc. v. Hollywood Gadgets, Inc., No. 09–CV–61436, 2010 WL 1531489, at (S.D.Fla. Apr. 16, 2010) (dismissing count pleading remedy of equitable lien for failure to state separate cause of action); see also Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1127 (11th Cir.2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action ... There is no such thing as a suit for a traditional injunction in the abstract.") (internal quotation marks and citation omitted). Moreover, "[A] court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are already before the court." Perret, 889 F.Supp.2d at 1346 (citation omitted). Plaintiffs already seek equitable relief in the other counts of the Complaint. Accordingly, Count VII is dismissed.

Case 3: Crown Const. Co. v. Huddleston, 961 S.W.2d 552.
Topical Quote 1: In this case, the evidence, other than whether the notice was taped to Huddleston's door on June 2, 1996, is undisputed. Crown acknowledges that it was aware, prior to June 2, 1996, that the option expired on that date. It also acknowledges that after it allegedly taped the notice to Huddleston's office door, it did not attempt to contact Huddleston again until June 12, 1996. Then, on June 12, 1996, Crown delivered notice in writing to Huddleston's agent. Crown never confirmed receipt of the June 2 notice. **[[In the face of undisputed facts, the propriety of equitable relief is a question of law for the court, subject to an abuse of discretion standard of review on appeal. Fontenot, 919 S.W.2d at 715.]]** Because the facts surrounding Crown's equitable argument are undisputed, Crown's third point of error alleging that a fact issue exists regarding whether equity should be applied in this case is overruled. We must now consider, whether the trial court erred in finding that Crown was not entitled to equitable relief as a matter of law.

Case 4: Beard v. Glickman, 189 F. Supp. 2d 994.
Irrelevant Quote 1: In their Reply, the Beards argue that if we accept Defendant's interpretation, the Agency can completely undermine an appellant's right to appeal a denial of equitable relief by simply failing to recommend such relief to the Administrator. We disagree.
**[[There can only be a denial of equitable relief if the party in question has the authority to**

**actually grant equitable relief.]]** Under the construction of the relevant statutes and regulations, only certain Administrators within the FSA (the head Administrator, Associate Administrator and Deputy Administrator) and the Director of the NAD, as well as, of course, the Secretary of Agriculture, have the authority to grant equitable relief. Thus there could be no denial of equitable relief appealed to the NAD Director in cases where, as here, the appellants chose to bypass the intermediate options of Agency review before appealing directly to the NAD. Therefore, accepting Defendant's interpretation does not undermine an appellant's right to appeal a denial of equitable relief.

**-- End of Document --**

# EXHIBIT 13

-Determining number of possible memos from any single Westlaw Key Number. Here we are taking Key Number 181-Forgery.

-First, look at all the topics available under 181-Forgery




-This will give you the baseline. For example, under Forgery, you have 19 Main Topics.

-Second, when you click on each Topic you'll get a number of unique headnotes under each Topic. In the example below, when clicking on "Nature of Offense In General" you get 293 unique headnotes. Each of these 293 can be used to create a memo, so total of 293 memos from this Topic alone.




-Third, you can also expand certain Topics to get Subtopics. For example see the Topic "Elements of Offenses" It has a plus sign next to it which indicates additional subtopics. In this example, there are 11 additional subtopics under "Elements

of offenses". When you click on each of these subtopics, you will get total number of unique headnotes under each of these subtopics.

2 Statutory provisions
Collapse 3 Elements of offenses
3 Elements of offenses 3 Elements of offenses

- 4 —In general 4 —In general
- 5 —Intent 5 —Intent
- 6 —Want of authority 6 —Want of authority
- Expand 7 —Nature of instrument
  7 —Nature of instrument 7 —Nature of instrument
- 8 —Name or signature used 8 —Name or signature used
- 9 —Making false instrument or signature 9 —Making false instrument or signature
- 10 —Alteration or destruction of instrument 10 —Alteration or destruction of instrument
- 11 —Similitude of false instrument or signature to genuine 11 —Similitude of false instrument or signature to genuine
- Expand 12 —Apparent legal efficacy or operation of instrument
  12 —Apparent legal efficacy or operation of instrument 12 —Apparent legal efficacy or operation of instrument
- 13 —Fraudulent use of instrument 13 —Fraudulent use of instrument
- 14 —Injury from forgery 14 —Injury from forgery

