## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

## ROSS INTELLIGENCE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ITS AFFIRMATIVE DEFENSE OF FAIR USE

OF COUNSEL:

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Keith J. Harrison
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

Dated: November 13, 2024
11879244 / 20516.00001
Public Version Dated: November 18, 2024

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.      ROSS'S USE WAS TRANSFORMATIVE—FACTOR ONE FAVORS
        ROSS ............................................................................................................ 3

        A.      The "Same General Purpose" Argument Was Rejected in *Google
                LLC* ................................................................................................. 3

        B.      Plaintiffs' Commercialism and Bad Faith Arguments Have Also
                Been Rejected .................................................................................. 4

        C.      Plaintiffs' Cases Do Not Counsel a Different Result ....................... 5

        D.      The Undisputed Facts and Cases Support ROSS's Factor One
                Argument .......................................................................................... 7

II.     PLAINTIFFS HAVE ONLY A THIN COPYRIGHT—FACTOR TWO
        FAVORS ROSS .......................................................................................... 10

III.    ROSS TOOK A TINY PERCENTAGE OF PLAINTIFFS'
        COPYRIGHT—FACTOR THREE FAVORS ROSS .................................. 16

IV.     ROSS IS NOT A SUBSTITUTE FOR WESTLAW—FACTOR FOUR
        FAVORS ROSS .......................................................................................... 19

CONCLUSION ...................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfred Bell & Co. v. Catalda Fine Arts, Inc.*,
    191 F.2d 99 (2d Cir. 1951)...........................................................................13

*Allegrini v. De Angelis*,
    59 F. Supp. 248 (E.D. Pa. 1944), *aff'd*, 149 F.2d 815 (3d Cir. 1945)....................................13

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
    11 F.4th 26 (2d Cir. 2021), *aff'd sub nom. Andy Warhol Found. for the Visual
    Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023).........................................................10

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
    598 U.S. 508 (2023)..................................................................................5, 6, 10

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
    350 F.3d 640 (7th Cir. 2003) ........................................................................22

*Authors Guild, Inc. v. HathiTrust*,
    755 F.3d 87 (2d Cir. 2014)........................................................................10, 20

*Authors Guild v. Google, Inc.*,
    804 F.3d 202 (2d Cir. 2015)........................................................................10, 20

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006)........................................................................9, 11

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006)...........................................................................9

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994).................................................................................4, 5

*Cariou v. Prince*,
    714 F.3d 694 (2d. Cir. 2013)........................................................................10

*Castle Rock Ent., Inc. v. Carol Publ'g Grp.*,
    150 F.3d 132 (2d Cir. 1998)........................................................................19

*Dunn & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*,
    307 F.3d 197 (3d Cir. 2002)........................................................................12

*Enter. Mgmt. Ltd. v. Warrick*,
    717 F.3d 1112 (10th Cir. 2019) ....................................................................13

*FameFlynet, Inc. v. Jasmine Ent., Inc.*,
    344 F. Supp. 3d 906 (N.D. Ill. 2018) ...................................................................21

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
    499 U.S. 340 (1991) ...................................................................12, 15, 21

*FMC Corp. v. Control Sols., Inc.*,
    369 F.Supp. 2d 539 (E.D. Pa. 2005) ...................................................13, 14, 15

*Fox News Network, LLC v. TVEves, Inc.*,
    883 F.3d 169 ........................................................................... 13-14

*Google LLC v. Oracle Am. Inc.*,
    593 U.S. 1 (2021).................................................................... *passim*

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985)................................................................. *passim*

*Harris v. Winfrey*,
    2011 WL 1003807 (E.D. Pa. Mar. 18, 2011) ...........................................12

*Intervest Constr., Inc. v. Canterbury Est. Homes, Inc.*,
    554 F.3d 914 (11th Cir. 2008) ...........................................................13

*Kienitz v. Sconnie Nation LLC*,
    766 F.3d 756 (7th Cir. 2014) .............................................................10

*L.A. Times v. Free Republic*,
    2000 WL 565200 (C.D. Cal. Apr. 4, 2000) .............................................15

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2007) .............................................................14

*Los Angeles News Serv. v. KCAL-TV Channel 9*,
    108 F.3d 1119 (9th Cir. 1997) .............................................................5

*Love v. Kwitny*,
    706 F. Supp. 1123 (S.D.N.Y. 1989)...................................................13, 14

*Mattel, Inc. v. MGA Ent., Inc.*,
    616 F.3d 904 (9th Cir. 2010) .............................................................12

*Matthew Bender & Co. v. West Publ'g Co.*,
    158 F.3d 674 (2d Cir. 1998)...........................................................11, 19

*Mittel, Inc. v. Iqtel, Inc.*
    124 F.3d 1366 (10th Cir. 1997) ..........................................................12

*Monge v. Maya Mags., Inc.*,
    688 F.3d 1164 (9th Cir. 2012) ................................................................19

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295 (3d Cir. 2011) ....................................................................4

*NXIVM Corp. v. Ross Inst.*,
    364 F.3d 471 (2d Cir. 2004) ...............................................................5, 18

*Oasis Publ'g Co., Inc. v. W. Publ'g Co.*,
    924 F. Supp. 918 (D. Minn. 1996) .......................................................6, 7

*Pac. & S. Co., Inc. v. Duncan*,
    744 F.2d 1490 (11th Cir. 1984) ...............................................................4

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992) ....................................................................4

*Salinger v. Random House, Inc.*,
    811 F.2d 90 (2d Cir. 1987) ....................................................................22

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) .................................................................12

*Schrock v. Learning Curve Int'l, Inc.*,
    586 F.3d 513 (7th Cir. 2009) .................................................................13

*Sega Enters. Ltd. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992) ...................................................... *passim*

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) ............................................................ 9-10

*Soc'y of Holy Transfiguration Monestary, Inc. v. Gregory*,
    689 F.3d 29 (1st Cir. 2012) ...................................................................19

*Sony Comput. Ent., Inc. v. Connectix Corp.*,
    203 F.3d 596 (9th Cir. 2000) ........................................................ *passim*

*Sundeman v. Seajay Soc'y, Inc.*,
    142 F.3d 194 (4th Cir. 1998) .................................................................21

*TD Bank, N.A. v. Hill*,
    2015 WL 4523570 (D.N.J. July 27, 2014) .........................................13, 14

