IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) ) | |
| Plaintiffs and Counterdefendants, | ) ) ) | C.A. No. 20-613 (SB) |
| v. | ) ) ) | **REDACTED - PUBLIC VERSION**<br>**Original filing date: November 13, 2024** |
| ROSS INTELLIGENCE INC., | ) ) ) | **Redacted filing date: November 18, 2024** |
| Defendant and Counterclaimant. | ) ) ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DIRECT COPYRIGHT INFRINGEMENT
AND RELATED DEFENSES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mflynn@morrisnichols.com
*Attorneys for Plaintiffs*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

November 13, 2024

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Alyssa C. Kalisky
Cameron Ginder
Vanessa Barsanti
Danielle O'Neal
Jonathan Emmanuel
Lexi Wung
Max Samels
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

## <u>TABLE OF CONTENTS</u>

SUMMARY OF THE ARGUMENT ......................................................................... 1

ARGUMENT ........................................................................................................ 6

I.    ROSS IS LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT AS A MATTER OF LAW ...................................................................................................... 7

    A.    ROSS Does Not Dispute That Plaintiffs Own a Valid Copyright That Is Entitled to a Presumption of Validity ................................................. 7

    B.    ROSS Copied Undisputedly Original West Headnotes ......................... 7

        1.The Law of the Case Doctrine Applies to Protectability and Actual Copying .... 7

        2. Substantial Similarity Is Satisfied ................................................. 11

    C.    ROSS's Arguments as to Volitional Infringement Fail Because They Mischaracterize the Law ................................................................. 17

II.    ROSS'S DEFENSES TO COPYRIGHT INFRINGEMENT FAIL AS A MATTER OF LAW .................................................................................................... 18

    A.    ROSS's Arguments as to Innocent Infringement Misread the Statute and Ignore Plaintiffs' Evidence ....................................................... 18

    B.    ROSS Fails to Show Any Factual Dispute Precluding Summary Judgment of No Copyright Misuse ............................................................. 22

III.    CONCLUSION ................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advance Am. Servicing of Arkansas v. McGinnis*,
    526 F.3d 1170 (8th Cir. 2008) .............................................................................11

*Arizona v. California*,
    460 U.S. 605 (1983) ............................................................................................8

*Ass'n of Am. Med. Colls. v. Mikaelian*,
    No. 83 Civ. 2745, 1986 WL 332 (E.D. Pa. Mar. 18, 1986) .............................13, 15

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008) ..............................................................................17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................6

*In re City of Phila. Litig.*,
    158 F.3d 711 (3d Cir. 1998) ........................................................................8, 9, 10

*CoStar Grp., Inc. v. LoopNet, Inc.*,
    373 F.3d 544 (4th Cir. 2004) ............................................................................17

*D.C. Comics Inc. v. Mini Gift Shop*,
    912 F.2d 29 (2d Cir. 1990) ................................................................................21

*Dam Things from Den. v. Russ Berrie & Co., Inc.*,
    290 F.3d 548 (3d Cir. 2002) ...........................................................................7, 10

*Davis v. Novastar Mortg., Inc.*,
    No. 04 Civ. 00956, 408 F. Supp. 2d 811 (W.D. Mo. 2005) ................................12

*Denenberg v. LED Techs., LLC*,
    No. 11 Civ. 3155, 2013 WL 2153290 (D. Colo. May 17, 2013) ..........................20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
    499 U.S. 340 (1991) ...........................................................................2, 7, 15, 16

*Field v. Google Inc.*,
    412 F. Supp. 2d 1106 (D. Nev. 2006) ................................................................17

*Hamilton v. Leavy*,
    322 F.3d 776 (3d Cir. 2003) ............................................................................8, 10

*Hitchens v. Cnty. of Montgomery*,
   98 F. App'x 106 (3d Cir. 2004) .................................................................6

*In Harper & Row, Publ'rs, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) .................................................................................13

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
   No. 13 Civ. 816, 2016 WL 5092593 (S.D.N.Y. Sept. 19, 2016) ..............20

*Leonard v. Stemtech Int'l Inc.*,
   834 F.3d 376 (3d Cir. 2016) .....................................................................17

*Lewis' Adm'r v. Glenn, Tr.*,
   84 Va. 947 (1888) ......................................................................................3

*Maverick Recording Co. v. Harper*,
   598 F.3d 193 (5th Cir. 2010) ...................................................................20

*Mercer v. Richmond*,
   152 Va. 736 (1929) ....................................................................................3

*Omega S.A. v. Costco Wholesale Corp.*,
   776 F.3d 692 (9th Cir. 2015) ...................................................................23

*Pan v. State Farm Mut. Auto. Ins. Co.*,
   No. 05 Civ. 5298, 2007 WL 1674448 (N.D. Cal. June 8, 2007) ..............11

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ...................................................................17

*Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.*,
   295 F. Supp. 1366 (S.D.N.Y. 1969) .........................................................14

*TD Bank, N.A. v. Hill*,
   No. 12 Civ. 7188, 2015 WL 4523570 (D.N.J. July 27, 2015) .................15

*Tetris Holding, LLC v. Xio Interactive, Inc.*,
   863 F. Supp. 2d 394 (D.N.J. 2012) ...........................................................13

*Tobin v. Washington*,
   No. 06 Civ. 5630, 2007 WL 3275073 (W.D. Wash Nov. 5, 2007) ..........11

*Transcap Assocs., Inc. v. Euler Hermes Am. Credit Indem. Co.*,
   No. 08 Civ. 723, 2009 WL 3260014 (N.D. Ill. Oct. 9, 2009) ..................11

*Tseng v. Home Depot USA, Inc.*,
   No. 05 Civ. 908, 2006 WL 521723 (W.D. Wash Mar. 2, 2006) ..............12

*United States v. Kasuboski,*
    834 F.2d 1345 (7th Cir. 1987) ................................................................12

**Statutes**

17 U.S.C. § 401 ................................................................................5, 19, 20

**Rules**

Fed. R. Civ. P. 56(a) ...........................................................................6

Fed. R. Civ. P. 56(c) ...........................................................................6

**Other Authorities**

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* ...............................14, 22

Plaintiffs Thomson Reuters and West[1] submit this reply in support of their motion for partial summary judgment on their direct copyright infringement claim against Defendant ROSS Intelligence Inc. ("ROSS"), as well as ROSS's merger, scènes à faire, innocent infringement, and copyright misuse defenses.

