IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE
CENTRE GMBH and WEST PUBLISHING
CORPORATION,

     Plaintiffs and
     Counterdefendants,

  v.

ROSS INTELLIGENCE INC.,

     Defendant and
     Counterclaimant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 20-613 (SB)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL UNDER
28 U.S.C. § 1292(B) AND FOR STAY PENDING APPEAL**

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Jeremy King
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mflynn@mnat.com

Yungmoon Chang
Allyn Belusko
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
(213) 680-8400

*Attorneys for Plaintiffs Thomson Reuters
Enterprise Center GmbH and West Publishing
Corporation*

April 1, 2025

## <u>TABLE OF CONTENTS</u>

SUMMARY OF ARGUMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 4

PROCEDURAL BACKGROUND .................................................................................. 5

ARGUMENT ................................................................................................................... 6

I.     THE COURT SHOULD DENY ROSS'S REQUEST FOR CERTIFICATION .............. 6

     A.     ROSS Does Not Seek Certification of Controlling Questions
           of Pure Law ........................................................................................... 7

     B.     This Case Does Not Implicate Legal Questions on Which There is
           Substantial Ground for Difference of Opinion ...................................... 9

     C.     Immediate Appeal Will Not Materially Advance Termination of
           this Dispute ......................................................................................... 16

     D.     No Exceptional Circumstances Warrant Permitting Immediate
           Appeal ................................................................................................. 20

II.    ROSS'S REQUEST FOR A STAY SHOULD BE DENIED .......................................... 20

CONCLUSION .............................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster Inc.*,
   239 F. 3d 1004 (9th Cir. 2001) ...................................................................15

*In re AE Liquidation, Inc.*,
   451 B.R. 343 (D. Del. 2011).........................................................................1

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
   219 F.3d 674 (7th Cir. 2000) ....................................................................7, 9

*Am. Geophysical Union v. Texaco Inc.*,
   802 F. Supp. 1 (S.D.N.Y. 1992).............................................................11, 16

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   598 U.S. 508 (2023)............................................................................2, 11, 15

*Apex Funding Source, LLC v. Williams Land Clearing, Grading & Timber Logger, LLC*,
   2024 WL 3678353 (E.D.N.C. Aug. 5, 2024) ..............................................10

*Arista Recs., Inc. v. Flea World, Inc.*,
   2006 WL 2882990 (D.N.J. Oct. 10, 2006)...................................................8

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
   931 F. Supp. 2d 537 (S.D.N.Y. 2013)........................................................13

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015)..................................................................13, 14

*Averhart v. Commc'ns Workers of Am.*,
   2016 WL 1162628 (D.N.J. Mar. 24, 2016).................................................18

*Bachowski v. Usery*,
   545 F.2d 363 (3d Cir. 1976).......................................................................20

*In re Broadstripe, LLC*,
   2009 WL 774401 (D. Del. Mar. 26, 2009) .................................................19

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).....................................................................................11

*Capitol Recs. LLC v. ReDigi Inc.*,
   2013 WL 12618509 (S.D.N.Y. June 21, 2023) .......................................7, 16

*Commonwealth of Pennsylvania v. Think Fin., Inc.*,
2016 WL 7227538 (E.D. Pa. Mar. 31, 2016) ........................................................2

*Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*,
2022 WL 548123 (D. Del. Feb. 11, 2022) ........................................................7, 10

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) ........................................................1

*Dolphin Inc. v. AIG Specialty Ins. Co.*,
2021 WL 11886101 (D. Ariz. June 8, 2021) ........................................................12

*In re: Domestic Drywall Antitrust Litig.*,
2016 WL 2941114 (E.D. Pa. May 20, 2016) ........................................................19

*E.E.O.C. v. Hora, Inc.*,
2005 WL 1745450 (E.D. Pa. July 22, 2005) ........................................................8

*Eliahu v. Mediaite, LLC*,
2024 WL 4266323 (S.D.N.Y. Sept. 23, 2024) ........................................................16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ........................................................2, 10, 11, 12

*Ford Motor Credit Co. v. S.E. Barnhardt & Sons, Inc.*,
664 F.2d 377 (3d. Cir. 1981) ........................................................7

*Gen. Dynamics Corp. v. Am. Tel. & Tel. Co.*,
658 F. Supp. 417 (N.D. Ill. 1987) ........................................................19

*Gialde v. Time, Inc.*,
480 F.2d 1295 (8th Cir. 1973) ........................................................18

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021) ........................................................11, 14, 15

*Harper & Row Publ'rs, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) ........................................................11, 13, 15

*Hart v. Rick's Cabaret Int'l, Inc.*,
73 F. Supp. 3d 382 (S.D.N.Y. 2014) ........................................................13

*Hulmes v. Honda Motor Co.*,
936 F. Supp. 195 (D.N.J. 1996) ........................................................10

*Ins. Co. of Pa. v. City of Long Beach*,
2007 WL 9700628 (C.D. Cal. May 7, 2007) ........................................................12

iv

*Kadrey v. Meta Platforms, Inc.*,
No. 3:23-cv-03417 (N.D. Cal. Mar. 10, 2025) ..................................................... 3

*Katz v. Carte Blanche*,
496 F.2d 747 (3d Cir. 1974) ........................................................................... 10

*Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*,
217 F.R.D. 235 (D.D.C. 2003) ........................................................................ 13

*Knipe v. SmithKline Beecham*,
583 F. Supp. 2d 553 (E.D. Pa. 2008) ............................................................. 19

*Lenz v. Universal Music Corp.*,
2008 WL 4790669 (N.D. Cal. Oct. 28, 2008) ................................................. 16

*Lillehagen v. Alorica, Inc.*,
2014 WL 2009031 (C.D. Cal. May 15, 2014) .................................................. 18

*Link v. Mercedes-Benz of N. Am., Inc.*,
550 F.2d 860 (3d Cir. 1977) ............................................................................. 9

*Martin v. Garrett*,
2020 WL 4700717 (W.D.N.C. Aug. 13, 2020) ............................................... 10

*Matthew Bender & Co. v. West Publ'g Co.*,
158 F.3d 674 (2d Cir. 1998) ........................................................................... 11

*In re Maxus Energy Corp.*,
611 B.R. 532 (D. Del. 2019) ...................................................................... 6, 18

*McCague v. Trilogy Corp.*,
2007 WL 9811124 (E.D Pa. Apr. 10, 2007) ................................................... 16

*McCoy v. Favata*,
2020 WL 5891898 (D. Del. Oct. 5, 2020) ........................................................ 9

