# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMSON REUTERS ENTERPRISE CENTRE GMBH and WEST PUBLISHING CORPORATION, | ) ) ) | |
| | ) | C.A. No. 20-613-SB |
| Plaintiffs/Counterdefendants, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| ROSS INTELLIGENCE INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

## ROSS INTELLIGENCE INC.'S [PROPOSED] JURY INSTRUCTIONS

OF COUNSEL:

Warrington S. Parker, III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Keith J. Harrison
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

Ryan H. Seewald
CROWELL & MORING LLP
1601 Wewatta Street, Suite 815
Denver, CO 80202
Tel: (303) 524-8660

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant/Counterclaimant*
*ROSS Intelligence, Inc.*

Andy LeGolvan
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square
Suite 900
Palo Alto, CA 94306
Tel: (213) 620-7755

Mark S. Davies
Anna B. Naydonov
Kufere Laing
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Tel: (202) 626-3600

Taylor Moore-Willis
Rosie Norwood-Kelly
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 819-8200

Dated: April 1, 2025
12149828 / 20516.00001

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Introduction ................................................................................................................ 1

1. General Introduction [Modified from Court's Proposal] [Agreed to by Parties] ..................... 3

2. Introduction: Role of Jury [Court's Proposal] [Agreed to by Parties] ...................................... 4

3. Preliminary Instructions—Description of Case; Summary of Applicable Law [ROSS Proposal] ....................................................................................................................... 5

4. Preliminary Instruction—Copyright [ROSS Proposal] ........................................................ 11

5. Burden of Proof [Modified from Court's Proposal] [Agreed to by Parties] ........................... 15

6. Preliminary Instructions—Conduct of the Jury [Modified from Court's Proposal] [Agreed to by Parties] ................................................................................................ 16

7. Preliminary Instructions—Bench (Side-Bar) Conferences [Modified from Court's Proposal] [Agreed to by Parties] ................................................................................. 18

8. Preliminary Instructions—Note Taking by Jurors [Modified from Court's Proposal] [Agreed to by Parties] ................................................................................................ 19

9. Preliminary Instructions—Questions by Jurors of Witnesses [Court's Proposal] [Agreed to by Parties] ................................................................................................ 21

10. Preliminary Instructions—Description of Trial Proceedings [Modified from Court's Proposal] [Agreed to by Parties] ................................................................................. 22

11. Preliminary Instructions—Evidence (What It Is; Is Not) [Court's Proposal] [Agreed to by Parties] ................................................................................................................ 24

12. Preliminary Instructions—Direct and Circumstantial Evidence [Modified from Court's Proposal] [Agreed to by Parties] ...................................................................... 27

13. Preliminary Instructions—Witnesses' Credibility [Modified from Court's Proposal] [Agreed to by Parties] ................................................................................................ 28

14. General Instructions for Use During Trial—Stipulation of Fact [Agreed to by Parties] ....... 30

15. General Instructions for Use During Trial—Use of Deposition [ROSS Proposal] .............. 31

16. General Instructions for Use During Trial—Charts and Summaries in Evidence and those Not Admitted in Evidence [ROSS Proposal] ...................................................... 32

17. General Instructions for Use During Trial—Evidence Admitted for a Limited Purpose [Agreed to by Parties] ................................................................................................ 33

i

18. General Instructions for Use At End of Trial—Deliberations [ROSS Proposal] ................. 34

19. Copyright Infringement—Allegations [ROSS Proposal] ...................................................... 37

20. Copyright—Defined (17 U.S.C. § 106) [ROSS Proposal] .................................................... 38

21. Copyright—Subject Matter—Generally (17 U.S.C. § 102) [ROSS Proposal]..................... 39

22. Copyright—Subject Matter— Copyright—Subject Matter—Ideas and Expression (17 U.S.C. § 102(b)) [ROSS Proposal] ............................................................................ 41

23. Copyright—Subject Matter—Duration (17 U.S.C. § 302(c)) [ROSS Proposal]................. 42

24. Copyright Infringement—Elements—Ownership and Copying  (17 U.S.C. § 501(a)-(b)) [ROSS Proposal]................................................................................................... 45

25. Copyright Infringement—Ownership of Valid Copyright—Definition  (17 U.S.C. §§ 201–205) [ROSS Proposal]..................................................................................... 46

26. Copyright Interests—Authorship  (17 U.S.C. § 201(a)) [ROSS Proposal] ......................... 47

27.  Copyright Infringement—Originality [ROSS Proposal] ...................................................... 48

28. Copying—Unauthorized Copying [ROSS Proposal]............................................................ 50

29. Copying—Compilation [ROSS Proposal] ............................................................................ 53

30. Secondary Liability—Vicarious Infringement —Elements and Burden of Proof [ROSS Proposal]....................................................................................................... 56

31. Secondary Liability—Contributory Infringement —Elements and Burden of Proof [ROSS Proposal]....................................................................................................... 58

32. Copyright—Affirmative Defense—LegalEase's Fair Use (17 U.S.C. § 107) [ROSS Proposal] ......................................................................................................... 60

33. Copyright—Affirmative Defense— LegalEase's Fair Use Factor 1 – Purpose and Character of the Use [ROSS Proposal]............................................................... 62

34. Copyright—Affirmative Defense— LegalEase's Fair Use Factor 2 – Nature of Copyrighted Work [ROSS Proposal] .................................................................. 65

35. Copyright—Affirmative Defense— LegalEase's Fair Use Factor 3 – Amount and Substantiality of the Portion Used [ROSS Proposal]......................................... 66

36. Copyright—Affirmative Defense— LegalEase's Fair Use Factor 4 – Effect on Potential Market [ROSS Proposal]........................................................................ 68

37. Copyright—Affirmative Defense —Merger [ROSS Proposal]............................................. 69

38. Copyright—Affirmative Defense— Scènes À Faire [ROSS Proposal] ............................... 71

39. Tortious Interference with Contract [ROSS Proposal] ....................................................... 72

40. Tortious Interference with Contract—General and Nominal Damages [ROSS Proposal] ............................................................................................................................ 74

41. Copyright—Damages (17 U.S.C. § 504) [ROSS Proposal] ................................................ 75

42. Copyright—Damages—Actual Damages  (17 U.S.C. § 504(b)) [ROSS Proposal] ............. 76

43. Copyright—Damages—Defendant's Profits  (17 U.S.C. § 504(b)) [ROSS Proposal] ......... 77

44. Copyright—Damages—Nominal Damages  [ROSS Proposal] ............................................ 79

45. Copyright—Damages—Willful Infringement (17 U.S.C. § 504(c)(2)) [ROSS Proposal] ............................................................................................................................ 80

46. Copyright—Damages—Statutory Damages (17 U.S.C. § 504(c)) [ROSS Proposal] ........... 81

47. Final Instructions and Deadlock [Agreed to by Parties] ..................................................... 82

**Introduction**

Defendant and counterclaim plaintiff ROSS Intelligence Inc. ("ROSS"), by and through its undersigned attorneys, respectfully submit its proposed jury instructions. ROSS submits several general jury instructions as well as special jury instructions specific to the copyright and tortious interference claims. With respect to the forgoing:

1.  Unless otherwise noted, the general jury instructions are identical to or modified from the Model Civil Jury Instructions for the Third Circuit, Chapters 1-3 (Last Updated August 2020).

2.  Unless otherwise noted, the special instructions related to copyright are derived from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Chapter 17 Copyrights (2017 Edition) (Last Updated March 2024) and case law derived from the Third Circuit. Per the Model Civil Jury Instructions for the Third Circuit, Appendix Two – "Instructions Covered in Other Sets" ("Appendix II"), in the Third Circuit, copyright jury instructions should be patterned off of the ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation (2008) (Appendix Two at 3) or one of the following: 7th Cir. – (Civil) Chapter 12; 9th Cir. – (Civil) Chapter 17; 11th Cir. – (Civil) Chapter 9; O'Malley et al. – Chapter 160; and/or Sand et al. – Chapter 86B. Appendix Two at 12. Because the parties and the Court have relied heavily on 2d and 9th Circuit case law in their briefing and opinions, and because the 3d Circuit has approved jury instructions by the 9th Circuit, the 9th Circuit's model jury instructions were used unless: (a) the 9th Circuit did not have a jury instruction covering a particular topic; (b) the jury instruction conflicted with 3d Circuit case law; or (3) additional instruction was needed based on the facts of this case.

3.  The jury instructions related to tortious interference with contract were derived from Delaware case law and Delaware Pattern Jury Instructions - Civil.

ROSS submits a jury verdict form with these instructions. The jury instructions reference Appendix A containing the 2,243 headnotes referenced in the Court's summary judgment order and Appendix B, which will contain the works Thomson Reuters intends to present to the jury once Thomson Reuters specifically identifies the "Westlaw content" will present.  The parties will meet and confer about the form of the appendices.

ROSS reserves the right to revise, withdraw, and/or supplement these proposed jury instructions based upon the Court's rulings on any motions *in limine*, other motions that may be made prior to or at trial, and the evidence submitted at trial.  The parties continue to meet and confer over agreement for these Proposed Jury Instructions.

**1. General Introduction [Modified from Court's Proposal] [Agreed to by Parties]**

I'm Judge Stephanos Bibas. We've called you here as prospective jurors for the civil case of *Thomson Reuters Enterprise Center GmbH and West Publishing Corporation v. ROSS Intelligence Inc.* The plaintiffs are suing ROSS for copying copyrighted materials that belong to Thomson Reuters. The courtroom deputy will now swear you in as jurors.

**[Courtroom Deputy Vivian Mena swears in the panel]**

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.1 (August 2020); August 20, 2024, Proposed Jury Instructions from the Court.

## 2. Introduction: Role of Jury [Court's Proposal] [Agreed to by Parties]

The jury's role is to find the facts of the case based on the evidence presented at trial. You must decide the facts based only on the evidence presented to you.

From the evidence that you will hear and see in court, you'll decide what the facts are and then apply to those facts the law that I'll explain to you in my final instructions.

Whatever your verdict, it must be unanimous. All of you must agree on it or there will be no verdict. In the jury room, you'll discuss the case among yourselves, but ultimately each of you must make up your own mind.

I play no part in finding the facts. Don't take anything that I say or do during the trial as showing my view of the evidence or what your verdict should be. My job is to make any needed legal decisions at trial and to explain to you the principles of law that must guide you.

You must apply my instructions about the law. Each instruction is important. You mustn't substitute your own notion or opinion about what the law is or ought to be. Follow the law that I give to you, whether you agree with it or not.

Do your duty fairly and impartially. Don't let sympathy, prejudice, fear, or public opinion influence you. Don't let any person's race, color, religion, sex, national ancestry, job, economic circumstances, or position in life or in the community influence you either.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.1 (August 2020); August 20, 2024, Proposed Jury Instructions from the Court.

### 3. Preliminary Instructions—Description of Case; Summary of Applicable Law [ROSS Proposal]

In this case, Thomson Reuters and West Publishing, which I will refer to as plaintiff Thomson Reuters, claims that defendant ROSS engaged in copyright infringement of copyrighted material on the Thomson Reuters legal research platform, which is called Westlaw. This Westlaw legal research platform contains an online database of judicial opinions. Thomson Reuters contends that ROSS committed this copyright infringement so that it could develop its artificial intelligence ("AI") based legal research tool.

I will first describe Thomson Reuters two claims of copyright infringement. The first is a claim of direct copyright infringement by ROSS. Direct infringement means that a defendant is liable for copyright infringement because he or she made unauthorized use of the copyright. The second is a claim of indirect copyright infringement by ROSS. Indirect infringement means that a third party is liable for copyright infringement because he or she made unauthorized use of the copyright, but the defendant is liable for that third party's actions.

For Thomson Reuters's claim of direct copyright infringement, Thomson Reuters claims that ROSS copied what Thomson Reuters calls the "headnotes." Thomson Reuters contends that ROSS copied 2,243 different headnotes.

ROSS denies the claim for direct copyright infringement. A claim for direct copyright infringement can only survive if the copyright that has been allegedly infringed is not expired. Because ROSS contends that Thomson Reuters cannot prove that certain of the headnotes have not expired, it contends that Thomson Reuters cannot prove that ROSS directly infringed.

With respect to Thomson Reuters's direct infringement claim, I have found that if all the 2,243 headnotes are valid and not expired, then ROSS infringed all these 2,243 headnotes. With

5

respect to these 2,243 headnotes, Thomson Reuters must demonstrate that each is valid by proving by the preponderance of the evidence that each headnote has not expired.

Onto Thomson Reuters's claim for indirect copyright infringement.

Every claim of indirect copyright infringement requires first proving that a third party committed direct copyright infringement. For the claim of indirect copyright infringement by ROSS, Thomson Reuters claims that a third party, LegalEase, committed direct copyright infringement and that ROSS is liable for this conduct. ROSS engaged LegalEase to create memos that contain legal questions and excerpts from judicial opinions. The creation of these memos was termed the "Bulk Memo Project." Thomson Reuters claims that during the creation of these bulk memos, LegalEase infringed Thomson Reuters's headnotes and the organizational system for the cases which it calls the "key number system." Thomson Reuters also claims that when LegalEase downloaded these cases onto personal computers, LegalEase directly infringed Thomson Reuters's copyrights because LegalEase had lost its authorization to complete these downloads.

