IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMSON REUTERS ENTERPRISE
CENTRE GMBH and WEST PUBLISH-
ING CORP.,

        *Plaintiffs,*

    v.

ROSS INTELLIGENCE INC.,

        *Defendant.*

No. 1:20-cv-613-SB

---

Jack B. Blumenfeld, Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Dale M. Cendali, Eric A. Loverro, Joshua L. Simmons, KIRKLAND & ELLIS LLP, New York, New York; Yungmoon Chang, KIRKLAND & ELLIS LLP, Los Angeles, California; Miranda D. Means, KIRKLAND & ELLIS LLP, Boston, Massachusetts.

        *Counsel for Plaintiffs.*

David Ellis Moore, Bindu Ann George Palapura, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Jordan Ludwig, Emily T. Kuwahara, CROWELL & MORING LLP, Los Angeles, California; Ryan Henry Seewald, CROWELL & MORING LLP, Denver, Colorado; Warrington Parker, Joachim B. Steinberg, Jacob Canter, Christopher J. Banks, Anna Z. Saber, Margaux Poueymirou, CROWELL & MORING LLP, San Francisco, California; Keith J. Harrison, Mark A. Klapow, Lisa Kimmel, Crinesha B. Berry, CROWELL & MORING LLP, Washington, D.C.; Andy J. LeGolvan, Ranjini Acharya, Yar R. Chaikovsky, WHITE & CASE, Silicon Valley, California; Mark S. Davies, WHITE & CASE, Washington, D.C.; Anne M. Voigts, PILLSBURY, Silicon Valley, California; Kayvan M. Ghaffari, PILLSBURY, San Francisco, California.

        *Counsel for Defendant.*

**MEMORANDUM OPINION**

May 23, 2025

BIBAS, *Circuit Judge*, sitting by designation.

Though I am still confident in my February 2025 summary-judgment opinion, the questions here are hard. Interlocutory appellate review of two of them will resolve the case more efficiently. That is why I granted Ross's motion for interlocutory appeal and stay pending appeal. D.I. 799. This opinion explains my reasoning underlying that order.

## I. THE LEGAL ISSUES WARRANT INTERLOCUTORY APPEAL

I may certify a § 1292(b) interlocutory appeal if there is (1) "a controlling question of law" that presents (2) "substantial ground[s] for difference of opinion" about the right answer so that an immediate appeal would (3) "materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc) (internal quotation marks omitted). Two issues in this case meet that standard: (1) whether the West headnotes and West Key Number System are original as a matter of law and (2) whether Ross's alleged use of the headnotes was fair use. D.I. 799. I certify both.

*1. Controlling question of law.* A controlling question of law is one that, "if erroneous, would be reversible on appeal." *Katz*, 496 F.2d at 755.

The originality issue qualifies. If I am wrong that both the headnotes and West Key Number system are original, my February 2025 summary-judgment opinion would be reversible on appeal because Thomson Reuters's copyright claims may not proceed without a showing of originality. *Katz*, 496 F.2d at 755. True, originality can involve fact-heavy analysis inappropriate for interlocutory appeal; "§ 1292(b) is not designed for review of factual matters." *Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 863 (3d Cir. 1977). But the part of the dispute that I am certifying is a question of law: How much "creative spark" is legally required for originality? *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). This is an "overriding legal issue[]" about the appropriate scope of *Feist* and its progeny. *Link*, 550 F.2d at 863. So it is a "controlling question of law." *Katz*, 496 F.2d at 754.

So is fair use. If I am wrong, and Ross does a have a fair-use defense, my decision would be reversible on appeal. *Id.* at 755. Though "[f]air use is a mixed question of law and fact," "[i]n this case, the ultimate 'fair use' question primarily involves legal work." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985) (first quotation); *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 24 (2021) (second quotation). This scenario parallels the Second Circuit's approach when it took a fair-use case on interlocutory appeal where the factual record was already established below. *Am. Geophysical Union v. Texaco Inc.*, 802 F. Supp. 1 (S.D.N.Y. 1992) (Leval, J.) (certifying fair use for interlocutory appeal); 60 F.3d 913 (2d Cir. 1994) (accepting certification). In sum, both questions that I certify involve controlling questions of law.