15 False entries or records, and alteration of entries or records 15 False entries or records, and alteration of entries or records

-For example, under the sub subtopic "In general" you find 325 unique headnotes. 325 memos can be drafted within this subtopic.

ome > West Key Number System > 181 FORGERY > 3 Elements of offenses

4 —In general (325)

**-When we run through the above process for Key Note 181-Forgery we find that there are a total of 51 Topics and Subtopics under Forgery. Within each of these Topics and Subtopics, there will be hundreds of unique headnotes available under each.**

1 Nature of offense in general
2 Statutory provisions 2 Statutory provisions
Collapse 3 Elements of offenses
3 Elements of offenses 3 Elements of offenses

- 4 —In general 4 —In general
- 5 —Intent 5 —Intent
- 6 —Want of authority 6 —Want of authority
- Expand 7 —Nature of instrument
  7 —Nature of instrument 7 —Nature of instrument
- 8 —Name or signature used 8 —Name or signature used
- 9 —Making false instrument or signature 9 —Making false instrument or signature
- 10 —Alteration or destruction of instrument 10 —Alteration or destruction of instrument
- 11 —Similitude of false instrument or signature to genuine 11 —Similitude of false instrument or signature to genuine
- Expand 12 —Apparent legal efficacy or operation of instrument
  12 —Apparent legal efficacy or operation of instrument 12 —Apparent legal efficacy or operation of instrument
- 13 —Fraudulent use of instrument 13 —Fraudulent use of instrument
- 14 —Injury from forgery 14 —Injury from forgery

15 False entries or records, and alteration of entries or records 15 False entries or records, and alteration of entries or records
16 Uttering or publishing forged instrument 16 Uttering or publishing forged instrument
17 Possession of forged instrument or of means of forgery 17 Possession of forged instrument or of means of forgery
18 Degrees 18 Degrees
19 Attempts 19 Attempts
20 Defenses 20 Defenses
21 Persons liable 21 Persons liable
22 Jurisdiction 22 Jurisdiction

23 Venue 23 Venue
24 Preliminary proceedings in prosecution 24 Preliminary proceedings in prosecution
Collapse 25 Indictment or information
25 Indictment or information 25 Indictment or information

- 26 —In general 26 —In general
- 27 —Intent 27 —Intent
- Expand 28 —Description of or setting forth instrument
  28 —Description of or setting forth instrument 28 —Description of or setting forth instrument
- Expand 29 —Facts extrinsic to instrument in general
  29 —Facts extrinsic to instrument in general 29 —Facts extrinsic to instrument in general
- 30 —Making or alteration of instrument 30 —Making or alteration of instrument
- 31 —Falsification of entries or records 31 —Falsification of entries or records
- 32 —Uttering or publishing forged instrument 32 —Uttering or publishing forged instrument
- 33 —Possession of forged instrument or of means of forgery 33 —Possession of forged instrument or of means of forgery
- Expand 34 —Issues, proof, and variance
  34 —Issues, proof, and variance 34 —Issues, proof, and variance

35 Presumptions and burden of proof 35 Presumptions and burden of proof
Collapse 36 Admissibility of evidence
36 Admissibility of evidence 36 Admissibility of evidence

- 37 —In general 37 —In general
- 38 —Intent and knowledge 38 —Intent and knowledge
- 39 —Making or alteration of instrument, signature, or entry 39 —Making or alteration of instrument, signature, or entry
- 40 —Uttering or publishing forged instrument 40 —Uttering or publishing forged instrument
- 41 —Possession of forged instrument or of means of forgery 41 —Possession of forged instrument or of means of forgery
- 42 —Incriminating circumstances 42 —Incriminating circumstances
- 43 —Matters of defense 43 —Matters of defense

Collapse 44 Weight and sufficiency of evidence
44 Weight and sufficiency of evidence 44 Weight and sufficiency of evidence