*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*,
    342 F.3d 191 (3d Cir. 2003) .................................................................6, 7

*Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't,*
    447 F.3d 769 (9th Cir. 2006) ...........................................................................5, 6, 16

*Warhol*, *Hachette Book Grp., Inc. v. Internet Archive*,
    115 F.4th 163 (2d Cir. 2024) ........................................................................5, 6, 10, 15

*West Pub. Co. v. Mead Data Cent., Inc.*,
    799 F.2d 1219 (8th Cir. 1986) ..............................................................................12

*West Publ'g Co. v. Mead Data Cent., Inc.*,
    616 F. Supp. 1571 (D. Minn. 1985)....................................................................4, 12

*White v. W. Publ'g Corp.*,
    29 F. Supp. 3d 396 (S.D.N.Y. 2014)....................................................................10

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000) ...............................................................................5, 6

**Other Authorities**

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08[A] (rev.
    ed. 2024) ...............................................................................................................20

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13F.06 (rev. ed.
    2024) ...........................................................................................................11, 12, 14

4 Melville B. Nimmer & David Nimmer *Nimmer on Copyright* § 13F.07 (rev. ed.
    2024) ......................................................................................................................17

## INTRODUCTION

Based on undisputed facts and dispositive legal precedent, ROSS's transformational[1] acts are protected by fair use. ROSS created an innovative way to search the text of judicial opinions. Rather than rely on Boolean search terms or intermediating a natural language search through human-edited work, ROSS used artificial intelligence ("AI") to answer natural language queries directly with language from judicial opinions. In doing so, ROSS's goal was to make legal research cheaper and more accessible. Plaintiffs try to confuse the issues; however, their legal and factual characterizations of what ROSS did are incorrect. The uncontested material facts combined with controlling Supreme Court precedent prove that ROSS's use of any copyrighted material was transformative fair use. This Court should grant ROSS's Motion for Summary Judgment.

By Plaintiffs' own reckoning, to train its search function, ROSS took at most a very small percentage of any copyrighted material on Westlaw. The copyrighted material ROSS did take was discrete portions in a search for judicial opinions. As arranged, those opinions exist in a compilation. Even if the headnotes are treated as short creative works, they are still minimally creative. They are recitations of the holdings of cases, frequently showing only trivial variation from the language of the unprotected judicial opinions themselves.

Regardless, even if Plaintiffs' copyright were something more[2], what ROSS did was so

---

[1] "Transform" means "*to change completely the appearance or character of something or someone, especially so that that thing or person is improved. See transform*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/transform (last visited Nov. 12, 2024).

[2] ROSS demonstrated in its Opposition to Plaintiffs' Motion for Summary Judgement on Copyright Infringement, D.I. 713, that it committed no infringement, or at the very least, there are issues of material fact preventing summary judgement. Nevertheless, for the purposes of this Motion only, ROSS assumes for the sake of argument that some minimal copying occurred.

transformative that it obliterated any of Plaintiffs' original expression. Assuming for the sake of argument that ROSS took headnotes, turned them into questions, and then paired each question with quotes from multiple cases—not just the case that Plaintiffs used the headnote for—ROSS reduced the language of both the question and the multiple quotes to which it was paired into more abstract mathematical forms. This allowed ROSS to study and learn from the linguistic relationships between the questions and opinions. Finally, ROSS used mathematical features based on what it learned from that process to inform its search functionality. Once the lessons are learned, the training materials were discarded. Thus, by the time a user interacted with ROSS, there was nothing left of any of Plaintiffs' expression within the ROSS product. ROSS's search does not contain, output, or rely on any Westlaw Content whatsoever. These facts are undisputed.

As for the dispositive legal precedent, Plaintiffs only rebuttal to this argument is that ROSS, as a legal research platform, had the same general purpose as Westlaw. That argument was rejected by the Supreme Court in *Google LLC v. Oracle Am. Inc.*, 593 U.S. 1 (2021). As the Court instructed there, when one makes a new product, as ROSS did here, a high-level comparison of purposes is inappropriate. *Id.* Here, ROSS's purpose was to study the underlying relationships between legal language, which was not Plaintiffs' purpose in drafting the Westlaw Content. And Courts should consider intermediate uses as part of a process of transformation, which is fair use. *See, e.g.*, *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992); *Sony Comput. Ent., Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000).

Finally, Plaintiffs try to avoid fair use by claiming that because ROSS competed with Westlaw, it must be a substitute for Westlaw. But copyright law does not allow for such an oversimplified analysis. A competitive product is only a substitute within the meaning of

copyright law if it offers the *same expression* in the market. ROSS's expression is dramatically *different*: the words of uncopyrightable legal opinions. ROSS does not offer Westlaw Content to the market. If legal researchers want Westlaw Content, they must still go to Plaintiffs to get it. ROSS's AI training process changes West headnotes, first into questions, then into mathematical relationships, completely changing the character of whatever Westlaw Content there may have been into an output of the words of judicial opinions in response to questions about the law—a significant improvement over a headnote. To extend Plaintiffs' copyright past its content, to the facts about judicial language that ROSS made use of, would undermine the point of copyright law itself. ROSS's transformational acts are protected by fair use. This Court should grant its Motion for Summary Judgment.

## ARGUMENT

### I.  ROSS's Use Was Transformative—Factor One Favors ROSS

Plaintiffs argue that ROSS's use was not transformative because the ROSS legal search engine had the same general purpose as Westlaw, its use was commercial, ROSS acted in bad faith, and ROSS's use cannot be transformative because Plaintiffs use their own copyrighted material to train their AI. D.I. 716 (Plaintiffs' Opposition Fair Use Brief) at 25-34. These arguments are not consistent with fair use case law.