## SUMMARY OF THE ARGUMENT

The arguments in ROSS's Opposition[2] do not change what is undisputed in this case: ROSS stole the creative, protectable elements of Westlaw that Plaintiffs' skilled attorney-editors used their judgment and training to create, which was precisely the type of quality analysis ROSS so desperately needed to train its own AI model. ROSS does not deny that it was repeatedly turned down access to Westlaw, and then furtively and surreptitiously went to great lengths to get its hands on the Westlaw Content. ROSS's litigation position that the Westlaw Content it went to such great lengths to obtain is not creative and not protectable belies reality, given its pre-litigation behavior and the many admissions of its witnesses testifying about what ROSS needed to create its platform. Thus, ROSS's Opposition does not change the undisputed material facts. Controlling law warrants summary judgment on Plaintiffs' direct copyright infringement claim and ROSS's copyright defenses as a matter of law.

*First*, as to copyright infringement, Plaintiffs have established they satisfy the two elements of a copyright claim. As to the first element—ownership—ROSS does not dispute that Plaintiffs have been granted numerous copyright registrations in Westlaw by the U.S. Copyright Office. Nor has ROSS rebutted the presumption of validity that attached to them.

---

[1] Plaintiffs incorporate by reference shorthand definitions as defined in their Motion for Partial Summary Judgment on Direct Copyright Infringement and Related Defenses ("Motion" or "Mot."), filed at D.I. 675.

[2] ROSS's Brief in Response to Plaintiffs' Motion for Partial Summary Judgment on Direct Copyright Infringement and Related Defenses ("Opposition" or "Opp."), filed at D.I. 713.

As to the second element, it requires actual copying of original elements and substantial similarity.  As to actual copying, ROSS argues that there is a genuine issue of fact.  But this Court already found that Plaintiffs have satisfied the actual copying element as a matter of law.  D.I. 547 at 8–9.  Thus, under the law of the case doctrine, the Court's ruling remains in place and ROSS has not made any argument as to why the Court's prior ruling must be overturned.

As to substantial similarity, ROSS's Opposition is replete with inapposite hypotheticals, but not a single one of those hypotheticals can change the fact that ROSS's arguments as to the protectability of the Westlaw Content *have already been rejected by this Court*.  D.I. 547 at 8–9.  Thus, again, under the law of the case doctrine, the Court's ruling remains in place.  And indeed, it should, as ROSS does not—and cannot—dispute the creativity, judgment, and skill of Plaintiffs' attorney-editors that went into the editorial enhancements they created to annotate, summarize, synthesize, and organize the law.  Instead, ROSS attempts to limit the scope of protectability to the entirety of the copyrighted work and even goes so far as to claim Plaintiffs are trying to copyright judicial opinions.  However, the registrations disclaim the judicial opinions themselves.  And ROSS did not need to copy the judicial opinions from Westlaw, as ROSS had a repository of cases ███████████.  What ROSS wanted, and what ROSS copied, was the creative contributions of Plaintiffs' attorney-editors.  The creativity and judgment of Plaintiffs' skilled attorney-editors creating Westlaw Content (including Headnotes, the selection and arrangement of those Headnotes to case passages, and the WKNS) more than meets the low bar required by *Feist*— and reflects creativity, not just effort, as ROSS claims.  Opp. at 26.

Moreover, Plaintiffs have shown substantial similarity with respect to the West Headnotes and Bulk Memo questions.  ROSS's attempt to create a genuine dispute of fact through an improper attorney declaration does not change this.  For instance, ROSS argues the copyrightability example

2

used by Plaintiffs (Mot. at 2) demonstrates "that the memo question was derived from the judicial opinion and *not* the headnote[.]"  Opp. at 2–3.  Yet ROSS merely isolates a portion of the judicial opinion and misleadingly colors text in an attempt to support its point.  A proper comparison easily disproves ROSS's theory:

| Corresponding passage from original judicial opinion | West Headnote | Bulk Memo Question |
|---|---|---|
|  |  |  |



Moreover, even if this Court were to accept ROSS's challenges, tellingly, ROSS did not even attempt to challenge Plaintiffs' Motion with respect to the ▇▇▇ Headnotes—that amount is more than *de minimis* and sufficient for the Court to find infringement as a matter of law.

In a final attempt to escape liability for copyright infringement, ROSS asserts that there was no volitional conduct with respect to the 500 editorially enhanced opinions in its possession containing West Headnotes, Key Numbers, and other content authored by Plaintiffs' attorney-editors, because ROSS claims it did not ask for this content and made clear it was not wanted. Tellingly, ROSS did not previously raise this argument in opposition to Plaintiffs' previous motion for summary judgment on copyright infringement. *See* D.I. 310 at 12–15. ROSS's decision to only ***now*** raise this argument speaks volumes about its lack of merit. Indeed, this is not the type of case where the question of volitional conduct applies. As demonstrated by ROSS's own authority, the question of volitional conduct arises in cases where a system, or an automated process, performs the act constituting infringement, *i.e.*, the act of copying. Conversely, here, the record is replete with evidence of ROSS's copying actions of ▇▇▇▇▇▇▇▇▇▇▇ the 500 editorially enhanced opinions was volitional and not simply performed as part of some automated process. ROSS hired LegalEase and paid it ▇▇▇▇▇▇▇ for LegalEase to

surreptitiously obtain Westlaw Content ███████████████████.  ROSS offers no evidence that it was otherwise.

*Second*, because ROSS cannot dispute these material facts and the governing law warranting summary judgment of direct copyright infringement, its Opposition seeks to avoid liability by asserting a kitchen sink of other excuses.  However, ROSS's arguments as to its defenses confirm that—like volitional conduct—they do not apply to fact patterns like the one in this case.