*Milbert v. Bison Lab'ys, Inc.*,
260 F.2d 431 (3d Cir. 1958) ....................................................................... 1, 18

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*,
2013 WL 6506570 (M.D. Pa. Dec. 12, 2013) ................................................. 19

*Moebius v. HB USA Holdings, Inc.*,
2021 WL 9747608 (C.D. Cal. Sept. 3, 2021) ............................................... 8, 9

*In re Moon Group, Inc.*
2023 WL 3848338 (D. Del. June 6, 2023) ...................................................... 19

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295 (3d Cir. 2011)............................................................................13

*Orson, Inc., v. Miramax Film Corp.*,
    867 F.Supp. 319 (E.D. Pa. 1994) ................................................................17

*In re Physiotherapy Holdings, Inc.*,
    2017 WL 6524524 (D. Del. Dec. 21, 2017)..................................1, 10, 11

*Piazza v. Major League Baseball*,
    836 F.Supp. 269 (E.D. Pa. 1993) ................................................................17

*Princeton Univ. Press v. Mich. Document Servs., Inc.*,
    99 F.3d 1381 (6th Cir. 1996) ......................................................................15

*Pub. Int. Rsch. Grp. Of New Jersey v. Hercules, Inc*,
    830 F. Supp. 1549 (D. N.J. 1993) ..............................................................19

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ......................................................................10

*Richardson Elecs., Ltd. v. Panache Broad. of Pennsylvania, Inc*.,
    202 F.3d 957 (7th Cir. 2000) ......................................................................20

*Rimini St., Inc. v. Oracle Int'l Corp.*,
    2021 WL 4037482 (D. Nev. Sept. 2, 2021) .........................7, 8, 17, 18

*Scanlon v. Life ins. Co. of N. Am.*,
    2009 WL 10676074 (W.D. Wash. Dec. 18, 2009) ....................................18

*Sega Enters. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992) ....................................................................14

*Segal v. Strausser Enters., Inc.*,
    2019 WL 5537713 (E.D. Pa. Oct. 24, 2019)..............................................10

*Shurance v. Plan. Control Int'l, Inc.*,
    839 F.2d 1347 (9th Cir. 1988) ....................................................................18

*Silverstein v. Penguin Putnam, Inc.*,
    522 F. Supp. 2d 579 (S.D.N.Y. 2007)........................................................12

*Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*,
    689 F.3d 29 (1st Cir. 2012)........................................................................13

*Sony Comput. Entm't, Inc. v. Connectix Corp*.,
    203 F.3d 596 (9th Cir. 2013) ......................................................................14

*Spears v. Washington Mut. Bank FA*,
    2010 WL 54755 (N.D. Cal. Jan. 8, 2010) ................................................................20

*TikTok Inc. v. Garland*,
    145 S. Ct. 57 (2025) ....................................................................................................6

*In re TK Holdings*,
    2021 WL 3796878 (D. Del. Aug. 26, 2021) ...........................................6, 8, 9, 16

*United States v. Exide Corp.*,
    2002 WL 992817 (E.D. Pa. May 15, 2002) .........................................................2, 16

**Statutes**

28 U.S.C. § 1292(b) ................................................................................... *passim*

## SUMMARY OF ARGUMENT

With trial looming next month, ROSS's request that the Court further delay this case by allowing a piecemeal appeal to proceed on mixed questions of law and fact that would inevitably require the Third Circuit to delve into the specific facts of this case is completely unjustifiable. Section 1292(b) appeals require "exceptional circumstances [that] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (internal quotations omitted). Applying this principle, the Third Circuit has held that "[i]t is quite apparent from the legislative history of the Act of September 2, 1958 that Congress intended that section 1292(b) should be sparingly applied." *Milbert v. Bison Lab'ys, Inc.*, 260 F.2d 431, 435 (3d Cir. 1958).

ROSS comes nowhere close to showing that the requirements of Section 1292(b) are met here, let alone that there are exceptional circumstances warranting certification of this Court's Order of February 11, 2025 (D.I. 770, "Order"). ***First***, unlike the quick and clean questions of "pure law" that are appropriate for interlocutory appeal, *In re AE Liquidation, Inc.*, 451 B.R. 343 (D. Del. 2011), the two questions ROSS seeks to certify—(1) whether Plaintiffs' headnotes satisfy the Copyright Act's originality requirement, and (2) whether ROSS's copying of those headnotes constituted fair use[1]—are fact-bound and would require the Third Circuit to review the Court's application of the law to the facts. ROSS's Motion can be denied for this reason alone.

***Second***, ROSS cannot show substantial ground for difference of opinion stemming from

---

[1] The two questions ROSS seeks to certify are: "1. Westlaw headnotes excerpt legal points from public-domain judicial opinions, tracking the language of the opinion as much as possible. Do the headnotes fail the Copyright Act's originality requirement because the notes lack "creative spark"? 2. ROSS used .076% of the publicly-available Westlaw headnotes as an intermediary step in training its AI legal search system to recognize language patterns and then provide an advanced, inexpensive, and different way to access millions of public judicial opinions. Is ROSS's use a transformative or otherwise fair use of the headnotes?" Mot. 6.

"genuine doubt as to the correct legal standard," as is also required under Section 1292(b), *In re Physiotherapy Holdings, Inc.*, 2017 WL 6524524, at *6 (D. Del. Dec. 21, 2017) (emphasis added) (denying motion for leave to file interlocutory appeal). The legal standards for originality and fair use are well developed, and have been the subject of multiple binding Supreme Court opinions. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). ROSS's belief that the Order was wrongly decided is not sufficient. *Commonwealth of Pennsylvania v. Think Fin., Inc.*, 2016 WL 7227538, at *1, n.1 (E.D. Pa. Mar. 31, 2016).

*Third*, ROSS also cannot show an immediate appeal would materially advance the ultimate termination of this litigation, because "triable issues would remain even after a successful appeal." *United States v. Exide Corp.*, 2002 WL 992817, at *2 (E.D. Pa. May 15, 2002). Whatever the Third Circuit might do with respect to ROSS's questions, numerous issues would remain in the case, including infringement of editorial content besides the West Headnotes (with respect to Question 1) and tortious interference with contract (with respect to either question). As a result, there will be another trial no matter what and yet another appeal down the line is virtually guaranteed. Moreover, the Parties are right on the brink of trial now. The trial is already short and streamlined. Allowing an immediate appeal will serve to only further delay the ultimate termination of what is already a very advanced, and already delayed, litigation.