Thomson Reuters asserts that ROSS is indirectly, or secondarily, liable for this conduct of LegalEase under two theories of indirect liability that are called "vicarious" liability and "contributor liability." Under a theory of vicarious copyright liability, ROSS must have profited from the infringement and must have directed LegalEase to infringe in order to draw in customers to its platform. Under a theory of contributory copyright liability, ROSS must have contributed to LegalEase's direct infringement.

ROSS denies these claims for indirect infringement.

First, ROSS contends that Thomson Reuters does not have a valid copyright in the materials that it contends ROSS has infringed because they are factual, identical to a prior

source, short words or phrases, and/or copies of noncopyrightable judicial opinions. I have previously found that the headnotes and the key number system are sufficiently original. However, for any other works that Thomson Reuters asserts, ROSS contends that they are simply identical or highly similar copies of the judicial text or use common words and phrases or other public domain materials that are likewise not entitled to protection.

Second, to the extent that there is any copyright in the works that Thomson Reuters contends LegalEase has infringed, ROSS contends that LegalEase did not infringe these copyrights. ROSS contends that any copying by LegalEase was not virtually identical to Thomson Reuters's use and LegalEase did not use substantially all the alleged copyrighted material.

Third, ROSS contends that even if there is a valid copyright in any of the works and even if LegalEase infringed the copyright in any of these works, LegalEase's use constitutes fair use. Fair use is a defense to direct copyright infringement.

For Thomson Reuters's indirect infringement claim, it is Thomson Reuters's burden to first prove that LegalEase directly infringed a valid copyright of Thomson Reuters. To prove direct infringement, for each work asserted by Thomson Reuters, Thomson Reuters must prove (1) that Thomson Reuters owns a valid, unexpired copyright in the work; (2) that LegalEase actually copied that specific work; and (3) that LegalEase copied the protectable elements of the work as and not simply public domain materials, such as judicial opinions, or other non-copyrightable materials. For headnotes, it is Thomson Reuters's burden to identify each headnote that LegalEase allegedly infringed and prove each element of infringement for that specific headnote. Similarly, it is Thomson Reuters's burden to identify the components of the key number system that LegalEase allegedly infringed and prove each element of infringement for

the key number system. For any other works Thomson Reuters's asserts was infringed, Thomson

Reuters has the burden to specifically identify the work, demonstrate that it owns a valid,

unexpired copyright to that work, demonstrate that LegalEase actually copied the work, and

demonstrate that LegalEase copied the protectable elements of the work through a side-by-side

comparison.

     If Thomson Reuters proves that LegalEase directly infringed a valid copyright, then it is

ROSS's burden to prove, by a preponderance of the evidence, that LegalEase's use of these

copyrights constitutes fair use. To establish fair use, ROSS will seek to demonstrate that, on

balance, four separate fair use factors weigh in its favor. The first factor is whether the purpose

and character of LegalEase's use of the copyrighted works weighs in favor of fair use. The

second factor is whether the nature of the copyrighted works that LegalEase infringed weighs in

favor of fair use. The third is whether the amount and substantiality of the copyrighted works

that LegalEase infringed weighs in favor of fair use. And the final factor is whether LegalEase's

infringement of Thomson Reuters's copyrights does not impact the market for or value of

Thomson Reuters's works such that LegalEase's conduct weighs in favor of fair use.

     Thomson Reuters also contends that ROSS tortiously interfered with Thomson

Reuters's contract with LegalEase. Tortious interference of a contract occurs when someone

intentionally damages another business's contractual relationship. Specifically, Thomson Reuters

alleges that ROSS induced LegalEase to (1) use a computer software bot to scrape or copy

Westlaw content, and (2) share passwords in breach of its contract with Thomson Reuters. ROSS

denies these claims and asserts it had no knowledge of LegalEase's activities described above.

     I will give you detailed instructions on the law at the end of the case, and those

instructions will control your deliberations and decision.  But in order to help you follow the

evidence, I will now give you a brief summary of the elements that the plaintiff must prove to make its case, as well as a brief summary of the elements of a defense the defendant asserts.

For Thomson Reuters's vicarious and contributory infringement claims, Thomson Reuters must first prove direct infringement by LegalEase. To prove direct copyright infringement by LegalEase, Thomson Reuters must prove that (1) it owns a valid copyright to each of the works it contends LegalEase infringed; (2) LegalEase actually copied that specific work; and (3) that LegalEase copied the protectable elements of the work as and not simply public domain materials, such as judicial opinions, or other non-copyrightable materials. For each of these elements, Thomson Reuters must specifically identify each copyright it asserts ROSS infringes, demonstrate that the copyright is valid, unexpired, and that Thomson Reuters owns it, and demonstrate that LegalEase copied the original expression embodied in that specific copyright.

For vicarious liability, if Thomson Reuters proves direct infringement of a particular work or works asserted by LegalEase, Thomson Reuters must further prove that (1) ROSS directly benefitted financially from the infringing activity of LegalEase; (2) ROSS had the practical right and ability to supervise and control the infringing activity of LegalEase; and (3) ROSS failed to exercise that right and ability.

For contributory copyright infringement, if Thomson Reuters proves direct infringement of a particular work or works asserted by LegalEase, Thomson Reuters must further prove that (1) ROSS knew or had reason to know of the infringing activity of LegalEase and (2) ROSS intentionally induced and materially contributed to LegalEase's infringing activity.

To prove tortious interference with contract, Thomson Reuters must prove: (1) there was a contract between LegalEase and Thomson Reuters; (2) ROSS knew about the contract; (3) an

intentional act by ROSS was a significant factor in causing LegalEase to breach the contract; (4)

ROSS's act was without justification; and (5) it caused injury to Thomson Reuters.

***Sources and Authorities*:**

Third Circuit Model Jury Instructions § 1.2 (modified); D.I. 770 at 6-7; *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002); *Tanksley v. Daniels*, 902 F.3d 165, 173-74 (3d Cir. 2018); 9th Circuit Model Instructions 17.5, 17.20, 17.21, 17.22; 17 U.S.C. § 107 (providing the fair use factors); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386-88 (3d Cir. 2016) (stating the elements of vicarious and contributory infringement); *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012).

**4. Preliminary Instruction—Copyright [ROSS Proposal]**

The plaintiff, Thomson Reuters, claims ownership of a copyright and seeks damages against the defendant, ROSS, for both direct and indirect copyright infringement. ROSS denies infringing the copyright, contends that any alleged copyright is invalid and/or not infringed by ROSS or the third party, LegalEase. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

**DEFINITION OF COPYRIGHT**

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying, or preparing derivative works from the work covered by copyright for a specific period of time, which, at most, is 95 years, but in some instances less.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, discoveries, and judicial opinions cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

**PLAINTIFF'S BURDEN OF PROOF**

In this case, the plaintiff, Thomson Reuters, contends that LegalEase has infringed the plaintiff's copyright and that the defendant, ROSS, indirectly infringed the copyright through LegalEase. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyright, that LegalEase copied original expression from the copyrighted work, and that the defendant caused the infringement. Preponderance of the

11

evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

## PROOF OF COPYING

To prove that the defendant copied the plaintiff's work, the plaintiff may use direct or indirect evidence. Direct evidence includes an admission that the defendant copied the plaintiff's work. Indirect evidence is evidence showing that the defendant had access to the plaintiff's copyrighted work and that the defendant's work and the plaintiff's copyrighted work are virtually identical.

Any copyright in the works asserted by Thomson Reuters is "thin," meaning that the works only have minimal protection and Thomson Reuters must show that defendant's copying of the copyrighted work was virtually identical. Similarly, for any compilation asserted by Thomson Reuters, such as the key number system, any copyright in the asserted compilation is also "thin." Thomson Reuter must prove that the defendant's copying of the alleged copyrighted work was both virtually identical and copied substantially all of the compilation. For use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement. This means that even where the fact of copying is established, no legal consequences will follow from that fact unless the copying is virtually identical and, for the alleged copying of a compilation, substantially all of the compilation. In determining whether the defendant's copying of the copyrighted work was virtually identical, you may consider how important the copied portion was to the copyrighted work as a whole and you must perform a side-by-side comparison for each asserted work and each alleged infringing work. A use is considered *de minimis*, and therefore not virtually identical, if it is so meager and fragmentary that the average audience would not recognize the appropriation.

12

## LIABILITY FOR INFRINGEMENT

One who causes a copyrighted work to be reproduced without authority from the copyright owner during the term of the copyright infringes the copyright.

As explained in more detail in later instructions, a company may be liable for another company's infringement by vicariously infringing or contributorily infringing.

## VICARIOUS INFRINGEMENT

A company is liable for copyright infringement by another if the company has profited directly from the infringing activity and had the practical right and ability to supervise or control the infringing activity.

## CONTRIBUTORY INFRINGEMENT

A company is liable for copyright infringement by another if the company knows or should have known of the infringing activity and induces the activity.

## DEFENSES TO INFRINGEMENT

Defendant ROSS contends that there is no copyright infringement. There is no copyright infringement when (1) the defendant copied material that is not entitled to copyright protection or (2) the defendant's work is the result of independent creation, coincidence, or prior common source; or (3) LegalEase made fair use of the copyrighted work. The fair use defense permits the use of copyrighted works without the copyright owner's consent. The defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product. If LegalEase made fair use of the copyrighted work, then ROSS cannot be indirectly liable for LegalEase's direct infringement. It can be fair use for a company to download copyrighted works and then use those copyrighted works for research purposes, even where the use is for-profit.

***Sources and Authorities*:**

9th Circuit Model Rules 17.1; 17 U.S.C. §§ 101-1511; *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002); *Tanksley v. Daniels*, 902 F.3d 165, 173-74 (3d Cir. 2018); *Newton v. Diamond*, 388 F.3d 1189, 1192-93 (9th Cir. 2004) ("For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement. This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial."); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe."); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (glass-in-glass jellyfish sculpture only entitled to thin protection against virtually identical copying due to the narrow range of expression); *Advanta-STAR Auto. Research Corp. of Am. v. Search Optics*, LLC, 672 F. Supp. 3d 1035, 1049 (S.D. Cal. 2023) ("[W]hen a work is entitled to 'thin' protection, courts typically require 'virtual identity' rather than 'substantial similarity' to find copyright infringement."); *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004) (quoting *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986)) (a use is considered de minimis, and therefore not substantial, "if it is so meager and fragmentary that the average audience would not recognize the appropriation."); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007) ("The fair use defense permits the use of copyrighted works without the copyright owner's consent under certain situations. The defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product."); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.") (quoting A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)); *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1068-70 (9th Cir. 2014) (where Fox argued that Dish committed indirect infringement because consumers were copying TV shows onto devices using Dish software, circuit affirmed district court decision that conduct by third-party consumers was fair use and thus there could be no indirect infringement by Dish. Circuit applied four fair use factors to the conduct of the consumers); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) (where Universal argued that Sony committed indirect infringement because consumers were time-shifting TV shows on local devices using Sony software, Supreme Court affirmed decision that conduct by third-party consumers was fair use and thus there could be no indirect infringement by Sony); *A&M Records v. Napster*, 239 F.3d 1004, 1014-19 (9th Cir. 2001) (where A&M records sued Napster for indirect infringement arising from consumers using Napster software to download songs, court assessed conduct of the consumers under the four fair use factors); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 97 (2d Cir. 2014) ("the creation of a full-text searchable database is a quintessentially transformative use[.]"); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 206-07 (2d Cir. 2015) ("Google's making of a complete digital copy of Plaintiffs' works for the purpose of providing the public with its search and snippet view functions (at least as snippet view is presently designed) is a fair use[.]" and "If the library had created its own digital copy to enable its provision of fair use digital searches, the making of the digital copy would not have been infringement.").

14

**5. Burden of Proof [Modified from Court's Proposal] [Agreed to by Parties]**

This is a civil case.  Thomson Reuters brought this lawsuit against ROSS.  Thomson Reuters has the burden of proving its case by the preponderance of the evidence.  That means Thomson Reuters has to prove to you, in light of all the evidence, that what it claims is more likely so than not so.  To say it differently: if you were to put the evidence favorable to Thomson Reuters and the evidence favorable to ROSS on opposite sides of the scales, Thomson Reuters would have to make the scales tip somewhat on its side.  If Thomson Reuters fails to meet this burden on one of its claims, the verdict on that claim must be for ROSS.  If you find after considering all the evidence that a claim is more likely so than not so, then the claim has been proved by a preponderance of the evidence.  In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this, so put it out of your mind.

*Sources and Authorities***:**

Third Circuit Model Jury Instructions § 1.1 (modified), August 20, 2024; August 20, 2024, Proposed Jury Instructions from the Court.

15

### 6. Preliminary Instructions—Conduct of the Jury [Modified from Court's Proposal] [Agreed to by Parties]

Here are some important rules about your conduct as jurors:

(i)      Keep an open mind. Don't make up your mind about the verdict until you've heard all the evidence, gotten the final instructions about the law, and discussed the case with your fellow jurors during your deliberations.

(ii)      Don't discuss the case among yourselves until the end of the trial when you go to the jury room to deliberate. You must let one another keep an open mind throughout the entire trial. During trial, you may talk with your fellow jurors about sports or the weather, but not about this case.