3

*2. Substantial ground for difference of opinion.* There is "substantial ground for difference of opinion" on both the originality and fair-use questions. *Katz*, 496 F.2d at 754. Substantial ground for difference of opinion means "doubt as to the correct legal standard, such as conflicting precedent [or] the absence of controlling law." *Karlo v. Pittsburgh Glass Works, LLC,* No. 2:10-cv-01283, 2014 WL12539666 (W.D. Pa. July 3, 2014). The controlling law is unclear here: Our circuit has not yet spoken on this "novel and difficult question[] of first impression." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (internal quotation marks omitted). I have written two summary-judgment opinions in this case. D.I. 547; D.I. 770. My second opinion considered the same precedents as the first but came out differently on both originality and fair use. Though I am confident that my second opinion is correct, I acknowledge that these questions are hard under existing precedent.

*3. Materially advancing the litigation.* Resolving these questions on appeal now will "materially advance the ultimate termination of the litigation." *Katz*, 496 F.2d at 754. Section 1292(b) is a "flexible" procedure that pragmatically "avoid[s] the rigors of the final-judgment rule." 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 3929–30 (3d ed. 2025). Congress created it so that a district court staring down a trial that might rest on a legally erroneous premise could get legal guidance before trekking down that path. *Id.*

That is exactly the case here. The parties and the court face an expensive and legally complex copyright trial. That trial would be unnecessary if I am wrong about originality or fair use. And those questions are hard and close. So interlocutory appeal

4

would "avoid protracted and expensive litigation" and "a long trial result[ing] from a pretrial order erroneously" granting a "right to maintain the action." *Milbert v. Bison Lab'ys, Inc.*, 260 F.2d 431, 433 (3d Cir. 1958); *Katz*, 496 F.2d at 754; *see also* Wright & Miller, *Federal Practice and Procedure* § 3930 (advisability of interlocutory appeal depends in part on "the substantiality of the burdens imposed on the parties by a wrong ruling").

*****

If the Third Circuit disagrees with anything laid out here and would like to modify the certified questions, it has the full power to do so and still accept the interlocutory appeal. *Johnson v. Alldredge*, 488 F.2d 820, 822–23 (3d Cir. 1973).

## II. A Stay Is a Reasonable Balance of Equities

A § 1292(b) appeal does not automatically stay the District Court proceedings; either the Third Circuit or I would first have to enter a stay. 28 U.S.C. § 1292(b). Stays are "exercise[s] of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted). My discretion to enter one is inherent in my power to manage dockets to conserve judicial and litigant resources. *Landis v. N. Am. Co.*, 299 U.S. 248, 245–55 (1936); *Commonwealth Ins. v. Underwriters, Inc.* 846 F.2d 196, 199 (3d Cir. 1988).

I find that a stay is appropriate here. Entering a stay will streamline this litigation, which is especially relevant here, given the point of § 1292(b). *See CFPB v. Navient Corp.*, 522 F. Supp. 3d 107, 120 (Md. Pa. 2021). Other District Courts have entered stays pending interlocutory appeal to avoid unnecessary trials. *See CFPB*, 522

5

F. Supp. 3d at 120 (collecting cases relying on this same reason). I follow that wise approach.

Neither party has asked me to consider the traditional stay factors, and other district courts have not done so in similar situations. *See, e.g.*, *id.* at 119–20 (granting a stay of trial pending interlocutory appeal without considering the traditional stay factors). But I find it prudent to consider them in any event. The traditional factors are (1) the likelihood that appellant will win on the merits, (2) the likelihood of irreparable injury to appellant without a stay, (3) whether the stay will substantially harm the appellee, and (4) whether a stay serves the public interest. *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015). Taking the first two factors independently and then considering all four on a "sliding scale," the factors weigh in favor of a stay. *Id.* at 571 (internal quotation marks omitted).

*First,* for the same reasons that there is substantial ground for difference of opinion on these issues, Ross has "a reasonable chance, or probability, of winning." *Id.* at 568 (internal quotation marks omitted).

*Second*, Ross is more likely than not to sustain irreparable injury from going to trial. *Id.* at 569. Typically, "purely economic injury" from going to trial does not meet this standard. *Minard Run Oil Co. v. U.S. Forest Servs.*, 670 F.3d 236, 255 (3d Cir. 2011) (internal quotation marks omitted). But "an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." *Id.* (internal quotation marks omitted). Ross has struggled financially preceding this trial to the point that I conclude that this exception is met. D.I. 541 at 7 (explaining

6

Ross's financial bind). Enormous trial costs will be a much heavier burden because Ross has a more precarious financial situation than a typical company, which could potentially impair its ability to finance trial.