- (.5) In general(.5) In general
- (1) Fraudulent intent and knowledge(1) Fraudulent intent and knowledge

- **(2)** Making false instrument or signature and forged character of paper**(2)** Making false instrument or signature and forged character of paper
- **(3)** Uttering false instrument and alteration of instrument**(3)** Uttering false instrument and alteration of instrument

**Collapse 45 Trial**
**45 Trial 45 Trial**

- **46** —In general **46** —In general
- **47** —Questions for jury **47** —Questions for jury
- **48** —Instructions **48** —Instructions
- **49** —Verdict **49** —Verdict

**51 Sentence and punishment 51 Sentence and punishment**

**-By simply clicking on each Topic or Subtopic, you will get a number of unique headnotes. That number will equal the number of memos you can create from each Topic/Subtopic. In the example below there are 154 unique headnotes under the Topic of "False Entries"**

Home > West Key Number System > 181 FORGERY

15 False entries or records, and alteration of entries or records (154)

# EXHIBIT 14

Message

**From:** Teri Whitehead [teri.whitehead@legaleasesolutions.com]
**Sent:** 10/24/2017 3:21:15 PM
**To:** Saloni Agara Dwarakanath [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=00cbe0b2d8054d1ea9f80794031d4c0e-saloni.dwar]
**CC:** Merin Sony [merin.sony@legaleasesolutions.com]; Tariq Hafeez [tariq.hafeez@legaleasesolutions.com]; Tariq Akbar [tariq.akbar@legaleasesolutions.com]; Gayathri Rajeev [gayathri.rajeev@legaleasesolutions.com]
**Subject:** Good / Great Quotes

[redacted]

NOTICE OF CONFIDENTIALITY - THIS MESSAGE IS INTENDED ONLY FOR THE ADDRESSEES. It may contain privileged, confidential or proprietary information. Any unauthorized disclosure, use, copying or distribution of the contents of this message or the taking of any action on the contents of this message is strictly prohibited. If you received this electronic mail transmission in error, please promptly notify the sender LegalEase Solutions LLC at +1 (734) 619-6302 and delete the original and all copies from your system. NOTICE OF NO ATTORNEY-CLIENT PRIVILEGE - LegalEase Solutions LLC("LegalEase") provides legal support service exclusively to licensed United States, and Canadian attorneys. All services provided by LegalEase are restricted to licensed United States and/or Canadian attorneys and are not meant for use by non-attorneys. By submitting a project to LegalEase, you ("Client") represent the following: that you are a licensed United States or Canadian attorney, qualified and fit to practice law in one of the 50 states of the United States, or provinces and territories of Canada respectively; that you will independently exercise your professional judgment in reviewing any legal products or services provided to you by LegalEase; that no attorney-client privilege is formed between

you and LegalEase; that you are in no way delegating your obligations and duties as a licensed attorney to LegalEase, and that you fully understand that LegalEase is not engaged in the practice of law, legal representation, or rendering legal advice.

# EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

---

THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,

Plaintiffs,

vs. C.A. NO. 20-613-LPS

ROSS INTELLIGENCE INC.,

Defendant.

---

VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

ISABELLE MOULINIER, 30(b)(6) REPRESENTATIVE FOR

THOMSON REUTERS ENTERPRISE CENTRE GMBH

HIGHLY CONFIDENTIAL

DATE: July 1, 2022

TIME: 9:07 a.m.

PLACE: 150 South Fifth Street, Suite 1775
Minneapolis, MN 55402

JOB NO.: SF 5264242

REPORTED BY: Dawn Workman Bounds, CSR

A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS and WITNESS:

JOSHUA SIMMONS, ESQUIRE
ROMA LOPES, ESQUIRE
Kirkland & Ellis
601 Lexington Avenue
New York, NY 10022
212.446.4800
joshua.simmons@kirkland.com
roma.lopes@kirkland.com

ON BEHALF OF DEFENDANT:

GABRIEL M. RAMSEY, ESQUIRE
KEVIN CACABELOS, ESQUIRE
Crowell & Moring LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
415.986.2800
gramsey@crowell.com
kcacabelos@crowell.com

ALSO PRESENT:

BRIAN CICCONE, VIDEOGRAPHER

I N D E X

WITNESS: ISABELLE MOULINIER PAGE
EXAMINATION BY MR. RAMSEY.......................... 5
EXAMINATION BY MR. SIMMONS......................... 143
EXHIBITS MARKED/REFERRED TO
Exhibit 1 Defendant Ross Intelligence Inc.'s Amended Notice of 30(b)(6) Deposition to Plaintiff Thomson Reuters Enterprise Centre GMBH................................ 6

Exhibit 2 Master Thesis "Explaining Relationships Between Entities"......................... 87
Exhibit 3 Dynamic_System_Overview.pdf................ 109

TIME ON THE RECORD:
Mr. Ramsey - 3 hours, 8 minutes
Mr. Simmons - 1 minute

P R O C E E D I N G S

THE VIDEOGRAPHER: Good morning. We are going on the record at 9:07 a.m. Central Daylight Time on July 1, 2022. This is Media Unit Number 1 of the video-recorded deposition of Isabelle Moulinier, taken by counsel for defendant in the matter of Thomson Reuters Enterprise, et al. versus Ross Intelligence Inc., filed in the United States District Court for the District of Delaware, Case Number 20-613-LPS.

This deposition is being taken in Minneapolis, Minnesota. My name is Brian Ciccone representing Veritext Legal Solutions, and I am the videographer. The court reporter is Dawn Bounds also from Veritext Legal Solutions.

Will the attorneys please note their appearances for the record.

MR. RAMSEY: This is Gabriel Ramsey joined by my colleague Kevin Cacabelos of Crowell & Moring. We represent the Defendant Ross Intelligence.

MR. SIMMONS: I am Joshua Simmons. With me is Roma Lopes. We're from Kirkland & Ellis, and we represent the Plaintiffs as well as the witness.

THE VIDEOGRAPHER: Thank you.

Will the court reporter please swear in the witness.

(Witness sworn.)

THE VIDEOGRAPHER: You may proceed.

ISABELLE MOULINIER,

having been first duly sworn, testified as follows:

EXAMINATION

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

REPORTER'S CERTIFICATE

STATE OF MINNESOTA )
) ss.
COUNTY OF HENNEPIN )

I hereby certify that I reported the deposition of ISABELLE MOULINIER, 30(b)(6) REPRESENTATIVE FOR THOMSON REUTERS ENTERPRISE CENTRE GMBH, on the 1st day ofJuly, 2022, in Minneapolis, Minnesota, and that the witness was by me first duly sworn to tell the whole truth;

That the testimony was transcribed by me and is a true record of the testimony of the witness;

That the cost of the original has been charged to the party who noticed the deposition, and that all parties who ordered copies have been charged at the same rate for such copies;

That I am not a relative or employee or attorney or counsel of any of the parties, or a relative or employee of such attorney or counsel;

That I am not financially interested in the action and have no contract with the parties, attorneys, or persons with an interest in the action that affects or has a substantial tendency to affect my impartiality;

That the right to read and sign the deposition by the witness was not waived.

WITNESS MY HAND AND SEAL THIS 20th day of July, 2022.



Dawn Workman Bounds, CSR 6129
Notary Public, Hennepin County, Minnesota
My commission expires January 31, 2024

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION,

Plaintiffs, Counterdefendants,

v.

ROSS INTELLIGENCE INC.,

Defendant, Counterclaimant.

C.A. No. 20-613-SB

**PLAINTIFFS THOMSON REUTERS ENTERPRISE CENTER GMBH AND WEST PUBLISHING CORPORATION'S NOTICE OF ERRATA FOR THE DEPOSITION OF ISABELLE MOULINIER**