#### A.  The "Same General Purpose" Argument Was Rejected in *Google LLC*

Plaintiffs' argument that ROSS's legal search engine could not be transformative because ROSS has the same general purpose as Westlaw, D.I. 716 at 27-29, is the same argument that was rejected in *Google LLC*. In *Google LLC*, Oracle, argued that Google's use could not be fair because it tried to adapt Oracle's software for the same general market. *See* Declaration of Ryan Seewald ("Seewald Decl.") at Ex. 1, Brief for Respondent Oracle at 41-42, *Google LLC,* 593 U.S. 1 (2021) (No. 18-956). While acknowledging this as true, the Supreme Court held that

Google's use was transformative because Google used Oracle's code "to create new products" and "expand the use and usefulness of Android-based smartphones." *Google LLC*, 593 U.S. at 30. This use, the Supreme Court explained, is "consistent with the creative 'progress' that is the basic constitutional objective of copyright itself." *Id.*

In *Sony*, Sony also made this same transformative argument. Sony argued that "[c]reativity is not rewarded by affording fair use protection to a product that serves the same function as the original and that is produced by means that unnecessarily depend on unauthorized copying of the original." *See* Seewald Decl. at Ex. 2, Brief for Appellees Sony et al. at *29, *Sony*, 203 F.3d 596 (9th Cir. 2000) (No. 99-15852)). The Court rejected this as contrary to the very purpose of fair use. *Sony*, 203 F.3d at 607-08.

### B.    Plaintiffs' Commercialism and Bad Faith Arguments Have Also Been Rejected

Courts have also addressed commercialism and bad faith.  In *Google LLC*, *Sega*, and *Sony*, the fact that uses were commercial weighed little in the analysis because in those cases the use was transformative. *Google LLC*, 593 U.S. at 32-33; *Sega*, 977 F.2d at 1522; *Sony*, 203 F.3d at 607. Moreover, because ROSS only used Westlaw Content during the intermediate steps when it was creating its product, and not as part of the final product, the commercial nature of ROSS's use matters less for the analysis. *Sega*, 977 F.2d at 1522; *Sony*, 203 F.3d at 607.[3]

In fact, the Supreme Court's recent decision in *Andy Warhol Foundation for the Visual*

---

[3] The cases that Plaintiffs cite are irrelevant. D.I. 716 at 26. *Pac. & S. Co., Inc. v. Duncan*, 744 F.2d 1490 (11th Cir. 1984), *Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992), and *West Publ'g Co. v. Mead Data Cent., Inc.*, 616 F. Supp. 1571, 1580 (D. Minn. 1985) are legally irrelevant because they were published before 1994, when "the Supreme Court [ ] rejected th[e] presumption" that a commercial use is unfair. *Sony*, 203 F.3d at 606 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)). And in *Murphy*, the defendant's use of the image "was not transformative," but instead was a literal and unchanged copy of a photograph. *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 308 (3d Cir. 2011).

*Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023), explicitly re-affirmed the Supreme Court's approach to commercialism articulated in *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). That is, when the uses are transformative, commercialism is less important. *See Warhol*, 598 U.S. at 528-30, 532-37 nn.8, 13; *see also* D.I. 677 (ROSS's Opening Fair Use Brief) at 33; D.I. 710 (ROSS's Opposition Fair Use Brief) at 29-30.

Assuming bad faith is relevant at all, *compare Google, LLC*, 593 U.S. at 32-33, ROSS's so-called bad faith does not change the analysis. ROSS's conduct was no different than the conduct at issue in *Sega* and *Google LLC*. In both cases, the parties sought a license and when that could not be obtained, used the copyrights at issue. *Google LLC,* 593 U.S. at 8; *Sega*, 977 F.2d at 1514.[4] Also, Plaintiffs expressly permit the use of Westlaw that constitutes fair use under the Copyright Act. D.I. 677 at 18 n.10.

## C.    Plaintiffs' Cases Do Not Counsel a Different Result

Plaintiffs cite *Warhol*, *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163 (2d Cir. 2024), *Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006), and *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000), in support of their argument that ROSS's use of the Westlaw Content cannot met the standards of factor one because ROSS's legal search engine serves the same purpose of Westlaw. D.I. 716 at 27-28. These cases do not support Plaintiffs' argument.

These cases involved a one-to-one, almost exact copy of the copyrighted material.

---

[4] Plaintiffs' bad faith cases predate *Google LLC*, where the Supreme Court suggested that party conduct is not relevant to the factor one inquiry. The citation to *NXIVM* is particularly off-point, as the Second Circuit focused on the defendant's conduct because the Circuit, at that time, considered it a component of factor one. *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004). Additionally, *KCAL-TV* and *Harper & Row* are factually irrelevant because the defendant's uses were not transformative. *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561-63 (1985).

*Warhol*, 598 U.S. at 522 (identifying Figure 6, which is a side-by-side comparison of the original and infringing work); *Hachette*, 115 F.4th at 181 ("[Defendant] creates digital copies of the Works and distributes those copies to its users in full, for free."); *Wall Data*, 447 F.3d at 774-75 (defendant copied hard drives containing plaintiff's software to run it on new computers); *Worldwide Church of God*, 227 F.3d at 1113 (religious tract copied near verbatim and then distributed). ROSS's output contains no copyrighted material. D.I. 677 at 17 ("the output of ROSS' legal search tool is quotations from judicial opinions"), 26-27 ("The output was a list of paragraphs from judicial opinions . . ."); D.I. 710 at 1 ("[T]he output of ROSS's tool did not contain or depend on any of the claimed copyrighted materials at issue in this case"), 13-14 ("ROSS's AI tool outputs a rank-ordered collection of *paragraphs from judicial opinions*"), 16 (table reflecting same).

Plaintiffs also argue that ROSS's work could not be transformative because Plaintiffs have used their copyrighted material to train their own AI. D.I. 716 at 7-9. Plaintiffs claim that *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191 (3d Cir. 2003) and *Oasis Publ'g Co., Inc. v. W. Publ'g Co.*, 924 F. Supp. 918 (D. Minn. 1996), support this argument. D.I. 716 at 28. However, neither case nor any case found holds that a plaintiff's internal use of copyrighted material forecloses fair use. In fact, in *Sony*, *Sega*, and *Google, LLC*, the plaintiffs all also used the copyrighted materials at issue.