As to ROSS's <u>innocent infringer defense</u>, ROSS simply cannot cast itself as, for example, an innocent downstream purchaser who had no idea it was obtaining a copyrighted work, as in the cases on which it relies.  Moreover, in responding to Plaintiffs' arguments, ROSS agrees that innocent infringement is not a defense to liability, rather, it is just a way of reducing the potential statutory damages that the jury may award.  ROSS also does not dispute that, consistent with 17 U.S.C. § 401, Westlaw contains a copyright notice.  Indeed, in its Opposition, ROSS admits that "[e]ach page of a judicial opinion when printed states 'Westlaw © [date] Thomson Reuters.  No claim to original U.S. Government Works.'"  Opp. at 4.  Based on that telling omission alone, and the statutory language of 17 U.S.C. § 401, summary judgment on ROSS's innocent infringement defense is warranted.  Instead of addressing that issue, ROSS argues (without foundation) that the statute requires that copyright notices must appear on every asserted element of the copyrighted work.  Furthermore, although ROSS raises the immaterial issue of whether it had notice of LegalEase's infringement and use of Westlaw, its position is belied by the undisputed evidence.

As to ROSS's <u>copyright misuse defense</u>, ROSS tries to claim that Thomson Reuters is trying to do more than just protect its copyright rights.  Specifically, ROSS claims that Thomson Reuters' enforcement of its copyrights violates public policy by somehow attempting to claim

ownership of the judicial opinions, separate and apart from the editorial enhancements added by West's attorney-editors. ROSS's argument cannot succeed. The undisputed evidence reflects that ROSS (and anyone else) can (and did) download the judicial opinions without Plaintiffs' annotations. Consistent with this, Thomson Reuters' copyright registrations expressly disclaim the judicial opinions themselves, and Thomson Reuters does not claim rights to them here. Instead, this case concerns ROSS's unauthorized copying of the Westlaw Content that *Plaintiffs* created. That is copyright infringement, not misuse. Moreover, ROSS's new theory of copyright misuse risks opening the floodgates of misuse in litigation, as it would mean that every copyright holder could be accused of misuse when the scope of an asserted copyright is disputed. That is not the law, and merely reflects the lengths to which ROSS will go to avoid taking responsibility for its infringement, as well as its willingness to twist and harm copyright law to further its own commercial goals.

For these reasons, Plaintiffs' direct copyright infringement claims, and ROSS's related defenses, should be decided on summary judgment as a matter of law.

## ARGUMENT

Summary judgment is proper where there is "no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Though "[a] party moving for summary judgment has the initial burden of showing the basis for its motion," "[o]nce the movant adequately supports its motion under Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial." *Hitchens v. Cnty. of Montgomery*, 98 F. App'x 106, 110 (3d Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 324 (1986)).

## I.    ROSS IS LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT AS A MATTER OF LAW

As set forth in Plaintiffs' Motion, "[t]o establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). ROSS's arguments in its Opposition do not change the outcome that Plaintiffs have established both prongs.

### A.    ROSS Does Not Dispute That Plaintiffs Own a Valid Copyright That Is Entitled to a Presumption of Validity

As stated in Plaintiffs' Motion, it is undisputed that Plaintiffs have copyright registrations in Westlaw and are thus entitled to a presumption of validity in Westlaw.  Mot. at 17–18.  In its Opposition, ROSS nowhere disputes or otherwise rebuts this fact.  But even if ROSS had addressed this fact, Plaintiffs provided sufficient evidence showing creativity of Westlaw as a whole.  *Feist*, 499 U.S. at 361 (finding first element satisfied and noting the "directory, considered as a whole, is subject to a valid copyright because it contains some foreword text, as well as original material in its yellow pages advertisements").

### B.    ROSS Copied Undisputedly Original West Headnotes

The second element of copyright infringement, copying, can be broken down into two sub-elements: (1) actual copying and (2) substantial similarity.  *See Dam Things from Den. v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 561–62 (3d Cir. 2002).  Both sub-elements are established here as a matter of law.

#### 1.    The Law of the Case Doctrine Applies to Protectability and Actual Copying

As a preliminary matter, the arguments as to protectability and actual copying that ROSS seeks the Court to make, have in fact already been decided by this Court and are thus governed by

the law of the case doctrine.  Under the law of the case doctrine, when a court "decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Arizona v. California*, 460 U.S. 605, 618 (1983).  "The doctrine is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity."  *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998).  Therefore, a court will not reconsider an issue decided earlier in the litigation unless there are "extraordinary circumstances," such as (1) the availability of new evidence; (2) the announcement of a supervening new law; or (3) a clearly erroneous decision that would create manifest injustice.  *Id.* (finding law of the case doctrine applied to the summary judgment record of the case, as no exception applied).  With respect to the first exception, it is well-settled that "if the evidence at the two stages of litigation is substantially similar, or if the evidence at the latter stage provides more support for the decision made earlier, the law of the case doctrine will apply."  *Hamilton v. Leavy*, 322 F.3d 776, 787 (3d Cir. 2003) (internal citations omitted).

Here, ROSS attempts to re-litigate issues that this Court already decided as a matter of law—namely, that (1) the protection in Plaintiffs' copyright registrations extends to the protectable pieces thereof, and (2) ROSS actually copied the Westlaw Content at issue.  As to the former, this Court correctly found that "[a] copyright in a compilation extends to the copyrightable pieces of that compilation" and Thomson Reuters "can sue on all protected components of that one registration."  D.I. 547 at 5–6.  And with respect to West Headnotes specifically, this Court already rejected ROSS's arguments about protectability, finding that "Headnotes are just short written works, authored by Thomson Reuters, so they could receive standalone, individual copyright protection," which "distinguishes Thomson Reuters's copyright in its headnotes from the 'thin,' compilation-only copyrights in Ross's examples."  *Id.* at 7.  ROSS made no effort at the time of

this Court's original summary judgment decision to timely move for reconsideration—this Court's decision was not clearly erroneous, nor has ROSS identified any new facts or laws that warrant reconsideration of these findings. *City of Phila.*, 158 F.3d at 718.