*Finally*, ROSS cannot point to exceptional circumstances justifying immediate appeal. Unable to meet the statutory requirements, ROSS attempts to manufacture a sense of urgency by characterizing the Court's measured Order as a sweeping referendum on all of AI. ROSS insists

that since February 11, 2025, there has been a "pronounced chill on AI innovation."[2]  D.I. 787 ("Mot.") 1, 7. In reality, since the Order, the steady flow of AI developments, announcements, and innovations has continued at a clipped pace.[3]  Why has the world of AI not come to a screeching halt?  Because the Court did not purport to definitively resolve the question of "how copyright law applies to use of works by an artificial intelligence system" (Mot. 7-8) in all scenarios. Rather, the Court issued a measured opinion that applied accepted legal standards directly from Supreme Court precedent to the specific, undisputed facts of ***this case***.[4]

Ultimately, this case implicates many different issues that may be relevant to an appeal. The Third Circuit deserves to be working off of a final judgment, not a piecemeal, partial record. And despite ROSS's overblown efforts to paint this case as risking "America's preeminence" (Mot. 1) and threatening to "shut down the very innovation" (Mot. 7), there is no reason ROSS cannot wait a mere ***month*** to bring a single appeal that can be dealt with in one go, consistent with the normal finality rule. ROSS has not been operational for five years; the Order does not create some imminent threat to ROSS that requires resolution before the trial can proceed. And it

---

[2] Though ROSS claims to provide "justice for many," ROSS is a for-profit company that targeted law firms.

[3] On February 18, 2025, X.AI debuted Grok 3. *See* https://www.cnn.com/2025/02/18/tech/grok-3-release-elon-musk/index.html.  On February 27, 2025, OpenAI unveiled GPT-4.5, its largest AI model yet. *See* https://techcrunch.com/2025/02/27/openai-unveils-gpt-4-5-orion-its-largest-ai-model-yet/. On March 1, 2025 Amazon introduced Alexa Plus with new AI features. *See* https://www.theverge.com/the-vergecast/621514/alexa-plus-amazon-ai-vergecast. On March 7, 2025, Meta unveiled LLaMA 4, a new voice-powered AI model. *See* https://www.pymnts.com/meta/2025/meta-expands-voice-powered-ai-with-llama-4/. The list goes on.

[4] ROSS argues that this case has had a wide impact, citing *Kadrey v. Meta Platforms, Inc.*, Plaintiffs' Motion for Partial Summary Judgment, No. 3:23-cv-03417 (N.D. Cal. Mar. 10, 2025). It is unclear why another plaintiff attempting to liken its facts to the facts of this case makes this case "exceptional". ROSS also cites a WIRED article the *predates* the Order, (Mot. 7, n.2), and mischaracterizes the article as saying the outcome of *this case* could make or break the industry when the article actually refers to dozens of pending AI cases. If anything, this article and ROSS's other citation to a "Map of all 30 copyright suits v. AI" (Mot. 8, n.3) shows that this case is not the be all end all for AI—there are dozens of cases pending.

is telling that ROSS has not rushed to bring this appeal—it waited over a month to move, during which time the parties have been busily preparing for trial. Accordingly, ROSS's motion for certification for interlocutory appeal and for stay pending appeal should be denied.

## FACTUAL BACKGROUND

The facts of this case are detailed in Plaintiffs' summary judgment submissions and the Court's orders, but Plaintiffs give a brief summary herein. Westlaw offers subscribers access to a collection of editorially enhanced judicial opinions arranged within an original classification system, the WKNS. D.I. 673 ("Plaintiffs' Opening Brief on Fair Use") at 7. West's attorney-editors create editorial enhancements, including synopses of cases and West Headnotes, which identify and synthesize key issues and holdings. *Id.* West's attorney-editors draft the specific wording of the West Headnotes, decide which concepts and points of law to include, make creative choices about which opinions to annotate, how many West Headnotes to create for a given judicial opinion, and which case passages should be linked to which West Headnotes, among other choices. *Id.* Different legal research platforms do this differently; LexisNexis provides differently written headnotes in a different number than Westlaw. *Id.* West's attorney-editors also decide which "Key Numbers"—*i.e.*, more granular legal topics—are assigned to West Headnotes for purposes of integrating the West Headnotes into the West Key Number System ("WKNS"). *Id.* The Westlaw Content reflects decades of creative choices about how to explain, organize, classify, and synthesize the law. D.I. 716 at 6–7. This Court held that the West Headnotes and WKNS are sufficiently creative to warrant copyright protection. Order at 5, 7.

ROSS created the ROSS platform in 2014 as a replacement for Westlaw. *Id.* To create the ROSS platform, ROSS wanted a large set of content to teach its AI model how to answer legal questions. *Id.* at 9. ROSS already had a large set of ***judicial opinions*** that it purchased from

4

Casemaker. *Id*. But ROSS wanted ***legal analysis***—"legal memos" containing legal questions mapped to relevant passages from judicial opinions that answered the essential elements of the query. *Id*. After unsuccessfully attempting to gain access both directly and through numerous third-parties, ROSS ultimately obtained access to Westlaw through LegalEase, which it knew had access. *Id* at 9–10. ROSS contracted with LegalEase to provide training content, including 25,000 legal memos (the "Bulk Memos") that copied Westlaw Content. *Id*. at 3, 10. LegalEase copied Westlaw Content in the process of creating the Bulk Memos and ROSS then copied the Bulk Memos (and the Westlaw Content therein) multiple times to train its AI algorithm. *Id*. at 11. In its first summary judgment opinion, this Court found that ROSS actually copied Westlaw Content, and in its second summary judgment opinion, found both actual copying and substantial similarity, holding ROSS liable for direct copyright infringement. Order at 10.

## PROCEDURAL BACKGROUND

This case has been pending for nearly five years and is on the brink of trial. On May 6, 2020, Plaintiffs commenced this lawsuit asserting copyright infringement and tortious interference with contract. D.I. 1. ROSS filed its Second Amended Answer to Plaintiffs' Complaint asserting twenty-three defenses. D.I. 225 ("SAA") 7–11. On December 22, 2022, the Parties moved for summary judgment. D.I. 250; D.I. 252; D.I. 254; D.I. 270; D.I. 272. On September 25, 2023, the Court granted in part and denied in part Plaintiffs' motion for summary judgment on copyright infringement by granting the motion with respect to actual copying. D.I. 547. The Court granted Plaintiffs' motion for summary judgment on ROSS's miscellaneous defenses, and denied the motions with respect to fair use. *Id*. 15–26, 33–34.