(iii)      During the trial, don't speak to any of the parties, lawyers, or witnesses involved in this case, not even to pass the time of day. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they're not supposed to talk or visit with you, either. They're not being rude.

(iv)      Don't talk with anyone else or listen to others talk about this case until the trial has ended and you've been discharged. Not only must you do justice in this case, but also you must give the appearance of justice. If anyone tries to talk to you about the case during the trial, please tell my courtroom deputy immediately. Don't discuss this situation with any other juror.

(v)      Don't discuss the case with anyone outside the courtroom or at home, including your family and friends. You may tell your family or friends that you have been chosen as a juror in a civil case, and you may tell them how long the trial is expected to last. But you should also tell them that the judge instructed you not to talk any more about the case and that they should not talk to you about it. This matters a lot because sometimes someone else's thoughts can influence you. Your thinking should be influenced by what you learn in the courtroom only.

(vi)     Until the trial is over and your verdict is announced, don't watch or listen to any television or radio news programs or reports about the case, or read any news or internet stories or articles about the case or about anyone involved.

(vii)    Don't use a computer, cell phone, or other electronic device or technology while in the courtroom or during deliberations.  You may use these devices during breaks or recesses for personal uses.  But you may not use them to research or share information about this case.  Nor may you use your electronic devices to talk to anyone about this case by email, texts, blog, website, internet chat room, or any other social media.  So don't use your phone to discuss or research the case.

(viii)   Don't do your own research or investigation about any matters relating to this case. So, for example, don't visit the scene, conduct experiments, consult dictionaries, or search the internet for more information.  Please don't use a computer, cell phone, or anything to find information about this case, the parties, this type of case, or anyone else involved.  Don't try to find out information from any source outside this courtroom.  You must decide this case based on only the evidence presented in the courtroom and my instructions about the law. You must not try to supplement that information on your own.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.3 (August 2020) (Modified); August 20, 2024, Proposed Jury Instructions from the Court.

### 7. Preliminary Instructions—Bench (Side-Bar) Conferences [Modified from Court's Proposal] [Agreed to by Parties]

During the trial, I may need to talk with the lawyers without you listening.  We call these bench or sidebar conferences. If that happens, please be patient.  We also ask that you tell my courtroom deputy if you can hear any of the bench or sidebar conferences.

I know you may be curious about what we are discussing.  We're not trying to keep important information from you.  These conferences let me discuss objections to evidence and to make sure that the evidence is presented to you correctly under the rules of evidence.  I'll try to limit the number and length of these conferences.  If I think the conference will be long, I'll call a recess.

I may not always grant a request for a conference.  Don't consider my granting or denying a request for a conference as suggesting my opinion of the case or of what your verdict should be.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.4 (August 2020) (Modified); August 20, 2024, Proposed Jury Instructions from the Court.

**8. Preliminary Instructions—Note Taking by Jurors [Modified from Court's Proposal]**

**[Agreed to by Parties]**

At the end of the trial, you must make your decision based on your memory of the evidence. You won't have a written transcript of the testimony to review.  So pay close attention to the testimony as it is given. If you wish, you may take notes to help you remember what witnesses said.  My courtroom deputy will arrange for pens, pencils, and paper.  If you do take notes, please keep them to yourself until the end of trial when you and your fellow jurors go to the jury room to decide the case. Here are some other specific points to keep in mind about note taking:

(i)      Note taking is allowed but not required. How many notes you want to take, if any, is entirely up to you.

(ii)      Please make sure that note taking doesn't distract you from your tasks as jurors. Listen to all the testimony of each witness.  You also need to decide whether and how much to believe each witness.  That'll require you to watch the appearance, behavior, and manner of each witness while he or she is testifying.  You can't write down everything that is said. You mustn't focus so much on note-taking that you miss the opportunity to see important things.

(iii)      Your notes are memory aids, not evidence.  Notes are not a record or written transcript of the trial.  Whether you take notes or not, you'll need to rely on your own memory of what was said.  Notes are only to jog your memory, not to take the place of memory.

(iv)      In your deliberations, don't give any more or less weight to the views of a fellow juror just because that juror did or didn't take notes.  Don't assume that just because something is in someone's notes that it necessarily took place in court.  It's just as easy to write something down wrong as it is to hear or remember it wrong.  Notes deserve no greater weight than each

juror's independent memory of the evidence.  Rely on your individual and collective memories when you deliberate and reach your verdict.

(v)     Don't take your notes out of court.  Please leave them on the chair you have chosen as your own in the jury room behind the courtroom.  My staff will ensure that no one looks at your notes.  Right after you finish deliberating and I accept your verdict, my staff will collect and destroy your notes to protect the secrecy of your deliberations.

***Sources and Authorities*:**

August 20, 2024, Proposed Jury Instructions from the Court.

**9. Preliminary Instructions—Questions by Jurors of Witnesses [Court's Proposal] [Agreed to by Parties]**

Only the lawyers and I may ask questions of witnesses. You cannot do so. But if you can't hear a witness or a lawyer, please raise your hand and I'll correct the situation.

***Sources and Authorities*:**

August 20, 2024, Proposed Jury Instructions from the Court.

### 10. Preliminary Instructions—Description of Trial Proceedings [Modified from Court's Proposal] [Agreed to by Parties]

The trial will proceed in seven steps:

*Step one*: The lawyers will have a chance to make opening statements to you. First, the plaintiffs' lawyer will make an opening statement. Then, the defense lawyer will make opening statements. The opening statements are just an outline to help you understand what each party expects the evidence to show. What is said in the opening statements is not itself evidence.

*Step two*: After opening statements, the plaintiffs will introduce the evidence that they think proves their claims against the defendant. The plaintiffs will put on witnesses and the defense may cross-examine them. The plaintiffs may also offer documents and other exhibits into evidence.

*Step three*: After the plaintiffs have presented their evidence, the defendant will present evidence.

*Step four*: After the defendant has presented its evidence, the plaintiffs may present rebuttal evidence.

*Step five*: After all the evidence has been presented, I'll give you orally and in writing the final instructions about the law that you must apply to the evidence presented during the trial. I may also give you some instructions on the law throughout the trial, as I'm doing now.

*Step six*: After I've instructed you on the law, the lawyers will have the chance to make closing arguments. Closing arguments are designed to present the parties' theories about what the evidence has shown and what conclusions may be drawn from the evidence. What is said in closing arguments is not evidence, just as what is said in the opening statements is not evidence.

*Step seven*: After closing arguments, you'll retire to consider your verdict. Your deliberations are secret. You won't have to explain your verdict to anyone. Your verdict must be unanimous; all twelve of you must agree to it.

Throughout the trial, keep an open mind. Don't make up your mind about any of the questions in this case until you've heard each piece of evidence and all the law that you must apply to that evidence.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.12 (August 2020); August 20, 2024, Proposed Jury Instructions from the Court.

**11. Preliminary Instructions—Evidence (What It Is; Is Not) [Court's Proposal] [Agreed to by Parties]**

You must decide this case based only on the evidence that you see and hear in the courtroom. Don't let rumors, suspicions, or anything else that you see or hear outside of court influence your decision.

The evidence from which you are to find the facts consists of:

(1)    The witnesses' testimony;

(2)    Documents and other things received as exhibits; and

(3)    Any fact or testimony that is stipulated; that is, formally agreed to by the parties.

But these are not evidence:

(1)    The lawyers' statements and arguments;

(2)    Questions that the lawyers or I ask.

Don't assume that a fact is true just because one of the lawyers or I ask a question about it. It's the witnesses' answers that are evidence. But there may be times when you may need to consider the question to understand a witness's answer. For example, if a witness answers yes to a question, you have to consider the question to understand what the witness is saying.

(3)    Lawyers' objections, including when lawyers state facts;

(4)    Any testimony that I strike or tell you to disregard; and

(5)    Anything you see or hear about outside the courtroom.

To weigh the evidence, use your common sense. Consider it in light of your everyday experience and give it whatever weight you think it deserves. If your experience and common sense tell you that certain evidence reasonably leads to a conclusion, you may reach that conclusion. The rules of evidence control what can come into evidence. A lawyer may object to a question or an exhibit because he thinks that the rules of evidence bar it. An objection simply

means that the lawyer wants me to decide whether the evidence should be allowed under the rules. Lawyers are supposed to make objections when they think evidence being offered is improper under the rules of evidence. Don't be influenced just because someone objects.

Also, don't be influenced by my rulings on objections to evidence. If I overrule an objection, the witness may answer the question or the exhibit may come into evidence, and you should treat the testimony or exhibit like any other. I may allow evidence (testimony or exhibits) only for a limited purpose. If I do that, I'll tell you to consider the evidence only for that limited purpose, and you must follow that instruction.

If I sustain an objection, the witness won't answer the question, or the exhibit won't come into evidence. Whenever I sustain an objection, disregard the question or the exhibit entirely. Don't think about or guess what the witness might have said in answer to the question; don't think about or guess what the exhibit might have shown. Sometimes, a witness may have already answered before a lawyer objects or before I rule on the objection. If that happens and if I sustain the objection, disregard the answer that was given.

Also, I may strike some testimony or other evidence from the record. If I do that, I'll instruct you to disregard that evidence. Don't be influenced in any way by the evidence that I told you to disregard.

Although the lawyers may direct you to certain facts or factual conclusions that they think are important, what the lawyers say is not evidence. Nor is it binding on you. It's your own recollection and interpretation of the evidence that controls your decision. Also, don't assume from anything I do or say during the trial that I have any opinion about the evidence, the issues in this case, or what your verdict should be.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.5 (August 2020) (Modified); August 20, 2024, Proposed Jury Instructions from the Court.

### 12. Preliminary Instructions—Direct and Circumstantial Evidence [Modified from Court's Proposal] [Agreed to by Parties]

You may see and hear two types of evidence in this trial: direct evidence and circumstantial (or indirect) evidence.  You may use both types of evidence to reach your verdict.  Direct evidence is just evidence which, if you believe it, directly proves a fact: for instance, when a witness testifies about something she knows from her own senses: something she has seen, touched, heard, or smelled.

"Circumstantial evidence" is evidence which, if you believe it, indirectly proves a fact.  It proves one or more facts from which you could find or infer the existence of some other fact or facts.  An inference is just a deduction or conclusion that reason, experience, and common sense lead you to make from the evidence.  An inference is not a suspicion or a guess.  It's a reasoned, logical decision to find that a disputed fact exists on the basis of another fact.

For example, if someone walked into the courtroom wearing a wet raincoat and carrying a wet umbrella, that would be circumstantial evidence from which you could find or conclude that it was raining.  You would not have to find that it was raining, but you could.

Sometimes you could draw different inferences from the same set of facts.  The plaintiffs may ask you to draw one inference, and the defense may ask you to draw another.  You, and you alone, must decide what inferences to draw based on all the evidence.

You should consider all the evidence presented in this trial, direct and circumstantial.  The law makes no distinction between the weight that you should give to either direct or circumstantial evidence.  It is for you to decide how much weight to give any evidence.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.6 (August 2020); August 20, 2024, Proposed Jury Instructions from the Court.

### 13. Preliminary Instructions—Witnesses' Credibility [Modified from Court's Proposal] [Agreed to by Parties]

In deciding what the facts are, you must decide what testimony to believe and what to disbelieve. You are the sole judges of witnesses' credibility. Credibility means whether a witness is worthy of belief: Is the witness truthful? Is her testimony accurate? You may believe a witness's testimony in full, in part, or not at all.

You may decide whether to believe a witness based on her behavior and manner of testifying, her explanations, and all the other evidence in the case. Treat this like you would in any important matter where you're trying to decide whether a person is truthful, straightforward, and accurate in his or her recollection. In deciding the question of credibility, remember to use your common sense, your good judgment, and your experience.

In deciding what to believe, you may consider many factors:

(i)     The witness's opportunity and ability to see or hear or know the things about which she testifies;

(ii)    The quality of the witness's knowledge, understanding, and memory;

(iii)   The witness's appearance, behavior, and manner while testifying;

(iv)    Whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;

(v)     Any relation the witness may have with a party in the case and any effect that the verdict may have on the witness;

(vi)    Whether the witness said or wrote anything before trial that is different from the witness's testimony in court;

(vii)   How believable the witness testimony is when considered with other evidence that you believe; and

28

(viii)   Any other factors that bear on whether to believe the witness.

Inconsistencies or discrepancies in a witness's testimony or between the testimony of different witnesses may or may not cause you to disbelieve that witness testimony. Two or more persons witnessing an event may simply see or hear it differently. Mistaken recollection, like failure to recall, is a common human experience. In weighing the effect of an inconsistency, consider whether it goes to an important or insignificant detail. Consider also whether the inconsistency is innocent or intentional.

You needn't accept testimony even if it's not contradicted and the witness is not impeached. You may decide that the testimony is not worthy of belief because of the witness's bearing and demeanor, or because of the inherent improbability of the testimony, or for other reasons that are sufficient to you.

After you make your own judgment about the believability of a witness, you may then attach to that witness's testimony the importance or weight that you think it deserves.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What's more important than numbers is how believable the witnesses are, and how much weight you think their testimony deserves.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 1.7 (August 2020); August 20, 2024, Proposed Jury Instructions from the Court.