*Third*, any harm that Thomson Reuters will suffer from the delay does not match the potential harm to Ross without a delay. *Revel*, 802 F.3d at 569. True, justice delayed is justice denied, but a short delay to avoid the possibility of an unnecessary trial benefits both parties. There is also a tort claim in this case, but it does not change my analysis. Because the tort claim turns on the same alleged conduct as the copyright claims, it would not be an efficient use of litigant or judicial resources to move forward with a partial trial on the tort issues while awaiting interlocutory resolution of the law underlying the copyright claims.

*Finally*, the public interest favors staying this case. *Id.* The public does not benefit from wasting court resources on a potentially needless trial. And given the quickly growing importance of AI, the public will benefit from having the Third Circuit weigh in promptly on AI's copyright implications.

### III.  I STAND BEHIND MY FEBRUARY 2025 SUMMARY-JUDGMENT OPINION

I certify these questions and stay the case because having the Third Circuit weigh in now will resolve this litigation more efficiently. But I still think that my recent summary-judgment opinion was correct. I stand by my reasoning and highlight the key points again.

*First*, originality: Originality for factual compilations is a low bar, requiring only "a minimal degree of creativity." *Feist*, 499 U.S. at 345. Choosing which parts of a judicial opinion are most important, then expressing that choice by compiling those

7

parts as headnotes, meets that low bar. *Matthew Bender*, the Second Circuit case relied on by Ross to resist this conclusion, is inapt. In that case, the Second Circuit explicitly did not consider the originality of "syllabi, headnotes and key numbers." *Matthew Bender & Co. v. West Publ'g Co.* 158 F.3d 674, 677–78 (2d Cir. 1998). It considered only the originality of adding factual matters, like alternative case citations and attorney information, to cases. *Id.* And the headnote compilations are far different from those factual matters. Choosing which sentences in a judicial opinion to highlight in a headnote requires "making non-obvious choices from among more than a few options." *Id.* at 682.

The closer call on originality is whether individual headnotes—outside the context of compilations—are themselves creative works. True, "facts are not copyrightable." *Feist*, 499 U.S. at 344. But in my view, a headnote is more than mere fact. It expresses an attorney editor's interpretation of a judicial opinion. To create a headnote, the attorney editor must identify what parts of an opinion are holding versus dicta and what holdings matter most. *See Google*, 593 U.S. at 18 (noting that copyrights protect the *expression* of ideas, not the ideas themselves). This sort of case interpretation can be hotly contested—as lawyers and judges well know. So the headnotes are original.

*Second*, fair use: There are four fair-use factors: (1) the use's purpose and character, including whether it is commercial or nonprofit; (2) the copyrighted work's nature; (3) how much of the work was used and how substantial a part it was relative

8

to the copyrighted work's whole; and (4) how the use affected the copyrighted work's value or potential market. 17 U.S.C. § 107(1)–(4).

As for purpose and character, Ross's use of Westlaw's headnotes was not transformative. Ross took the headnotes—a tool that identifies the important parts of a large body of law—and created a competing legal search tool that identifies the important parts of a large body of law. Ross did not add "new expression, meaning or message." *Google*, 593 U.S. at 29 (internal quotation marks omitted). It instead "supersede[d] the objects of the original creation." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) (internal quotation marks omitted). So "the original work and [Ross's] secondary use share the same or highly similar purposes." *Id.* at 532. Plus, Ross did this for commercial gain. *See id.* at 527, 532. So "the first factor … weigh[s] against fair use." *Id.* at 533.

As for market, Ross was trying to create a product to compete with Westlaw. So that makes factor four an easy win for Thomson Reuters. What matters here is "the *potential* market for" the copyrighted work. 17 U.S.C. § 107(4) (emphasis added). And Ross used the Westlaw headnotes to try to create a "market substitute" for Westlaw's work. *Google*, 593 U.S. at 35. True, there are public benefits from accessible legal search tools, but there is no reason that Ross could not have created such a legal search tool without deriving it from Westlaw's copyrighted material.

Though I found for Ross on factors two and three, those factors do not tip the scales in Ross's favor. Fair use is an "equitable" doctrine, and "some factors may prove more important in some contexts than in others." *Id.* at 18–19 (internal quotation marks

9

omitted). They must be weighed together using "judicial balancing." *Id.* at 19. Here, the overarching context is that Ross created a non-transformative market substitute for Westlaw. Factors one and four are thus most important.

*****

I certify this case for interlocutory appeal. Though I am still confident in my February 2025 summary judgment opinion, there are difficult legal questions about copyright and non-generative AI tools at the heart of this case. Addressing these questions now will speed up resolving the case and benefit the public. Because appellate resolution of these questions would change the shape of trial—and possibly avoid a copyright trial altogether—I stay this case pending the Third Circuit's response.