I, the undersigned, do hereby declare that I read the deposition transcript of Isabelle Moulinier dated July 1, 2022 and that to the best of my knowledge, said testimony is true and accurate, with the exception of the following changes listed below:

| Page | Line | Original Text | Replacement Text | Reason |
|---|---|---|---|---|
| 8 | 10 | other hand per the e-mail address. | other hand per the e-mail we sent. | Transcription error |
| 15 | 9 | different types of contents. | different types of content. | Transcription error |
| 16 | 11 | for the full text of the opinion | and the full text of the opinion | Transcription error |
| 18 | 2 | different types of questions that might enter. | different types of questions that might be entered. | Transcription error |
| 19 | 4-5 | WIN is natural -- WIN queries. West Is Natural type of... | WIN, Westlaw is natural, queries. | Transcription error |
| 22 | 14 | first-year search results | first layer search results | Transcription error |
| 22 | 18-19 | a feature called WIN Is Natural, | a feature called WIN, Westlaw Is Natural, | Transcription error |

| Page | Line | Original Text | Replacement Text | Reason |
|---|---|---|---|---|
| 24 | 13-14 | as well as our results that we get | as well as other results that we get | Transcription error |
| 25 | 4 | which is not related to WestSearch | which is not related to WestSearch Plus | Misspoke/clarification |
| 28 | 13 | and why my team | and while my team | Transcription error |
| 35 | 3 | In general term, yes | In general terms, yes | Transcription error |
| 36 | 1 | popular name | popular names | Transcription error |
| 36 | 18 | it's not our type that we want | it's not the type that we want | Transcription error |
| 39 | 4 | as a set of roles | as a set of rules | Transcription error |
| 39 | 18 | a case title, AVB | a case title, A v. B | Transcription error |
| 39 | 19-20 | AVBC, and AVBC is not a | A v. B C, and A v. B C is not a | Transcription error |
| 39 | 22 | AVB, but also | A v. B, but also | Transcription error |
| 41 | 12 | The way we define | The way we defined | Transcription error |
| 42 | 3 | in Thomson Reuters when | at Thomson Reuters when | Transcription error |
| 47 | 13 | the computer program, in a sense; | the computer programming sense; | Transcription error |
| 49 | 13-14 | headnotes, which on the display appear at the top of the page are | headnotes, which on the display appear at the top of the page, are | Transcription error |
| 52 | 6 | this result in addition to | these results in addition to | Transcription error |
| 53 | 5-6 | There may be one too many key number per headnote. | There may be one to many key numbers per headnote. | Transcription error |
| 55 | 6 | We have a site store | We have a side store | Transcription error |
| 55 | 7 | with headnote as the key numbers | with headnotes and the key numbers | Transcription error |
| 58 | 2 | of candidate | of candidates | Transcription error |
| 58 | 13 | find by citation. | found by citation. | Transcription error |
| 58 | 20 | other candidate | other candidates | Transcription error |
| 59 | 19 | and application truncates | and the application truncates | Transcription error |
| 60 | 20 | a fixed formula like WIN-add for | a fixed formula like WIN had for | Transcription error |
| 60 | 23 | that we judge top key numbers | that we judge to be the top key numbers | Transcription error/misspoke |
| 61 | 17 | algorithm | algorithms | Transcription error |
| 61 | 20 | not the measuring algorithm | not the learning algorithm | Transcription error |

| Page | Line | Original Text | Replacement Text | Reason |
|---|---|---|---|---|
| 63 | 6 | That's the one that was one algorithm | That's the one – that was one algorithm | Transcription error |
| 69 | 13-14 | combination of entity | combination of entities | Transcription error |
| 71 | 12 | that are relating to | that relate to | Transcription error |
| 73 | 19-21 | We had a team of product managers who work on Westlaw as well as contractors I believe identify legal topic | We had a team of product managers who work on Westlaw, as well as contractors, I believe, identify legal topic | Punctuation |
| 74 | 1 | returned as those are very responsive documents. Those | returned as: those are very responsive documents; those | Punctuation |
| 74 | 6-9 | and we add a general topic as well as a smaller version of the topic. We add a list of documents that add grade. We also add a list of key numbers that add grade | and we had a general topic as well as a smaller version of the topic. We had a list of documents that had grades. We also had a list of key numbers that had grades | Transcription error |
| 76 | 6 | with customers had | with customers, had | Transcription error |
| 77 | 2 | focused on opinion | focused on opinions | Transcription error |
| 77 | 14 | Edge apart from WestSearch is Westlaw Next | Edge apart from WestSearch Plus is Westlaw Next | Misspoke/clarification |
| 78 | 16-17 | have a new version of the feature either this year for release or trains at the end of last year | have a new version of the feature trained either this year for release or at the end of last year | Missoke/clarification |
| 79 | 14 | assembled by SME; | assembled by SMEs; | Transcription error |
| 81 | 12 | add features based | had features based | Transcription error |
| 82 | 12 | example's | examples | Transcription error |
| 83 | 1 | SVM's | SVMs and | Transcription error/clarification |
| 83 | 4 | and feature value | and feature values | Transcription error |
| 83 | 15 | I add a document | I had a document | Transcription error |
| 84 | 6 | values with the weights | values with weights | Transcription error |
| 84 | 20 | machinery | machine learning | Transcription error |
| 91 | 6 | people name | names of people | Clarification |