In addition, as noted in the ROSS Opening Fair Use Brief and ROSS Opposition Fair Use Brief, and undisputed by Plaintiffs, the way in which ROSS used any Westlaw Content was different than how Plaintiffs used it at both the intermediate stage and in the final product. D.I. 677 at 13-16 (█████████████████████████████████████████████████); 16-20 (█████████████████████████████████████), 21-26 (████████████████████



, 26-27 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); D.I. 710 at 5-8 (▮▮▮▮▮▮▮▮▮▮▮▮▮), 8-13 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), 16-17 (▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮). ROSS used different features. D.I. 677 at 23-25 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮'); D.I. 710 at 9-10 (▮▮▮▮▮▮), 16-17 (▮▮▮▮▮▮▮▮▮▮▮▮▮). It did not want to train on Westlaw Content. D.I. 677 at 3-6 (ROSS's goals), 16-17 (▮▮▮▮▮▮▮▮▮▮▮▮▮), 20 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); D.I. 710 at 3-4 (▮▮▮▮▮▮), 11-13 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). And the output does not contain Westlaw Content. D.I. 677 at 17, 26-27; D.I. 710 at 1, 13-14.

Finally, *Video Pipeline, Inc.* and *Oasis Pub.* are otherwise inapposite. In *Video Pipeline* both of the parties took clips from Disney movies and placed them on the market to advertise. 342 F.3d at 194-96. ROSS has not placed training data on the market. D.I. 680 (Declaration of Jimoh Ovbiagele) ¶ 44. ROSS's legal search engine cannot output Westlaw Content. D.I. 677 at 17, 26-27; D.I. 710 at 1, 13-14.

In *Oasis Pub. Co.*, the defendant made verbatim copies of West reporters and put them on CD-ROMs, using West's pagination system. 924 F. Supp. at 927. Other than format (CD-ROM as opposed to print), there was no transformation at all. *Id.*

**D.    The Undisputed Facts and Cases Support ROSS's Factor One Argument**

Not only do Plaintiffs cases not apply, the facts and case law compel a finding of transformation.

As in *Sega*, *Sony*, and *Google LLC*, ROSS's product neither contains nor outputs any Westlaw Content. *Sega*, 977 F.2d at 1514-15 and 1518-19; 1522-23; *Sony*, 203 F.3d at 606-07; *Google LLC*, 593 U.S. at 31 ("Google, through Android, provided a new collection of tasks operating in a distinct and different computing environment."); D.I. 677 at 17, 20, 21-26, 26-27; D.I. 710 at 1, 8-13, 13-16. This fact is undisputed.

Instead, when a user enters a query into ROSS's search platform, D.I. 677 at 5-6 ), 25-26 ( ), 26-27 ( ); D.I. 710 at 3-4 ( ), 9-11 ), 13-14 ( ), 16 ( ). The search neither interacts with or returns any headnotes, key numbers, or any form of Westlaw Content. D.I. 677 at 21-26 ( ), 27 ( ); D.I. 710 at 13-14, 16. These facts are also undisputed. Plaintiffs have repeatedly emphasized the value of their "editorial enhancement," stressing that they are the reason why users like Westlaw. D.I. 677 at 9-12 ( ); D.I. 710 at 18-19 (same). But ROSS has never tried to add editorial enhancements to case law, nor offered itself as a provider of editorial judgment of any kind.

ROSS also created a "wholly new product." *Sony*, 203 F.3d at 606; *see also Google LLC*, 593 U.S. at 30. Creating a new product, using the kind of work that ROSS did—studying uncopyrightable facts about legal language in order to produce a new kind of search—is exactly

what courts have characterized as the purpose of copyright law. *Id.* ("Here Google's use of the Sun Java API seeks to create new products . . . To the extent that Google used parts of the Sun Java API to create a new platform . . . its use was consistent with that creative progress that is the basic constitutional objective of copyright itself.") (cleaned up); *see also Sega*, 977 F.2d at 1522-23. And as in *Sega*, if Plaintiffs can stop others from studying the relationships among language patterns to train artificial intelligence, then they would be given a *de facto* monopoly over functional aspects of their work, which Congress has chosen not to award under the umbrella of copyright protections. *Sega*, 977 F.2d at 1526, *Sony*, 203 F.3d at 605.

Nor can Plaintiffs distinguish the cases on which ROSS relies. They claim that *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006), does not apply because the use in that case was for a different purpose. D.I. 716 at 28-29. But Plaintiffs ignore that ROSS too had a different purpose: studying noncopyrightable elements of the underlying legal language. D.I. 677 at 21-26, 26-27; D.I. 710 at 8-13, 13-16, 16-17; *cf.* D.I. 677 at 13-16. The defendant in *Bill Graham* was using the existence of the posters as "historical artifacts," and to "enhance the reader's understanding of the biographical text." 448 F.3d 605, 609-10 (2d Cir. 2006). The defendant was not using the posters' expression on their own. *Id.* ROSS, in the same way, was interested in how legal language works, not in the particular examples of the legal language in the headnotes. D.I. 677 at 5-6, 21-27; D.I. 710 at 8-16. Similarly, the reason that ROSS's use was transformative is not that it was literally the same as the collage in *Blanch v. Koons,* 467 F.3d 244 (2d Cir. 2006), but that ROSS's use is analogous to Koons' "stated objective … not to repackage Blanch's 'Silk Sandals,' but to employ it in the creation of new information, new aesthetics, new insights and understandings." *Id.* at 253 (cleaned up).

The same is true in the other cases that Plaintiffs attempt to distinguish. In *Seltzer v.*

*Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013), the defendant "used the original as 'raw material' in the construction of the four-minute video backdrop. It is not simply a quotation or a republication[.]" In *White v. W. Publ'g Corp.*, 29 F. Supp. 3d 396, 399 (S.D.N.Y. 2014), copying and annotating briefs was transformative both because there was content added to the briefs and because the briefs were copied for a different purpose. And in *Cariou v. Prince*, 714 F.3d 694 (2d. Cir. 2013), the Second Circuit found the use transformative because the defendant's works "'used [Cariou's photographs] as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings,' and [thus] were transformative within the meaning of this first factor." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 38 (2d Cir. 2021), *aff'd sub nom. Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) (describing the *Cariou* decision).[5]

## II.    Plaintiffs Have Only a Thin Copyright—Factor Two Favors ROSS

Plaintiffs spend a number of pages on factor two. D.I. 716 at 34-38. From the outset, though, it should be noted that factor two "rarely play[s] a significant role in the determination of a fair use dispute." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015); *see also Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 98 (2d Cir. 2014) ("The second fair-use factor . . . is not dispositive."); *Hachette,* 115 F.4th at 187 ("rarely play[s] a significant role").[6]

Plaintiffs argue "Westlaw content is highly creative," noting the effort Plaintiffs used to

---

[5] Plaintiffs argue that *Cariou* is "controversial and has been widely criticized." D.I. 716 at 29 n.20. But the cases they claim criticize *Cariou* do not change its holding. Even if the Second Circuit limited its application of *Cariou*, the limitation it urged was that *Cariou* did not announce a bright-line rule. *Warhol*, 11 F.4th at 38. The Seventh Circuit case which Plaintiffs cite, *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014), not only does not recommend directly overturning *Cariou*, but predates the Second Circuit's *Warhol* decision by seven years.