As to actual copying, this Court already made clear that Thomson Reuters satisfied this element as a matter of law:

> LegalEase admitted to copying at least portions of the headnotes directly. As for circumstantial evidence, Ross does not dispute that LegalEase had access to Westlaw, which included access to headnotes. Though the similarities between Thomson Reuters's and Ross's work might not be substantial (that is a jury question), **no reasonable jury could say that the similarities are not at least probative of some copying**. And while Ross argues that any copying that occurred was miniscule in the grand scheme of the compilation, that framing misses the mark for the reasons given above. **So Thomson Reuters has satisfied the actual copying element as a matter of law**.

D.I. 547 at 8–9 (emphasis added).  ROSS's claim that Plaintiffs somehow failed to show actual copying as to the ▇▇ West Headnotes identified by Dr. Krein—which ROSS admitted were not identical to the text of judicial opinions—and the ▇▇ West Headnotes identified by Ms. Frederickson-Cross is misguided.  Opp. at 28–31.  It is undisputed that to create the Bulk Memos, LegalEase ▇▇▇▇▇▇▇▇▇▇▇▇ copied Westlaw Content from the Westlaw platform.  *See* D.I. 547 at 8–9; Mot. 15–16.[3]  ROSS also indisputably copied the Bulk Memos (which contain the Westlaw Content) numerous times to train its AI,[4] including as recognized by

---

[3] *See also* Exs. 84 (TR-0048632) (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); 6 (Hafeez Tr.) at 34:1–3 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇), 125:24–126:2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); 36 (LEGALEASE-00078065) (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); 37 (LEGALEASE-00093066) (▇▇▇▇▇▇▇▇▇▇▇▇); 25 (Krein Op. Rpt.) at ¶¶ 103–114; 85 (TR-0055362) (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); 4 (Cahn Tr.) at 195:14–19 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

[4] ROSS claims that it did not copy any Westlaw content in training its AI model because it trained the model on numbers and not the text of the Bulk Memos.  Opp. at 8–9.  As Plaintiffs explained

this Court (D.I. 547 at 8–9), and as detailed in Plaintiffs' Motion, Mot. at 16, and by ROSS's own experts, Exs. 24 (Frederiksen-Cross Op. Rpt.) at ¶¶ 25–27; 22 (Branting Op. Rpt.) at ¶¶ 31–36, 38.[5] Tellingly, ROSS does not contest this point in its Opposition. Moreover, its own authority supports the foregoing being sufficient to establish actual copying. *Dam Things*, 290 F.3d at 562 ("The test for actual copying can be established by direct evidence or inferred by evidence of access and similarities [sic] that are probative of copying between the works, and expert testimony.") (cleaned up).

ROSS does not argue this Court's previous findings were clearly erroneous (nor could it), nor does it offer new evidence or new intervening law that could warrant reconsideration of these issues. *City of Phila.*, 158 F.3d at 718. If anything, the additional evidence of: (1) ROSS admitting ███ West Headnotes, which Plaintiffs contend were copied, were not identical to the text of judicial opinions and therefore, protectable, and (2) Dr. Krein's supplemental expert report, which shows ████████████████████████████████████ ███████, "provides more support for the decision made earlier." *Hamilton,* 322 F.3d at 787. Thus, the law of the case doctrine applies, and ROSS has failed to show any reason why the Court's previous holdings regarding protectability and copying should be revisited. *Id.*

---

in their opposition to ROSS's motion for summary judgment on its fair use defense, this notion that ROSS merely used numbers to train its model is belied both by the undisputed record and basic principles of machine learning. D.I. 716 at 12–15.

[5] ROSS argues that in 2015 it wanted access to Westlaw "to access a database of judicial opinions and conduct legal research" and "in all other instances, ROSS's sole purpose for accessing Westlaw was for benchmarking or competitive purposes." Opp. at 9–10. Not so. In 2015, ROSS wanted to use Westlaw to acquire the training material it needed to create a competing legal research platform. Mot. at 12–15. That ROSS may have also wanted access to Westlaw for benchmarking and competitive purposes is immaterial and, in any event, was still a violation of Westlaw's terms of service, which ROSS fully understood and blatantly disregarded. *Id.*

2.    Substantial Similarity Is Satisfied

ROSS's Opposition takes a kitchen sink approach and tries to create a dispute where none exists.  As an initial matter, ROSS attempts to create a dispute with pseudo-expert testimony masquerading as a declaration from one its attorneys—*i.e.*, the Canter Declaration.  D.I. 717 ("Canter Declaration").  In this declaration, Mr. Canter and ████████████████████████ ████████████████████████████████████████████████████████."  *Id.* at ¶ 5.  This is improper for several reasons.  As an initial matter, an attorney declaration is not the appropriate vehicle for these types of facts, as Mr. Canter was not identified on ROSS's initial disclosures, nor was he subject to deposition.  Further, the time for expert discovery has long since passed and, thus, allowing ROSS to provide supplemental expert testimony under the guise of an attorney declaration would cause Plaintiffs extreme prejudice.  Plaintiffs have had no opportunity to rebut this expert opinion with expert testimony of its own, nor has it been able to take discovery of the new opinions in the declaration.

Additionally, the expert testimony attempts to relitigate issues that were already fully briefed—this Court previously gave ROSS a second bite at the apple when it granted its request for a filtration hearing; it need not, and should not, give ROSS a third bite now.  Indeed, numerous federal courts have stricken such declarations or affidavits containing, *inter alia*, characterizations of facts, opinions, conclusory speculation, purported "expert" testimony, and/or attorney argument.  *See, e.g., Advance Am. Servicing of Arkansas v. McGinnis*, 526 F.3d 1170, 1172 n.4, 1174 (8th Cir. 2008) (refusing to rely on counsel's declaration in determining the amount in controversy where the declaration contained conclusory speculation); *Transcap Assocs., Inc. v. Euler Hermes Am. Credit Indem. Co.*, No. 08 Civ. 723, 2009 WL 3260014, at *2 (N.D. Ill. Oct. 9, 2009) (striking the portions of an attorney declaration that contained legal arguments); *Tobin v. Washington*, No. 06 Civ. 5630, 2007 WL 3275073, at *9 (W.D. Wash Nov. 5, 2007) (striking the

attorney declaration to the extent it contained testimony); *Pan v. State Farm Mut. Auto. Ins. Co.*, No. 05 Civ. 5298, 2007 WL 1674448, at 8 n.9 (N.D. Cal. June 8, 2007) (striking portions of an attorney declaration where the attorney was not disclosed as an expert and the declaration contained expert testimony); *Tseng v. Home Depot USA, Inc.*, No. 05 Civ. 908, 2006 WL 521723, at *3 (W.D. Wash Mar. 2, 2006) (striking an attorney declaration because it contained conclusory factual statements and noting that "an attorney's statement and argument is not evidence"); *Davis v. Novastar Mortg., Inc.*, No. 04 Civ. 00956, 408 F. Supp. 2d 811, 816 (W.D. Mo. 2005) (striking an attorney declaration in support of a class certification motion where it contained "characterizations of fact or opinions").