On August 22, 2024, the day before trial was to start, the Court held a videoconference at which it found that the parties would be permitted to renew their summary judgment motions on

certain issues, including fair use. D.I. 663. The Court issued an order to continue the trial. *Id.* On October 1, 2024, Plaintiffs moved for summary judgment on fair use and other affirmative defenses (D.I. 672) as well as direct infringement (D.I. 674). ROSS moved for summary judgment on fair use. D.I. 676. On November 5, 2024, the Court ordered a new trial date and scheduled trial to begin on May 12, 2025. D.I. 722. On December 20, 2024, the Court ordered the pretrial conference be scheduled for April 9, 2025. D.I. 756. On February 11, 2025, the Court granted Plaintiffs' motions for summary judgment on direct infringement and fair use, and denied ROSS's cross-motion. D.I. 770. The parties have been hard at work preparing for trial. On March 10 and 17, 2025, the Parties exchanged various pre-trial submission. It was not until March 18, 2025 – over a month since the Order – that ROSS brought this Motion.

## ARGUMENT

## I.    THE COURT SHOULD DENY ROSS'S REQUEST FOR CERTIFICATION

A "'[p]iecemeal litigation is generally disfavored by the Third Circuit.'" *In re Maxus Energy Corp.,* 611 B.R. 532, 538 (D. Del. 2019). To warrant leave to appeal under § 1292(b), there must be "an order (i) that involves a controlling question of law, (ii) as to which there exists a substantial ground for difference of opinion, and (iii) the disposition of which may materially advance the ultimate determination of the litigation."[5] *In re TK Holdings*, 2021 WL 3796878, at *3 (D. Del. Aug. 26, 2021) (denying motion for leave to appeal). In addition, "[e]ntertaining review of an interlocutory order under § 1292(b)" is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *Id.* Here, the Order

---

[5] ROSS compares this lawsuit to *TikTok Inc. v. Garland*, implying immediate appeal is needed because ROSS's innovation is "central to the future of the United States." 145 S. Ct. 57, 62 (2025); Mot. 7. But *TikTok* involved a law that imminently threatened TikTok's United States operations with closure, and implicated national security concerns. *Id.* No similar laws are at issue here, and ***ROSS has been shut down for five years already***. There is nothing imminent.

does not meet these stringent requirements.

### A.    ROSS Does Not Seek Certification of Controlling Questions of Pure Law

ROSS correctly articulates the standard for a "controlling" question of law as "a pure question of law, something the court of appeals [can] decide quickly and cleanly *without having to study the record*." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (Posner, J.) (emphasis added)[6]; Mot 8. In other words, the question posed must be resolvable *without "the need to review the district court's application of law to facts*." *Capitol Recs. LLC v. ReDigi Inc.*, 2013 WL 12618509, at *1 (S.D.N.Y. June 21, 2023) (emphasis added) (finding question of whether defendant reproduced plaintiff's copyrighted work was not a pure question of law). For instance, this Court certified the questions "What is the scope of the Consumer Financial Protection Bureau's enforcement authority? And is ratification required if a federal agency files suit while it is unconstitutionally structured?"—examples of pure legal questions at a high level of abstraction and general applicability. *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, 2022 WL 548123, at *1 (D. Del. Feb. 11, 2022) (J. Bibas), *certified question answered and remanded*, 96 F.4th 599, 600 (3d Cir. 2024). By contrast, in *Rimini St., Inc. v. Oracle Int'l Corp.*, the court refused to grant an interlocutory appeal from an order on summary judgment because it was "uniquely tied to the factual questions at play in this case." 2021 WL 4037482, at *6 (D. Nev. Sept. 2, 2021). The court's order interpreted the law and found that Rimini's update was a derivative work thereunder—it "did not hold that an update is *always* a derivative work," and thus the question could not be completely abstracted "out of the details of the evidence or facts of a particular case" to be given "general relevance." *Id.* at 6.

Neither of ROSS's questions for certification meet this stringent criterion because neither

---

[6] For example, in *Ford Motor Credit Co. v. S.E. Barnhardt & Sons, Inc.*, which ROSS cites, the question of law was an interpretation of code on mining operation. 664 F.2d 377 (3d. Cir. 1981).

is a pure question of law. ROSS seeks certification of two questions: (1) "Do the headnotes fail the Copyright Act's originality requirement because the notes lack 'creative spark'" and (2) "Is ROSS's use a transformative or otherwise fair use of the headnotes?"  Both questions concern the Court's application of the law to the specific facts of this case, and cannot be answered without reference to the facts at hand. As in *Rimini*, neither question is of "general relevance"— the questions here concern "the headnotes" (which are specific to Plaintiff's editorial process of selecting and synthesizing judicial opinions) and "ROSS's use" (which is specific to what ROSS did with the content from Westlaw, why it copied the content, and how that use impacted Plaintiff's market). 2021 WL 4037482, at *6. *See also E.E.O.C. v. Hora, Inc.*, 2005 WL 1745450, at *3 (E.D. Pa. July 22, 2005) (application of law to the facts at issue was not a "controlling question of law."); *TK Holdings*, 2021 WL 3796878, at *3 (order that considered the "specific facts of this case" was not purely legal). "The antithesis of a pure question of law is one that asks whether the district court properly applied settled law to the facts or evidence of a particular case," *Moebius v. HB USA Holdings, Inc.*, 2021 WL 9747608, at *2 (C.D. Cal. Sept. 3, 2021), yet that is exactly what ROSS seeks to do here.

ROSS's conclusory arguments on this requirement (Mot. 8–9) are insufficient. *First*, with respect to originality, ROSS argues that the Court found that "Copyright validity is a question of law, not fact."  Order at 5. But whether the headnotes meet the originality requirement—which is ROSS's question for appeal—requires applying the law to the undisputed facts of *this case*, as the Court did in its Order. *See* Order at 4 (describing the headnotes as involving editorial choices about what is important); *Arista Recs., Inc. v. Flea World, Inc.*, 2006 WL 2882990, at *2 (D.N.J. Oct. 10, 2006) (finding "questions about a district court's application of the facts of a case to established legal standards are not controlling questions of law for purposes of Section

1292(b)."). And although ROSS claims it is not asking the Third Circuit to "hunt[] through the record" in search of a material dispute (Mot. 8), it later contradicts this point when it says "*perhaps, originality and fair use are jury questions after all*" (Mot. 18) (emphasis added).[7] Even in *Link v. Mercedes-Benz of N. Am., Inc.,* on which ROSS heavily relies for its claim that this is a controlling question of law, although the district court granted leave, the Third Circuit *declined* to answer either certified question, because the analysis too fact intensive for an interlocutory appeal. 550 F.2d 860 (3d Cir. 1977). So too here.