**14. General Instructions for Use During Trial—Stipulation of Fact [Agreed to by Parties]**

Thomson Reuters and ROSS have agreed that certain facts are true, and those stipulations have been read to you during this trial. You must therefore treat these facts as having been proved for the purposes of this case.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 2.4 (August 2020) (Modified).

**15. General Instructions for Use During Trial—Use of Deposition [ROSS Proposal]**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of one or more witnesses may be presented to you by a video or by reading the transcript. If played by video, the deposition testimony may be edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that deposition videos may appear to have been edited.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 2.5 (August 2020) (Modified).

31

### 16. General Instructions for Use During Trial—Charts and Summaries in Evidence and those Not Admitted in Evidence [ROSS Proposal]

The parties have presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case. These charts and summaries are not themselves proof of any facts. They are not binding on you in any way.  If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases Nos. 2.7 and 2.8 (August 2020) (Modified).

**17. General Instructions for Use During Trial—Evidence Admitted for a Limited Purpose [Agreed to by Parties]**

You will now hear evidence that was received for a particular limited purpose. [This evidence can be considered by you as evidence that (describe limited purpose)]. It may not be used for any other purpose. [For example, you cannot use it as proof that (discuss specific prohibited purpose)].

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 2.10 (August 2020) (Modified).

### 18. General Instructions for Use At End of Trial—Deliberations [ROSS Proposal]

When you retire to the jury room to deliberate, you may take with you these instructions, your notes, and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone, or computer of any kind; the internet, any internet service, or any text or instant messaging service like Twitter; or any internet chat room, blog, website, or social networking service such as Facebook, LinkedIn, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 3.1 (August 2020) (Modified).

### 19. Copyright Infringement—Allegations [ROSS Proposal]

As I instructed at the beginning of the case, Thomson Reuters has two theories of infringement that it is asserting against ROSS: direct infringement and indirect infringement.

For direct infringement, I have found that if the copyrights for the headnotes are valid, then ROSS infringed 2,243 headnotes. These 2,243 headnotes are presented in Appendix A. With respect to these 2,243 headnotes, Thomson Reuters must demonstrate that each of these headnotes is valid by proving by the preponderance of the evidence that the headnotes have not expired. This is the only issue of direct infringement related to ROSS. I will provide an instruction on how you determine whether Thomson Reuters has proven the headnotes are not expired.

Separately, Thomson Reuters contends that ROSS indirectly infringed under theories of vicarious infringement and contributory infringement by the acts of LegalEase. I will provide the elements Thomson Reuters must prove for each of these theories later in the instructions. However, each of these theories of indirect infringement requires that Thomson Reuters first prove direct infringement by LegalEase. To do so, Thomson Reuters must (1) identify a particular work or works that it contends LegalEase infringed, (2) prove that Thomson Reuters owns a valid, unexpired copyright in the identified work or works; (3) prove that LegalEase actually copied the identified work or works; and (4) prove, through a side-by-side comparison, that LegalEase copied the protectable elements of the identified work or works as opposed to elements of public domain materials or words or phrases that are not copyrightable. Thomson Reuters has the burden of proof on each of these elements. I will address each of these elements in further instructions.

**Authority**
D.I. 770 at 5; *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002); *Tanksley v. Daniels*, 902 F.3d 165, 173-74 (3d Cir. 2018).

### 20. Copyright—Defined (17 U.S.C. § 106) [ROSS Proposal]

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to, or authorize others to:

1.    reproduce the copyrighted work in copies;

2.    prepare derivative works based upon the copyrighted work; or

3.    distribute copies of the copyrighted work to the public by sale or other
      transfer of ownership.

It is the owner of a copyright who may exercise these exclusive rights.  The term "owner" includes the author of the work or an assignee.  In general, copyright law protects against reproduction of identical or substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

There are a number of exceptions to these exclusive rights, such as the fair use exception, which I will explain in a later instruction.

***Sources and Authorities***:

9th Circuit Model Rules 17.2; 17 U.S.C. §§ 106–122; *Maclean Assocs. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 778 (3d Cir. 1991) ("Under the Copyright Act, the owner of a copyright has the exclusive right to copy, distribute or display his work.").

**21. Copyright—Subject Matter—Generally (17 U.S.C. § 102) [ROSS Proposal]**

Thomson Reuters contends that the works identified in Appendix B are original and infringed by LegalEase. Thomson Reuters contends that each of these works involved in this trial are literary works in which words, numbers, or other verbal or numerical symbols are expressed. A copyright may be obtained in certain literary works.

However, copyright protection for an original work of authorship does not extend to any idea, concept, principle, or materials authored by a judge or a legislative body acting in an official capacity, such as the text of judicial opinions or the text of state-created headnotes, regardless of the form in which it is described, explained, illustrated, or embodied.

Additionally, individual words and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; and mere listing of ingredients or contents lack originality and cannot be copyrighted. Thomson Reuters's key number system includes key numbers and judicial topics comprised of either individual words or short phrases. These words and phrases are not, as a matter of law, copyrightable. However, as explained in a further instruction, they may be subject to copyright protection as a compilation.

In this case, I have determined that the headnotes and the key number system are sufficiently original. However, for any other works, Thomson Reuters must also prove that each work provided in Appendix B that it claims LegalEase infringed is original. That means that Thomson Reuters must show that the work has at least some minimal creativity and author contributed something more than a merely trivial variation from the judicial language on which it is based, something recognizably his own.

**Sources and Authorities:**

9th Circuit Model Instruction 17.3; 17 U.S.C. § 102(a) ("Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression . . ."); D.I. 770 at 6-7; *Star Athletica, L.L.C. v. Varsity Brands, Inc.,* 580 U.S. 405, 411 (2017) ("A valid copyright extends only to copyrightable subject matter."); *Pyrotechnics Mgmt. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 336-37 (3d Cir. 2022) ("Congress expressly excluded certain subjects from copyright protection, no matter how original they might be. Those exclusions include 'any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described.'" (quoting 17 U.S.C. § 102(b)) (internal citations and quotations omitted)); *Georgia v. Public Resources*, 590 U.S. 255, 273 (2020) (materials authored by a judge or a legislative body acting in an official capacity are not copyrightable); *Magic Mktg. v. Mailing Servs.*, 634 F. Supp. 769, 771-72 (W.D. Pa. 1986) ("Indeed, regulations promulgated pursuant to the Copyright Act list the following works as not subject to copyright: 'Words and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents.'" (quoting 37 C.F.R. § 202.1(a) (1985)); *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1384–1385 (Fed. Cir. 2007) (denying copyright protection for the phrase "if no pulse, start CPR"); D.I. 547 at 7 ("If a headnote merely copies a judicial opinion, it is uncopyrightable. But if it varies more than 'trivial[ly],' then Westlaw owns a valid copyright." (quoting *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976)); *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (A work is original if "the author contributed something more than a merely trivial variation, something recognizably his own.").

## 22. Copyright—Subject Matter— Copyright—Subject Matter—Ideas and Expression (17 U.S.C. § 102(b)) [ROSS Proposal]

Only the expression of an idea or fact can be copyrighted.  The underlying ideas contained in the work, such as procedures, processes, systems, methods of operation, concepts, principles, or discoveries, or the underlying facts contained in the work, such as names and addresses in a telephone directory, cannot be copyrighted. Likewise, materials authored by a judge or a legislative body acting in an official capacity, such as the text of judicial opinions or the text of state-created headnotes, are not copyrightable.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.4; 17 U.S.C. § 102(b); *Georgia v. Public Resources*, 590 U.S. 255, 273 (2020); *Star Athletica, L.L.C. v. Varsity Brands, Inc.,* 580 U.S. 405, 411 (2017) ("A valid copyright extends only to copyrightable subject matter."); *Pyrotechnics Mgmt. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 336-37 (3d Cir. 2022) ("Congress expressly excluded certain subjects from copyright protection, no matter how original they might be. Those exclusions include 'any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described.'") (internal citations and quotations omitted)); *Georgia v. Public Resources*, 590 U.S. 255, 273 (2020) (materials authored by a judge or a legislative body acting in an official capacity are not copyrightable).

### 23. Copyright—Subject Matter—Duration (17 U.S.C. § 302(c)) [ROSS Proposal]

Copyrights do not last forever. Congressional statutes define the time period for copyrights and once that period ends, the copyright expires. After a copyright has expired, the work goes into the public domain and can be used by anyone. Inclusion of a work with an expired copyright in another work, such as a compilation, does not extend the copyright for that original work; once it expires, anyone if free to use the work. An expired copywrite cannot be renewed or re-registered. There can be no infringement of an expired copyright. Thompson Reuters has the burden of proving that each of its copyrights was valid and had not expired.

For copyrights that were first published in or before, 1927, the duration for the copyright is 95 years. Therefore, any copyrights that predate 1928 are expired. This includes works that were first published before 1928 and then republished again after 1928. The copyright runs only from the first publication of a work.

As for works published after 1927, only works that were properly renewed are entitled to 95 years of protection. Copyrights have an original term of a specific number of years, but may be renewed to have the longer 95 years of protection. To properly renew a copyright, in the last year of the copyright term, the owner must renew the registration with the Copyright Office.

For any work asserted by Thomson Reuters published before January 1, 1978, Thomson Reuters must show both a valid original registration and a renewal of that specific work, or else the work does not have is valid copyright. For any work after 1978, Thomson Reuters must show that the work has a valid registration for that specific work, or else the work does not have a valid copyright. For each asserted headnote and the key number system, Thomson Reuters must prove that it owns a valid copyright that has not expired, including that it procured a proper renewal for each copyrighted work within the applicable time limit. You must evaluate whether

Thomson Reuters has satisfied that burden by the preponderance of the evidence for every work asserted by Thomson Reuters, including the headnotes, key number system, and any other works.

***Sources and Authorities*:**

17 U.S.C.A. § 304(b) ("Any copyright still in its renewal term at the time that the Sonny Bono Copyright Term Extension Act becomes effective [1998] shall have a copyright term of 95 years from the date copyright was originally secured."); *Golan v. Gonzales*, 501 F.3d 1179, 1189 (10th Cir. 2007) ("When the copyright expires at the end of the statutory period, the work becomes part of the public domain. . . . no individual may copyright a work in the public domain"); *Harvey Cartoons v. Columbia Pictures Indus.*, 645 F. Supp. 1564, 1571 (S.D.N.Y. 1986) (dismissing a copyright infringement claim after finding "that the pictorial representation of 'Fatso,' as he appears in Harvey's comic books with expired copyrights, has entered the public domain" and therefore were non-copyrightable elements); *Stern v. Sinatra*, 99 F. App'x 777, 778 (9th Cir. 2004) (after a photograph fell into the public domain, inclusion of the photograph in a compilation "did not alter this photograph's public domain status."); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1241 (N.D. Cal. 1995) (previously published portions of a compilation fell into the public domain because they were no timely renewed); *Perea v. Ed. Cultural, Inc.*, 13 F.4th 43, 52 (1st Cir. 2021) ("'Once the copyright expires, the work enters the public domain and is freely subject to copying and performance without the owner's permission.'") (quoting *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 825 (7th Cir. 2016)); *Klinger v. Conan Doyle Est., Ltd.*, 755 F.3d 496, 500 (7th Cir. 2014) ("We cannot find any basis in statute or case law for extending a copyright beyond its expiration."); *Golan v. Gonzales*, 501 F.3d 1179, 1189 (10th Cir. 2007) ("When the copyright expires at the end of the statutory period, the work becomes part of the public domain. . . . no individual may copyright a work in the public domain"); United States Copyright Office, Circular 15A, Duration of Copyright, https://www.copyright.gov/circs/circ15a.pdf, at 2 (Revised January 2024) ("[A]ll works published in the United States before January 1, 1929, are in the public domain."); *id.* at ("Copyrights in their first 28-year term on January 1, 1978, still had to be renewed to be protected for the second term. If a valid renewal registration was made at the proper time, the second term will last for 67 years. However, if renewal registration for these works was not made within the statutory time limits, a copyright originally secured between 1950 and 1963 expired on December 31 of its 28th year, and protection was lost permanently."); *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 966 n.7 (9th Cir. 2008) (quoting the 1909 Copyright Act, which stated that "the copyright secured by [the 1909 Act] . . . endure[ed] for twenty-eight years from the date of *first publication*.") (emphasis added); *Int'l Film Exch., Ltd. v. Corinth Films, Inc.*, 621 F. Supp. 631, 634 (S.D.N.Y. 1985) ("Under the 1909 Act, statutory copyright protection attached and endured for twenty-eight years from the date of *first publication* with notice.") (emphasis added); *Twin Books Corp. v. Walt Disney Co.*, 83 F.3d 1162, 1165 (9th Cir. 1996) ("The 1909 Act provided that an author was entitled to 28 years of protection from the date he or she secured a copyright on a work, and that the copyright could, before the first 28–year period expired, be renewed for another 28–year term."); *Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1226 (9th Cir. 1998) (stating that, under the 1909 Act "[t]o get the renewal term protection, copyright owners had to apply for renewal."); *Barris v. Hamilton*, 1999 WL 311813, at *4 (S.D.N.Y. May 17, 1999) (quoting *Rose v. Bourne,*

*Inc.*, 176 F. Supp. 605, 610 (S.D.N.Y. 1959), *aff'd* 279 F.2d 79 (2d Cir. 1960)) (discussing the copyright renewal process).