| Page | Line | Original Text | Replacement Text | Reason |
|---|---|---|---|---|
| 93 | 17-18 | by the algorithm by the solution builder or the scientist | by the algorithm, by the solution builder, or the scientist | Punctuation |
| 93 | 22 | have the property of being able to end all categorical | have the property of being able to handle categorical | Transcription error |
| 94 | 16 | on a document or a documents-only | and documents | Transcription error |
| 97 | 1 | at least headnote data | at least on headnote data | Transcription error |
| 98 | 18 | vectoral | vectorial | Transcription error |
| 99 | 24 | machining | maching learning | Transcription error |
| 105 | 1 | acquiring and refine the data and that data is fit | acquiring and refining the data to be fit | Transcription error/misspoke |
| 106 | 13-14 | not 10 thousands | not tens of thousands | Transcription error |
| 108 | 24 | 10 thousand | tens of thousands | Transcription error |
| 116 | 19 | Only of name | Only by name | Transcription error |
| 116 | 20 | IBM Community Services | IBM API Services | Misspoke/clarification |
| 119 | 5-7 | identifying phrases and synonyms potentially or related term and run against the indices | identifying phrases, and synonyms potentially, or related terms, and running them against the indices | Transcription error |
| 119 | 22 | documents that's | document that is | Transcription error |
| 120 | 2 | more likely | more like this | Transcription error |
| 120 | 21 | more likely search | more like this search | Transcription error |
| 123 | 14 | expended list | expanded list | Transcription error |
| 125 | 24-25 | text presumption and burden of proof | text "presumption and burden of proof " | Transcription error |
| 127 | 6 | function compare | function compares | Transcription error |
| 130 | 14 | organize | organizes | Transcription error |
| 130 | 18 | first tool that people can go to a manual search engine | first tool that people can go to, a manual search engine, | Punctuation |
| 132 | 2 | the tech nodes | the top nodes | Transcription error |
| 136 | 8 | product trace | product release | Transcription error |
| 138 | 21 | viables | variables | Transcription error |

Dated: August 19, 2022

I. Moulinier

Isabelle Moulinier

# EXHIBIT 16

# How is Natural Language Search Changing The Face of Legal Research?

**By Stergios Anastasiadis - April 8, 2019 - Legal Research**

In order to understand how ROSS's A.I. is changing legal research, it's important to understand machine learning, natural language processing, and other A.I. basics. From that basis, we can more meaningfully discuss how those systems are being deployed to improve legal research. In this post, we're going to discuss the fundamentals of natural language search and how it improves legal queries and legal search results in ROSS.

ROSS's natural language processing (NLP) allows lawyers to phrase their research queries the way they would phrase a question to a colleague. Having a system that understands and can leverage the semantic and syntactic context of your query will improve your legal research questions and search results.

A query optimized with the help of NLP will surface the most accurate and relevant decisions because the system was assessed with the prior queries that yielded the best legal search results. Since the system has analyzed all relevant case law, assistance from optimized queries will deliver high recall (the percentage of relevant decisions returned ) and high precision (the percentage of total decisions returned that are relevant).

The four areas that drive NLP are speech recognition, understanding, generation, and speech synthesis.