[6] Also, factor two "'may be of limited usefulness where,' as here, 'the creative work . . . is being used for a transformative purpose.'" *Cariou*, 714 F.3d at 710 (quoting *Bill Graham*, 448 F.3d at 612). While factor two weighs in ROSS's favor, this factor can also be given minimal weight because ROSS's use of the Westlaw Content is highly transformative. *Supra* Argument § I.

select and arrange the content and add headnotes and noting that attorney editors must make creative choices. D.I. 716 at 34-38. As an initial matter, for the purposes of this brief, ROSS is not claiming that the Westlaw Content is not creative. 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13F.06 (rev. ed. 2024) (noting that factor two assumes that the work is original, and thus contains at least minimal creativity, and "therefore [factor two] focuses on the degree of creativity").

The issue here is the copyright protection it is afforded. Whatever the creative effort, the fact remains that Plaintiffs have determined to cabin the scope of creativity.[7] ██████

██████████████████████████████████████████████████████

████████████████████████████████ D.I. 677 at 9-10 (████████████

████████████████████████████████████████████████

██████), 11 ████████), 11-12 (████████████████), 12 (████████████████); D.I. 710 at 18-19. Plaintiffs have conceded that the function of these things is to allow lawyers to find cases.  D.I. 716 at 36 ████████████████████████████████████

████████████████

This is what makes the copyright thin. Indeed, a court has already reached this conclusion. While Plaintiffs wish to distinguish *Matthew Bender & Co. v. West Publ'g Co.,* D.I. 716 at 35 n.24, even the dissent determined, without any qualification and after viewing the entirety of the copyright, that as a whole, "[t]he copyright granted West is thin." 158 F.3d 674, 693 (2d Cir. 1998) (J. Sweet, dissenting).[8]

---

[7] Plaintiffs claim that ROSS "tries to minimize the creative decision-making."  D.I. 716 at 35-36. Not so. The amount of creative decision-making is not the relevant factor given the constraints imposed by Plaintiffs and their purpose in producing Westlaw Content.

[8] Plaintiffs cite to *Mead Data* to state "In fact, the 'original arrangement of opinions,' 'headnotes,' and 'statements of fact,' have all been found to be copyrightable." D.I. 716 at 35

Nor is it the case that ROSS's argument solely depends on the fact that the Westlaw Content is a compilation. D.I. 716 at 37. Headnotes report the facts about cases. They and the key numbers are constrained by the language of the law and the language in judicial opinions. D.I. 677 at 9-12; D.I. 710 at 18-19. Any copyright protection afforded must, therefore, be thin because Plaintiffs' works are constrained by the need to make its content usable by attorneys and accurately reflect the law. *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 913-15 (9th Cir. 2010) (determining the expression for fashion dolls was "highly constrained"); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (expression of a jellyfish sculpture is highly constrained).[9] Moreover, Westlaw Content undeniably, however well-manicured and thought out, conveys factual information—what judicial opinions say. That too renders the copyright thin. *See, e.g., Harris v. Winfrey*, 2011 WL 1003807 at *3 (E.D. Pa. Mar. 18, 2011) ("There is a 'thin' copyright protection for an author's choices as to the presentation of factual matter.").[10]

---

n.24. In spite of the unclear citation between the district court and 8th Circuit decisions, it appears Plaintiffs are referencing the dissent in the 8th Circuit decision. *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1244 (8th Cir. 1986). The majority did not hold that headnotes or statement of facts are copyrightable, but rather "that West's case arrangements, an important part of which is internal page citations, are original works of authorship entitled to copyright protection." *Id*. at 1227. In spite of errors, such as relying on "labor, talent, and judgment" which *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 354 (1991) flatly rejected, at most, *Mead Data* merely supports that Plaintiffs *only* have a copyright in the arrangement, not the individual components. But again, for factor two, it is not whether there is a copyright, but the degree of creativity. 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13F.06 (rev. ed. 2024).

[9] Plaintiffs argue that *Mittel, Inc. v. Iqtel, Inc*. 124 F.3d 1366 (10th Cir. 1997) and *Dunn & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197 (3d Cir. 2002) do not apply because they are not fair use cases and both are computer code cases. D.I. 716 at 35 n. 24. This misses the point of these cases. For factor two, *Mittel* and *Dunn* demonstrate that Plaintiffs' works are constrained by the subject matter (finding and highlighting points of law from judicial opinions), and thus are necessarily thin.

[10] Plaintiffs' claim that ROSS is arguing that the copyright is thin because Westlaw Content concerns legal subject matters. D.I. 716 at 34. This is not ROSS's argument. One could create a novel that is utterly creative that concerns legal subject matter. As a novel, it would receive full

Nor is it valid to argue that the compilations are not afforded thin copyright protection when there is "other original material and analysis contributed by Plaintiffs." D.I. 716 at 37. Copyright protects those original things added to a compilation; however, compilations are protected by a thin copyright. *See, e.g.*, *Enter. Mgmt. Ltd. v. Warrick*, 717 F.3d 1112, 1117 (10th Cir. 2019)*; Intervest Constr., Inc. v. Canterbury Est. Homes, Inc.*, 554 F.3d 914, 919 (11th Cir. 2008).

The analysis does not change if one focuses solely on headnotes—in this instance the content of the headnotes rather than headnotes as a means of organizing cases. If the headnotes are considered as individual works, they are a derivative works, because they are based on public domain judicial opinions. *See Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 104-05 (2d Cir. 1951) (mezzotint reproductions of public domain paintings were derivative works); *Allegrini v. De Angelis*, 59 F. Supp. 248 (E.D. Pa. 1944), *aff'd*, 149 F.2d 815 (3d Cir. 1945) (art objects depicting public domain religious shrines were derivative works). As derivative works, "the copyright . . . is thin, extending only to the incremental original expression contributed by the author of the derivative work." *Schrock v. Learning Curve Int'l, Inc*., 586 F.3d 513, 521 (7th Cir. 2009).