It is also telling that the Canter Declaration attaches ███████████████ in support of ROSS's various arguments. *E.g.*, Canter Decl. Exs. C, D, F, G, and H. As detailed in Plaintiffs' Motion, this Court months ago explicitly directed ROSS "to submit a list of **all** headnotes it believes are verbatim quotations, or vary trivially from verbatim quotations, of judicial opinions." D.I. 612 (emphasis added). ROSS subsequently excluded ██████ of the copied West Headnotes from its submission, which is a clear admission that those omitted Headnotes are *not* verbatim quotations, or vary *more than trivially* from verbatim quotations, of judicial opinions. Mot. at 19–20. ROSS cannot ███████████████████████████████████ ██████████████████, and present them as evidence in order to try to create a genuine dispute of fact—particularly when ROSS already had the chance to present "a list of all headnotes" it believed were not protectable.[6]

---

[6] ROSS argues that, by relying on the fact that ROSS omitted ████ Headnotes from its submission to the Court, Plaintiffs are impermissibly shifting the burden of proof on to ROSS. Opp. at 21–22. This is incorrect. Much like with written discovery responses, ROSS is bound by the admissions it makes in materials submitted to this Court. *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) (rejecting defendants' attempt to "undo the effect of their default admissions by

But even if the Court were to allow ROSS's new expert opinion, the exhibits attached to the Canter Declaration do not create a genuine dispute of fact.  Assuming there is no overlap in any of the exhibits, ROSS challenges only ███ of the ███ Headnotes it admits were identified by Plaintiffs.  Notably, that leaves ███ Headnotes which ROSS has not belatedly attempted to dispute are not verbatim, or which vary more than trivially from judicial opinions—an amount that is more than *de minimis*.  *See, e.g.*, *In Harper & Row, Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 564–66 (1985) (rejecting a claim that copying 300 to 400 words of a copyrighted book was insubstantial and constituted fair use of the material).

ROSS argues that Plaintiffs have not actually shown substantial similarity for any of the Headnotes it identified, but that is incorrect.  Plaintiffs unquestionably met their burden of proof by identifying the Headnotes that ROSS copied, the Bulk Memo questions that were created by copying those Headnotes, and the passages of the judicial opinions with which the Headnotes are associated.  Mot. at 25–26, Exs. 21, 27.  Plaintiffs also explained, at length, how those Headnotes were original and protectable, both individually and in the selection and arrangement, and how neither the merger nor scènes à faire doctrines apply.  Mot. at 19–25.  It is unclear what else ROSS would have Plaintiffs do at this juncture to satisfy their burden of proof.  *See, e.g.*, *Ass'n of Am. Med. Colls. v. Mikaelian*, No. 83 Civ. 2745, 1986 WL 332, at *11 (E.D. Pa. Mar. 18, 1986) (finding substantial similarity satisfied where plaintiffs identified the copied questions and presented expert testimony comparing the original questions and defendant's infringing questions); *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 410 (D.N.J. 2012) (granting plaintiff's motion

---

arguing the affidavits accompanying their [opposition to summary judgment motion] raise issues of material fact").  This Court directed ROSS to submit a list of **<u>all</u>** Headnotes it maintained were not protectable, and ROSS did just that.  Both the Court and Plaintiffs are permitted to rely on that list.

for summary judgment on copyright infringement after plaintiff submitted declarations, statements of fact, and screen shots of its copyrighted game, such that the court performed as side-by-side analysis and concluded that an ordinary observed would find that "any differences between the two [works] are slight and insignificant"); *Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.*, 295 F. Supp. 1366, 1369 n.5 (S.D.N.Y. 1969), *aff'd*, 415 F.2d 1007 (2d Cir. 1969) (granting plaintiff's motion for summary judgment on copyright infringement after court compared plaintiff and defendant's fabric designs, finding that "the similarities are so obvious that there can be no genuine issue of fact that defendant's design was copied from plaintiffs'. In short, the similarities are so great that an ordinary observer would easily detect them"); *see also* 3 Nimmer on Copyright § 12.10 (2024) ("[I]f the resemblance is so overwhelming as to mandate a finding of substantial similarity, the court should grant summary judgment to plaintiff.").

Nevertheless, in its previous ruling, this Court found Plaintiffs satisfied their burden of proof with respect to the 188 Headnotes it found were substantially similar to their associated Bulk Memo question. D.I. 547 at 12 ("Ross does not object to the remaining 188 entries. Though substantial similarity is usually a close factual question, I will not review each of the 188 entries and make arguments for Ross. And for the reasons above, its reliance on Westlaw's copyright being solely in a compilation is misplaced. So each of these headnotes is substantially similar to its associated Bulk Memo question."). The Court should do the same here with respect to the ██████ Headnotes that Plaintiffs identified as copied, that ROSS and its expert admitted were protectable, and to which ROSS did not object in its improper attorney declaration. As explained in Plaintiffs' Motion, a side-by-side comparison of Plaintiffs' Undisputed Headnotes and the Bulk Memo questions (as reflected in Ex. 27, as well as ROSS's Undisputed Headnotes and the Bulk Memo questions (Ex. 21)), shows that the Bulk Memo questions can "at a glance be traced" to the

protectable West Headnotes which they copy verbatim or nearly verbatim, readily satisfying the lay-observer test for substantial similarity.  *See Ass'n of Am. Medical Colls.*, 1986 WL 332, at *10 (examining the two works at issue and finding that an ordinary observer viewing them would detect a substantial similarity between the two); *TD Bank, N.A. v. Hill*, No. 12 Civ. 7188, 2015 WL 4523570, at *17 (D.N.J. July 27, 2015) ("A verbatim reproduction of another work, of course, even in the realm of nonfiction, is actionable as copyright infringement.").  The Undisputed Memos are thus infringing as a matter of law.