**Second**, with respect to fair use, ROSS is right that the ultimate balancing of fair use involves legal work—that is why it is so appropriate for summary judgment. But fair use is still admittedly "a mixed question of law and fact," (Mot. 8), which makes it inappropriate for interlocutory appeal, *see McCoy v. Favata*, 2020 WL 5891898, at *2 (D. Del. Oct. 5, 2020) ("An order involves a 'controlling question of law' when it concerns a question of law, as opposed to one of fact or a mixed question of law and fact."). The application of a multifactor test, like fair use, is *particularly* ill-suited to interlocutory appeal for this reason. *See Moebius*, 2021 WL 9747608, at *3 (finding fair use was not a controlling question of law). And this makes sense. It is hard to see how the Third Circuit could possibly balance the fair use factors "quickly and cleanly," let alone without "having to study the record," as the Court painstakingly did in its Order. *See Ahrenholz,* 219 F.3d at 677. In sum, instead of clarifying the standard, ROSS wants to ask the Third Circuit how to apply a known standard to this case's facts. That is not sufficient.

### B.    This Case Does Not Implicate Legal Questions on Which There is Substantial Ground for Difference of Opinion

Next, ROSS must show that "there exists a substantial ground for difference of opinion"

---

[7] During conferral on this Motion, counsel for Plaintiffs asked counsel for ROSS if they intended to argue there were factual disputes precluding summary judgment and ROSS's counsel indicated that they may. April 1, 2025, Declaration of Miranda D. Means at ¶ 2.

with respect to the controlling questions of law it seeks to certify. *TK Holdings*, 2021 WL 3796878, at \*3. That the Court originally held there were factual disputes for the jury on originality and fair use and then reassessed that finding as it dug deeper in preparation for trial, does not mean this case implicates a matter of law on which there are "substantial grounds for difference of opinion," as ROSS argues. Mot. 9, 16. To satisfy this requirement "the difference of opinion must arise out of [a] ***genuine doubt as to the correct legal standard***." *Physiotherapy Holdings*, 2017 WL 6524524, at \*13 (emphasis added) (denying motion for leave to file interlocutory appeal) (*citing Hulmes v. Honda Motor Co.,* 936 F. Supp. 195, 208 (D.N.J. 1996), *aff'd*, 141 F.3d 1154 (3d Cir. 1998)); *Id.* at \*6; *Martin v. Garrett*, 2020 WL 4700717, at \*3 (W.D.N.C. Aug. 13, 2020) (finding "for interlocutory appeals, it matters not whether the lower court simply got the law wrong, but ***whether courts themselves disagree as to what the law is***."). This was so in one of the cases ROSS points to, *Consumer Fin. Prot. Bureau*, where there was doubt as to the legal standard itself, and an absence of controlling law. 2022 WL 548123, at \*2.[8] By contrast, "[a] legal standard is not infirm because reasonable judges may apply the same standard to similar facts and reach different results." *Apex Funding Source, LLC v. Williams Land Clearing, Grading & Timber Logger, LLC*, 2024 WL 3678353, at \*2 (E.D.N.C. Aug. 5, 2024); *Segal v. Strausser Enters., Inc.*, 2019 WL 5537713, at \*3 (E.D. Pa. Oct. 24, 2019) ("A doctrine that is difficult to apply is not inherently unsettled law; difficulty of application does not inherently provide substantial ground for difference of opinion.").

There is no doubt about the correct legal standard to apply on both questions here. With

---

[8] ROSS's cites *Katz v. Carte Blanche*, but there the Third Circuit says little about this requirement other than to defer strongly to the district court. 496 F.2d 747 (3d Cir. 1974). And that case was a class certification question that does not involve similar issues to those here. *Reese v. BP Exploration (Alaska) Inc.* involved general questions of law about whether certain evidence could be used, not the application of an established legal standard to the facts of the case. 643 F.3d 681, 687 (9th Cir. 2011).

respect to originality, the Court applied the standard articulated in *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, which held that "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." 499 U.S. at 345. With respect to fair use, the standard is also well-established by extensive case-law applying the four factors. ROSS cites *Am. Geophysical Union v. Texaco Inc.*'s finding that "the decisions of the Supreme Court on fair use have not formulated a clear framework or standard governing future cases," in support of its claim that the fair use standard is somehow in doubt. 802 F. Supp. 1, 30 (S.D.N.Y. 1992); Mot. 11–12.[9] That may have been true in 1992, but it is difficult to say that with a straight face in 2025, when the Supreme Court articulated the fair use framework clearly in *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994); *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021); and most recently, in *Warhol*, 598 U.S. at 508.

ROSS's arguments are meritless. With respect to **_originality_**, **_first_**, ROSS claims that the "Second Circuit has explained why the Westlaw headnotes lack originality" and that thus the Court "should have granted ROSS's partial summary judgment motion" on lack of originality. Mot. 10. ROSS is wrong. It cites *Matthew Bender & Co. v. West Publ'g Co.* on this, (Mot. 12), which involved judicial opinions with headnotes or other editorial enhancements removed, not the enhancements themselves. 158 F.3d 674, 680 (2d Cir. 1998). That a case with different facts came out differently is not evidence that there is "substantial ground for difference of opinion" here. *Physiotherapy Holdings*, 2017 WL 6524524, at *13.[10]

---

[9] That case also differs from this one because the parties agreed an immediate appeal would "make overall settlement likely," there was "no controlling precedent," and "[t]rial could occupy the court for many months," none of which is true here. 802 F.Supp. at 29–30.

[10] ROSS cites *Harper & Row Publ'rs, Inc. v. Nation Enters.*, but there the Court did not reach the issue of originality. 471 U.S. 539, 548 (1985).

**Second**, ROSS argues that the Court's Order credited Plaintiffs' "labor" or "sweat of the brow" rather than their creativity. Mot. 10–11. But the Court applied *Feist* in assessing whether the headnotes had a minimal creative spark. Order at 6–7. This is evident from the very passage of the Order ROSS cites, "a headnote **can introduce creativity** by distilling, synthesizing, or explaining part of an opinion." Mot. 10; Order at 7. ROSS characterizes the Court's sculptor analogy as crediting "labor" over creativity, but the whole point of the analogy is not that it takes a lot of labor to make a sculpture but that the decisions for what to remove are **creative** decisions.