### 24. Copyright Infringement—Elements—Ownership and Copying
### (17 U.S.C. § 501(a)-(b)) [ROSS Proposal]

Only if you're persuaded that Thomson Reuters owns a valid copyright, can you consider whether LegalEase improperly copied Thomson Reuters's copyrighted material. It is the burden of Thomson Reuters to show that LegalEase infringed on its valid copyright. Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On the plaintiff's copyright infringement claim, the plaintiff has the burden of proving by a preponderance of the evidence that:

First, the plaintiff is the owner of a valid and unexpired copyright; and

Second, the defendant copied original expression from the copyrighted work, which requires the plaintiff show both actual copying and material appropriation of the copyrighted work.  I will explain later what is meant by material appropriation.

If you find that Thomson Reuters has proved each of these elements, your verdict on this issue should be for Thomson Reuters.  If, on the other hand, you find that Thomson Reuters has failed to prove either of these elements, your verdict on this issue should be for ROSS.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.5; 11th Circuit Model Instruction 9.17; 17 U.S. Code § 501; *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991); *Dun & Bradstreet Software* Servs*., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (To prevail on a copyright infringement action, plaintiffs must establish: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work."); *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018) (stating that a plaintiff must prove by the preponderance of the evidence that defendant (1) actually copied copyrighted work; and (2) materially misappropriated the copyrighted work.);  *Skidmore v. Led Zeppelin*, 952 F.3d 1064 (9th Cir. 2020) (en banc) ("[P]roof of copyright infringement requires [the plaintiff] to show: (1) that he owns a valid copyright in [the work]; and (2) that [the defendant] copied protected aspect of the work . . . The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'"); *Krist v. Pearson Educ*., Inc., 419 F. Supp. 3d 904, 907 (E.D. Pa. 2019) (copyright infringement must be proven by the preponderance of the evidence).

### 25. Copyright Infringement—Ownership of Valid Copyright—Definition (17 U.S.C. §§ 201–205) [ROSS Proposal]

The plaintiff is the owner of a valid, unexpired copyright in the asserted headnotes and key number system if the plaintiff proves by a preponderance of the evidence that:

1.  the plaintiff's work is original and has not expired; and

2.  the plaintiff is the author or creator of the work or received a transfer of the copyright.

If you find that Thomson Reuters does not own a valid copyright to the works asserted by Thomson Reuters, there can be no infringement and you should not evaluate whether there was direct infringement, contributory infringement, or vicarious infringement by ROSS.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.6; 17 U.S. Code §§ 102(a)-(b), 302(c); *Star Athletica, L.L.C. v. Varsity Brands, Inc.,* 580 U.S. 405, 410-11 (2017) ("The first element of a copyright-infringement claim is ownership of a valid copyright . . . [that reflects] original works of authorship fixed in any tangible medium of expression." (quotations and citations omitted)).

## 26. Copyright Interests—Authorship
## (17 U.S.C. § 201(a)) [ROSS Proposal]

The creator of an original work is called the author of that work. An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

One must translate an idea into a fixed, tangible expression in order to be the author of the work. Merely giving an idea to another does not make the giver an author of a work embodying that idea.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.8; 17 U.S.C. § 201(a); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) ("As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." ); *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58, 61 (1884) (the "'author' involves originating, making, producing, as the inventive or master mind, the thing which is to be protected, whether it be a drawing, or a painting, or a photograph."); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1232 (9th Cir. 2000) (the "author" is the person "to whom the work owes its origin and who superintended the whole work, the 'master mind.'"); *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976) (en banc) ("Originality means that the work owes its creation to the author.").

### 27. Copyright Infringement—Originality [ROSS Proposal]

You may find that each work asserted by Thomson Reuters in Appendix B is original if they were created:

> First, independently by the work's author, that is, the author did not copy
> them from another work; and
>
> Second, by use of at least some minimal creativity and author contributed
> something more than a merely trivial variation, something recognizably his
> own.

Thomson Reuters headnotes have "thin" copyright protection, which protects against only virtually identical copying.

In determining whether the work's author copied from another work, the defendant can establish that the plaintiff copied the work as opposed to independently creating it in the same manner that the plaintiff proves infringement. In the case of a derivative work based on an underlying work that is in the public domain, only the material added to the underlying work is protected by copyright.

In determining whether an author contributed "something recognizably his own," the amount of effort or "sweat of the brow" placed into the work is irrelevant. Similarly, the demonstration of physical skill or special training in creating the work is irrelevant. Instead, you must look at the overall efforts of the author and determine if he or she added something with minimal creativity. For instance, mere reproduction of a work in another medium—such as changing a two-dimensional rendering into three dimensions—is not sufficiently creative.

For any works asserted by Thomson Reuters other than the headnotes and key number system, you must determine if the work is sufficiently original, meaning that Thomson Reuters must have used at least some minimal creativity and contributed something more than a merely

trivial variation, something recognizably its own. If you find that Thomson Reuters's works do not satisfy that burden, you must find it does not have a valid copyright in the works.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.14; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 113 L. Ed. 2d 358, 111 S. Ct. 1282 (1991) (Mere "sweat of the brow" is insufficient to render a copy eligible for copyright protection.); *id.* at 345 ("Original, as the term is used in copyright, means only that the work was independently created by the author [or authors], . . . and that it possesses at least some minimal degree of creativity."); *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 491 (2d Cir.), *cert. denied*, 429 U.S. 857 (1976) ("[T]he requirement of originality [cannot] be satisfied simply by the demonstration of 'physical skill' or 'special training'.... A considerably higher degree of skill is required, true artistic skill, to make the reproduction copyrightable."); *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (A work is original if "the author contributed something more than a merely trivial variation, something recognizably his own."); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (When a work embodies only the minimum level of creativity necessary for copyright, it is said to have "thin" copyright protection, which "protects against only virtually identical copying."); Nimmer, § 2.08[C] at 2-111 (stating that the "mere act of converting two dimensions to three dimensions, although it creates a distinguishable variation, may not represent a contribution of independent effort because no one can claim to have independently evolved the idea and technique of working in three dimensions"); Nimmer on Copyright § 3.07[C] ("In the case of a derivative work based on an underlying work that is in the public domain, only the material added to the underlying work is protected by copyright."); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir. 1980) (holding that, "The mere reproduction of the underlying characters in plastic, even though . . . it undoubtedly involved some degree of manufacturing skill, does not constitute originality"); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1222 (9th Cir. 1997); *Worth v. Selchow & Richter Co.*, 827 F.2d 569, 572 (9th Cir. 1987) ("Because authors who wish to express ideas in factual works are usually confined to a narrow range of expression . . ., similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed." (internal citation and quotations omitted)).

## 28. Copying—Unauthorized Copying [ROSS Proposal]

For the works in Appendix B that Thomson Reuters asserts LegalEase infringed, if you find that the works are original and have not expired, you will then assess whether LegalEase engaged in unauthorized copying. Unauthorized copying consists of two elements: actual copying and material appropriation of the copyrighted work. Thomson Reuters must prove both elements. That is, even if you find actual copying of a particular copyrighted work, LegalEase may not have directly infringed that work if it took only elements that were in the public domain or not otherwise copyrightable.

To prove the first element, actual copying, Thomson Reuters must prove by the preponderance of the evidence that LegalEase both (1) had access to the asserted works and (2) that the asserted works and the works LegalEase purportedly copied are virtually identical. For access, it requires showing that for each of the works asserted by Thomson Reuters, LegalEase was able to access them. With respect to the headnotes and the key number system, I have already determined that LegalEase had access to these works. However, for any other works asserted by Thomson Reuters, you must first determine if LegalEase had access. As to virtual identity, this element requires that Thomson Reuters prove that the asserted works and the works LegalEase purportedly copied are virtually identical to each other.

[[Expert testimony was presented on this virtual identity and you may consider that testimony in your deliberations. However,]] You must individually compare each asserted work and its corresponding accused work and determine if they are virtually identical such that it is likely LegalEase copied the work. If you do not find virtually identical, then no further consideration is required. If you do find virtually identical, you must consider the second element, material appropriation. In assessing actual copying, ROSS may rebut Thomson Reuters's assertions of actual copying if it has demonstrated that the accused works were

50

independently created. That is, that LegalEase created the works through its own initiative and not through copying.

To prove the second element, material appropriation, Thomson Reuters must prove by the preponderance of the evidence that LegalEase copied the protectable aspects of the asserted works such that the works virtually identical after removing unprotectable elements. That is, you must perform a side-by-side comparison of each of the asserted works and the accused works and, excluding any unprotectable elements, assess whether you believe the two works are virtually identical. You may not rely on expert testimony for determining material appropriation; you must perform the side-by-side comparison yourself and focus only on the protectable elements of the asserted work.

In evaluating material appropriation through the side-by-side comparison, you must consider whether LegalEase used only the non-protectable elements from Thomson Reuters's works, such as the words of judicial opinions or statutes or elements that are not copyrightable, such as names, dates, or other public information. To that end, in order to meet its burden to prove this element, Thomson Reuters must provide the context for each asserted work so that you can evaluate whether LegalEase took the protectable material from Thomson Reuters, or whether it took unprotectable elements from the public domain. If Thomson Reuters fails to meet this burden, your verdict should be for ROSS.

[[For each memo question accused of infringement, Thomson Reuters must prove virtually identity between its asserted headnote and the accused memo question after removing the unprotectable elements. Because the headnotes are based on judicial opinions and are factual, there is a narrow range of expression that an author can use to express the contents of the judicial opinions. This means that the copyright protection is thin.]]

51

**Sources and Authorities:**

9th Circuit Model Instruction 17.17-17.19; D.I. 770 at 13-14 (Court's Summary Judgment Order); *Tanksley v. Daniels*, 902 F.3d 165, 173-74 (3d Cir. 2018); *Dam Things From Denmark v. Russ Berrie and Co., Inc.*, 290 F.3d 548, 562 (3d Cir. 2002); *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946); *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (J. Hand); *Nimmer on Copyright* § 13D.32[A]; *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002–03 (2d Cir. 1995); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe."); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (glass-in-glass jellyfish sculpture only entitled to thin protection against virtually identical copying due to the narrow range of expression); *Advanta-STAR Auto. Research Corp. of Am. v. Search Optics*, LLC, 672 F. Supp. 3d 1035, 1049 (S.D. Cal. 2023) ("[W]hen a work is entitled to 'thin' protection, courts typically require 'virtual identity' rather than 'substantial similarity' to find copyright infringement.); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977) (Proof of access requires "an opportunity to view or to copy plaintiff's work."); *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009) (requiring "a reasonable possibility, not merely a bare possibility"). *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010) ("If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe."); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (glass-in-glass jellyfish sculpture only entitled to thin protection against virtually identical copying due to the narrow range of expression); *Advanta-STAR Auto. Research Corp. of Am. v. Search Optics*, LLC, 672 F. Supp. 3d 1035, 1049 (S.D. Cal. 2023) ("[W]hen a work is entitled to 'thin' protection, courts typically require 'virtual identity' rather than 'substantial similarity' to find copyright infringement."); *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004); *Apple Comput.*, 35 F.3d at 1442; *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986); *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) (The court must instruct the jury as to: (1) the non-protectable elements of the plaintiff's work, (2) the appropriate standard (virtually identical or substantially similar), and (3) that the jury may consider the work as a whole.); *Worth v. Selchow & Richter Co*., 827 F.2d 569, 573 (9th Cir. 1987) ("The verbatim repetition of certain words in order to use the nonprotectible facts is also noninfringing; the game cards' repetition of words used by Worth to describe places, persons, and events constitutes 'mere *indispensable* expression' of particular facts or ideas. (emphasis in original)).

### 29. Copying—Compilation [ROSS Proposal]

Some of the works Thomson Reuters asserts are called compilations. The test for infringement for a compilation is the same as for any other works, but it requires that the accused infringer copy substantially all of the specific selection or arrangement.

A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. It may include uncopyrightable materials—such as facts, judicial opinions, or works whose copyrights have expired and entered the public domain—but the copyright only protects the compilation as a whole, not the uncopyrightable works that are part compilation. Moreover, the combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship. If the unprotected elements of the copyright are so commonplace or so typical, they are not eligible for copyright protection. Moreover, where the plaintiff can demonstrate it owns a valid copyright in a compilation of factual materials, the copyright is highly functional and the organization of that material is dictated by external the nature of the factual material and how it can be arranged. Thus, the compilation copyright, if any, is said to be a "thin" copyright, only protecting against copying substantially all of the compilation.

The owner of a valid compilation copyright may enforce the right to exclude others in an action for copyright infringement. However, because its alleged copyrights are, if any, thin, to prove infringement, it is not sufficient that Thomson Reuters shows that only part of the work was copied. Instead, you must find supersubstantial similarity or virtual identity between the key number system or any other asserted compilation and the works accused on infringement. This requires you find that there was bodily appropriation of expression, or unauthorized use of

53

substantially the entire work. By way of example, copying 80% of an entire compilation is insufficient for infringement of a thin copyright to a compilation. It must be substantially the entire work.