- Natural language understanding (NLU) is narrower in purpose than NLP, focusing primarily on machine reading comprehension: getting the computer to comprehend what a body of text really means. After all, if a machine cannot comprehend the content, it cannot process it.
- Natural language generation (NLG) is another subset of NLP. NLG turns data into narratives and reports expressed in easy-to-read language.
- Speech Recognition (SR) understands or transcribes spoken language
- and Speech Synthesis (SS) into easy-to-read narratives and reports.

The system allows NLP queries to be typed into a search engine, spoken aloud with voice search or posed as a question to a digital assistant. The goal is to make interactions feel exactly like interactions among humans.

A great overview can be found in this Medium article, "Chapter 9: Natural Language Processing" by Madhu Sanjeevi. The article provides a good understanding of the moving parts without getting bogged down in technical details.

Now let's dig into how ROSS makes this happen.

The complex world of Language, Linguistics, Terms, Expansions and Simplifications is outlined nicely by Jocelyn D'Souza in a great 3

minute read: "A dive into Natural Language Processing".

The lawyer enters a query to find relevant cases. The NLP system interprets the query and "matches" it with legal text.

As you type, your query is processed instantly on three levels:

- Syntax – understanding the grammar of the text
- Semantics – understanding the meaning of the text
- Pragmatics – understanding the context of the text

In milliseconds, the system undertakes the three-level processing and it assesses:

1. **Language representations**: representing the meaning of words at the word, phrase, sentence, and passage level. This potentially makes matching a lot easier.
2. **Linguistic features**: alternatives are used to help with query complexity. A "major" category is noun vs. verb, but also person and number, plurality, tense.
3. **Term suggestions**: legal term suggestions specifically help users write better queries that incorporate legal context.
4. **Expansions**: query expansion provides alternate queries to users based on a global analysis, using some form of thesaurus. This can be combined with legal term suggestions.
5. and **Simplifications**: gives users feedback on their queries that attempt to eliminate complexity.

ROSS is including 1,2,4 and 5 with "Term suggestions" coming soon. "Expansion" will be treated using the same model as with "Term suggestions" but automated on behalf of the user.

A simple overview of the way Google applies this thinking to its search can be found in the "Google Inside Search" blog.

Before you hit **"Ask the Question?"** button it's also helpful to understand how data is stored and retrieved.

The system contains millions of legal decisions and hundreds of millions of passages that have already been processed by machine learning algorithms. The ingestion of legal data happens daily. The algorithms are trained against a corpus of queries and legal decisions. Once the algorithms meet acceptable statistical thresholds, they are then let loose to perform searches against the millions of decisions and hundreds of millions of passages.

These algorithms are usually referred to as ranking and retrieval algorithms. In the example below all the lightly colored boxes assemble the graph used to narrow down from your query to nodes displayed in the answer cards at the bottom of the illustration. They are fast, accurate and reliable algorithms.

As the tree is traversed, the query is used on each node to create a score, making its way down to the leaf nodes. Each leaf node gets a final score, thus completing the ranking process. The system then returns the top leaf nodes based on their final score. This is called retrieval.

Now hit the **"Ask the Question?"** button. The query is submitted and voila, the ranking and retrieval algorithms do their magic by analyzing decisions and other data in milliseconds.

It's an enormous win when lawyers can use their familiar speaking or writing muscles to retrieve authoritative decisions quickly, comprehensively, and accurately. When NLP is done right, it's a powerful tool for legal research.

**Stergios Anastasiadis**

Stergios is the Head of Engineering at ROSS. 25 years in the tech industry, angel investor and wants to make the tech startup community a continued success.

## Popular Articles

ROSS

ROSS



ROSS NEWS

**Enough.**

ROSS NEWS

**Announcement**



AI AND THE LAW

**ROSS partners with OpenAI for the launch of its API**

ROSS is working with OpenAI to refine their first commercial product. What does that mean for AI and legal tech?

ROSS

Twitter

Facebook

LinkedIn

© ROSS Intelligence, Inc. 2014–2020

**Company**

About Us

Careers

Terms of Service

Privacy Policy

**Product**

Features

Coverage

Pricing

Academic Access

Why ROSS

What is AI

**Resources**

Contact Us

FAQ + Support

Blog

Made in Webflow