Turning away from the issue of the scope of protection, Plaintiffs claim that ROSS's argument is that Westlaw Content can be "copied with impunity." D.I. 716 at 34-35. That is not what ROSS argues. Nonetheless, Plaintiffs  rely on  *TD Bank, N.A. v. Hill*, 2015 WL 4523570, (D.N.J. July 27, 2014), *FMC Corp. v. Control Sols., Inc.*, 369 F.Supp. 2d 539, 579 (E.D. Pa. 2005), *Love v. Kwitny*, 706 F. Supp. 1123, 1134 (S.D.N.Y. 1989), *Fox News Network, LLC v.*

_____

copyright protection. The issue is that the Westlaw Content is intentionally made slave to the words of judicial opinions and the law as lawyers in the real world use them.

*TVEyes, Inc.,* 883 F.3d 169, 178, and *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 552-55, 563-64 (1985), for this proposition. D.I. 716 at 34-35.

None of these cases are relevant to this case. In *Harper & Row*, the work at issue was an unpublished biography. While the Court discussed the amount of "the author's original language" infringed (*i.e.*, the protectible expression), what was "critical" for the Court was the fact that the work was unpublished at the time the copying occurred. *Harper & Row*, 471 U.S. at 548-49. "[T]he scope of fair use is narrower with respect to unpublished works" as "the author's right to control the first public appearance of his expression weighs against such use of the work before its release." *Id.* at 564. Plaintiffs' works are not unpublished. D.I. 677 at 9-12; D.I. 710 at 18-19.

In *TD Bank*, the court recognized, as ROSS urges here, that "[g]enerally speaking 'the more information or functional the plaintiff's work, the broader should be the scope of the fair use defense.'" 2015 WL 4523570 at *18; *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 531 (9th Cir. 2007); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13F.06 (rev. ed. 2024). But otherwise, the case does not apply. The work was also unpublished, a "critical element" of the Court's analysis and, again, the Court looked at the amount of copying, which was also determinative. *TD Bank*, 2015 WL 4523570 at *18 (quoting *Harper & Row*, 471 U.S. at 564). In *Love v. Kwitny*, the work too was unpublished which weighed against fair use because "the author's right to control the first public appearance of his undisseminated expression will outweigh a claim of fair use." 706 F. Supp. at 1134 (quoting *Harper & Row*, 471 U.S. at 555). Moreover, it involved the copying of an introduction "that consistent mostly of [plaintiff's] words," *i.e.*, the protectible parts of the expression. *Id.* Finally, neither *Fox News* nor *FMC Corp.* provide any support. *Fox News* simply states that factor two "plays no significant

14

role here." 883 F.3d at 178. *FMC* provides no analysis of factor two, instead analyzing the market for the asserted works, as opposed to the nature of it. 369 F. Supp. 2d at 579.

Moving to the next step, Plaintiffs claim that ROSS's reliance on *Google LLC* as support for its argument regarding the functionality of the Westlaw Content is misplaced. According to Plaintiffs, the Westlaw Content should be viewed more as "news articles and textbooks." D.I. 716 at 36 (citing *Hachette*, 115 F.4th at 187-88; *Fox News*, 883 F.3d at 178). *Hachette* involved long-form fictional and non-fictional books. With regard to the non-fictional books, the works conveyed factual information. But they also contained the author's "subjective descriptions and portraits," i.e., "the author's individualized expression." *Hachette*, 115 F.4th at 187. In this case, there is no evidence that the Westlaw Content contains subjective description and portraits such as one might find in a book. Indeed, that very thing is counseled against. Plaintiffs' employees might select passages, but their goal is to adhere to the words of the judicial opinion and the law. D.I. 677 at 9-12; D.I. 710 at 18-19.[11]

Analogizing Westlaw Content to news articles is no more helpful. "A number of cases that have analyzed alleged copying of news articles . . . have concluded that the second fair use factor weighs in the defendant's favor." *L.A. Times v. Free Republic*, 2000 WL 565200 at *15 (C.D. Cal. Apr. 4, 2000) (collecting cases).

Finally, Plaintiffs reprise their sweat of the brow argument. D.I. 716 at 37-38. This argument is not viable. *See Feist*., 499 U.S.  at 354; *Sega*, 977 F.2d at 1528. For this reason, Plaintiffs' reference to *Wall Data* should also be rejected. D.I. 716 at 37-38. While it invokes

---

[11] Plaintiffs attempt to distinguish *Google LLC* by noting dissimilarities between the functionality of a computer program and Westlaw. D.I. 716 at 36. Even though they function in a different way, both the computer program in *Google LLC* and Westlaw are utilitarian. *Google*, 593 U.S. at 26-29.

sweat of the brow, *Wall Data* relies on a single pre-*Feist* case for this proposition. *Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769, 780 (9th Cir. 2006). Indeed, in *Google LLC*, the Supreme Court's analysis of factor two does not mention the time or effort taken to develop the Java API declaring code, although, undoubtedly, time and effort was required to develop that code. 593 U.S. at 27-29.

### III.   ROSS Took a Tiny Percentage of Plaintiffs' Copyright—Factor Three Favors ROSS

Plaintiffs claimed in interrogatory responses that ROSS infringed on ███ headnotes, ███ key numbers, ██ topics and ██ judicial opinions. D.I. 677 at 6-10, 20-21 (███████ ██████████████████████████████████████████), 10 ██████████████ ███████), 11 (██████████████████████████████████████████ ████████), 13 (███████████████████████████████); D.I. 710 at 19 (███████████). This results in a miniscule percentage of items that are claimed to have been copyrighted. D.I. 677 at 31 (████████████████████████████████ █████████████████████████████), 31-32 (███████████████████████████████ ████████), 32 (██████████████████████████████████████, 32 (████████ █████████████████████████████████████████████████████████████ ██████████████████████████); D.I. 710 at 33 (███████████████). These facts are undisputed.

Faced with these numbers, Plaintiffs claim that they should be disregarded or at least supplemented because ROSS should be saddled with the ███████████ that Plaintiffs claim LegalEase used which Plaintiffs described as █████████████████████████████████ ██████ D.I. 716 at 38. Plaintiffs say this is more than ROSS needed. *Id.* Then essentially setting numbers aside, Plaintiffs claim that ROSS took the "heart" of Westlaw. *Id.* at 39.