ROSS grossly mischaracterizes a footnote in Plaintiffs' opening brief, claiming that "Plaintiffs have disclaimed" their theory of infringement based on individual Headnotes by stating "the words of individual headnotes are not at issue."  Opp. at 18.  This could not be further from the truth.  The footnote that ROSS cites (Mot. at 5–6, n.3) merely states that—as ROSS's Opposition also wholly ignores—the infringement here goes far beyond individual West Headnotes or synopses to encompass the myriad creative choices and judgment of Plaintiffs' attorney-editors in selecting and arranging the Headnotes, linking them to selected portions of the opinions, and then classifying them, which is in and of itself copyrightable expression under *Feist*.  As *Feist* states:

> The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers. These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws. Thus, even a directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement.

499 U.S. at 348 ("[I]f the compilation author clothes facts with an original collocation of words, he or she may be able to claim a copyright in this written expression. Others may copy the underlying facts from the publication, but not the precise words used to present them."). ROSS

does not dispute Plaintiffs' attorney editors make such creative choices and that fact alone is enough to find direct infringement of all Headnotes regardless of how they are worded.[7]

ROSS also argues that the connections between Headnotes and passages of judicial opinions are not copyrightable and not infringed. Neither argument is correct. Contrary to ROSS's assertion, the connections created by Plaintiffs' attorney-editors are not "a functional tool," but rather, reflect the creative choice of which passage in a judicial opinion a given Headnote is most relevant to, in addition to the separate creative choice of whether to have a Headnote for a legal point in the first place. Indeed, as anyone performing legal research could no doubt appreciate, an issue, fact, or point of law may be discussed numerous times throughout an opinion and, thus, there are different passages to which a Headnote be selected and arranged. Plaintiffs' choice to select a particular passage is therefore creative and protectable under *Feist*.[8] And there is no dispute that these connections were infringed, as LegalEase ███████████ readily admitted that: ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ ▬

████████████████████████████████████████████████████████

████████████████████████.[10]  ROSS claiming otherwise is simply disingenuous.[11]

---

[7] Indeed, as ROSS's own expert admitted, ███████████████████████████████████████████████████████████████████████████████████████. Ex. 7 (Leiter Tr.) at 38:20–39:16, 97:6–14.

[8] ROSS's attempt to liken the connections between Headnotes and passages of judicial opinions to the Westlaw star page system is unavailing. Opp. at 35–36. These connections are not merely functional, but rather, are the result of Plaintiffs' original selection and arrangement. *Feist*, 499 U.S. at 348.

[9] Exs. 37 (LEGALEASE-00093066) (██████████████); 36 (LEGALEASE-00078065) (███████████████████████); 39 (R-LEGALEASE-00189134).

[10] Exs. 87 (TR-0178588); 86 (TR-0073545); 4 (Cahn Tr.) at 159:25–160:7; 87 (TR-0178588); 86 (TR-0073545).

[11] ROSS argues that LegalEase ████████████████████████████████████ (Opp. at 8), but the undisputed evidence and testimony clearly establishes they did. *Supra* n.7, n.8. ROSS

For these reasons, Plaintiffs are entitled to summary judgment on direct infringement.

## C.     ROSS's Arguments as to Volitional Infringement Fail Because They Mischaracterize the Law

In passing, ROSS asserts that for the 500 editorially enhanced opinions in its possession containing West Headnotes, Key Numbers, and other content authored by Plaintiffs' attorney-editors, Plaintiffs cannot establish ROSS acted with volitional conduct as required to establish direct copyright infringement.  Opp. at 37.  Specifically, ROSS asserts that it "did not ask for this content [500 editorially enhanced opinions] and made clear that it was not wanted."  *Id.*  But this is not the type of case where volitional conduct is at issue.  Volitional conduct "is not a judicially-created element of intent or knowledge; it is a basic requirement of causation."  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (citations omitted).  "Volitional conduct occurs when a party engages in 'the act ***constituting infringement***.'"  *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 387 (3d Cir. 2016) (citing *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004)).  Specifically, the Fourth Circuit noted that "[a]lthough copyright is a strict liability statute, there should still be some element of volition or causation which is lacking where a ***defendant's system*** is merely used to use a copy by a third party."  *CoStar*, 373 F.3d at 548 (citation omitted).  In other words, in certain types of cases where a defendant sets up a system, website, or other automated process that performed the copying, the question of volitional conduct becomes relevant to determine whether a defendant had a purposeful role in the copying actions of the automated system.[12]

---

cherry-picking snippets of documents and testimony to support its narrative, while blatantly ignoring the overwhelming amount of evidence that disproves it, is insufficient to create a genuine dispute of fact.

[12] ROSS's cited authority confirms that volitional intent must apply to the act of infringement (*i.e.*, copying), and that the concept of volitional intent applies in cases where an automated system does the copying.  *See Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006) (no volitional intent for automated process of presenting cached links); *Cartoon Network LP, LLLP v. CSC*

This case is the opposite of those where volitional conduct is analyzed. Here, ROSS set up a plan for LegalEase to surreptitiously copy Westlaw Content and provide it to ROSS, so that ROSS could use that content to train its AI. That is the act of infringement, *i.e.*, copying, in this case and ROSS has never disputed that it acted volitionally when doing so. Additionally, when ROSS received the 500 editorially-enhanced opinions, which it now concedes are in its possession, ROSS **copied** the Westlaw Content by ██████████████████████████

██████████████. *E.g.*, Ex. 42 (ROSS-000177723) (████████████████████████

████████████████████████████); Ex. 43 (ROSS-000179468) (██████████████████

██); Ex. 16 (van der Heijden 30(b)(6) Tr.) at 347:13–22 ████████████████████

████████████████████████████████████████████████████); Ex. 26 (Krein Reply Rpt.) at ¶ 40. Contrary to the types of cases where volitional conduct is at issue, and as this Court has already concluded in this case, ROSS's actions constitute copying as a matter of law. D.I. 547 at 9; *see also supra* Section I.B.1. Therefore, ROSS's tellingly belated arguments as to volitional intent do not change the outcome that a finding of direct infringement is proper.