**Third**, ROSS argues that the Court "erred in its copyrightability rulings" with respect to the WKNS. Mot. 11. That is not part of the question ROSS seeks to certify, so it is unclear how it is relevant. Moreover, in so arguing, ROSS cites an irrelevant case[11] and ignores record evidence of the creativity of the WKNS. *Supra* 4. ROSS does not assert there is doubt about what the standard is, it merely disagrees with the Court's application of the law to the WKNS, which is not sufficient. *See Ins. Co. of Pa. v. City of Long Beach,* 2007 WL 9700628, at *1 (C.D. Cal. May 7, 2007) ("[E]very decision by a judge in an adversarial proceeding results in at least one party convinced that the court got it wrong; if such disagreement were sufficient under section 1292(b), every judgment would give rise to an interlocutory appeal."); *Dolphin Inc. v. AIG Specialty Ins. Co.*, 2021 WL 11886101, at *3 (D. Ariz. June 8, 2021) (finding difference of opinion element is not met where "a party [merely] disagrees with a court's decision and cites to similar cases decided differently.").

With respect to **<u>fair use</u>**, ROSS's arguments are similarly meritless. **First**, ROSS argues that fair use is a "flexible" concept and "its application may very well vary depending on the

---

[11] ROSS cites *Silverstein v. Penguin Putnam, Inc.* where the court found that a selection could be copyrightable "if Silverstein exercised some creativity" and found that there was not sufficient creativity where selection was compelled. 522 F. Supp. 2d 579, 599 (S.D.N.Y. 2007). That is not true here, and in fact different legal research platforms do it differently. *Supra* 4.

context." Mot. 12. But if anything, the nature of fair use as flexible and fact dependent is a reason interlocutory appeal is inappropriate here. *Supra* 9; *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 239 (D.D.C. 2003) ("Where the crux of an issue decided by the Court is fact-dependent, the Court has not decided 'a controlling question of law' justifying immediate appeal"); *Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 395 (S.D.N.Y. 2014).

**Second**, ROSS argues that it was improper for the Court to weigh the first and fourth factors most heavily, and that it rigidly treated fair use like a "score card that promises victory." Mot. 13. But that is not what the Court did. The Court weighed all the factors "together," and found that "Factor two matters less than the others, and factor four matters more." Order at 23. There is nothing wrong with this approach. The Supreme Court held that fourth factor is "undoubtedly the single most important element of fair use." *Harper*, 471 U.S. at 566. The second factor, by contrast, "has rarely played a significant role in the determination of a fair use dispute." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015). With respect to the first factor, the Third Circuit in *Murphy v. Millennium Radio Grp. LLC* found commerciality strongly weighed against fair use. 650 F.3d 295, 308 (3d Cir. 2011).

**Third**, ROSS claims the Court "deemphasized" the small percentage of the total West Headnotes copied. Mot. 13. Not so. The Court expressly considered and rejected this argument because it found that "just as taking 300 words out of President Ford's memoirs counted as taking the heart of the work, so too can ROSS's taking of several thousand headnotes out of Westlaw." Order at 21. Even assuming ROSS's (incorrect)[12] percentage is true, "small takings" of a large whole can be qualitatively significant. *Associated Press v. Meltwater U.S. Holdings,*

---

[12] ROSS's figure only accounts for a subset of the bulk memos—as explained in Plaintiffs' opening brief, ROSS is responsible for LegalEase's copying of **hundreds of thousands** of editorially enhanced Westlaw cases. D.I. 673 at 38–39.

*Inc.*, 931 F. Supp. 2d 537, 558 (S.D.N.Y. 2013); *see also Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*, 689 F.3d 29, 63 (1st Cir. 2012). ROSS claims that in *Google*, the small amount copied played a "central role in the fair use analysis," (Mot. 13), but ROSS misunderstands how that case handled factor three. In *Google*, the Court did not consider just the amount of copying in a vacuum (indeed, the amount of copying was "large" in *Google*, consisting of 11,500 lines of code), but instead looked at the copying in relation to Google's transformative purpose. 593 U.S. at 33–34. ROSS's copying was not tied to a valid transformative purpose, but rather, its goal was to create a directly competing and substitutive product. Its *Google* comparison is thus inapt.

**Fourth**, ROSS argues that the Court was wrong on factor one. Mot. 14–15. It asserts ROSS's copying "is transformative intermediate copying" similar to that in *Sony*, *Sega*, and *Authors Guild*, as ROSS copied to increase "access to public information" and "communicate something new." *Sony Comput. Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2013); *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992); Mot. 14–15. There are many errors to unpack. In *Sega*, the Ninth Circuit found "disassembly" of code was fair use where "the **only way** to gain access to the ideas and functional elements embodied in the copyrighted computer program" **and** there was a "**legitimate** reason for seeking such access," namely, compatibility. 977 F.3d at 1520-28. Literally none of these facts are present here. Copying was not the only way to gain access to ideas—ROSS already had the judicial opinions in its possession, and ROSS could have created the training material without copying. D.I. 716 at 33. ROSS did not copy for compatibility. Nor was ROSS's copying necessary to providing factual information in a way that did not compete with the original, as was true in *Authors Guild,* 804 F.3d at 217. ROSS copied Westlaw's editor's decisions to replicate those decisions, so that it could create an algorithm to compete directly with Plaintiffs' **own** algorithm built on the **same**

14

*content*. As ROSS's purpose was the same as Plaintiffs', the Court was correct in finding "this case fits more neatly into the newer framework advanced by *Warhol*." Order at 19.

ROSS claims that because lawyers have been using Westlaw for over a century, ROSS's copying is "no different from the programmers in *Google*" where the copying enabled programmers to use code they "had already learned to work with." Mot. 15. This is nonsensical. ROSS did not do anything remotely like using well-known API declarations to allow its users to write new programs, as in *Google*. Rather, ROSS illicitly accessed content on the Westlaw platform, available only to paying subscribers, to create a competing platform. ROSS tries to downplay the role of commerciality in factor one by saying that commerciality "requires more than profit motives and possibilities." Mot. 14.[13] Putting aside the fact that ROSS did not dispute commerciality during summary judgment briefing, and thus waived this argument for appeal, ROSS was not just after profit generally; it was trying to create a commercial substitute to take market share from Westlaw. D.I 673 at 8–10; D.I. 734 at 12. ROSS intended and succeeded at creating a Westlaw replacement. *Id.* at 14-15. ROSS was not providing free access to public content; it was **charging a fee** for a search tool built on Westlaw content that competes with Plaintiffs' own search tool built on that same content.