Thomson Reuters's key number system is a compilation of unprotectable elements, namely, words or short phrases covering judicial topics which have been known in the legal community for over 150 years. Within each of these judicial topics in the key number system, Thomson Reuters lists headnotes associated with cases. This is the key number system compilation. To the extent it is original and a valid copyright, it is a thin copyright. To find a valid copyright in the key number system compilation, you must find that those unprotectable elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship and that they are not commonplace or typical in the field of law. To find infringement of Thomson Reuters's key number system and any other compilation works, you must find that LegalEase had access to the work and copied substantially all of the elements of the work.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.16; 17 U.S.C. § 101 ("A 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."); 17 U.S.C.A. § 304(b) ("Any copyright still in its renewal term at the time that the Sonny Bono Copyright Term Extension Act becomes effective [1998] shall have a copyright term of 95 years from the date copyright was originally secured."); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 344, 349 (1991) (holding that factual compilations are sufficiently original to be copyrightable if choices as to selection and arrangement of facts are independently made by compiler but that the copyrights are "thin"); *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."); *id.* (holding that combination of six unprotectable elements that were "so commonplace in glass-in-glass sculpture and so typical of jellyfish physiology" were not eligible for copyright protection); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1146 (9th Cir. 2003) ("[The] mechanical combination of four preexisting ceiling-lamp elements with a preexisting table-lamp base did not result in the

expression of an original work of authorship . . . ."); *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc*., 893 F.3d 1176, 1186 (9th Cir. 2018) (affirming grant of summary judgment when defendant's database comprised at most 80 percent of plaintiff's copyrighted compilation); *id.* ("[W]e have repeatedly recognized in this circuit that when dealing with factual compilations, infringement cannot be based on a showing that only a part of the work has been copied. In the context of factual compilations, we have held that infringement should not be found in the absence of "bodily appropriation of expression," or "unauthorized use of substantially the entire item.") (quoting *Harper House, Inc. v. Thomas Nelson, Inc*., 889 F.2d 197, 205 (9th Cir. 1989)); *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 214 (3d Cir. 2002) (The materials are also highly functional, utilitarian, and "dictated by external constraints" inherent in the subject matter of the work); *TransWestern Pub. Co. LP v. Multimedia*, 133 F.3d 773, 776-77 (10th Cir. 1998) (""[I]f substantial similarity is the normal measure required to demonstrate infringement 'supersubstantial' similarity must pertain when dealing with 'thin' works."" (quoting 4 Nimmer & Nimmer, Nimmer on Copyright § 13.03[A] at 13-28 (1977)); 4 Nimmer & Nimmer, Nimmer on Copyright § 13.03[A][4] (noting that supersubstantial similarity can be expressed as virtual identity); *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 693, 707 (2d Cir. 1998) ("West has a thin copyright in its compilations."); *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 514 (2d Cir. 1991) (in evaluating a compilation, the court must determine "whether the arrangement. . . viewed in the aggregate, is original."); *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp*., 463 F.3d 478, 483 (6th Cir. 2006) (noting that "[s]ubsequent cases have interpreted Feist to mean that compilation copyright protection is very limited and usually requires substantial verbatim copying" and finding 61% copying insufficient); *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 729-30 (8th Cir. 2002) (74% copied of a compilation not sufficient); *Golan v. Gonzales*, 501 F.3d 1179, 1189 (10th Cir. 2007) ("When the copyright expires at the end of the statutory period, the work becomes part of the public domain. . . . no individual may copyright a work in the public domain").

### 30. Secondary Liability—Vicarious Infringement
### —Elements and Burden of Proof [ROSS Proposal]

If you find that Thomson Reuters had a valid and not expired copyright in in any of the asserted works in Appendix B , you must determine whether ROSS vicariously infringed that copyright.  The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.  LegalEase infringed the plaintiff's copyright in any of the asserted works in Appendix B;

2.  ROSS directly benefitted financially from the infringing activity of LegalEase for that infringing work or works;

3.  ROSS had the right and ability to supervise and control the infringing activity of LegalEase for that infringing work or works; and

4.  ROSS exercised practical control over LegalEase's copying of the infringing work or works.

A financial benefit exists if the availability of infringing material acts as a draw for customers. Thus, Thomson Reuters must prove that customers were drawn to ROSS because of any infringing work or works you identify from Appendix B.

To show an ability to supervise infringing conduct, a plaintiff must show that the defendant had the technical ability to identify and remove infringements.

If you find that the plaintiff has proved each of these elements, your verdict should be for the plaintiff.  If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant, ROSS.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.20; *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) ("To prove contributory and vicarious infringement, a plaintiff must first show direct

infringement by a third party."); *id.* at 388 ("To establish vicarious infringement, a plaintiff must prove that the defendant had (1) the right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities."); *id.* at 389 (the defendant must have the "practical ability" to control the third party); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (noting defendant's "failure to change its operations to avoid assisting [users] to distribute . . . infringing content . . . is not the same as declining to exercise a right and ability to make [third parties] stop their direct infringement." (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007))); *Leonard*, 834 F.3d at 389 (quoting Ellison v. Robertson, 357 F.3d 1072, 1079 (9th Cir. 2004)); *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829 (9th Cir. 2019) (same); 3 Nimmer on Copyright § 12.04 (2024)
.

### 31. Secondary Liability—Contributory Infringement
### —Elements and Burden of Proof [ROSS Proposal]

A defendant may be liable for copyright infringement engaged in by another if it knew or had reason to know of the infringing activity and intentionally induced and materially contributed to that infringing activity.

If you find that Thomson Reuters had a valid and not expired copyright in in any of the asserted works in Appendix B , you must determine whether ROSS contributorily infringed that copyright. The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.    LegalEase infringed the plaintiff's copyright in any of the asserted works in Appendix B;

2.    the defendant knew or had reason to know of the infringing activity of LegalEase for the work or works found to be infringed;

and

3.    the defendant intentionally caused, requested, and materially contributed to LegalEase's infringing activity for the work or works found to be infringed.

To show the defendant knew or had reason to know of the infringing activity, plaintiff must show that ROSS had actual knowledge of specific acts of infringement or willful blindness of specific facts, which requires showing that ROSS took specific steps to avoid acquiring knowledge.

The defendant's intent to induce the infringing activity must be shown by clear expression of that intent or other affirmative steps taken by the defendant to encourage the activity, such as a request or suggestion.

If you find that LegalEase infringed the plaintiff's copyright and you also find that

the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove either or both of these elements, your verdict should be for the defendant.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.21; *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) ("To prove contributory and vicarious infringement, a plaintiff must first show direct infringement by a third party."); *id.* at 387 ("To establish a claim of contributory infringement, a plaintiff must show: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement."); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940, n. 12 (2005) ("[I]n the absence of evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device were otherwise capable of substantial noninfringing uses."); *id.* at 936-37 ("[O]ne who distributes a device with the object of promoting its use to infringe a copyright, as shown by clear expression or other affirmative steps to foster infringement, is liable for the resulting acts of infringement by third parties."); *Columbia Pictures Industries, Inc. v. Fung,* 710 F.3d 1035-36 (9th Cir. 2013) ("As for the necessary 'clear expression or other affirmative steps' evidence indicative of unlawful intent, the most important is Fung's active encouragement of the uploading of torrent files concerning copyrighted content."); *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013) (contributory infringement requires "actual knowledge of specific acts of infringement" or "[w]illful blindness of specific facts . . . [such that the defendant] took active steps to avoid acquiring knowledge.");.

### 32. Copyright—Affirmative Defense—LegalEase's Fair Use (17 U.S.C. § 107) [ROSS Proposal]

Now, I will explain what fair use means under the law.

Fair Use is a complete defense to copyright infringement. One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

In determining whether the use made of the work was fair, you should consider the following factors:

(1)     the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes and whether the use was transformative;

(2)     the nature of the copyrighted work;

(3)     the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)     the effect of the use upon the potential market for or value of the copyrighted work.

Permission to use the copyrighted work is irrelevant to fair use and being denied permission to use a work does not weigh against a finding of fair use.

It can be fair use for a company to download copyrighted works and then use those copyrighted works for research purposes, even where the use is for-profit.

In an indirect infringement claim, direct infringement must be proven. And if the direct infringing conduct was fair use, there cannot be a claim for indirect infringement.

60

ROSS has the burden of proving LegalEase's use was fair use by a preponderance of the evidence.

You will evaluate each of the following factors and provide a verdict related to each factor.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.22; 17 U.S.C. § 107; *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985); *Campbell*, 510 U.S. at 585 n.18 ("If the use is otherwise fair, then no permission need be sought or granted. Thus, being denied permission to use a work does not weigh against a finding of fair use."); *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 197 (3d Cir. 2003); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.") (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1068-70 (9th Cir. 2014) (where Fox argued that Dish committed indirect infringement because consumers were copying TV shows onto devices using Dish software, circuit affirmed district court decision that conduct by third-party consumers was fair use and thus there could be no indirect infringement by Dish. Circuit applied four fair use factors to the conduct of the consumers); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) (where Universal argued that Sony committed indirect infringement because consumers were time-shifting TV shows on local devices using Sony software, Supreme Court affirmed decision that conduct by third-party consumers was fair use and thus there could be no indirect infringement by Sony); *A&M Records v. Napster*, 239 F.3d 1004, 1014-19 (9th Cir. 2001) (where A&M records sued Napster for indirect infringement arising from consumers using Napster software to download songs, court assessed conduct of the consumers under the four fair use factors); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 97 (2d Cir. 2014) ("the creation of a full-text searchable database is a quintessentially transformative use[.]"); *see also Authors Guild v. Google, Inc.*, 804 F.3d 202, 225, 228 (2d Cir. 2015) ("Google's making of a complete digital copy of Plaintiffs' works for the purpose of providing the public with its search and snippet view functions (at least as snippet view is presently designed) is a fair use[.]" and "If the library had created its own digital copy to enable its provision of fair use digital searches, the making of the digital copy would not have been infringement.").

### 33. Copyright—Affirmative Defense— LegalEase's Fair Use Factor 1 – Purpose and Character of the Use [ROSS Proposal]

The first statutory factor concerns the purpose and character of the accused use.

This factor includes these issues: (1) whether and to what extent the accused use serves a commercial purpose, which weighs against fair use, versus a nonprofit educational purpose, which weighs in favor of fair use, and (2) whether and to what extent the accused work is "transformative," which supports fair use.

A use is transformative if it is a different purpose than the original use. For example, Thomson Reuters uses its headnotes and the key number system to help legal researchers navigate Westlaw. LegalEase used the headnotes and the key number system to locate judicial opinions for the purposes of creating memos that directly quote from the judicial opinions. It is for you to determine whether this use by LegalEase is transformative. A work is also transformative if it is "transformed" into something new, with a further purpose or different character, altering the first use with new expression, meaning, or message rather than merely superseding the objects of the original creation.

In evaluating the first statutory factor with respect to LegalEase, you must first evaluate which of the asserted works from Appendix B LegalEase was found to infringe, if any.  Then for any work found to be infringing, you must determine whether it was used for a commercial purpose and whether the use was transformative.

***Sources and Authorities*:**

17 U.S.C. § 107(1); *Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, 694 F. Supp. 3d 467, 484-85 (D. Del. 2023) ("So whether the intermediate copying caselaw tells us that Ross's use was transformative depends on the precise nature of Ross's actions. It was transformative intermediate copying if Ross's AI only studied the language patterns in the headnotes to learn how to produce judicial opinion quotes. But if Thomson Reuters is right that Ross used the untransformed text of headnotes to get its AI to replicate and reproduce the creative drafting done by Westlaw's attorney-editors, then Ross's comparisons to cases like *Sega* and *Sony* are not apt."); *Cisco Systems, Inc., v. Arista Networks, Inc.*, Final Jury Instructions, 5: 14-cv-5344, at 26

(Instruction No. 49); *Campbell*, 510 U.S. at 579 (transformative looks at "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message."); *Google LLC*, 141 S. Ct. at 1203 (explaining that "'transformative' . . . .describe[s] a copying use that adds something new and important"); *Dr. Seuss, Enters., L.P. v. Comicmix LLC*, 983 F.3d 443, 445 (9th Cir. 2020) (discussing the benchmarks of transformative use); *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith,* 143 S. Ct. 1272, 1282 (2023); *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001); *Elvis Presley Enters.*, 349 F.3d at 629 ("Courts have described new works as 'transformative' when works use copyrighted material for purposes distinct from the purpose of original material."); *L.A. News Serv. v. CBS Broad., Inc*., 305 F.3d 924, 939 (9th Cir. Cal. 2002) ("[T]he most important component of the inquiry into the 'purpose and character of the use' is the question whether the allegedly fair use was 'transformative,' i.e., whether the second use 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.' 'The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.'") (internal citations omitted); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175-76 (9th Cir. Cal. 2013) ("The Supreme Court has stated that the central purpose of [the first fair use] factor is to see whether and to what extent the new work is transformative.") (internal citations and quotations omitted); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ("The fact that Google incorporates the entire Perfect 10 image into the search engine results does not diminish the transformative nature of Google's use. As the district court correctly noted, we determined in Kelly that even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work."); *Seltzer v. Green Day, Inc*., 725 F.3d 1170, 1176 (9th Cir. 2013) (use is transformative if it "adds value to the original—if the quoted matter is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings" and that the addition of such value "is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.") (quoting P. Leval, Toward a Fair Use Standard, 103 HARV. L. REV. 1105 (1990)); *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 579 (1994) ("Although such transformative use is not absolutely necessary for a finding of fair use, the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works. Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.") (internal quotations and citations omitted); *Sony Computer Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 600 n1., 602-10 (9th Cir. 2000) (applying the § 107 fair use factors and holding that "Connectix's reverse engineering of Sony's BIOS extracted from a Sony PlayStation console purchased by Connectix engineers is protected as a fair use"); 4 Nimmer on Copyright § 13F.05[D][1](The foregoing reference to "intermediate use" raises to the fore another aspect of commercial utilization. Technically, an act of reproduction impinges on the copyright owner's rights even if not the subject of public distribution. Nonetheless, that conduct frequently unfolds for a legitimate purpose, such as reverse engineering, education, or time-shifting. When the technical act of reproduction is defended as fair use, it is appropriate to evaluate its commercial status on its own terms. Thus, for example, an intermediate copy undertaken to study software techniques should be judged non-commercial, notwithstanding that it serves as one link in a chain to produce a later product to compete commercially with

plaintiff's.); *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 529 (2023); *White v. W. Pub. Corp.*, 29 F. Supp. 3d 396, 398-400 (S.D.N.Y. 2014); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 97 (2d Cir. 2014) ("the creation of a full-text searchable database is a quintessentially transformative use[.]"); *see also Authors Guild v. Google, Inc.*, 804 F.3d 202, 225, 228 (2d Cir. 2015) ("Google's making of a complete digital copy of Plaintiffs' works for the purpose of providing the public with its search and snippet view functions (at least as snippet view is presently designed) is a fair use[.]" and "If the library had created its own digital copy to enable its provision of fair use digital searches, the making of the digital copy would not have been infringement."); D.I. 770 at 17.