Plaintiffs identified the Westlaw Content that ROSS received. According to Plaintiffs

ROSS received ███████ headnotes, █████ key numbers, ███topics and ██████ judicial opinions. D.I. 716 at 11, 39.

If LegalEase looked at more cases to prepare those memos, there is no claim that ROSS used those additional cases. There is no evidence that LegalEase could have looked at fewer cases to prepare 25,000 memos. And there is no evidence of the number of headnotes, key numbers or any other aspect of Westlaw Content implicated in those ████████████ And it just cannot be assumed that each of the cases did contain Westlaw Content. *See* D.I. 713 at 36 (███████████████████████████). It must be proven, and the Plaintiffs bear the burden.

Last, even if ROSS received the ████████judicial opinions, they constitute only ███% of the ███████ cases contained on Westlaw. ROSS Opening Brief, Statement of Facts § D.I. 677 at 10; D.I. 710 at 19.[12]

Because the numbers weigh in favor of fair use, Plaintiffs make the claim that ROSS took "'the heart' of Westlaw— the unique synthetization and organization of the law in the WKNS and the West Headnotes." D.I. 716 at 39. When case law references "the heart" of a copyrighted work, it is referring to "what is distinctive and valuable about plaintiff's expression." 4 Melville B. Nimmer & David Nimmer *Nimmer on Copyright* § 13F.07 (rev. ed. 2024). Essentially, then the "heart" of a work is that portion that if copied would mean that consumers would have no need to buy the original. Thus, in *Harper & Row*, "[t]he portions actually quoted were . . . among the most powerful passages in those chapters." 471 U.S. at 565. They were chosen because "they qualitatively embodied [President] Ford's distinctive expression." *Id.*

This heart argument cannot be squared with the nature of the work at issue in this case. The headnotes and key numbers and Westlaw Content, according to Plaintiffs 30(b)(6) witness,

---

[12] ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

D.I. 710 at 18-19 (quoting at Exhibit 34 the Deposition of Andrew Martens, 225:1:226:1); *see also id.* at 224:9-225:6 (███████████████████████████████████████████

███████████████████████████████████████"). This means that an

assemblage of materials like those here do not have a "heart" that can be taken. *NXIVM*, 364

F.3d at 481 (finding an assemblage of modules has no "core"); *see also* Patry on Fair Use § 5:1

(noting that "of course, not all works have a heart")*.*

It also bears noting that, in *Google LLC* the Supreme Court, counsel for Oracle made the

same type of argument.  *See* Seewald Decl. Ex. 1 at 45-46.  The Court's rejection of that

argument is instructive to this case.  First, in dismissing the "heart" argument, the Court found

that "the better way to look at the numbers is to take into account the several million lines [of

code] that Google did not copy." 593 U.S. at 34. Second, as is the case with ROSS and the

Westlaw Content, the Court noted that Google copied "those lines not because of their creativity,

their beauty, or even (in a sense) not because of their purpose." *Id.* And finally, the Court looked

to the fact that the use made of the materials was transformative. *Id.*

Therefore, even were this Court inclined to find that there could be a "heart" of materials

that are individualized to each case, that are used to place those individual cases within an

organizational structure that contains millions of entries, *Google LLC* would still counsel against

awarding the "heart" argument credit.

ROSS did not copy or use millions and millions of cases or headnotes or thousands and

thousands of key numbers or any other Westlaw Content associated with those millions of cases.

It did not copy anything for their creativity or beauty or even purpose. To the extent it copied it

was to (1) locate cases and (2) determine the mathematical relationship in the words of judicial

opinions. Just as the Supreme Court rejected Oracle's argument in *Google LLC*, it should do so here.

Finally, the three cases on which Plaintiffs rely are inapposite. D.I. 716 at 39 (citing *Monge v. Maya Mags., Inc.*, 688 F.3d 1164 (9th Cir. 2012); *Castle Rock Ent., Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 144 (2d Cir. 1998); *Soc'y of Holy Transfiguration Monestary, Inc. v. Gregory*, 689 F.3d 29, 63 (1st Cir. 2012)). *Monge* does not stand for the proposition that copying portions of a single compilation may be substantial where the compilation is made up of individually protectable works. D.I. 716 at 39. *Monge* is a case where the defendant published the *entirety* of previously unpublished photos of a private celebrity wedding ceremony and events, which represented the core of the copyright. 688 F.3d at 1178.[13]

The Court found against fair use in *Castle Rock Ent.,* because the defendant copied fictious expression. 150 F.3d at 144. In *Gregory*, the court found against fair use because the defendant copied copyrighted expression for the same purposes as the plaintiff. 689 F.3d at 63.

Finally, Plaintiffs criticize ROSS for relying on *Matthew Bender* in support of its factor three argument. They claim it has no applicability. D.I. 716 at 40. ROSS relies on *Matthew Bender* for the admission West Publishing made, which they do not deny. West conceded what would be permissible under the fair use doctrine is to copy "one to two percent of its published reports of Supreme Court and court of appeals cases." 158 F.3d at 678.

## IV.    ROSS Is Not a Substitute for Westlaw—Factor Four Favors ROSS

Plaintiffs argue that ROSS is a competitor, therefore, its legal search engine is a substitute for Westlaw and fails factor four. D.I. 716 at 16-18. Plaintiffs misconstrue the facts relevant to

---

[13] The *Monge* Court did offer a hypothetical about a compilation noting that the copying of 5 wedding photographs out of 400 photographs only 6 of which were of a wedding could be substantial copying. However, this was so because only 5 of the 6 were of a wedding.  *Monge*, 688 F.3d at 1179. There is no similar parallel here.

factor four.

Providing a competitive product does not mean that ROSS provided a substitute for Westlaw. The question factor four asks is whether the market for the copyrighted materials at issue has been substituted for by the new product. *HathiTrust*, 755 F.3d at 99; 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08[A] (rev. ed. 2024).