## II.    ROSS'S DEFENSES TO COPYRIGHT INFRINGEMENT FAIL AS A MATTER OF LAW

### A.    ROSS's Arguments as to Innocent Infringement Misread the Statute and Ignore Plaintiffs' Evidence

As set forth in Plaintiffs' Motion, ROSS's "innocent infringer" defense fails for three reasons: (1) the innocent infringer defense does not prevent liability, it only limits statutory damages; (2) the defense is precluded when—as here—the copyrighted work bears a copyright notice; and (3) the innocent infringer defense only allows a reduction in statutory damages where

---

*Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("In determining who actually 'makes' a copy, a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct.").

a defendant has a ***reasonable*** and ***good-faith belief*** in innocence of its conduct.  Mot. at 27–30.  ROSS's responses to each argument do not change the outcome that Plaintiffs are entitled to summary judgment as a matter of law, as ROSS cannot paint itself as the sort of downstream purchaser who had no idea the copied material was copyrighted.  ROSS was comprised of a team of lawyers and law students who ██████████████████████████ and get copies of Westlaw Content it knew was copyrighted—ROSS nowhere denies that it knew Westlaw was copyrighted.  Indeed, ROSS has not cited any case where innocent infringement existed when a defendant sought to obtain copyrighted material through a third-party conduit.

***First***, ROSS agrees the defense only limits statutory damages.  Opp. at 37.  Thus, there is no dispute that ROSS cannot rely on an innocent infringer defense to avoid liability.

***Second***, ROSS admits that Westlaw bears a copyright notice,[13] but argues that "the copyright notice pertains to the compilation, not the headnotes, which are the subject of the summary judgment motion."  Opp. at 37.  That makes no sense, for two reasons.  As an initial matter, 17 U.S.C. § 401(b)(2) specifically provides "in the case of compilations . . . the year date of first publication of the compilation . . . is sufficient."  17 U.S.C. § 401(a) does not, as ROSS argues, require that different subparts of a compilation must each bear a separate copyright notice.  Rather, the statute merely requires that "a notice of copyright ***as provided by this section*** may be placed on publicly distributed copies."  That alone dispenses with ROSS's argument.

ROSS further argues that the analysis turns on whether a defendant has access to a published work, and here, ROSS claims there is no evidence that ROSS "directly" accessed

---

[13] For example, ROSS states in its Opposition that "every Westlaw printed page carries a disclaimed stating '*Westlaw © [date] Plaintiffs.  No claim to original U.S. Government Works.*'"  Opp. at 3; *see also id.* at 4 ("Each page of a judicial opinion when printed states 'Westlaw © [date] Thomson Reuters.  No claim to original U.S. Government Works.'").

Westlaw.  Opp. at 38.  Again, however, the statutory text of 17 U.S.C. § 401(d) says no innocent infringement applies if a notice of copyright "appears on the published copy **or** copies to which a defendant in a copyright infringement suit had access . . . ."  There is no dispute that Westlaw bears a copyright notice, including on every printed page.  And there is no dispute ROSS had in its possession, Westlaw printouts bearing a copyright notice, thus the statutory language itself is sufficient to dispense with this argument.  Tellingly, ROSS nowhere disputes that it knew Westlaw was copyrighted.[14]

In addition, ROSS's cited cases miss the mark.  In *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, plaintiff moved to strike defendant's innocent infringer defense, where defendant was a downstream distributor selling counterfeit copies of plaintiff's textbooks, which did not bear a copyright notice.  No. 13 Civ. 816, 2016 WL 5092593, at \*4 (S.D.N.Y. Sept. 19, 2016).  Plaintiff asserted defendant could not be an innocent infringer, because defendant could have purchased an authentic copy of plaintiff's work, compared it to defendant's counterfeit copies, and discovered they were counterfeit.  *Id.*  The court declined to strike the innocent infringer defense, noting that a distributor who received a high-quality counterfeit may have no reason to believe the copy is not authentic.  *Id.* at \*5.  But here, there is no counterfeit copy of Westlaw at issue, and there is no question that ROSS understood that the Westlaw Content was copyrighted.  Similarly, in *Denenberg v. LED Techs., LLC*, the court found issues of fact as to innocent infringement where the defendant asserted that a third-party marketing company sold defendant the plaintiff's copyrighted pictures as "library stock."  No. 11 Civ. 3155, 2013 WL 2153290, at \*2 (D. Colo. May

---

[14] Nor could they.  Setting aside that "[t]he plain language of the statute shows that the infringer's knowledge or intent does not affect its application," *Maverick Recording Co. v. Harper*, 598 F.3d 193, 199 (5th Cir. 2010), **and** setting aside that those working at ROSS were law students and lawyers with legal training, the fact remains that they had copies of Westlaw screenshots bearing copyright notices.

17, 2013)).  But here, there is no question ROSS knew LegalEase was using Westlaw materials to prepare memos for ROSS—ROSS specifically requested LegalEase do so.  *E.g.*, Ex. 71 (ROSS-010164290) (███████████████████████████████████████████████ █████████████████████).  ROSS simply cannot cast itself as an innocent downstream purchaser who had no idea it was obtaining copyrighted work.