***Fifth***, ROSS argues that AI distinctly favors progress and benefits the public. Mot. 15–17. Encouraging innovation does not necessitate ruling for ROSS here. Where "there is a fully functioning market that encourages the creation and dissemination" of a work, "permitting 'fair use' to displace normal copyright channels disrupts the copyright market without a commensurate public benefit." *Harper*, 471 U.S. at 568 n.9; *see also Princeton Univ. Press v.*

---

[13] ROSS cites *A&M Records, Inc. v. Napster Inc.*, to argue its copying is permissible because it does not make for free what users would normally buy (Mot. 15), but that case merely held a use may be commercial "***even if*** the copies are not offered for sale," not that this is required. 239 F. 3d 1004, 1015 (9th Cir. 2001) (emphasis added).

*Mich. Document Servs., Inc.,* 99 F.3d 1381, 1391 (6th Cir. 1996). The Westlaw Content took significant investment to create, and part of its value to Plaintiffs inheres its use to train Plaintiffs' algorithms. It would make little sense to invest in creativity, and algorithms built thereupon, if competitors could pilfer that content. *See Am. Geophysical Union*, 802 F. Supp. at 27; *Eliahu v. Mediaite, LLC*, 2024 WL 4266323, at *8 (S.D.N.Y. Sept. 23, 2024).

**Finally**, ROSS argues in essence that appeal should be permitted because AI is a hot topic. Mot. 16–17. In *Redigi*, the court rejected an interlocutory appeal based on a "policy-related" disagreement, chastising the defendant for seeking "judicial amendment of the Copyright Act to reach [a] desired policy outcome" when "as to what the law and the Copyright Act provide…there is little debate." *Redigi* at *6. Here, the Court applied established law to find no fair use. The fact that there is a broader conversation about how fair use should apply to AI in different contexts, (Mot. 16), does not make this matter appropriate for immediate appeal.

Ultimately, all of these arguments demonstrate that ROSS believes that the Order was wrongly decided. But ROSS's disagreement is ***not*** equivalent to substantial grounds for a differing opinion and is not a reason to certify interlocutory appeal. *See McCague v. Trilogy Corp.*, 2007 WL 9811124, at *2 (E.D Pa. Apr. 10, 2007); *Lenz v. Universal Music Corp.*, 2008 WL 4790669, at *2 (N.D. Cal. Oct. 28, 2008). ROSS has not met this second requirement.

### C.    Immediate Appeal Will Not Materially Advance Termination of this Dispute

To satisfy 1292(b), ROSS must also show "the disposition of [the interlocutory appeal] may materially advance the ultimate determination of the litigation." *TK Holdings*, 2021 WL 3796878, at *3. Courts consider whether an appeal would "(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Exide Corp.*, 2002 WL 992817, at *2 "[W]here triable issues would

remain even after a successful appeal, courts routinely deny certification of § 1292(b) appeals because such an appeal will not materially advance the ultimate termination of the litigation." *Id.*; *Orson, Inc., v. Miramax Film Corp.,* 867 F.Supp. 319, 322 (E.D. Pa. 1994); *Piazza v. Major League Baseball*, 836 F.Supp. 269, 272 (E.D. Pa. 1993).

This case is in an advanced state, and allowing an immediate appeal will not eliminate the need for trial. With respect to **Question 1**, whatever the Third Circuit might do, Plaintiffs would still have both direct infringement and indirect infringement claims with respect to the editorial content that was copied beyond the West Headnotes, including the West Key Number System and, for indirect infringement, the synopses. And tortious interference would remain. With respect to **Question 2**, the affirmative defense of fair use only applies to copyright infringement, and even a ruling in ROSS's favor also will not vitiate the need for trial on tortious interference.[14] The trial is already short (five days) and contained—Plaintiffs have strived to simplify, including by deciding ***not*** to seek damages for direct infringement beyond the 2,243 West Headnotes copied in the Bulk Memos, so the only question for the jury will be which headnotes are still within the copyright term, which is a relatively simple issue that will not require close analysis of the text of each headnote. With respect to indirect infringement, the copying of Westlaw Content was done ***verbatim*** by LegalEase when it displayed and copied in its cache annotated Westlaw cases, and therefore does not require the same substantial similarity analysis as direct infringement once did. The jury will not need to "slog through" through the Bulk Memos and compare them closely with the Westlaw Content. And indirect infringement damages were not calculated on a headnote-by-headnote basis, but instead looked at what

---

[14] ROSS asserts in separate pre-trial submissions that its affirmative defense of fair use is somehow in the case for purposes of indirect infringement. This is not correct, but if it were true, it would make immediate appeal ***even less*** appropriate, as the second question for certification, even if resolved in ROSS's favor, would leave two of the three claims in the case.

LegalEase would have paid but-for its infringing project.

Allowing an immediate appeal will delay this case. In *Rimini*, the court denied the appeal where the case was "in an advanced state" with trial looming, "exhaustive discovery [had] been completed," and the parties "filed their joint proposed pretrial order." 2021 WL 4037482, at *7; *See Shurance v. Plan. Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988). Similarly, this case has been pending for five years. The trial was continued once already. The Parties are in the midst of trial preparations. The amended pretrial order is being filed herewith, and the pretrial conference is a week away. Staying the case and continuing the trial date yet again will only add to the delay. *See Gialde v. Time, Inc.*¸ 480 F.2d 1295, 1301 (8th Cir. 1973) (three year wait between filing and trial already too long to warrant additional delay from appeal); *Averhart v. Commc'ns Workers of Am.*, 2016 WL 1162628, at *2 (D.N.J. Mar. 24, 2016).

In addition, an interlocutory appeal could lead to the kind of "piecemeal appeals" that federal courts strongly discourage. *Scanlon v. Life ins. Co. of N. Am.*, 2009 WL 10676074, at *1 (W.D. Wash. Dec. 18, 2009); *Maxus Energy*, 611 B.R. at 538. If the Court allows an immediate appeal, regardless of how the Third Circuit rules, the case will go to trial. If ROSS then took issue with the trial result, it would be able to file yet another appeal. This iterative process is disfavored, and is further reason why ROSS cannot meet the standard. *Rimini*, 2021 WL 4037482, at *7 (refusing to permit an interlocutory appeal where "substantial amount of litigation remains in th[e] case regardless of the correctness of the Court's ruling"); *Lillehagen v. Alorica, Inc.*, 2014 WL 2009031, at *7 (C.D. Cal. May 15, 2014).

ROSS's arguments that immediate appeal would materially advance this litigation are unavailing. **First**, ROSS argues that immediate appeal is "typical" for orders eliminating a theory of liability or defense that will vitiate the need for a "long trial that results in damages." Mot. 17.