### 34. Copyright—Affirmative Defense— LegalEase's Fair Use Factor 2 –
### Nature of Copyrighted Work [ROSS Proposal]

The second statutory factor is the nature of the copyrighted work. This factor considers the extent to which the work is factual or creative. This factor weighs against fair use if a work is purely creative, and it weighs in favor of fair use if a work is purely factual or functional. The copyrights at issue here, to the extent they are valid, are factual and functional.

***Sources and Authorities*:**

17 U.S.C. § 107(2); *Cisco Systems, Inc., v. Arista Networks, Inc.*, Final Jury Instructions, 5: 14-cv-5344, at 27 (Instruction No. 54); *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 586 (1994) ("This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.") (internal citations omitted); *Sega Enters., Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1527 (9th Cir. 1992) ("[I]f a work is largely functional, it receives only weak protection."); *Dr. Seuss, Enters., L.P. v. Comicmix* LLC, 983 F.3d 443, 456 (9th Cir. 2020) (This factor "typically has not been terribly significant in the overall fair use balancing."); D.I. 547, at 21-22.

### 35. Copyright—Affirmative Defense— LegalEase's Fair Use Factor 3 – Amount and Substantiality of the Portion Used [ROSS Proposal]

The third statutory factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole, which concerns how much of the overall copyrighted work was used by the accused infringer. Analysis of this factor is viewed in the context of each of the asserted works from Appendix B LegalEase was found to infringe, if any. Wholesale copying does not preclude fair use per se but it militates against a finding of fair use. Even a small part may be qualitatively the most important part of a work. If, however, the secondary user only copies as much as is necessary for a transformative use, then this factor will not weigh against him or her. This factor analyzes the amount of copying and whether the copying took the original work's "heart."

What matters for factor three is not the amount and substantiality of the portion used in making a copy of the original work. Instead, what matters is the amount and substantiality of the portion used that is thereby made accessible to the public.

For each of the asserted works from Appendix B LegalEase was found to infringe, if any, you must determine if a large amount of the original work was taken and made accessible to the public, or not, and if a significant portion of the original work was taken and made accessible to the public, or not.

***Sources and Authorities*:**

17 U.S.C. § 107(3); *Cisco Systems, Inc., v. Arista Networks, Inc.*, Final Jury Instructions, 5: 14-cv-5344, at 28 (Instruction No. 55); *Dr. Seuss, Enters., L.P. v. Comicmix* LLC, 983 F.3d 443, 456 (9th Cir. 2020) (This factor considers "the quantitative amount and the qualitative value of the original work used in relation to the justification for that use."); *Harper House, Inc. v. Thomas Nelson, Inc.*, 5 F.3d 536, 1993 WL 346546 at 25 *2 (9th Cir. 1993) (comparisons of individual portions (pages) of parties' works rather than the entire works is "inappropriate and misleadingly prejudicial"; works must be compared as a whole); *NXIVM Corp. v. The Ross Institute*, 364 F.3d 471, 481 (2d Cir. 2004) (fair use analysis under third factor must be based on entire work and not individual "modules"); *Tresóna Multimedia, LLC v. Burbank High Sch. Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020) (noting that although "qualitatively significant"

portion of original work was used, because of transformative nature of new material, this factor "did not weigh against fair use"); ECF No. 547, at 22-23 ("I consider the amount of copying as well as whether the copying took the original work's 'heart.'" (quoting *Campbell*, 510 U.S. at 589); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 221 (2d Cir. 2015) ("The clear implication of the third factor is that a finding of fair use is more likely when small amounts, or less important passages, are copied than when the copying is extensive, or encompasses the most important parts of the original."); D.I. 770 at 21 ("What matters is not 'the amount and substantiality of the portion used *in making a copy*, but rather the amount and substantiality of *what is thereby made accessible* to a public for which it may serve as a competing substitute.'") (quoting Authors Guild, 804 F.3d at 222).

### 36. Copyright—Affirmative Defense— LegalEase's Fair Use Factor 4 – Effect on Potential Market [ROSS Proposal]

The fourth statutory factor is the effect of the accused infringer's use on the potential market for or value of the validly copyrighted work. This factor weighs against fair use if the accused use materially impairs the marketability or value of the copyrighted work. This factor considers whether the accused work is offered or used as a substitute for the original copyrighted work. This factor considers not only the extent of any market harm caused by the accused infringer's actions but also whether unrestricted and widespread use of validly copyrighted materials of the sort engaged in by the accused infringer would result in a substantially adverse impact on the potential market for the copyrighted work. If the use of the copyrighted materials is transformative, market substitution is at least less certain, and market harm may not be presumed.

Like with factor one, you must first evaluate which of the asserted works from Appendix B LegalEase was found to infringe, if any. Then you must evaluate whether this conduct affects an actual or potential market for the work or the value of the work.

***Sources and Authorities*:**

17 U.S.C. § 107(4); *Cisco Systems, Inc., v. Arista Networks, Inc.*, Final Jury Instructions, 5: 14-cv-5344, at 29 (Instruction No. 56); *Sony Computer Ent. Am. Inc. v. Bleem*, 214 F.3d 1022, 1026-27 (9th Cir. 2000) (noting that the market effect "factor may be the most important, [but] all factors must be considered, and the commercial nature of the copies is just one element"; use for comparative advertising can support first fair use factor but negate fourth fair use factor); *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1403 (9th Cir. 1997) (balancing public benefit that will result from the defendant's use against personal gain the copyright owner will receive if use is denied); *Solid Oak Sketches, LLC v. 2K Games, Inc.,* 449 F. Supp. 3d 333, 349 (S.D.N.Y. 2020) (This inquiry focuses on "whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original."); D.I. 547, at 24-26.

## 37. Copyright—Affirmative Defense —Merger
## [ROSS Proposal]

Generally speaking, copyright law protects the original manner of expression. But ideas cannot be monopolized when an idea can only be expressed in one way.  For this reason, there is an exception to protecting even a valid copyright if there is only one way, or only a few ways, of expressing the ideas or other unprotected matter in a work. In other words, you may find that original expression in a work of authorship is "merged" with the idea it expresses when that idea can't be expressed in more than one way. In such cases, an author may copy the expression in the work to the extent necessary to express the unprotected matter. ROSS claims that this exception applies in this case.

This exception is called the "merger doctrine" because when there is only one way of expressing unprotected matter, the expression is said to have "merged" with the unprotected matter.

To show that Thomson Reuter's copyrighted works, if valid, are subject to merger, ROSS must show that, at the time Thomson Reuter created the works, Thomson Reuter had only one way, or very few ways, to express the ideas underlying the elements the specific words used in the asserted headnotes and key number system. Material in an original work—even material that serves a function—is not subject to merger as long as the author had more than a few ways to express the underlying idea.

ROSS has the burden of proving this defense by a preponderance of the evidence.

***Sources and Authorities***:

9th Circuit Model Instruction 17.19; 11th Circuit Model Instruction 9.11; *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361 (Fed. Cir. 2014) (1361 ("First, we agree that merger cannot bar copyright protection for any lines of declaring source code unless [the author] had only one way, or a limited number of ways, to write them. The evidence showed that [the author] had 'unlimited options as to the selection and arrangement of the 7000 lines Google copied.' This

was not a situation where [the author] was selecting among preordained names and phrases to create its packages… Because 'alternative expressions [we]re available,' there is no merger.").

### 38. Copyright—Affirmative Defense— Scènes À Faire [ROSS Proposal]

Scènes à faire is an affirmative defense to copyright infringement.

The scènes à faire doctrine is a copyright law principle that helps courts distinguish copyrightable material from non-copyrightable material. The term is French for "scene to be made" or "scene that must be done".  Under the doctrine of scènes à faire, a standard or typical theme, setting, or background that is common to a large number of works, such as a common plot device, is unprotected matter that may be copied. For example, the doctrine applies to plot devices, incidents, characters, or settings that are, as a practical matter, indispensable, or at least standard, in the treatment of certain subjects. This is to ensure that what belongs in the public domain remains there, while also protecting what deserves protection. These elements of a work are given only limited copyright protection, because they are not likely to be original and because, as a type of idea, they are necessary for the creation of other works.

To show that portions of Thomson Reuters's content are scènes à faire material, ROSS must show that, at the time Thomson Reuters created it headnotes and organizational system— not at the time of any copying—external factors other than Thomson Reuters's creativity dictated that Thomson Reuters select, arrange, organize and design its original features in the manner it did based on the judicial opinions. The scènes à faire doctrine depends on the circumstances presented to the creator at the time of creation, not the circumstances presented to the copier at the time it copied.

ROSS has the burden of proving this defense by a preponderance of the evidence.

***Sources and Authorities*:**

*Cisco Systems, Inc., v. Arista Networks, Inc.*, Final Jury Instructions, 5: 14-cv-5344, at 32 (Instruction No. 61); ABA Model Jury Instructions, Copyright, Trademark, and Trade Dress Litigation, Instruction 1.4.8; 4-13 Nimmer on Copyright § 13.03[B][4].

71

**39. Tortious Interference with Contract [ROSS Proposal]**

Thomson Reuters also contends that ROSS tortiously interfered with Thomson Reuters's contract with a third party, LegalEase. Specifically, Thomson Reuters alleges that ROSS induced LegalEase to breach two contract provisions by (1) using a bot to scrape Westlaw content, and (2) sharing passwords. You may not consider conduct related to the copyrights or provisions in the contract with LegalEase related to copyrights.

To prove tortious interference with contract, Thomson Reuters must prove by the preponderance of the evidence:

1.   there was a contract between LegalEase and Thomson Reuters;

2.   ROSS knew about the contract and also knew that it was interfering with the performance of that contract;

3.   an intentional act by ROSS was a significant factor in causing LegalEase to breach the contract;

4.   ROSS's act was without justification; and

5.   it caused injury to Thomson Reuters.

I have found there was a contract between LegalEase and Thomson Reuters and that if the breach of contract allegations are true and LegalEase used bot scraping and shared passwords, Thomson Reuters was harmed. Therefore, you only need to evaluate elements 2, 3, and 4.

In determining whether ROSS knew about the contract, Ross must have had actual or imputed knowledge of the substance of the contract rights at the time of its work with LegalEase, even if it did not know about the exact terms.

An intentional act by ROSS was a significant factor in causing LegalEase to breach the contract if Thomson Reuters has shown ROSS (1) intended to interfere or (2) intended to reach a

72

result with knowledge that it would interfere with the contract, even if interference was not the main purpose. In evaluating this element, you must determine whether Ross knew LegalEase was breaching or going to breach by using a bot or sharing passwords.

Thomson Reuters must prove more than just ordinary business competition or using lawful methods to pursue legitimate financial goals. For example, a business does not act improperly if it tries to lure customers away from a competitor and to disrupt an existing relationship in the process, as long as it was actions were fair and reasonable under the circumstances.

In evaluating whether ROSS's act was without justification, you are to consider and balance the following seven factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties. In evaluating this element, end-running or exploiting a loophole is not necessarily the same as acting without justification

If you find that Thomson Reuters has failed to show any of these elements by the preponderance of the evidence, you must find for ROSS.

***Sources and Authorities*:**

D.I. 547, at 30-33; *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174-76 (Del. 2012); Restatement (Second) of Torts §§ 766 cmt. J, 767 (Am. L. Inst. 1965); *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 383 (3d Cir 2016).