ROSS's product could not have served as a substitute. ROSS's product returned judicial opinions in response to natural language queries. No Westlaw Content is in the ROSS platform or its output. D.I. 677 at 17, 20, 21-26, 26-27; D.I. 710 at 1, 8-13, 13-16. Additionally, ROSS's database, without factual dispute, did not return opinions annotated with headnotes, or organized by the key number system, or containing links to headnotes, or including synopses, or any of the material that Plaintiffs' have ever claimed is protected by copyright. D.I. 677 at 17, 26-27; D.I. 710 at 1, 13-16. Unlike Westlaw, ROSS's tool does not search across headnotes or key numbers. D.I. 677 at 17, 26-27; D.I. 710 at 1, 13-16.

Because a consumer cannot get Westlaw Content by using ROSS, it cannot be  a substitute for Westlaw for the purpose of factor four. *Google LLC,* 593 U.S. at 36 (factor four weighs in Google's favor because programmers developing with Android were building "devices . . . different in kind" than programmers developing with Oracle's Java); *HathiTrust*, 755 F.3d at 100; *Authors Guild*, 804 F.3d at 224. As in *Sony*, ROSS is a competitor, and may take some market share from Plaintiffs. But "some economic loss . . . as a result of this competition does not compel a finding of no fair use." *Sony*, 203 F.3d at 607.[14]

Next, Plaintiffs argue that users of ROSS "benefit[ed]" from the legal analysis performed

---

[14] The argument that a purchase of one product would likely mean a consumer would not purchase the other was raised in *Sony*, and that argument failed. Seewald Decl. at Ex. 2, Brief for Appellee Sony at *38, *Sony*, 203 F.3d 596 (No. 99-15852)). *Sony* at 203 F.3d at 607-08.

by the attorney-editors and therefore factor four weighs in Plaintiffs' favor. D.I. 716 at 18. No case supports this argument. In all fair use cases, one can claim that there was a "benefit" bestowed by the work of the copyright holder. 2 Live Crew "benefited" from Roy Orbison's original song. Google benefited from the APIs developed by Oracle. Accolade (in *Sega*) and Connectix (in *Sony*) benefitted from the software development that Sega and Sony completed. Google in *Authors Guild* received a windfall from the written works of millions of authors. And authors are not just permitted to learn from older works; copyright law encourages them to do so. *See, e.g.*, *Feist*, 499 U.S. at 349-50.

Plaintiffs next claim that ROSS's use of the Westlaw Content took away the "exclusivity" of their copyrights. D.I. 716 at 18-19. But copyright protects rights holders from infringing uses which "offer[] the copyrighted work in a secondary packaging, where potential customers, having read the secondary work, will no longer be inclined to purchase again something they have already read." *Sundeman v. Seajay Soc'y, Inc*., 142 F.3d 194, 207 (4th Cir. 1998) (cleaned up). The case Plaintiffs cite for "exclusivity" demonstrates why this is not an issue here. In that case, the court found that "allowing any website to copy a photograph after it is first published would mean that a photograph could only be sold once." *FameFlynet, Inc. v. Jasmine Ent., Inc.*, 344 F. Supp. 3d 906, 913 (N.D. Ill. 2018). By contrast, nothing ROSS did prevented Plaintiffs from continuing to sell the Westlaw Content. Unlike displaying someone else's image on a website, ROSS's use of the Westlaw Content did not allow a ROSS user to access, view, or even identify any Westlaw Content. D.I. 677 at 17, 20, 21-26, 26-27; D.I. 710 at 1, 8-13, 13-16.

Plaintiffs then re-hash this same argument on exclusivity to claim that ROSS inhibited a potential market for training data. D.I. 716 at 20. But they do not explain how ROSS's use of

materials—for which Plaintiffs were paid—would prevent others from buying the same material

from Plaintiffs. 

. D.I. 677 at 10

), 38 ("

); D.I. 710 at 17-18.

This is why Plaintiffs' authority is no help to them. In cases like *Salinger v. Random House, Inc.,* 811 F.2d 90, 99 (2d Cir. 1987), where the court found that this factor "weigh[ed] slightly in [Plaintiff's] favor," the infringing use meant that the author could not "change his mind." *Id.* But no such issue exists here. Plaintiffs can sell training data if they wish to, or they can continue to avoid that market. What they cannot do is stretch their copyright over unprotected facts and prevent others from making fair use of their materials. *See, e.g.*, *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 644 (7th Cir. 2003) ("Westlaw's compilation of federal judicial opinions is copyrighted and copyrightable because it involves discretionary judgments regarding selection and arrangement. But the opinions themselves are in the public domain . . . and so Westlaw cannot prevent its licensees from copying the opinions themselves as distinct from the aspects of the database that are copyrighted.").

Finally, Plaintiffs argue that if ROSS's use were widespread, it would "harm[] the public." *See* D.I. 716 at 24 (cleaned up). But the incentive structure for Plaintiffs remains

---

[15] Even had Plaintiffs intended to enter this market, that exact argument was once again raised on behalf of Oracle and rejected by the Supreme Court. *Compare* Seewald Decl. at Ex. 1, Brief for Respondent Oracle at 48, *Google*, 593 U.S. 1 (No. 18-956) *with Google LLC*, 593 U.S. at 36-38.

identical: if legal researchers prefer annotated opinions and attorney-editor driven organizational tools, they will still buy Westlaw. Plaintiffs also present no evidence as to how alternative ways of searching for legal text and increasing competition within the market for legal research would harm the public.

In any case, this argument is foreclosed by existing law. In *Sega*, the Ninth Circuit held that factor four weighed in Accolade's favor because Accolade was "a legitimate competitor" in the field of making video games for Sega's console. 977 F.2d at 1523. Accolade was "a legitimate competitor" because "it is the characteristics of the game program as experienced by the user that determine the program's commercial success" and "there [was] nothing in the record that suggests that Accolade copied any of those elements." *Id*. In so finding, the court rejected the exact "free-rider" argument that Plaintiffs raise today. *Compare* Seewald Decl. at Ex. 3, Brief for Appellee Sega at *49-50 *Sega*, 977 F.2d 1510 (No. 92-15655) *with Sega*, 977 F.2d at 1527.

## CONCLUSION

ROSS's transformational acts of using artificial intelligence to answer natural language queries directly with language from judicial opinions are protected by fair use. This Court should grant ROSS's Motion for Summary Judgment.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  /s/ David E. Moore

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Keith J. Harrison
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

Dated: November 13, 2024
11879244 / 20516.00001
Public Version Dated: November 18, 2024