**Third**, ROSS argues that Plaintiffs' evidence does not show that ROSS was unaware and had no reason to believe its acts constituted an infringement of copyright.  Opp. at 38.  But ROSS's argument ignores Plaintiffs' cited evidence reflecting ROSS is the opposite of an innocent infringer:  ROSS ██████████████████████ Mot. at 28–29, ███████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████ *Id.*  Inexplicably, ROSS instead suggests that evidence of "whether ROSS had knowledge of LegalEase's alleged infringement and use of Westlaw . . . does not exist."  Opp. at 39.  Not so.  Plaintiffs submitted evidence that ROSS already had judicial opinions, Mot. at 12, but that was insufficient, as evidenced by it contacting LegalEase ██████████████████ ████████████████████████████████████ *Id.* at 14; *see also id.* n.5 ████████████ ████████████████████████████████████████████████████████████ ████████████).  Critically, ROSS fails to argue that it had any reasonable, good-faith belief for its actions.  Nor could it, as Plaintiffs identified that ROSS had lawyers and law students who had received legal training.  Mot. at 30.  Given Plaintiffs put forth evidence that ROSS cannot show as a matter of law that it is an innocent infringer, and ROSS failed to present any evidence creating an issue of fact, judgment is warranted, as ROSS's own cited authority confirms.  *D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990) ("[I]t is not sufficient for a defendant merely

21

to claim such innocence, and then rely upon the plaintiff's failure to disprove the claim") (citing

Nimmer on Copyright § 14.04[B][2][a], at 14–40 (1989)).

**B.**    **ROSS Fails to Show Any Factual Dispute Precluding Summary Judgment of No Copyright Misuse**

ROSS then tries to use copyright misuse as a defense to justify its actions, by arguing that

Thomson Reuters seeks to expand its copyright protection to the underlying judicial opinions, but

ROSS's characterization has no basis in Plaintiffs' actions.    As stated in Plaintiffs' Motion:

(1) Thomson Reuters' registrations expressly disclaim the judicial opinions themselves, and

Thomson Reuters does not claim rights to them here, which is confirmed by the fact that ROSS

(and anyone else) can (and did) download the judicial opinions from other sources,[15] and (2) the

crown jewel of Thomson Reuters' copyrighted content is the editorial content from its attorney-

editors, including the selection and arrangement of Headnotes to corresponding case passages and

organization of the WKNS.    This is precisely the copyrighted content ROSS sought.    ROSS did

not use Westlaw to get cases.    It copied to get Plaintiffs' editorial enhancements—Plaintiffs'

"special sauce."    This is confirmed by the fact that ROSS **_already had_** the underlying judicial

opinions from other sources, yet it **_continued_** to concoct a scheme to obtain Thomson Reuters'

editorial copyrighted content.[16]

Despite this, ROSS doubles down in its Opposition, arguing that Plaintiffs "violated public

policy underlying the copyright law and federal law by extending their copyright to cover the

---

[15] For example, in its Opposition, ROSS states that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬ Opp. at 5.

[16] Moreover, ROSS's allegations of copyright misuse do not come close to any of the scenarios in which the Third Circuit has applied copyright misuse, and the fact that no misuse exists here is further underscored by this Court's recent dismissal of ROSS's antitrust claims.

language in every judicial opinion found on Westlaw."[17]  Opp. at 40.  Again, Plaintiffs have ***never*** sought protection in the underlying judicial opinions,[18] and ROSS fails to dispute that it in fact was able to obtain the judicial opinions from another source.  Instead, ROSS's dispute turns on the fact that it considers a smaller scope of material to be protectable than Plaintiffs.  Plaintiffs disagree, at least for the reasons stated above, *see supra* Section I.B., but this is nothing more than a vanilla type of copyright infringement dispute, ***not*** misuse.  ROSS has failed to show that its copyright misuse claim asserts anything more than a standard dispute regarding the proper scope of a copyright being enforced, which is a garden-variety issue present in nearly every copyright infringement case.

If this Court were to adopt ROSS's new theory that a garden-variety dispute regarding the proper scope of copyright protection can form the basis for a copyright misuse claim, the floodgates would open for every defendant in every copyright infringement case to assert misuse.  Indeed, ROSS's attempt to turn every copyright infringement claim into one of misuse flies in the face of the protections the Constitution grants to Authors and Inventors, as they could face misuse in every lawsuit where a defendant disputes the proper scope of copyright.  *See* Art. I, § 8, cl. 8.  Indeed, such unprecedented expansion of misuse would most certainly disincentivize copyright holders from protecting their rights—an outcome surely unintended by the Constitution.

---

[17] Though ROSS in passing mentions "Thomson Reuters has a history of trying to improperly assert its copyrights to thwart competition," Opp. at 40, ROSS provides no explanation, cites no evidence, and fails to address the dismissed antitrust claims.

[18] ROSS's reliance on *Omega S.A. v. Costco Wholesale Corp.* is misplaced, as the concurrence in that case found copyright misuse where Omega leveraged its copyrighted work of a globe design, to control the importation of watches bearing the globe design.  776 F.3d 692, 700–01 (9th Cir. 2015).  In other words, the concurrence determined that using a copyrighted work (globe design) to protect an ***unprotected separate work*** (a functional watch) was copyright misuse.  Here, Plaintiffs have registrations in Westlaw, thus, no parallel can be drawn.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grants summary judgment in their favor on their direct copyright infringement claim, against ROSS's merger, scènes à faire, innocent infringement, and copyright misuse defenses.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mflynn@morrisnichols.com

*Attorneys for Plaintiffs and Counterdefendants Thomson Reuters Enterprise Center GmbH and West Publishing Corporation*

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Eric A. Loverro
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Daniel E. Laytin, P.C.
Christa C. Cottrell, P.C.
Alyssa C. Kalisky
Cameron Ginder
Vanessa Barsanti
Danielle O'Neal
Jonathan Emmanuel
Lexi Wung
Max Samels
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

November 13, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 13, 2024, upon the following in the manner indicated:

David E. Moore, Esquire                                   *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                                   *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
Matthew J. McBurney, Esquire
Keith J. Harrison, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Jacob Canter, Esquire                                     *VIA ELECTRONIC MAIL*
Warrington Parker, Esquire
Anna Z. Saber, Esquire
Beatrice B. Nguyen, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

Emily T. Kuwahara, Esquire                                *VIA ELECTRONIC MAIL*
Jordan Ludwig, Esquire
CROWELL & MORING LLP
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
*Attorneys for Defendant and Counterclaimant*

Ryan Henry Seewald, Esquire      *VIA ELECTRONIC MAIL*
CROWELL & MORING LLP
1601 Wewatta Street, Suite 815
Denver, CO 80202
*Attorneys for Defendant and Counterclaimant*


        */s/ Michael J. Flynn*
        _____
        Michael J. Flynn (#5333)