This is exactly backwards—immediate appeals are disfavored and granted sparingly. *Milbert*, 260 F.2d at 433. ROSS argues that appellate review will reduce the complex issues for the jury, (Mot. 18), but as detailed above that is not true. It's unclear why what ROSS argues is the "emotional toll" of a five-day trial away from family (Mot. 18) would be any less significant if that trial was focused only on tortious interference. Although jury duty is a serious obligation, the short trial planned for May does not require sequestration or an outsized burden on the jurors.

**Second**, ROSS argues that even though tortious interference remains in the case no matter what, copyright is the "gravamen" of this case. ROSS cites *In re Broadstripe, LLC*, but in that case the interlocutory appeal concerned a legal issue that was the gravamen of the claims, not a separate claim that was unaffected by the legal issue to be decided, as tortious interference is here. 2009 WL 774401, at *2 (D. Del. Mar. 26, 2009). And that case involved a preliminary injunction, which is not a concern here. *Id*. ROSS relies on *Knipe v. SmithKline Beecham*, but that case was "not standing on the brink of trial," and there the court acknowledged that "[w]here discovery is complete and the case is ready for trial an interlocutory appeal can hardly advance the ultimate termination of the litigation." 583 F. Supp. 2d 553, 600 (E.D. Pa. 2008).

**Third**, ROSS argues that because Plaintiffs may recover disgorgement of profits from its copyright claims, but not tortious interference, damages may need to be recalculated depending on the appeal. Mot. 19. But Plaintiffs' verdict form includes tortious interference damages as a separate item, so they will not need to recalculated depending on the copyright claim.[15] ROSS

---

[15] ROSS argues that "scores of courts" have allowed appeals in similar postures. Mot. 19. But its cases are distinguishable. In *Pub. Int. Rsch. Grp. Of New Jersey v. Hercules, Inc.*, there was a risk of having to do two "lengthy" and "identical" trials, which is not true here. 830 F. Supp. 1549, 1555 (D. N.J. 1993). And in the other cases, trial was not around the corner as it is here. *In re Moon Group, Inc*. 2023 WL 3848338, at *7 (D. Del. June 6, 2023); *See Gen. Dynamics Corp. v. Am. Tel. & Tel. Co.*, 658 F. Supp. 417, 419 (N.D. Ill. 1987) (expecting "lengthy proceedings before final resolution"); *In re: Domestic Drywall Antitrust Litig.*, 2016 WL 2941114, at *4–5

thus fails to meet this third requirement of § 1292(b).

**D.      No Exceptional Circumstances Warrant Permitting Immediate Appeal**

ROSS further failed to articulate the type of exceptional circumstances required for this Court to deviate from the ordinary approach of waiting for the entry of a final judgment before sending this case to the Third Circuit on appeal. *Bachowski v. Usery,* 545 F.2d 363, 368 (3d Cir. 1976). There is also the unescapable fact that ROSS delayed in even bringing this Motion. It waited over a month since the Order was decided to seek certification. During that month-long delay, the Parties revised their pre-trial submissions and are preparing for trial. Section 1292(b) provides for an "immediate appeal," and "a district judge should not grant an inexcusably dilatory request." *Richardson Elecs., Ltd. v. Panache Broad. of Pennsylvania, Inc*., 202 F.3d 957, 958 (7th Cir. 2000); *Spears v. Washington Mut. Bank FA*, 2010 WL 54755, at *2 (N.D. Cal. Jan. 8, 2010) (denying certification where there was no justification in delay for seeking certification). As ROSS failed to articulate exceptional circumstances warranting an immediate appeal, and its delay highlights the lack of such circumstances, the Motion should be denied.

**II.     ROSS'S REQUEST FOR A STAY SHOULD BE DENIED**

Even if the Court agrees to certify the interlocutory appeal, there is no reason the case should be stayed at this point. The Third Circuit will still need to decide whether to answer ROSS's questions, and all will be for naught if it decides the questions are inappropriate for interlocutory review. The Court should deny ROSS's request for a stay.

**<u>CONCLUSION</u>**

For the foregoing reasons, this Court should deny the motion for certification for interlocutory appeal under 28 U.S.C. § 1292(b) and deny a stay pending appeal.

---

(E.D. Pa. May 20, 2016) (middle of discovery); *A.S. ex rel. Miller v. SmithKline Beecham Corp*., 2013 WL 6506570, at *3 (M.D. Pa. Dec. 12, 2013) (trial 8 months away).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*
_____

Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mflynn@morrisnichols.com

OF COUNSEL:

Dale M. Cendali
Joshua L. Simmons
Jeremy King
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Miranda D. Means
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Yungmoon Chang
Allyn Belusko
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
(310) 552-4200

April 1, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 1, 2025, upon the following in the manner indicated:

David E. Moore, Esquire                        *VIA ELECTRONIC MAIL*
Bindu Palapura, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Defendant and Counterclaimant*

Mark A. Klapow, Esquire                        *VIA ELECTRONIC MAIL*
Lisa Kimmel, Esquire
Crinesha B. Berry, Esquire
Matthew J. McBurney, Esquire
Keith J. Harrison, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
*Attorneys for Defendant and Counterclaimant*

Jacob Canter, Esquire                          *VIA ELECTRONIC MAIL*
Warrington Parker, Esquire
Anna Z. Saber, Esquire
Beatrice B. Nguyen, Esquire
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*

Emily T. Kuwahara, Esquire                     *VIA ELECTRONIC MAIL*
Jordan Ludwig, Esquire
CROWELL & MORING LLP
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
*Attorneys for Defendant and Counterclaimant*

1

Ryan Henry Seewald, Esquire                          *VIA ELECTRONIC MAIL*
CROWELL & MORING LLP
1601 Wewatta Street, Suite 815
Denver, CO 80202
*Attorneys for Defendant and Counterclaimant*

Andy LeGolvan, Esquire                               *VIA ELECTRONIC MAIL*
Yar R. Chaikovsky, Esquire
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
*Attorneys for Defendant and Counterclaimant*

Mark S. Davies, Esquire                              *VIA ELECTRONIC MAIL*
Anna B. Naydonov, Esquire
Kufere Laing, Esquire
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, D.C. 20005
*Attorneys for Defendant and Counterclaimant*

Taylor Moore-Willis, Esquire                         *VIA ELECTRONIC MAIL*
Rosie Norwood-Kelly, Esquire
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
*Attorneys for Defendant and Counterclaimant*


                                        */s/ Michael J. Flynn*
                                        _____
                                        Michael J. Flynn (#5333)


                                        2