### 40. Tortious Interference with Contract—General and
### Nominal Damages [ROSS Proposal]

A party that is harmed by a tortious interference with contract is entitled to damages in an amount calculated to compensate it for the harm caused by the ~~breach~~ tortious interference.  The compensation should place the injured party in the same position it would have been in if the contract had not been breached.

If you find that Thomson Reuters is entitled to a verdict in accordance with these instructions, but do not find that Thomson Reuters has sustained actual damages, then you may return a verdict for Thomson Reuters in some nominal sum such as one dollar. Nominal damages are not given as an equivalent for the wrong but rather merely in recognition of a technical injury and by way of declaring the rights of Thomson Reuters.

*Sources and Authorities***:**

*Del. P.J.I. Civ. § 22.24 (2000); E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 446 (Del. 1996); *Pierce v. Int'l Insurance Co. of Illinois*, 671 A.2d 1361, 1367 (Del. 1996); *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, 394 A.2d 1160, 1163-64 (Del. 1978)(loss of profits); *American General Corp. v. Continental Airlines*, 622 A.2d 1, 11 (Del. Ch. 1992), *aff'd*, 620 A.2d 856 (Del. 1992); *Farny v. Bestfield Builders, Inc.*, 391 A.2d 212, 214 (Del. Super. Ct. 1978); *Gutheridge v. Pen-Mod, Inc.*, 239 A.2d 709, 714 (Del. Super Ct. 1967)(nominal damages); *J.J. White, Inc. v. Metropolitan Merchandise Mart*, 107 A.2d 892, 894 (Del. Super. Ct. 1954).

**41. Copyright—Damages (17 U.S.C. § 504) [ROSS Proposal]**

If you find for the plaintiff on the plaintiff's copyright infringement claim, you must

determine the plaintiff's damages. The plaintiff is entitled to recover the actual damages suffered

as a result of the infringement to the extent the plaintiff can demonstrate the infringement caused

those damages. In addition, the plaintiff is also entitled to recover any profits of the defendant

that the plaintiff can demonstrate are attributable to the infringement. Thomson Reuters must

prove damages by a preponderance of the evidence.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.32; 17 U.S.C. § 504(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) (noting additionally that "actual damages must be suffered 'as a result of the infringement,' and recoverable profits must be 'attributable to the infringement'"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 n.5 (9th Cir. 1985).

**42. Copyright—Damages—Actual Damages**
**(17 U.S.C. § 504(b)) [ROSS Proposal]**

The plaintiff is entitled to recover the actual damages suffered as a result of the infringement, but only to the extent the damages can be shown to be tied to each specific validly copyrighted work in either Appendix A for direct infringement or Appendix B for indirect infringement. Actual damages mean the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement. In determining actual damages, you should consider the following:

1.    The amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work; and

2.    The profits the plaintiff should have received for any sales lost because of the infringement. Profits are the gross revenue the plaintiff would have made on sales that did not occur because of the infringement minus additional expenses the plaintiff would have incurred in making those sales.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.33; 17 U.S.C. § 504(b); *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006) (noting this instruction "properly states the law of damages in a copyright infringement suit" and is "in line with our circuit's caselaw."); *Leonard v. Stemtech Health Scis., Inc.*, No. 08-67-LPS, 2015 U.S. Dist. LEXIS 106512, at *20-21 (D. Del. Aug. 13, 2015) (Actual damages are assessed "from the point of view of the copyright owner and 'compensate the [copyright] owner for any harm he suffered by reason of the infringer's illegal act.").

## 43. Copyright—Damages—Defendant's Profits[1]
## (17 U.S.C. § 504(b)) [ROSS Proposal]

In addition to actual damages, the plaintiff is entitled to any profits from the sale of a product of the defendant attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of the defendant's profits from the sale of a product only if you find that the plaintiff showed a causal nexus between the infringement and the profits generated indirectly from the infringement. That requires the plaintiff to demonstrate that but for the infringement of a work in either Appendix A for direct infringement or Appendix B for indirect infringement, ROSS would not have made the profits from the sale of a product. To disgorge profits, each profit earned must be causally connected to the infringement.

The defendant's profit from the sale of a product is determined by subtracting all expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from the sale of a product containing or using the copyrighted work. The plaintiff has the burden of proving the defendant's gross revenue by a preponderance of the evidence.

---

[1] Although asserted by Plaintiffs, disgorgement of profits is not an appropriate remedy for tortious interference with contract claims. As stated in the Delaware Pattern Jury Instructions, § 22.18, only actual damages suffered by the plaintiff are recoverable. *Id.* (citing *De Bonaventura v. Nationwide Mut. Ins.*, Del. Ch., 419 A.2d 942 (1980),aff'd, Del. Supr., 428 A.2d 1151 (1981); *Bowl-Mor Company Inc. v. Brunswick Corp.*, Del. Ch., 297 A.2d 61, appeal dismissed, 297 A.2d 67 (1972); M*urphy v. Godwin*, Del. Super., 303 A.2d 668 (1973); RESTATEMENT (SECOND) OF TORTS ' 774A (1965)). Thomson Reuters's expert cites a single Delaware case from 2010 for the proposition that disgorgement of profits is an available remedy under Delaware law, but that case notes that Delaware courts have not adopted it as a remedy, and instead cites to a number of out of jurisdiction cases for the proposition. *See Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, Civil Action No. 3718-VCP, 2010 Del. Ch. LEXIS 15, at *104, n.303 (Del. Ch. Jan. 29, 2010). Since Thomson Reuters has not offered a theory of recovery based on actual damages for its intentional interference with contract claim, Thomson Reuters should not be entitled to damages. Portions of the instruction related to intentional interference with contract are only provided out of an abundance of caution.

Expenses are all operating costs, overhead costs, and production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted work.

***Sources and Authorities*:**

9th Circuit Model Instruction 17.34; 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."); *Polar Bear Prods., Inc. v. Timex Corp*., 384 F.3d 700, 711 (9th Cir. 2004) (The statute "creates a two-step framework for recovery of indirect profits: (1) the copyright claimant must first show a causal nexus between the infringement and the [infringer's] gross revenue; and (2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement."); *id.* at 714 n.10 (approving jury instruction stating: "Indirect profits have a less direct connection or link to the infringement. Plaintiff seeks indirect profits in this case. To recover indirect profits, Plaintiff must establish a causal relationship between the infringement and the profits generated indirectly from such infringement."); *Frank Music Corp.*, 886 F.2d at 1548 (deducting direct costs of production from the defendant's gross profit); *Kamar Int'l, Inc. v. Russ Berrie & Co*., 752 F.2d 1326, 1332 (9th Cir. 1984) (allowing deduction of overhead when the infringer demonstrated that it actually assisted production, distribution, or sale of the infringing product)**.**

### 44. Copyright—Damages—Nominal Damages  [ROSS Proposal]

For either actual damages or defendant's profits, or both, if you find that the defendant directly or indirectly infringed any of the plaintiffs' asserted works, but you are unable to fix the amount of damages with reasonable certainty based upon evidence, you should return a verdict of one dollar in favor of the plaintiff. One dollar damages are called nominal damages, and are awarded as a recognition of the fact that a plaintiff's legal rights have been violated, but that the just compensation due to plaintiff is only one dollar.

With respect to defendant's profits, if you find that the defendant's costs unrelated to the infringement would reduce the plaintiff's damages to zero, you may award one dollar.

***Sources and Authorities*:**

Branch v. Ogilvy & Mather, Inc., 772 F. Supp. 1359, 1363 (S.D.N.Y. 1991) (affirming the award of nominal damages for copyright infringement);*Yellow Pages Photos, Inc. v. Ziplocal*, LP, No. 8:12-cv-755-T-26EAJ, 2016 U.S. Dist. LEXIS 190836, at *11 (M.D. Fla. Mar. 24, 2016) (same); *Trombetta v. Novocin*, No. 18-CV-0993-LTS-SLC, 2024 U.S. Dist. LEXIS 28629, at *46 (S.D.N.Y. Feb. 20, 2024); *Infogroup, Inc. v. DatabaseUSA.com LLC*, No. 8:14-CV-49, 2018 U.S. Dist. LEXIS 214441, at *54 (D. Neb. Dec. 18, 2018).

**45. Copyright—Damages—Willful Infringement (17 U.S.C. § 504(c)(2)) [ROSS Proposal]**

An infringement is considered willful when the plaintiff has proved both of the following

elements by a preponderance of the evidence:

First, the defendant engaged in acts that infringed the copyright; and

Second, the defendant knew that those acts infringed the copyright, or the defendant

acted with reckless disregard for, or willful blindness to, the copyright holder's rights.

**Authority**

9th Circuit Model Instruction 17.37; 17 U.S.C. § 504(c)(2); *Unicolors, Inc. v. Urban Outfitters, Inc.,* 853 F.3d 980, 991 (9th Cir. 2017)("[T]o prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." (quoting Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 674 (9th Cir. 2012) (brackets in original)).

**46. Copyright—Damages—Statutory Damages (17 U.S.C. § 504(c)) [ROSS Proposal]**

Thomson Reuters is entitled to statutory damages for each registered work infringed. Here, Thomson Reuters only registered one compilation work that includes all of the asserted works in this case. Therefore, in considering statutory damages, you may only award one statutory damages award.

In determining statutory damages, you may consider the following factors:

1.    the revenue lost by the copyright holder as a result of the infringement;

2.    the profits earned by the defendant as a result of the infringement;

3.    the need to deter future infringement;

4.    the need to penalize the infringer;

5.    the circumstances of the infringement; and

6.    whether the infringement was intentional.

If you determine the work was infringed, you may not award as statutory damages less than $750, nor more than $30,000.

However, if you find the infringement was willful, you may award, but are not obligated to award, as much as $150,000 for each work willfully infringed.

**Authority**
9th Circuit Model Instruction 17.35; *Nintendo of Am., Inc. v. Dragon Pac. Int'l.*, 40 F.3d 1007, 1010 (9th Cir. 1994); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009); *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1271–72 (9th Cir. 2021); *Bryant v. Media Right Prods.*, 603 F.3d 135, 141 (2d Cir. 2010) ("Here, it is the copyright holders who issued their works as 'compilations'; they chose to issue Albums. In this situation, the plain language of the Copyright Act limits the copyright holders' statutory damage award to one for each Album."); *Ackourey v. Mohan's Custom Tailors, Inc.*, No. 09-CV-5454, 2011 U.S. Dist. LEXIS 98636, at *16 (E.D. Pa. Aug. 29, 2011) (after finding it was a compilation, stating "for the limited purpose of determining statutory damages for infringement of the 2006 Stylebook, Plaintiff is limited to pursuing a single statutory damage award."); *Tattoo Art, Inc. v. TAT Int'l, Ltd. Liab. Co.*, 794 F. Supp. 2d 634, 651 (E.D. Va. 2011) (finding that 212 tattoos were infringed as individual works, but as part of 24 separate compilations, the copyright owner was only entitled to 24 damages awards).

### 47. Final Instructions and Deadlock [Agreed to by Parties]

It is your duty as jurors to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with your individual judgments.  Each of you must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you must be open to their opinions.  You should not be influenced to vote a certain way, however, by the single fact that a majority of the jurors, or any of them, will vote in a certain way.  In other words, you should not surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict, or solely because of the opinions of the other jurors.

In the course of your deliberations you should not hesitate to reexamine your own views, and to change your opinion if you are convinced that those views are wrong.  To reach a unanimous result you must examine the questions submitted to you openly and frankly, with proper regard for the opinions of others and with a willingness to reexamine your own views. Remember that you are not partisans; you are judges — judges of the facts. Your only interest is to seek the truth from the evidence. You are the judges of the credibility of the witnesses and the weight of the evidence.

If you should fail to agree on a verdict, the case is left open and must be resolved at a later time. There is no reason to think that another trial would be conducted in a better way or that a different jury would decide it any better.  Any future jury must be selected in the same manner and from the same source as you.

We try cases to dispose of them and to reach a common conclusion if it is consistent with the conscience of each member of the jury.  I suggest that, in deliberating, you each recognize that you are not infallible, that you listen to the opinions of the other jurors and that you do so

82

carefully with a view to reaching a common conclusion, if you can. You may take all the time that you feel is necessary.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole.  You should not single out any part of any instruction, including this one, and ignore others.  They are all equally important.

You may now retire and continue your deliberations.

***Sources and Authorities*:**

Third Circuit Model Civil Jury Instructions, General Instructions for Civil Cases No. 3.04 (August 2020) (Modified).

OF COUNSEL:

Warrington S. Parker III
Joachim B. Steinberg
Jacob Canter
CROWELL & MORING LLP
3 Embarcadero Ctr., 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800

Keith J. Harrison
Crinesha B. Berry
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 624-2500

Ryan H. Seewald
CROWELL & MORING LLP
1601 Wewatta Street, Suite 815
Denver, CO 80202
Tel: (303) 524-8660

Andy LeGolvan
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square
Suite 900
Palo Alto, CA 94306
Tel: (213) 620-7755

Mark S. Davies
Anna B. Naydonov
Kufere Laing
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Tel: (202) 626-3600

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com

*Attorneys for Defendant/Counterclaimant
ROSS Intelligence, Inc.*

Taylor Moore-Willis
Rosie Norwood-Kelly
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 819-8200

Dated: April 1, 2025
12149828 / 20516.00001